1   BENJAMIN W. BULL
    Arizona State Bar No. 009940
2   JOSHUA W. CARDEN (appearing PHV)
    Arizona State Bar No. 021698
3   ELIZABETH A. MURRAY (appearing PHV)
    Arizona State Bar No. 022954
4   Alliance Defense Fund
5   15333 N. Pima Rd., Suite 165
    Scottsdale, AZ 85260
6   Phone: (480) 444-0020
7   Fax: (480) 444-0028

8   ROBERT H. TYLER
    California State Bar No. 179572
9   Alliance Defense Fund
    38760 Sky Canyon Drive, Suite B
10  Murietta, CA 92563
11  Phone: (951) 461-7860
    Fax: (951) 461-9056
12
    TERRY L. THOMPSON
13  California State Bar No. 199870
    Law Offices of Terry L. Thompson
14  P.O. Box 1346
    Alamo, CA 94507
15  Phone (925) 855-1507
16  Fax: (925) 820-6034
    (designated local counsel)
17

18              IN THE UNITED STATES DISTRICT COURT
19           FOR THE NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
20

21  FAITH CENTER CHURCH
    EVANGELISTIC MINISTRIES, et al.,        CASE NO. C-04-3111 JSW
22
            Plaintiffs,                     **PLAINTIFFS' MOTION FOR**
23                                          **PRELIMINARY INJUNCTION; NOTICE**
    v.                                      **OF MOTION; POINTS AND**
24                                          **AUTHORITIES**
    FEDERAL D. GLOVER, et al.,
25                                          **Hearing Date: January 28, 2005**
            Defendants.
26                                          **Hearing Time: 9:00 a.m.**
27

28

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................iv

Notice of Motion and Motion ....................................................................................vi

Statement of Relief Requested...................................................................................vi

Issue Presented ..........................................................................................................vi

Statement of Relevant Facts.......................................................................................vi

Summary of Argument ..............................................................................................vi

Memorandum of Points & Authorities .......................................................................1

Argument ...................................................................................................................1

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ....................................1

     A.     Defendants' Policy and Practice Unconstitutionally Discriminate Against the Plaintiffs' Viewpoint......................................................................1

          1.     Religious expression is fully protected by the First Amendment.............1

          2.     Viewpoint discrimination is always impermissible .................................2

     B.     Defendants' Policy and Practice Unconstitutionally Discriminate Based on the Content of Plaintiffs' Speech. ..................................................4

          1.     Defendants have opened a designated public forum for community groups.........................................................................................4

          2.     Defendants have no compelling state interest to justify their content-based exclusion of Plaintiffs' speech.........................................5

     C.     Defendants' Policy and Practice Express Impermissible Hostility to Religion in Violation of the Establishment Clause.................................7

          1.     Defendants' policy has an appropriately secular purpose........................7

          2.     Defendants' exclusion of religious organizations inhibits religion. .........8

          3.     Defendants' prohibition against use for "religious services or activities" fosters an excessive government entanglement with religious.................9

               a)     The character and purpose of Plaintiff Faith Center is religious in nature........................................................................10

b)    Defendants' policy mandates unconstitutional governmental scrutiny and ongoing monitoring of religious groups................10

c)    As a complete bar to religious groups, the Defendants' policy goes too far by preventing even a neutral relationship ...............12

D.    Defendants' Policy and Practice Violate Plaintiffs' Right to Equal Protection Under the Fourteenth Amendment.......................................13

II.    PLAINTIFFS HAVE SUFFERED IRREPARABLE HARM THROUGH A LOSS OF CONSTITUTIONAL FREEDOM .........................................................14

III.    SERIOUS LEGAL QUESTIONS EXIST AND THE BALANCE OF HARM WEIGHS HEAVILY IN FAVOR OF THE PLAINTIFFS.................................................14

Conclusion ...........................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226 (1990)...................vii, 2, 6, 10, 12

*Cal. Med. Ass'n v. Fed. Elec. Comm'n*, 641 F.2d 619 (9th Cir. 1980).........................13

*Cammack v. Waihee*, 932 F.2d 765 (9th Cir. 1991).........................................9

*Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995)..................2, 6

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)...............7

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)..........................13

*Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810 (9th Cir. 2003).....................1

*Concerned Women for America v. Lafayette County*, 883 F.2d 32 (5th Cir. 1989).......vii, 5, 9, 13

*Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788 (1985)...........vii, 1, 3, 4, 5, 14

*Cuffley v. Mickes*, 208 F.3d 702 (8th Cir. 2000)........................................6

*Elrod v. Burns*, 427 U.S. 347 (1976)...................................................14

*Everson v. Bd. of Educ.*, 330 U.S. 1 (1947)............................................7, 9

*Fund for Animals v. Lujan*, 962 F.2d 1391 (9th Cir. 1992)...............................1

*Gentala v. City of Tucson*, 325 F. Supp. 2d 1012 (D. Ariz. 2003).......................10

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001).............................vii, 3

*Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001)..............................vii, 4, 5

*K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087 (9th Cir. 1972).............................vi

*Kreisner v. City of San Diego*, 1 F.3d 775 (9th Cir. 1993)...................5, 7, 8, 9, 10, 12

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993).........vii, 2, 3, 6, 14

*Lemon v. Kurtzman*, 403 U.S. 602 (1971)..............................................vii, 7, 8, 9

*Lynch v. Donnelly*, 465 U.S. 668 (1984)................................................8

*MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993)..................1, 14

*Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) ............................................................ 13

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ...................................................... 14

*Mitchell v. Helms*, 530 U.S. 793 (2000) .......................................................................................... 6

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ................................... 4, 5

*Perry v. Sindermann*, 408 U.S. 593 (1972).................................................................................... 6

*Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92 (1972)..................................................... 5

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995)............... vii, 6, 10, 11

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) ............................... 1, 15

*Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) ...................................................................... 13

*Tsosie v. Califano*, 630 F.2d 1328 (9th Cir. 1980) ............................................................... vii, 13

*Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204 (9th Cir. 1996) ..................................................... 4, 6

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994)........................................................ 13, 14

*Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994)................................... 7, 8, 9, 10, 13

*Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999)......................................................... 1

*Widmar v. Vincent*, 454 U.S. 263 (1981)........................................................ 2, 4, 6, 10, 11, 12

*Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1 (1993) ......................................................... 6

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ........................................................................................................................ 7

## SECONDARY AUTHORITIES

James McClellan, Joseph Story and the American Constitution 139 (Norman, OK: University of
Oklahoma, 1971)........................................................................................................................ 8

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiffs Faith Center Church Evangelistic Ministries and Hattie Mae Hopkins, by and through counsel, hereby move for a preliminary injunction in this action. The hearing is noted for 9:00 a.m., January 28, 2005. Plaintiffs respectfully request twenty minutes of oral argument on the law and do not anticipate relying upon oral testimony.

## STATEMENT OF RELIEF REQUESTED

Plaintiffs seek to preliminarily enjoin the Defendants from enforcing the "Policy for Use of Meeting Rooms in Libraries" that expressly prohibits the use of Contra Costa County Library public meeting rooms for "religious services or activities".

## ISSUE PRESENTED

Whether the Defendants' policy of denying access to public meeting rooms for religious services or activities is unconstitutional when Defendants, by policy, encourage educational, cultural, and community-related meetings, programs and activities in those meeting rooms.

## STATEMENT OF RELEVANT FACTS

The Statement of Facts from the Amended Verified Complaint is hereby incorporated by reference as though set forth in full, *see* Amended Verified Complaint ¶¶ 21-81, and is properly considered by this Court as evidence in deciding this motion. *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972). Additionally, counsel for both parties have stipulated that Resolution No. 93/525 is Defendants' current policy. (*See* Stipulation, signed by Judge White, October 6, 2004.) Resolution No. 93/525 states, *inter alia*, that "[l]ibrary meeting rooms shall not be used for religious services or activities." (Amended Verified Complaint, Ex. E.)

## SUMMARY OF ARGUMENT

Plaintiffs – a religious organization and its leader – seek equal access to Defendants' library facilities. After adopting a policy "to encourage the use of library meeting rooms for educational, cultural and community related meetings, programs, and activities," Defendants then ban use of those rooms for "religious services or activities." (*See* Amended Verified Complaint, Ex. E.) This is an outrageous denial of equal access.

Defendants' policy discriminates on the basis of Plaintiffs' viewpoint which is impermissible regardless of the nature of the forum. Defendants intentionally opened the facilities to a wide variety of community groups, thus creating a designated public forum. Within a designated forum, Defendants' may not discriminate against the content of Plaintiffs' speech absent a compelling state interest. Defendants have no such interest; in particular the Supreme Court has refused to recognize government avoidance of a presumed Establishment Clause violation as a "compelling" state interest. In fact, Defendants' policy goes to the extreme and actually <u>violates</u> the Establishment Clause by expressing hostility toward religion and creating excessive entanglement with religion. The Defendants also violate Equal Protection by treating Plaintiffs differently than other similarly-situated community groups, solely on the basis of Plaintiffs' religious expression.

It is far too late in the day to ban religious exercise from a rented facility solely because the landlord is the government. Unlike Rosa Parks, forced to sit in the back of a city bus because of the color of her skin, Faith Center is not even allowed "on board" because of the religious color of its speech. Such a blatantly unconstitutional policy must be enjoined.

**The following key cases will assist in the resolution of this matter:**

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226 (1990); *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788 (1985); *Lemon v. Kurtzman*, 403 U.S. 602 (1971); *Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001); *Concerned Women for America v. Lafayette County*, 883 F.2d 32 (5th Cir. 1989); *Tsosie v. Califano*, 630 F.2d 1328 (9th Cir. 1980).

///
///
///
///
///

## MEMORANDUM OF POINTS AND AUTHORITIES

The standard for a preliminary injunction is satisfied when the movant shows either: (I) a likelihood of success on the merits and the possibility of irreparable harm; or (II) the existence of serious questions going to the merits and the balance tips in the movant's favor. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993). "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests . . . Thus, the greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (citing *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)). "Additionally, '[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff.'" *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) (citing *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992)). As shown below, the Plaintiffs meet this standard and the motion should be granted.

## ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. DEFENDANTS' POLICY AND PRACTICE UNCONSTITUTIONALLY DISCRIMINATE AGAINST THE PLAINTIFFS' VIEWPOINT.

Plaintiffs are likely to succeed on the merits because Defendants are censoring protected religious expression on the basis of the expression's viewpoint and content. The Supreme Court has established a three-prong test for determining a free speech violation: 1) determine if the speech in question is protected by the First Amendment; 2) identify the nature of the forum in which the speech would take place; and 3) assess whether the government's exclusion of the speech from the forum is justified by the requisite standard. *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985). Here, without a compelling state interest, the Defendants refused Plaintiffs access to public property because of the Plaintiffs' viewpoint and the content of Plaintiffs' expression. The First Amendment does not tolerate such discrimination.

#### 1. Religious expression is fully protected by the First Amendment.

Religious speech is indisputably protected by the First Amendment. *See Widmar v.*

*Vincent*, 454 U.S. 263, 269 (1981) ("religious worship and discussion . . . are forms of speech and association protected by the First Amendment"); *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 248 (1990).  As the Supreme Court has explained:

> Our precedent establishes that private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression. . . . Indeed, in Anglo-American history, at least, government suppression of speech has so commonly been directed <u>precisely</u> at religious speech that a free-speech clause without religion would be <u>Hamlet</u> without the prince.

*Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) (emphasis in original) (citations omitted).

More specifically, speakers with a message of a religious nature are entitled to access public forums on the same terms as those whose message is secular or otherwise non-religious. *See Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384, 394 (1993); *Mergens*, 496 U.S. at 248-49, *Widmar*, 454 U.S. at 267 n.5.

### 2.    Viewpoint discrimination is always impermissible.

Importantly, viewpoint discrimination is forbidden <u>regardless</u> of the nature of the forum. *See, e.g., Lamb's Chapel,* 508 U.S. at 394 (government may not discriminate based on a speaker's viewpoint even in nonpublic forum).  Put another way, the existence of viewpoint discrimination ends the *Cornelius* inquiry – the Court need not determine the nature of the Defendants' forum in order to grant this motion.

The Defendants intentionally "encourage the use of library meeting rooms for educational, cultural and community related meetings, programs, and activities." (*See* Amended Verified Complaint, Ex. E.)  Plaintiffs sought access to a library meeting room to discuss "educational, cultural, and community" issues from a religious perspective; and engage in "activities" with a religious perspective. (*See* Amended Verified Complaint ¶ 26.)  However, the Defendants explicitly denied Plaintiffs the right to access the facility solely because of the religious viewpoint of the Plaintiffs' meetings.  The Defendants have thus discriminated against Plaintiffs' religious viewpoint on educational, cultural and community related issues and activities, which are permissible subjects in this forum.

1    The Supreme Court in *Lamb's Chapel* held that "the government violates the First

2    Amendment when it denies access to a speaker solely to suppress the point of view he espouses

3    on an otherwise includible subject." *Lamb's Chapel*, 508 U.S. at 394 (quoting *Cornelius*, 473

4    U.S. at 806).  More recently, in *Good News Club*, the Supreme Court reaffirmed its holding that

5    "speech discussing otherwise permissible subjects cannot be excluded . . . on the ground that the

6    subject is discussed from a religious viewpoint."  533 U.S. at 111-112 (2001) (assuming, without

7    deciding, the existence of a nonpublic forum).  The school's "community use policy" in *Good*

8    *News* prohibited use "by any individual or organization for religious purposes."  *Id*. at 103.  As a

9    result, the Milford Central School denied a request "to hold the Club's weekly after-school

10   meetings in the school cafeteria. . . . on the ground that the proposed use – to have 'a fun time of

11   singing songs, hearing a Bible lesson and memorizing scripture,' . . . was 'the equivalent of

12   religious worship."  *Id*.  The Court rejected this argument and concluded that the "Club's

13   activities do not constitute mere religious worship, divorced from any teaching of moral values."

14   *Id*. at 112 n.4.  According to the Supreme Court, "Religion is the viewpoint from which ideas are

15   conveyed. . . . [W]e see no reason to treat the Club's use of religion as something other than a

16   viewpoint merely because of any evangelical message it conveys."  *Id*.

17   Similarly, in this case, Defendants prohibit use of library meeting rooms for "religious

18   services or activities."  (*See* Amended Verified Complaint, Ex. E.)  Plaintiffs' proposed meetings

19   differ from the speech that Defendants routinely welcome within the forum only in that

20   Plaintiffs' meetings espouse a religious viewpoint.  Defendants discriminate unlawfully against

21   religious viewpoints when they exclude Plaintiffs' speech because of the perspectives contained

22   therein.  This viewpoint discrimination triggers strict scrutiny, which Defendants' policy cannot

23   survive.  *See Cornelius*, 473 U.S. at 800 (strict scrutiny requires regulations to be narrowly

24   drawn to serve a compelling state interest).

25   //

26   //

27   //

28

**B.    DEFENDANTS' POLICY AND PRACTICE UNCONSTITUTIONALLY DISCRIMINATE BASED ON THE CONTENT OF PLAINTIFFS' SPEECH.**

### 1.    Defendants opened a designated public forum for community groups.

Even if we were to assume that Defendants' discrimination does not discriminate based on viewpoint, the Court must nonetheless determine the nature of the forum at issue "because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *See Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (quoting *Cornelius*, 473 U.S. at 797). There are three main categories of fora: traditional public fora, designated public fora, and nonpublic fora. *Id*. This Circuit also recognizes a fourth category – "limited public forum" – which "refers to a type of non-public forum that the government has intentionally opened to certain groups or to certain topics." *Id*. at 1074-75.[1]

Traditional public fora are areas such as streets, sidewalks, and parks, where protected expression has historically occurred, and where the government's power to limit speech is weakest. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Designated public fora are areas created by the government for use by the public as places for expressive activity. "[A] public forum may be created by government designation of a place or channel of communication . . . for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802. Designated public fora are treated the same as traditional public fora for free speech purposes. *Hopper*, 241 F.3d at 1074. Nonpublic fora are areas not opened for public use by government, such as guarded military bases. *Perry*, 460 U.S. at 46. However, even within a nonpublic forum, restrictions must still be reasonable and viewpoint neutral. *Cornelius*, 473 U.S. at 788.

---

[1] Classifying the "limited" forum as a separate category is suspect in light of Supreme Court precedent. *See, e.g., Perry*, 460 U.S. at 46 n.7. If "a limited public forum is a sub-category of a designated public forum," *Hopper*, 241 F.3d at 1074, then it cannot be non-public. A forum "opened to certain groups or to certain topics," *id.*, is more properly termed as a "limited purpose public forum." *See, e.g., Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1209 (9th Cir. 1996). Strict scrutiny applies in such a forum, just as in a designated public forum. *Widmar*, 454 U.S. at 270; *Perry*, 460 U.S. at 46. Nonetheless, even under the four-category analysis, the Library in this case has opened a designated public forum subject to strict scrutiny.

1    In *Hopper*, the Ninth Circuit ruled that city government created a <u>designated public</u>

2 <u>forum</u> (subject to strict scrutiny) when it opened an art gallery in a city hall for the <u>limited</u>

3 <u>purpose</u> of "provid[ing] a venue for artists to display their work."  241 F.3d at 1073.  Moreover,

4 the Fifth Circuit concluded that a library auditorium opened to outside groups is a <u>designated</u>

5 public forum, in a case very similar to ours.  *Concerned Women for America v. Lafayette County*,

6 883 F.2d 32, 34-35 (5th Cir. 1989) (allowing diverse groups to use facilities created designated

7 public forum).   As the Fifth Circuit stated, the First Amendment requires that absent a

8 compelling state interest, <u>all</u> "meetings, programs, or activities of educational, cultural or

9 community interest" must be allowed regardless of the content of the expression at those events.

> **2.    Defendants have no compelling state interest to justify their content-based exclusion of Plaintiffs' speech.**

10

11

12    In a designated public forum, content-based regulation of speech is subject to the same

13 strict scrutiny analysis applied in the traditional public forum and, therefore, must be narrowly

14 drawn to serve a compelling state interest.  *See Cornelius*, 473 U.S. at 800; *Perry*, 460 U.S. at 45.

As a result, content-based censorship is presumably unconstitutional:
15

16    [A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. . . .  The essence of this forbidden censorship is content control. . . .  <u>Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone</u>.

17

18

19 *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95-96 (1972) (citations omitted and

20 emphasis added).  "[B]oth the Establishment and Free Speech Clauses prevent the government

21 from treating religious speech less favorably."  *Kreisner v. City of San Diego*, 1 F.3d 775, 791

22 (9th Cir. 1993) (concurring opinion).

23    Defendants' policy selectively excludes uses for "religious services or activities" from a

24 designated public forum based solely on the content of the message.  *Cf. Mosley*, 408 U.S. at 96.

25 Defendants can offer no compelling interest to support their policy – much less show how such a

26 broad exclusion is narrowly drawn.  Presumably, the Defendants based this policy on the usual

27 misconceptions regarding the "separation of church and state" gloss on the Establishment

28 Clause.  However, the Supreme Court has long held that a policy of equal access does not violate

the Establishment Clause.  The Court in *Widmar* explained that where a forum is available to a broad class of speakers, as is the case with Defendants' meeting room Policy, allowing religious speech "<u>does not confer any imprimatur of state approval</u> on religious sects or practices . . . [since] the forum is available to a broad class of nonreligious as well as religious speakers."  454 U.S. at 274 (emphasis added).  The *Pinette* Court reaffirmed this point:

> We have twice previously addressed the combination of private religious expression, a forum available for public use, content-based regulation, and a State's interest in complying with the Establishment Clause.  Both times, we have struck down the restriction on religious content. . . .  And as a matter of Establishment Clause jurisprudence, we have consistently held that it is no violation for government to enact neutral policies that happen to benefit religion.

515 U.S. at 762, 763-64; *see also Mitchell v. Helms*, 530 U.S. 793 (2000); *Lamb's Chapel*, 508 U.S. 384; *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1 (1993); *Cuffley v. Mickes*, 208 F.3d 702, 707 (8th Cir. 2000) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)) (government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests especially his interest in the freedom of speech; . . . exercise of those freedoms would then be penalized or inhibited").

It is undisputed that our case involves not government speech, but the exclusion of private religious speech.  The Supreme Court has said that "there is a crucial difference between <u>government</u> speech endorsing religion . . . and <u>private</u> speech endorsing religion, which the Free Speech and Free Exercise Clauses protect."  *Mergens*, 496 U.S. at 250 (emphasis in original).  Neither is there a "'plausible fear' in this case that the speech in question would be attributed to the state [or] either endorsed or coerced by the state."  *Tucker*, 97 F.3d at 1212 (quoting *Widmar*, 454 U.S. at 269 and *Rosenberger v Rectors &Visitors of the Univ. of Va.*, 515 U.S. at 819).  Simply put, the Establishment Clause does not offer the Defendants anything close to the "compelling" interest necessary to justify such a blatantly discriminatory policy.  Rather, the Defendants' policy actually <u>violates</u> the Establishment Clause because of the policy's express exclusion of "religious services or activities."

**C.     DEFENDANTS' POLICY AND PRACTICE EXPRESS IMPERMISSIBLE HOSTILITY TO RELIGION IN VIOLATION OF THE ESTABLISHMENT CLAUSE.**

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Clause "requires the state to be neutral in its relations with groups of religious believers and non-believers." *Everson v. Bd. of Educ.*, 330 U.S. 1, 18 (1947). "[I]t is clear that 'the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general.'"[2] *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396 (9th Cir. 1994) (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)). "The government neutrality required under the Establishment Clause is thus violated as much by government disapproval of religion as it is by government approval of religion." *Id*. There is no Establishment Clause violation where the government conduct at issue (1) has a secular purpose, (2) does not have as its principal or primary effect advancing or inhibiting religion, and (3) does not foster an excessive government entanglement with religion. *Lemon*, 403 U.S. at 612-13; *see also Vernon*, 27 F.3d at 1396-97 ("the challenged practice must survive all three prongs of the *Lemon* analysis in order to be held constitutional"). As discussed above, Defendants cannot justify their policy by raising oft-rejected Establishment Clause "concerns." Instead, Defendants' policy violates the Establishment Clause because it fails the second and third prongs of the *Lemon* test, falling far outside the neutrality boundaries set by the Supreme Court.

**1.     Defendants' policy has an appropriately secular purpose.**

Under the *Lemon* test, government conduct must be supported by a "secular legislative purpose." *Lemon*, 403 U.S. at 612. "A government practice or statute fails the purpose prong of *Lemon* if its purpose is to endorse a religious custom or viewpoint." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993). In this case, Defendants' policy expressly states that its

---

[2] Such a principle is perfectly consistent with the Founding Father's view of religious liberty: "The American population is entirely Christian, and with us Christianity and Religion are identified. It would be strange indeed, if with such a people, our institutions did not presuppose Christianity, and did not often refer to it, and exhibit relations with it." John Marshall, Letter to Jasper Adams, May 9, 1833, *quoted in* James McClellan, Joseph Story and the American (Footnote continued on next page)

purpose is "to encourage the use of library meeting rooms for educational, cultural and community related meetings, programs, and activities." (Amended Verified Complaint, Ex. E.) This is obviously a secular purpose and satisfies the first prong of the *Lemon* test.

### 2.    Defendants' exclusion of religious organizations inhibits religion.

The second prong of the *Lemon* test mandates that the "principal or primary effect" of government conduct must "neither advance[] nor inhibit[] religion." *Lemon*, 403 U.S. at 612. "The test under this prong is whether 'the challenged government action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices.'" *Kreisner*, 1 F.3d at 782. The Ninth Circuit assumes that the "reasonable observer" is "familiar with the government practice at issue, as well as with the general contours of the Free Speech Clause and public forum doctrine." *Kreisner*, 1 F.3d at 784. This objective standard "asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984) (O'Connor, J., concurring) (emphasis added).

Excluding "religious groups from a forum otherwise open to all would demonstrate government hostility to religion rather than neutrality contemplated by the Establishment Clause." *Kreisner*, 1 F.3d at 785. In *Kreisner*, the Ninth Circuit held that the city's decision to permit an organization to speak *via* a religious holiday display in an open forum did not constitute an endorsement of religion. *Id*. The court noted that the organization, "like other citizens of diverse views, has the right to express its views publicly in areas traditionally held open for all manner of speech." *Id*.

The "key consideration in this second prong analysis [under *Lemon*] is whether the government action 'primarily' disapproves of religious beliefs." *Vernon*, 27 F.3d at 1398. In *Vernon*, an assistant police chief brought an Establishment Clause challenge after the city conducted an "investigation of whether his religious views were having an impermissible effect

---

Constitution 139 (Norman, OK: University of Oklahoma, 1971).

1  on his on-duty police department performance." *Id*. at 1388.  The Ninth Circuit relied on the

2  "express language of the documents requesting and ordering the investigation" and the

3  "prominent disclaimers contained therein" to find that the "primary purpose of the government

4  action was the investigation of any possible impermissible or illegal on-duty conduct of Vernon."

5  *Id*. at 1399.  The court concluded that "[n]either the pre-investigation statements nor the

6  investigation itself could reasonably be construed to send as its <u>primary</u> message the disapproval

7  of Vernon's religious beliefs."  *Id*. (emphasis in original); *see also Concerned Women for*

8  *America*, 883 F.2d at 35 ("In the absence of empirical evidence that religious groups will

9  dominate use of the library's auditorium, causing the advancement of religion to become the

10  forum's 'primary effect,' an equal access policy will not offend the Establishment Clause.").

11  This is very unlike Defendants' <u>express</u> prohibition of religious speech where all other

12  protected speech is apparently permitted.  (Amended Verified Complaint, Ex. E.)  The express

13  language of Defendants' policy sends as its "primary message the disapproval of [Plaintiffs']

14  religious beliefs." *Vernon*, 27 F.3d at 1399 (emphasis omitted).  Not only do Defendants fail the

15  Establishment Clause's requirement of "neutral[ity] in [the government's] relations with groups

16  of religious believers," *Everson*, 330 U.S. at 18, but the Defendants' exclusion of Plaintiffs from

17  library meeting rooms "otherwise open to all . . . demonstrate[s] government hostility to

18  religion." *Kreisner*, 1 F.3d at 785.  As the Ninth Circuit recognized in *Kreisner*, Plaintiffs have

19  "the right to express [their] views publicly in areas . . . held open for all manner of speech." *Id*.

20  Therefore, Defendants' restriction against use for "religious purposes" has the "primary effect"

21  of inhibiting religion – failing *Lemon*'s second prong.

   **3.   Defendants' prohibition of "religious services or activities" fosters an excessive government entanglement with religion.**

24  Under the third prong of the *Lemon* test, Defendants' policy is unconstitutional because is

25  fosters "an excessive government entanglement with religion."  *Lemon*, 403 U.S. at 613.  "The

26  entanglement prong seeks to minimize the interference of religious authorities with secular

27  affairs and secular authorities in religious affairs."  *Cammack v. Waihee*, 932 F.2d 765, 780 (9th

28  Cir. 1991).  "In *Lemon*, the Supreme Court was concerned with administrative and political

entanglement" that "typically involves comprehensive, discriminating, and continuing state surveillance of religion." *Vernon*, 27 F.3d at 1399.  To analyze "entanglement," courts in this circuit weigh the following factors: a) "the character and purpose of the religious institution affected by the government action," b) "the nature of the activity that the government mandates," and c) "the resulting relationship between the government and the religious institution." *Id.*

> **a)    The character and purpose of Plaintiff Faith Center is religious in nature.**

The first factor is "the character and purpose of the religious institution affected by the government action." *Id.*  Plaintiff Faith Center is an evangelistic outreach ministry – for all practical purposes, a church – and unequivocally religious in nature and purpose.  (Amended Verified Complaint at ¶¶ 10, 24, 26.)

> **b)    Defendants' policy mandates unconstitutional governmental scrutiny and ongoing monitoring of religious groups.**

Second, the court must weigh "the nature of the activity mandated by the government." *Vernon*, 27 F.3d at 1399.  The Supreme Court has consistently stated that government scrutiny of speech based on its religious content risks Establishment Clause violations due to hostility and entanglement problems.  *See Rosenberger*, 515 U.S. at 844-45 (University's policy requiring public officials to scan and interpret student publications based on its religious content "risk[s] fostering a pervasive bias or hostility to religion"); *Mergens*, 496 U.S. at 253 ("[A] denial of equal access to religious speech might well create greater entanglement problems in the form of invasive monitoring to prevent religious speech at meetings at which such speech might occur."); *Widmar*, 454 U.S. at 272 n.11 (policy requiring scrutiny of religious speech risked entanglement); *see also Vernon*, 27 F.3d at 1399 (discussing "administrative entanglement").

The Ninth Circuit and other federal courts have also recognized entanglement problems with policies that require speech to be scrutinized based on its religious content.  *See Kreisner,* 1 F.3d at 789 ("In fact, the danger of entanglement would be considerably greater if the City screened the religious motives of speakers before allowing them access to Balboa Park."); *Gentala v. City of Tucson*, 325 F. Supp. 2d 1012, 1020 (D. Ariz. 2003) (Policy requiring the city to scrutinize applicants' speech to decide whether an event directly supports a religious

organization and then exclude such an event "fosters, rather than avoids, entanglement.").

In *Widmar*, the Supreme Court affirmed a Court of Appeals decision that struck down a policy that prohibited the use of University buildings or grounds "for purposes of religious worship or religious teaching." 454 U.S. at 265, 267. The Supreme Court expressed disapproval that the policy required University officials to draw a distinction concerning religious speech. *Id.* at 272 n.11. The *Widmar* Court "agree[d] with the Court of Appeals that the University would risk greater 'entanglement' by attempting to enforce its exclusion of 'religious worship' and 'religious speech.'" *Id.* (citation omitted). The Court predicted:

> Initially, the University would need to determine which words and activities fall within "religious worship and religious teaching." This alone could prove "an impossible task in an age where many and various beliefs meet the constitutional definition of religion." There would also be a continuing need to monitor group meetings to ensure compliance with the rule.

*Id.* (citations omitted).

In *Widmar*, the Supreme Court rejected the notion that there was a distinction with "intelligible content" between religious speech and speech acts constituting worship. *Id.* at 269. According to the Court, "There is no indication when 'singing hymns, reading scripture, and teaching biblical principles,' . . . cease to be 'singing, teaching, and reading' – all apparently forms of 'speech,' despite their religious subject matter – and become unprotected 'worship.'" *Id.* at 270 n.6. Even if a distinction were made, the Supreme Court recognized that administration would be a fruitless effort:

> Merely to draw the distinction would require the university--and ultimately the courts – to inquire into the significance of words and practices to different religious faiths, and in varying circumstances by the same faith. <u>Such inquiries would tend inevitably to entangle the State with religion in a manner forbidden by our cases</u>.

*Widmar*, 454 U.S. at 271 n.6 (emphasis added). Clearly, "official censorship [of religious speech] would be far more inconsistent with the Establishment Clause's dictates than would governmental provision of secular . . . services on a religion-blind basis." *Rosenberger*, 515 U.S. at 845.

Here, Defendants' policy violates the excessive entanglement prong under Establishment

Clause analysis because it mandates unconstitutional governmental scrutiny and ongoing monitoring of religious groups.  As the Supreme Court and the Ninth Circuit have recognized in similar circumstances, Defendants' policy creates unconstitutional entanglement problems because it requires scrutiny of speech based on its religious content.  *Mergens*, 496 U.S. at 253; *Kreisner*, 1 F.3d at 789.

Defendants' policy mandates that officials draw a distinction that is impossible to administer.  Plaintiffs' religious meetings and activities are "educational, cultural and community related," so their speech falls within the stated purpose of the forum.  (*See* Amended Verified Complaint, Ex. E.)  However, Defendants' policy distinguishes between Plaintiffs' speech and the speech of other non-profit organizations merely because Plaintiffs are conducting "religious services or activities."  (*See* Amended Verified Complaint, Ex. E.)  This distinction is unintelligible and unconstitutional.  As the Supreme Court recognized in *Widmar*, the Library is implementing "greater 'entanglement' by attempting to enforce its exclusion" of Plaintiffs because they meet for "religious purposes."  *Widmar,* 454 U.S. at 272 n.11.

For example, a secular group may meet unless it engaged in an isolated religious activity, such as a pre-meal or pre-program invocation, during the meeting.  Under the clear terms of Defendants' policy, library officials must constantly watch for such "violations."  This improper surveillance was evidenced at Plaintiff Faith Center's meeting on May 29, 2004 when two Library officials informed Ms. Hopkins and Ms. Ward near the end of the meeting that groups were not permitted to use Library meeting rooms for religious activities.  (*See* Amended Verified Complaint ¶ 52.)  According to Library employees, Plaintiff Faith Center only gained access to the Library meeting room because the Library volunteer who admitted the group was not fully familiar with Library policies.  (*See id.* ¶ 59.)  Clearly, Defendants' policy implements excessive entanglement with religion because it calls upon Library officials to scrutinize and monitor the private speech of outside groups to determine whether the speech constitutes "religious services or activities."

        c)        **As a complete bar to religious groups, the Defendants' policy goes too far by preventing even a neutral relationship.**

The third factor to weigh in determining whether there is excessive administrative entanglement is "the resulting relationship between the government and the religious institution." *Vernon*, 27 F.3d at 1399. The Court could analyze this factor further if the Library appeared specifically to sponsor or fund Plaintiffs' meetings, in order to determine if impermissible entanglement existed. However, no such illusion exists – the "resulting relationship" here is non-existent. The "entanglement" here results from the policy's requirement that all groups and all activities be scrutinized to censor all religion. This activity is not required by the Establishment Clause, see *Concerned Women for America*, 883 F.2d at 35, and, in fact, reveals impermissible hostility that itself violates of the Establishment Clause. *See* Part I.C.2, *infra*.

Clearly, the relationship between Defendants and non-profit organizations like Faith Center fails the Ninth Circuit's analysis under the third prong of the *Lemon* test because the policy results in comprehensive, discriminating, and ongoing entanglement with religion.

### D.    DEFENDANTS' POLICY AND PRACTICE VIOLATE PLAINTIFFS' RIGHT TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Equal protection analysis 'requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.'" *Tsosie v. Califano*, 630 F.2d 1328, 1337 (9th Cir. 1980) (quoting *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976)). As freedom of speech is a fundamental right, strict scrutiny is the proper level of scrutiny under these facts. *See Cal. Med. Ass'n v. Fed. Elec. Comm'n*, 641 F.2d 619, 643 (9th Cir. 1980). In the constitutional context, strict scrutiny is an "exacting test." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 680 (1994). "It is not enough that the goals of the law be legitimate, or reasonable, or even praiseworthy. There must be some pressing public

necessity, some essential value that has to be preserved; and even then the law must restrict as little speech as possible to serve that goal." *Id.*

In this case, Faith Center, as a non-profit organization, is indisputably "similarly situated" with all the other non-profit groups freely allowed to use Library facilities for "educational, cultural and community related meetings, programs, and activities." (*See* Amended Verified Complaint, Ex. E.) Defendants cannot proffer a legitimate (let alone "compelling") interest for solely prohibiting Plaintiffs' "religious services or activities" in Library meeting rooms. Yet, by policy and practice, Defendants treated Plaintiffs differently based on the content and viewpoint of Plaintiffs' expression. Therefore, Defendants violated Plaintiffs' right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

## II. PLAINTIFFS HAVE SUFFERED IRREPARABLE HARM THROUGH A LOSS OF CONSTITUTIONAL FREEDOM

"It is undisputed that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-374 (1976). Because Plaintiffs have suffered the loss of First Amendment freedoms, they are suffering "irreparable harm" as required by the preliminary injunction test. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) (holding monetary recovery cannot compensate for injury to intangible rights guaranteed by the Constitution).

## III. SERIOUS LEGAL QUESTIONS EXIST AND THE BALANCE OF HARM WEIGHS HEAVILY IN FAVOR OF THE PLAINTIFFS.

With bedrock constitutional principles at stake, this case certainly presents "serious legal questions." *MAI Sys. Corp.*, 991 F.2d at 516. Defendants will suffer no legally cognizable harm by being enjoined from continuing their unconstitutional deprivation. Rather, it is the Plaintiffs who are suffering irreparable harm from the Defendants' unconstitutional Policy. *Elrod*, 427 U.S. at 373-374. Furthermore, the public interest would be well served by eliminating, rather than perpetuating, overt discrimination by government entities against non-profit groups like Faith Center. *See Lamb's Chapel*, 508 U.S. at 394; *Cornelius*, 473 U.S. at 806. No public interest is served by judicial countenance of an unconstitutional prohibition on speech. Clearly, Plaintiffs also satisfy the "public interest" portion of the Ninth Circuit's

1  preliminary injunction standard.  *Sammartano*, 303 F.3d at 965.

2  **CONCLUSION**

3  It is difficult to understand how, after over twenty years of Supreme Court "equal

4  access" jurisprudence, a government policy so blatant in its religious discrimination could still

5  exist, much less be applied to silence religious speech in a public community facility.

6  Defendants' Policy must be brought into compliance with the First Amendment.  Plaintiffs are

7  entitled to utilize Library facilities on the same terms as other non-profit organizations – and

8  Defendants can point to nothing to countermand this constitutional right.  Their egregiously

9  discriminatory policy in regard to religious uses should therefore be enjoined by this Court.

10  Respectfully submitted this 26th day of October, 2004.

11                                        By:  /s/  Joshua W. Carden

12                                              Attorney for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28