**United States District Court**
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH CENTER CHURCH EVANGELISTIC MINISTRIES, et al., | No. C 04-03111 JSW |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| FEDERAL D. GLOVER, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court upon consideration of Plaintiffs' motion for a preliminary injunction. Plaintiffs move to enjoin Defendants from enforcing a policy that prohibits using public meeting rooms within the Contra Costa County Library system, and in particular the Antioch Branch, for "religious services."[1]

Having considered the parties' pleadings, including supplemental briefing ordered by the Court, the record in this case, relevant legal authority, and having had the benefit of oral argument, the Court GRANTS Plaintiffs' motion for a preliminary injunction.

---

[1] Plaintiffs allege that Defendants: (1) violated their rights to freedom of speech under the First Amendment to the United States Constitution; (2) violated their rights to free exercise of religion under the First Amendment of the United States Constitution; (3) violated the Establishment Clause of the First Amendment to the United States Constitution; and (4) violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Amended Verified Complaint, ¶¶ 86-114.)

## II.  FACTUAL SUMMARY

When faced with a motion for a preliminary injunction, the Court "is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984).  Accordingly, the facts recited herein are not to be considered final and binding on the rest of the proceedings.  Rather, based on the current evidentiary record, the Court concludes they are substantially likely to be proved at trial.

### A.     The Parties.

Plaintiff Faith Center Church Evangelistic Ministries ("Faith Center"), is a non-profit religious corporation.  Plaintiff Hattie Mae Hopkins ("Dr. Hopkins") is the leader of Faith Center.  (Amended Verified Complaint ("Complaint"), ¶¶ 10-11.)  Defendants are members of the Contra Costa County Board of Supervisors, the Contra Costa County Administrator, the Contra Costa County Librarian, the Senior Branch Librarian of the Antioch Branch of the Contra Costa County Public Library System, and the Administrative Deputy Director of the Antioch Branch.[2]  (*Id.*, ¶¶ 12-20.)

Dr. Hopkins is the leader of Faith Center and believes that she is called to share her faith with others.  Dr. Hopkins also believes that there are many individuals who need to hear about the gospel of Jesus Christ but who may never enter a traditional church building.  (*Id.*, ¶¶ 21-23.)  Under the auspices of Faith Center, Dr. Hopkins holds meetings at which participants discuss educational, cultural, and community issues from a religious perspective, engage in religious speech and religious worship, discuss the Bible and other religious books, teach, pray, sing, share testimonies, share meals, and discuss social and political issues.  (*Id.*, ¶¶ 25-26; Declaration of Danielle Merida ("Merida Decl."), Ex. A.)[3]  These meetings are not held inside a traditional church building.  (Complaint, ¶ 26.)

---

[2]  The Court hereafter refers to the Antioch Branch of the Contra Costa County Library system as "the Library."

[3]  As noted, Plaintiffs submitted a verified complaint and, as such, have attested to the truth of the facts set forth therein.

### B.   The Policies At Issue.

Contra Costa County, by resolution, has adopted a policy relating to the use of meeting rooms in its libraries. (Complaint, Exs. C, E; Declaration of Anne Cain ("Cain Decl."), Ex. A.) Pursuant to that policy, Defendants "encourage the use of library meeting rooms for educational, cultural and community related meetings, programs, and activities." (Cain Decl., Ex. A.) According to the policy, "non-profit and civic organizations, for-profit organizations, schools, and governmental organizations" may use library meeting rooms. There are some restrictions in place. Pertinent to this motion is the restriction on "Religious Use," which has twice been amended since this action was filed. The policy initially provided that "[l]ibrary meeting rooms shall not be used for religious purposes" (hereinafter "the Policy"). (Complaint, Ex. C.) In or about August 2004, the policy was amended to prohibit use of library meeting rooms for "religious services or activities." (*Id.*, Ex. E.) In or about December 2004, the policy again was amended and currently prohibits the use of library meeting rooms for "religious services" (hereinafter "the Amended Policy"). (Cain Decl., Ex. A.)

The record currently before the Court demonstrates the following additional restrictions on use of library meeting rooms: (1) a person or entity wishing to use a meeting room must complete an application and reservations are contingent upon approval by the County; (2) if the purpose for which the meeting room is used involves solicitation or selling, is closed to the general public, or if an admission fee is charged by the applicant, the applicant must pay a fee; and (3) schools may not use a meeting room for "instructional purposes as a regular part of the curriculum." (Cain Decl., ¶ 6, Ex. A.) The policy also refers to implementing rules and regulations, but those rules and regulations currently are not in the record. (*Id.*)

Defendants have approved applications to use the meeting room at the Antioch Branch (the "Library meeting room") submitted by the Sierra Club for purposes of letter writing, Narcotics Anonymous for a recovery meeting, and the East Contra Costa Democratic Club to "let people learn

about Democratic candidates and issues." (Affidavit of Robert H. Leach ("Leach Aff."), Exs. D, E, H.)[4]

### C. Events Preceding the Filing of this Action.

In May 2004, Dr. Hopkins obtained and completed applications to use the Library meeting room on May 29 and July 31, 2004. (Complaint, ¶¶ 28-29, 36, 39-41 & Exs. A, B.) Prior to the May 29 meeting, Dr. Hopkins phoned the Library twice to confirm that Faith Center's dates were on the Library calendar and was advised that they were. (*Id.*, ¶¶ 42-43.) Dr. Hopkins and Library staff also discussed the fact that the room was not soundproofed. (*Id.,* ¶¶ 44-48.) Dr. Hopkins advised the Library staff that noise from Library patrons would not bother Plaintiffs' meetings, and Dr. Hopkins was advised that noise from the meeting would not bother Library patrons. (*Id.*, ¶¶ 44-48.)[5]

In Faith Center's applications, Dr. Hopkins is identified as a "Pastor," and the applications state that Plaintiffs' purpose for using the room was for "prayer, praise and worship open to public, purpose to teach and encourage salvation through Jesus Christ and build up community [*sic*]." (*Id.*, Exs. A, B.)[6] Faith Center held the meeting scheduled for May 29, 2004, which included the activities that Faith Center meetings generally include. (*Id.,* ¶¶ 26, 49-50.) Plaintiffs did not use musical instruments or amplified sound during the meeting. (*Id.*, ¶ 51.) Toward the end of the meeting, Plaintiffs were advised by Library personnel that groups were not permitted to use the meeting room for religious activities. (*Id.*, ¶ 52.) Plaintiffs were advised that the problem regarding their use of the

---

[4] The Leach Affidavit also includes applications to other branches of the Contra Costa County Library system. The relevant forum for purposes of this case, however, is the Antioch Branch Library meeting room, and it is those applications which the Court has considered in resolving this motion. *See, e.g., DiLoreto v. Downey Unified School Dist. Bd. of Ed.*, 196 F.3d 958, 967 (9th Cir. 1999) (finding that although another high school within the district permitted certain types of advertisements, that fact was of no moment because "forum is defined by access sought by the speaker").

[5] Defendants submit evidence that Plaintiffs' May 29 meeting could be heard "outside the meeting room." (Cain Decl., ¶ 12.) Defendants, however, have not put forth evidence that the noise disturbed or otherwise bothered Library patrons.

[6] Defendants claim that Plaintiffs did not return a completed application for the May 29, 2004 date until after the meeting. (Cain Decl., ¶ 10.) However, in a letter dated July 5, 2004, Dr. Hopkins stated the applications were submitted several weeks before that meeting. (Complaint, Ex. D.)

4

room was not due to excessive noise. (*Id.*, ¶¶ 53-54.) Dr. Hopkins was also shown the policy then in effect precluding use of the room for "religious purposes," and Library personnel told her Faith Center would not be able to use the room on July 31. (*Id.,* ¶¶ 55-62, Ex. C.)

Thereafter, the parties continued to discuss, orally and in writing, Plaintiffs' desire to use the room and the legality of the Policy. These discussions did not prove successful, and Plaintiffs were advised that they would not be permitted to use the room for the July 31, 2004 meeting. (*Id.*, ¶¶ 62-78.) Plaintiffs wish to use the Library meeting room to hold Saturday morning meetings, every other month, for a period of four hours. (*Id.*, ¶¶ 79-80.) Accordingly, on July 30, 2004, Plaintiffs filed this action.

### III.  ANALYSIS

#### A.    Standards Applicable to Motions for Preliminary Injunction.

The standards for obtaining a preliminary injunction are well established. It is appropriate to issue a preliminary injunction if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. *Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839-840 (9th Cir. 2001). "'These formulations are not different tests, but represent two points on a sliding scale in which the degree of irreparable harm increases as likelihood of success on the merits decreases.'" *Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991) (quoting *Big Country Foods, Inc. v. Board of Education*, 868 F.2d 1085, 1088 (9th Cir. 1989)). Where, as here, a plaintiff seeks a "mandatory" injunction that would alter the status quo, he or she must show that the facts and the law are "clearly" in his or her favor. *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). In addition, within the Ninth Circuit, the Court must also consider the public interest when it assesses the propriety of issuing an injunction. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

**B.      Plaintiffs Have Established a Likelihood of Success on the Merits.**

The legal issues presented by this case are not novel. "Courts often struggle to reconcile the principle of equal access to government buildings, with a competing principle of American public life, that is, the separation of church and state." *Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342, 344 (2d Cir. 2003). Factually, however, this case appears to present a matter of first impression. The Court has not found any direct authority either permitting or prohibiting a party to use a meeting room in a public library to engage in activities that include conduct that could be categorized as religious services.[7]

For the reasons set forth herein, the Court concludes that Plaintiffs have established a that the facts and the law are clearly in their favor and thus have established a likelihood of success on the merits on their First Amendment challenge to the Defendants' policies and have shown the possibility of irreparable harm.

**1.      The facts and the law clearly favor Plaintiffs and show that, as applied, the Defendants' policies violate their First Amendment right to freedom of speech.**

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech ...." U.S. Const. amend. I. Plaintiffs claim that each iteration of the Library's policy on religious use of the Library meeting room violates their right to free speech, facially and as applied, because Plaintiffs are not permitted to use the Library meeting room to hold Faith Center meetings, meetings which the record demonstrates include a component that can be characterized as "services."[8] (Complaint, Ex. D.) Defendants contend that Plaintiffs can use the Library meeting room to discuss permissible topics from a religious perspective, so long as they do not hold a "religious service." (Def. Opp. at 19; Def. Supp. Br. at 9-10.)

---

[7]     In deciding this case, the Court has been mindful of and has struggled with Justice Souter's views expressed in his dissent in *Good News Club v. Milford Central School*, 533 U.S. 98, 139 (2001), notably his view that the majority's interpretation of the plaintiffs' activities in that case "would stand for the remarkable proposition that any public [building] opened for civic meetings must be opened for use as a church, synagogue or mosque." *Id.* at 139 (Souter, J., dissenting.)

[8]     Plaintiffs raise both facial and as applied challenges to the Defendants' regulation of speech in the Library meeting room. With respect to the as applied challenge, the Court considered the policy in effect at the time Plaintiffs submitted their application to use the meeting room, which precluded use of the room for "religious purposes." With respect to Plaintiffs' facial challenge, the Court has considered the Amended Policy, which precludes only religious services.

6

1   When faced with a challenge to a government regulation based on a claim that the regulation
2   violates a litigant's First Amendment right to freedom of speech, a court makes three inquiries. It must
3   first determine if the speech in question is in fact protected by the First Amendment. *Cornelius v.*
4   *NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985). If the speech is not protected,
5   the inquiry ends. If, however, the speech is protected, the second step in the analysis is to identify the
6   nature of forum in which the speech is regulated. *Id.* The third step is to assess whether a defendant's
7   justification for excluding a plaintiff from the relevant form satisfies the requisite standard. *Id.*
8   Viewpoint discrimination, however, is never permissible, even in a non-public forum. *Lamb's Chapel*
9   *v. Center Moriches Sch. Dist.*, 508 U.S. 384, 394 (1993) (*citing Cornelius*, 473 U.S. at 806).

**a.    Plaintiffs' expressive activity is protected by the First Amendment.**

Defendants do not dispute that Plaintiffs wish to engage in speech within the Library meeting room that is protected, *i.e.* Plaintiffs' meetings would encompass discussions of otherwise permissible topics from a religious perspective. *See Good News Club*, 533 U.S. at 111-112; *Lamb's Chapel*, 508 U.S. at 394-395. Defendants also conceded at oral argument that "religious worship" is a protected form of activity under the First Amendment. *See, e.g., Widmar v. Vincent*, 454 U.S. 263, 269 (1981) (noting that "religious worship and discussion are forms of speech and association protected by the First Amendment"). Accordingly, the Court will take it as established for purposes of this motion that, whether Plaintiffs' expressive activities constitute "mere worship" or something more, they are protected by the First Amendment.

**b.    Plaintiffs have shown that Defendants' enforcement of the policies is substantially likely to result in restricting speech based on viewpoint.**

Although the next step in the Court's inquiry normally would be to examine the nature of the forum, the Court concludes that Defendants' policies have and can result in discrimination against Plaintiffs' speech based on its viewpoint.[9] Defendants contend that precluding religious services does

---

[9]    Plaintiffs contend that the Library meeting room is a designated public forum, and thus any regulations on speech must be judged "subject to the same [strict] limitations that govern a traditional public forum." *DiLoreto*, 196 F.3d at 964-965. Defendants contend the Library meeting room is only a limited public forum, and thus regulations that are "viewpoint neutral and reasonable in light of the purpose served by the forum" are constitutionally permissible. *Id.* For purposes of this motion and on the record before the Court, Plaintiffs have shown that enforcement

United States District Court
For the Northern District of California

not constitute viewpoint discrimination, but they acknowledge that at least some of the activities in which Plaintiffs engaged in during the May 29, 2004 meeting were permissible, *i.e.* Plaintiffs discussed otherwise permissible topics from a religious viewpoint. *See Good News Club*, 533 U.S. at 111-112. Defendants also argue that a flyer describing Plaintiffs' meetings suggests that this case presents a case not yet decided by any court, *i.e.* one in which the "worship" activities can be "divorced from ... other activities permitted in the forum." *See Bronx Household of Faith*, 331 F.3d at 354. The Court disagrees.

In *Widmar*, the Supreme Court noted that the difficulty in determining when activities such as "singing hymns, reading scripture, and teaching biblical principles" transform from a discussion of issues from a religious perspective into worship. *Widmar*, 454 U.S. at 270 n.6; *see also id.* at 272 n.11. Thereafter, in *Good News Club*, the Supreme Court placed its focus on the substance of the challenged activities, rather than the label attached to them. *Good News Club*, 533 at 112 n.4. Here, looking at the substance of the activities in which Plaintiffs wish to engage, the Court finds that it cannot parse those activities in such a fashion to separate "mere religious worship" from other permissible activities. In reaching this decision, the Court finds guidance in *Bronx Household of Faith*, 331 F.3d 342 and *Campbell v. St. Tammany Parish School Board*, 2003 WL 21783317 (E.D. La. July 30, 2003).

In *Bronx Household of Faith*, decided after *Good News Club*, the Second Circuit affirmed the district court's decision to grant a preliminary injunction enjoining the defendants' policy that prohibited "religious services or religious instruction" in public schools opened for use after hours for "social, civic and recreational meetings and entertainment, and other uses pertaining to the welfare of the community." *Bronx Household of Faith*, 331 F.3d at 348. The plaintiffs, an evangelical Christian church and its pastors, sought to use school facilities for activities that included "the singing of Christian hymns and songs, prayer, fellowship with other church members and Biblical preaching and teaching, communion, sharing of testimonies, and social fellowship among the church members." *Id.* at 347.

---

of the Policy did result in viewpoint discrimination and that it is substantially likely that enforcement of the Amended Policy will also result in restricting speech based on its viewpoint. Accordingly, at this stage of the litigation, the Court need not and does not reach the question of the nature of the forum.

8

1  Like the meetings proposed by Plaintiffs in this case, the plaintiffs' meetings were open to the public.
2  *Id.* As in this case, the plaintiffs were denied access because of the defendants' prohibition on
3  "religious services or instruction" in the forum. *Id.* at 348.
4        The Second Circuit concluded that the plaintiffs were substantially likely to prevail on their
5  First Amendment claims because the court found "no principled basis on which to distinguish the
6  activities set out by the Supreme Court in *Good News Club* from the activities that [plaintiffs] have
7  proposed for [their] Sunday meetings." *Id.* at 354. Recognizing that some of plaintiffs' proposed
8  activities, such as prayer, singing of Christian songs, and communion, were "quintessentially religious,"
9  the court also noted that the plaintiffs' meetings encompassed secular elements, like a fellowship meal.
10 The court concluded that "[o]n these facts, it cannot be said that the meetings of the Bronx Household
11 of Faith constitute only religious worship, separate and apart from any teaching of moral values." *Id.*
12       Similarly, in the *Campbell* case, defendants enacted a regulation precluding religious services
13 or religious instruction in public schools, which the district court classified as limited public fora. On
14 remand for reconsideration in light of *Good News Club*, the district court concluded that the regulation
15 resulted in viewpoint discrimination *even though* plaintiffs' proposed meeting encompassed "what
16 *primarily* was a religious service." *Campbell*, 2003 WL 81783317 at *9 (emphasis in original). The
17 court cited the Supreme Court's statement in *Good News Club* that

> ... just because a meeting is "quintessentially religious" does not mean it "cannot be characterized properly as the teaching of morals and character development." ... Likewise, simply because Campbell's proposed service was "quintessentially religious" does not preclude it from being characterized as a discussion of family and political issues. *Here the proposed meeting was not "mere religious worship," but included a component within the permissible scope of the limited forum.*

23 *Id.* (emphasis added) (citations omitted). Accordingly, acknowledging the difficulties presented in
24 attempting to parse the plaintiffs' proposed activities, the district court concluded that because the
25 plaintiffs' meeting included discussions of permissible topics from a religious perspective as well as
26 "worship", the defendants could not preclude the plaintiffs from meeting in the forum. *Id.* at *10.
27       Here, Plaintiffs' meetings combine activities that, like those at issue in *Bronx Household of*
28 *Faith* and *Campbell,* may be classified as "quintessentially religious." However, the meetings also

9

encompass secular components that fit within the overall purposes for which Defendants have opened the forum. Like the courts in *Bronx Household of Faith* and *Campbell*, this Court cannot classify Plaintiffs' proposed use of the Library meeting room as "mere religious worship." To follow the reasoning of the Second Circuit, because Defendants have authorized other groups to use the Library meeting room for educational, cultural and community related meetings, under Supreme Court authority, there is a substantial likelihood that Plaintiffs can establish that Defendants cannot exclude their proposed activities without engaging in unconstitutional viewpoint discrimination. *See Bronx Household*, 331 F.3d at 354.

Unlike the plaintiffs in *Bronx Household of Faith* and *Campbell*, Plaintiffs in this case want access to a meeting room in a public library rather than a public school and want access to that room during normal Library hours. The record demonstrates that the meeting room is enclosed and, thus, other Library patrons are not compelled to observe Plaintiffs' activities.[10] (*See* Cain Decl., ¶ 5.) For this reason, and based on the current record, the Court does not find a sufficient distinction between the public school facilities at issue in *Bronx Household of Faith* and *Campbell* and the forum here to warrant a different outcome. Accordingly, the Court concludes that Plaintiffs have established a likelihood of success on the merits of their claim that Defendants have violated their First Amendment right to free speech.

        **c.**    **Defendants have not shown a compelling state interest justifying imposing the restriction on religious services.**

Defendants contend that they must enforce the policy to avoid violating the Establishment Clause. The Supreme Court has foreclosed this argument by consistently holding that a policy of equal access does not violate the Establishment Clause. *See Good News Club*, 533 U.S. at 112-119; *Lamb's Chapel,* 508 U.S. at 394-396; *Widmar,* 454 U.S. 271-275. *Accord Prince v. Jacoby*, 303 F.3d 1074, 1092 (9th Cir. 2002) (finding no establishment clause violation by allowing religious group access to forum even if groups activities included some "devotional exercises").

---

[10] As noted, the record suggests that Library patrons could hear Plaintiffs' meeting. (Cain Decl., ¶ 12.) That is not the basis on which Plaintiffs were excluded from the forum. Nor has it been suggested that Library patrons were bothered by the noise.

10

In general, "a policy will not offend the Establishment Clause if it can pass a three-pronged test": (1) the policy must have a secular legislative purpose; (2) its principal or primary effect must not be one that advances or inhibits religion; and (3) the policy must not "foster an excessive government entanglement with religion." *Widmar*, 454 U.S. at 271 (*quoting Lemon v. Kurtzman*, 403 U.S. 602, 612-613 (1971)). Concluding that the policy at issue in *Widmar* passed the first and third prongs of the *Lemon* test, the Supreme Court found that it would also not violate the second prong because "an open forum in a public university does not confer any imprimatur of state approval on religious sects or practices," and because the provision of benefits to a wide range of groups was "an important index of secular effect." *Id.* at 275. Finally, the Supreme Court also found persuasive the fact that there was no empirical evidence suggesting that religious groups would dominate the forum. *Id.; see also Lamb's Chapel*, 508 U.S. at 395 (holding that policy would not violate Establishment Clause where film would be shown after school hours, would not have been sponsored by the school, and would have been open to the public).

The parties agree that the Defendants' general policy in opening the forum has a secular purpose. With respect to concerns about the "primary effect" prong, as noted, the forum in question is located within a public library rather than a public school but, as is discussed above, the Library meeting room is enclosed and Library patrons are not necessarily exposed to Plaintiffs' activities. In addition, Faith Center meetings are open to the general public and there is no evidence that Defendants or their employees would attend the meetings. Finally, Defendants have permitted a wide variety of groups to use the room for a wide variety of purposes, and there is no evidence that religious groups will dominate or have dominated the use of the Library meeting room. (*See* Cain Decl., Ex. A; Leach Aff., Exs. D, E, H.) On the record currently before the Court, which presents a factual situation similar to the factual situations presented in the *Good News Club, Lamb's Chapel, Bronx Household of Faith* and *Campbell* cases, the Court finds that opening the forum to Plaintiffs would not have the primary effect of advancing or inhibiting religion. Finally, for purposes of this motion, the Court concludes that requiring equal access to the forum would not result in an excessive entanglement in religion. Accordingly, at this stage of the proceedings, Defendants' reliance on the Establishment Clause does not warrant denial of Plaintiffs' motion.

1  At oral argument, Defendants also forcefully argued that if the Court enjoins them from
2  enforcing the Amended Policy, they will be faced with the *possibility* of challenges by other religious
3  groups relating to the Free Exercise Clause of the First Amendment. That argument depends,
4  however, on a challenge to a regulation or rule other than the one at issue, matters which are not
5  before this Court.[11] Thus, at this stage of the proceedings, the Court concludes this hypothetical
6  concern also cannot justify denying Plaintiffs' motion.

7  Therefore, the Court concludes Plaintiffs have established a substantial likelihood of success
8  on the merits of their claim that the Defendants have violated their First Amendment right to freedom of
9  speech.

**B.  Plaintiffs Have Established a Showing of Irreparable Harm if the Injunction Is Not Granted.**

In addition to establishing a substantial likelihood of success on the merits, Plaintiffs must establish a showing of irreparable harm. The Court concludes they have met their burden. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In addition, "'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'" *Sammartano*, 303 F.3d at 973 (quoting *Viacom Int'l, Inc. v. F.C.C.*, 828 F. Supp. 741, 744 (N.D. Cal. 1993)).

Because the Court has concluded that Plaintiffs have established that they are substantially likely to prevail on their claim that enforcement of the various iterations of Defendants' policies results in the violation of their First Amendment right to freedom of speech, the Court concludes that they have demonstrated the requisite showing of irreparable harm. *See Sammartano*, 303 F.3d at 973-974 (noting that under Ninth Circuit precedent "when the harm claim is a serious infringement on core expressive freedoms, a plaintiff is entitled to an injunction even on a lesser showing of meritoriousness"); *cf. Bronx Household*, 331 F.3d at 349-350 (affirming finding of irreparable harm

---

[11]  Defendants did not enter the rules and regulations governing use of the Library meeting room into the record, so the Court cannot evaluate whether enforcement of those rules and regulations might possibly lead to a potential Free Exercise violation.

12

1 where "alleged deprivation of plaintiffs' First Amendment rights" arose directly from challenged
2 policy).

### C. Public Interest.

Finally, the Court considers the public interest in determining whether Plaintiffs have met their burden to show issuance of the injunction is warranted. *See Sammartano*, 303 F.3d at 974. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Id.* "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Id.* (citing cases). The Court's ruling in this case has the potential to impact non-parties. The Court concludes that continued enforcement of the potentially unconstitutional Amended Policy has not only impacted and infringed upon Plaintiffs' First Amendment rights, but also would infringe upon interests of other groups or individuals who may wish to use the Library meeting room to engage in activities that may combine "quintessentially religious" activities with activities that are otherwise permitted in the forum. Accordingly, the Court concludes that the public interest weighs in favor of granting the injunction.

**D.    Bond.**

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court, however, retains the discretion to set the amount of security required, and in some cases courts have dispensed with the security requirement altogether. *See, e.g., Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

At the hearing on this matter, Plaintiffs urged the Court to waive the security requirement. The Court has considered the need for a bond in this case and determines that this is a case where waiver of a bond is appropriate because there is no significant risk that Defendants will incur damages as a result of the injunction.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' motion for a preliminary injunction. Accordingly, Defendants are hereby enjoined from enforcing the "Religious Use" provision of the Amended Policy so as to deny Plaintiffs' application to reserve the Library meeting room for meetings that include religious services, or the application of any similarly situated individual or entity. The Court denies Plaintiffs' request that the injunction preclude Defendants from closing the forum pending the outcome of this litigation.

Furthermore, in order to give the Defendants sufficient time to evaluate and to implement this injunction, the Court FURTHER ORDERS that this preliminary injunction shall not take effect until Tuesday, June 7, 2005 at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: May 23, 2005                              /s/ Jeffrey S. White
                                                 JEFFREY S. WHITE
                                                 UNITED STATES DISTRICT JUDGE