FaithCenterChurch ED vo

| | |
|---|---|
| 1 | SILVANO B. MARCHESI (SBN 42965)<br>County Counsel |
| 2 | THOMAS L. GEIGER (SBN 199729)<br>Deputy County Counsel |
| 3 | COUNTY OF CONTRA COSTA<br>651 Pine Street, 9th Floor |
| 4 | Martinez, California 94553<br>Telephone: (925) 335-1813 |
| 5 | Facsimile: (925) 646-1078<br>tgeig@cc.cccounty.us |
| 6 | |
| 7 | Attorneys for Defendants |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH CENTER CHURCH<br>EVANGELISTIC MINISTRIES, et al.,<br><br>Plaintiffs<br><br>v.<br><br>FEDERAL D. GLOVER, et al.,<br><br>Defendants. | No. C 04-3111 JSW<br><br>DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION<br><br>Date: November 7, 2008<br>Time: 9:00 a.m.<br>Courtroom 2, 17th Floor<br>Judge: Honorable Jeffrey S. White |

Doc

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     THE COUNTY IS ENTITLED TO A PERMANENT INJUNCTION PROHIBITING FAITH CENTER FROM USING THE LIBRARY MEETING ROOM FOR RELIGIOUS WORSHIP SERVICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    THE LAW OF THIS CASE REQUIRES ENTRY OF SUMMARY JUDGMENT IN FAVOR OF THE COUNTY ON FAITH CENTER'S FREE SPEECH CLAIM . . . . . . 2

        A.    Under the Law of the Case Doctrine, this Court Is Bound by the Ninth Circuit's Legal Conclusion that the Meeting Room is a Limited Public Forum . . . . . . . . 2

        B.    Additional Evidence Supports the Ninth Circuit's Conclusion that the Antioch Library Meeting Room Is a Limited Public Forum . . . . . . . . . . . . . . . . . . . . . 3

        C.    Faith Center Misstates the Ninth Circuit's Holding. . . . . . . . . . . . . . . . . . . . . . 5

        D.    The Evidence Supports the Finding that Faith Center Held a Religious Worship Service in the Antioch Library Meeting Room During Business Hours . . . . . . 6

    III.   THE COUNTY'S MEETING ROOM USE POLICY DOES NOT VIOLATE THE FREE EXERCISE CLAUSE BECAUSE IT IS RATIONALLY RELATED TO PRESERVING A MEETING ROOM AS A LIMITED PUBLIC FORUM . . . . . . . . . . 8

    IV.   THE COUNTY'S MEETING ROOM USE POLICY DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE BECAUSE IT IS NOT HOSTILE TOWARD RELIGION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    V.    THE COUNTY'S MEETING ROOM USE POLICY DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE BECAUSE IT IS RATIONALLY RELATED TO PRESERVING THE MEETING ROOM AS A LIMITED PUBLIC FORUM. . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

CASES

*Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114 (9th Cir. 2002). . . . . . . . . . 9

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 492 F.3d 89 (2d. Cir. 2007). . . . . 10

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342 (2d. Cir. 2003) . . . 10

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*,
127 F.3d 207 (2d. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 14

*Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.*, 354 F.2d 786 (8th Cir. 1966). . . . . . . . . 2

*Charlton v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Christian Gospel Church, Inc. v. City and County of San Francisco*,
896 F.2d 1221 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993). . . . . . . . . . . . . 10, 11

*Citizens for Community Values v. Upper Arlington Public Library Bd. of Trustees*,
2008 WL 3843579 (S.D. Ohio 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . 13

*Community House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 14

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788 (1985). . . . . . . . . . 3, 9

*DeNardo v. Murphy*, 781 F.2d 1345 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Faith Center Church Evangelistic Ministries, et al. v. Federal D. Glover, et al.*,
480 F.3d 891 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 143 (2007). . . . . . . . . . . . . . . . . . . . . . . 1-9

*Fowler v. Rhode Island*, 345 U.S. 67 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Greer v. Spock*, 424 U.S. 828 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hansen v. Ann Arbor Public Schs.*, 293 F.Supp.2d 780 (E.D. Mich. 2003). . . . . . . . . . . . . . . . . 11, 14

*Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hunt v. McNair*, 413 U.S. 672 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*International Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672 (1992) . . . . . . . . . . . . . . . . . . 8

*Johnson v. Robison*, 415 U.S. 361 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*KDM v. Reedsport Sch. Dist.*, 196 F.3d 1046 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Lakewood, Ohio Cong. of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*,
699 F.2d 303 (6th Cir. 1983), *cert. denied*, 464 U.S. 815 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lee v. Weisman,* 505 U.S. 577, 587 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Lemon v. Kurtzman*, 403 U.S. 602 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Locke v. Davey*, 540 U.S. 712 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703 (9th Cir. 1990). . . . . . . . . . . . . . . . . 3

*Miller v. Reed*, 176 F.3d 1202 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Planned Parenthood of Southern Nevada, Inc. v. Clark County School District*,
887 F.2d 935 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pocatello Educ. Ass'n v. Heideman*, 504 F.3d 1053 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*,
499 F.3d 1108 (9th Circ. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819 (1995) . . . . . . . . . . . . 12, 13

*Roemer v. Bd. of Pub. Works*, 426 U.S. 736 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Romer v. Evans*, 517 U.S. 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024 (9th Cir. 2004). . . . . . . . . . . . . . . . . 9

*Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957). . . . . . . . . . . . . . . . . . . 2

*Strout v. Albanese*, 178 F.3d 57 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tilton v. Richardson*, 403 U.S. 672 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Thrasher*, 483 F.3d 977 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Vasquez v. Los Angeles County*, 487 F.3d 12465 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 11, 13

STATUTES AND RULES

Federal Rules of Civil Procedure, Rule 65(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

OTHER AUTHORITIES

18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure,
section 4478.5 (2d ed. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

Faith Center's reply memorandum misstates the Ninth Circuit's holding in *Faith Center Church Evangelistic Ministries, et al. v. Federal D. Glover, et al.*, 480 F.3d 891 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 143 (2007), fails to acknowledge the critical undisputed fact that the Ninth Circuit relied upon in ruling against Faith Center, and asks this Court to ignore the Ninth Circuit's clear direction on remand. The law of the case doctrine requires entry of judgment for the County on Faith Center's free speech claim, and the undisputed facts of this case require entry of judgment for the County on Faith Center's remaining claims. Even if this Court does not grant summary judgment to the County on all of Faith Center's claims, it cannot ignore the Ninth Circuit's direction to enter a permanent injunction prohibiting Faith Center from using the Antioch library meeting room for religious services.

## ARGUMENT

### I. THE COUNTY IS ENTITLED TO A PERMANENT INJUNCTION PROHIBITING FAITH CENTER FROM USING THE LIBRARY MEETING ROOM FOR RELIGIOUS WORSHIP SERVICES

Faith Center argues that the County "has no legal basis" for its request for entry of a permanent injunction prohibiting Faith Center from using the Antioch library meeting room for religious worship services. *See* Reply Memorandum in Support of Plaintiffs' Motion ("Pltfs. Reply") at 23:13. However, the Ninth Circuit has repeatedly held that a district court is limited by the Ninth Circuit's remand in situations where the scope of the remand is clear. *See United States v. Thrasher*, 483 F.3d 977, 982-83 (9th Cir. 2007). Here, the Ninth Circuit's instructions to this Court on remand are clear:

> "[T]he County invited the district court to craft an injunction that ensured Faith Center's right to conduct activities in the [Antioch library] meeting room that express a religious viewpoint, and allowed the County to exclude religious worship services. We note that the County offered several proposals for crafting a preliminary injunction that would achieve these balancing objectives and avoid the pitfalls of excessive government entanglement. [Fn. omitted.] ... We therefore vacate and remand so that the district court can craft an appropriate injunction after soliciting the views of the parties." *Faith Center*, 480 F.3d at 918-19.

The Ninth Circuit clearly instructed that Faith Center is not entitled to an injunction that would prevent the County from enforcing its prohibition on religious worship services in the Antioch library meeting room. The County has proposed a permanent injunction that allows the County to exclude

religious worship services while also allowing Faith Center to conduct activities in the meeting room that express a religious viewpoint. *See* Docket No. 106. The proposed injunction avoids the problem of excessive entanglement by authorizing the County to require Faith Center to self-certify that its activity will not constitute a religious worship service under the tenets, beliefs, and practices of Faith Center's church, religious sect, religious organization, or faith group. *See Faith Center*, 480 F.3d at 918 ("[r]eligious worship services can be distinguished from other forms of religious speech by the adherents themselves").

Contrary to Faith Center's unsupported assertion at page 23 of its reply memorandum, this Court can issue an injunction prohibiting Faith Center from using the Antioch library meeting room for religious worship services. An injunction can bind a party as long as the Court has jurisdiction over it and the party receives notice of the injunction. *See* Fed.R.Civ.P. 65(d). It is settled that summary judgment may be used to grant a permanent injunction when the material facts are undisputed. *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir. 1986); *see also Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.*, 354 F.2d 786 (8th Cir. 1966), *Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957). No evidentiary hearing is required for the issuance of a permanent injunction where there are no triable issues of material fact. *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988). The County requests that this Court enter the County's proposed permanent injunction.

## II. THE LAW OF THIS CASE REQUIRES ENTRY OF SUMMARY JUDGMENT IN FAVOR OF THE COUNTY ON FAITH CENTER'S FREE SPEECH CLAIM

### A. Under the Law of the Case Doctrine, this Court Is Bound by the Ninth Circuit's Legal Conclusion that the Meeting Room is a Limited Public Forum

As Faith Center acknowledges, the law of the case doctrine holds that a fully considered appellate ruling on an issue of law made on a preliminary injunction appeal is the law of the case for further proceedings in the trial court on remand and in any subsequent appeal. *See* 18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2d ed. 2006); *see also Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Circ. 2007) ("Any of [the Ninth Circuit's] conclusions on pure issues of law, however, are binding"). Moreover, a trial court may not reconsider a question decided by an appellate court, whose

rulings bind the lower court. *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986). Upon remand, an issue decided by an appellate court may not be reconsidered. *Ibid*.[1]

In a free speech case, the inquiry into the nature of the forum presents a question of law. *Planned Parenthood of Southern Nevada, Inc. v. Clark County School District*, 887 F.2d 935, 939 (9th Cir. 1989), citing *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988) and *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802-06 (1985).

Two facts in this case are undisputed and uncontradicted by any evidence obtained during discovery. First, the County's library meeting room use policy prohibits library meeting rooms from being used for "religious services." (Docket No. 30: Declaration of Anne Cain in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Cain Decl. I), Exhibit A.) Second, Faith Center's own description of its May 29, 2004 afternoon service – to be held during normal business hours – indicated that it was to be devoted to "Praise and Worship." (Docket No. 31: Declaration of Danielle R. Merida in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Merida Decl."), Exhibit A.)

In *Faith Center*, the Ninth Circuit applied these two undisputed facts to the law and concluded, as a matter of law, "that the Antioch Library meeting room is a limited public forum and that enforcement of the County's policy to exclude religious worship services from the meeting room is reasonable in light of the forum's purpose." *Faith Center*, 480 F.3d at 908. Under the law of the case doctrine, this ruling on a question of law cannot be disturbed on remand.

**B. Additional Evidence Supports the Ninth Circuit's Conclusion that the Antioch Library Meeting Room Is a Limited Public Forum**

Although the Ninth Circuit's holding cannot be revisited, Faith Center spends another four pages in its reply brief arguing that the evidence supports a finding that the meeting room is a designated public forum, rather than a limited one. Pltfs. Reply at 9-12. However, the evidence cited by Faith Center is additional evidence that further supports all of the Ninth Circuit's findings and legal

---

[1] Faith Center cites to *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703 (9th Cir. 1990) for the proposition that the law of the case doctrine is discretionary and does not apply when the court is faced with substantially different evidence. Pltfs. Reply at 4:3-5. The doctrine is not discretionary with respect to a lower court. *See Houser*, 804 F.2d at 567-68. In any event, this Court is not faced with substantially different evidence.

conclusion that the Antioch library meeting room is a limited public forum. It is not different evidence that casts any doubt on any findings.

As the owner of the County Library, the Board of Supervisors made a policy decision to open library meeting rooms to the community at large. But the Board did not want library meeting rooms to become either a church or a schoolhouse. Thus, under the County Library meeting room use policy, "[n]on-profit and civic organizations, for-profit organizations, schools and governmental organizations offering meetings, programs, or activities of educational, cultural or community interest may use the meeting room." However, the meeting room use policy prohibits schools from using library meeting rooms "for instructional purposes as a regular part of the curriculum." Schools may only use library meeting rooms for "special meetings, programs, or activities." The policy also prohibits meeting rooms from being used for "religious services." *See* Docket No. 30: Cain Decl. I, Ex. A.

In *Faith Center*, the Ninth Circuit noted both that a policy with a broad purpose can nevertheless create a limited public forum, and that consistent application of a policy preserves the forum's status. *Faith Center*, 480 F.3d at 909-10, citing cases. All of the evidence cited in Faith Center's reply brief supports the Ninth Circuit's conclusions that the policy's purpose is to create a "common meeting space, an alternative to the community lecture hall, the corporate boardroom, or the local Starbucks," and that the policy has been consistently applied. *See Faith Center*, 480 F.3d at 910. Of the more than 1,200 times the meeting room was used between January 2003 and March 2008, it was never used for a religious service and was never used by a school for instructional purposes as a regular part of the curriculum. *See* Docket No. 101: Declaration of Timothy D. Chandler in Support of Plaintiffs' Motion for Summary Judgment ("Chandler Decl.") , Exhibit A, deposition of Anne Cain, 23:18-25, 24:1-6.)[2]

The meeting room, however, has been used for activities and events that express a religious viewpoint, including Bible study. *See* Docket No. 101: Chandler Decl., ¶¶ 24-33. It has also been used by a school for a special meeting. Between January 2003 and March 2008, one school – Deer

---

[2] Faith Center contends the County "offers no proof that [it] has ever actually enforced this restriction" that prohibits schools from using the meeting room as a regular part of the school's curriculum. Pltfs. Reply at 10:15-16. It is Faith Center's burden to show that the policy was inconsistently enforced. Faith Center has not met its burden.

Valley High School – applied to use the meeting room twice. Both applications were for informational meetings for parents about trips. *See* Docket No. 101: Chandler Decl., ¶ 40. Informational meetings for parents abut trips are not a regular part of the curriculum for students. Other "educational groups" have applied to use the meeting room, *see* Docket No. 101: Chandler Decl., ¶¶ 34-50, but "educational groups" are not schools. Even if these groups are considered schools, their applications were not "for instructional purposes as a regular part of the curriculum."

In support of its finding, the Ninth Circuit distinguished between the library itself and the meeting room, noting that "while the Library meeting room is compatible with different kinds of expressive activity such as a group discussion or lecture, we are mindful that the forum was not intended to undermine the library's primary function as a venue for reading, writing, and quiet contemplation." *Faith Center*, 480 F.3d at 910. The evidence on remand supports the conclusion that the Antioch library itself is a place for reading, writing, and quiet study. *See* Docket No. 105: Declaration of Anne Cain in Support of Cross-Motion for Summary Judgment and Entry of Permanent Injunction, ¶¶ 3-4. Faith Center's attempt to blur the distinction between the library itself and the meeting room is unavailing. *See* Pltfs. Reply at 10:5-6.[3]

**C.      Faith Center Misstates the Ninth Circuit's Holding**

Under the law of the case doctrine, this Court cannot enter a judgment for Faith Center on its free speech claim that would be contrary to the Ninth's Circuit's holding. The holding in *Faith Center* is in three parts. First, the Ninth Circuit held:

> "We therefore hold that the Antioch Library meeting room is a limited public forum whose restrictions to access may be 'based on subject matter ... so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'"

*Faith Center*, 480 F.3d at 910.

The Ninth Circuit further held:

> "We hold that the exclusion of Faith Center's religious worship services from the Antioch Library meeting room is a permissible limitation on the subject matter that may

---

[3] Faith Center's assertion that the library itself, in its entirety, is not a place for reading, writing and quiet study is belied by the fact that only 900 square feet (8 percent) of the Antioch library's 11,000 square feet is set aside as a meeting room. (Cain Decl. II, ¶ 4.) Its assertion is further belied by the fact that the meeting room is only used 8 percent of the time it is available for use. *See* Docket No. 104: Defendants' Cross-Motion for Summary Judgment at 9.

be discussed in the meeting room, and that it is not suppression of a prohibited perspective from an otherwise permissible topic." *Id.* at 911.

Finally, the Ninth Circuit concluded:

"We therefore conclude that prohibiting Faith Center's religious worship services from the Antioch meeting room is a permissible exclusion of a category of speech that is meant to preserve the purpose behind the limited public forum. Religious worship services can be distinguished from other forms of religious speech by the adherents themselves." *Id.* at 918.

In short, the Ninth Circuit upheld the library meeting room use policy – which by its terms excludes "religious services" from meeting rooms – and ruled that the County was entitled to exclude Faith Center's religious service from the Antioch Library meeting room.

The Ninth Circuit did not actually hold that the County is entitled to exclude only "pure religious worship" from the Antioch Library meeting room. The reason is evident in Faith Center's reply brief. Faith Center defines "pure religious worship" as "worship that does not convey a religious view on a secular topic." Pltfs. Reply at 1:26-27. If the library meeting room use policy were subject to Faith Center's definition, the County would be required to allow a religious worship service in a taxpayer-funded public library if the service included even the merest mention of a secular topic, but allow the County to exclude a service if no mention were made of a secular topic. For example, a service that included a reading from Matthew 21:12-17 (Jesus casting out the moneychangers from the temple) would be authorized, because money, in general terms, is a secular topic. But a service that included a reading from Acts 1:1-12 (the ascension of Jesus) would be forbidden. Interpreting the library use policy to mean that the County can exclude only "worship that does not convey a religious view on a secular topic" would be unconstitutional. It would require the County to engage in content discrimination by allowing some subjects – secular ones – and forbidding others – purely religious ones. *See Faith Center*, 480 F.3d at 912. This Court should reject Faith Center's flawed reading of the Ninth Circuit's decision.

**D.  The Evidence Supports the Finding that Faith Center Held a Religious Worship Service in the Antioch Library Meeting Room During Business Hours**

Faith Center argues that the County "completely disregards the core holding of [the Ninth Circuit's] opinion by deciding on its own that [Faith Center's] meeting should be labeled as a religious

worship service and be excluded from the forum." Pltfs. Reply at 1:5-7. This argument is disingenuous and ignores the one critical undisputed fact of this case.

It is undisputed that in May 2004, Faith Center submitted applications requesting to use the County's Antioch Branch Library meeting room on May 29, 2004 and July 31, 2004. (Docket No. 18: Amended Verified Complaint, Exhibits A and B.) It is undisputed that Faith Center advertised its May 29, 2004 event with a flyer that divided the day's activities into a "Wordshop" from 11:00 a.m. to 12:00 p.m., refreshments, and an afternoon "Praise and Worship" service with a sermon by Pastor Hopkins from 1:00 p.m. to 3:00 p.m. Docket No. 31: Merida Decl., Exhibit A. The Ninth Circuit's finding was based on the distinction in the Faith Center flyer between the morning "Wordshop" that included a call to prayer and an afternoon session devoted expressly to "praise and worship." *See Faith Center*, 480 F.3d at 918. This distinction was drawn by Faith Center itself, before the service was held. The County did not draw this distinction before the service and did not "decide on its own" what Faith Center's service was. *See* Pltfs. Reply at 6. Faith Center's conclusion that the County is "deciding on its own" that Faith Center held a religious worship service is disingenuous because it is based entirely on argument made by the County in its cross-motion, more than four years after the service was held. It is not based on anything County library officials did or said before the service was held. Faith Center's conclusion that the County "decided on its own" to label Faith Center's service as a religious service has no basis in fact.

Pastor Hopkins' declaration describing her May 29, 2004 service was made more than four years after the service was held. The declaration describes a service that consists entirely – and only – of the following: an opening group prayer, two religious songs ("When I See Jesus" and "Amazing Grace"), a sermon based on 2 Chronicles 20, and a closing group prayer. (Hopkins Decl., ¶¶ 10-17.) The declaration can support no conclusion other than Pastor Hopkins' afternoon "Praise and Worship" was a worship service. The declaration affirms that only "praise and worship" occurred at the service – which is exactly the content that Pastor Hopkins' flyer said would occur at the afternoon service. The service had no activities to further secular goals, such as a "discussion of what the Bible teaches" about politics or a "discussion of the current status of the law," interspersed among the prayers, religious songs, and sermons intended to proselytize. *See Faith Center*, 480 F.3d at 916; *cf. Citizens*

*for Community Values v. Upper Arlington Public Library Bd. of Trustees*, 2008 WL 3843579 (S.D. Ohio 2008).[4] While Faith Center's afternoon service included "Biblical directives about moral character" and "developing strong character," *see* Hopkins Decl., ¶¶ 4-5, "[i]t is difficult to imagine moreover that religious worship could ever truly be divorced from moral instruction or character development." *Faith Center*, 480 F.3d at 915 n. 14. The prayers, songs, and sermon at the service directly exhorted the attendees to a religious observance. It is settled that government can exclude proselytizing religious speech to preserve the purpose of a limited public forum. *Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044, 1053 (9th Cir. 2003).

### III. THE COUNTY'S MEETING ROOM USE POLICY DOES NOT VIOLATE THE FREE EXERCISE CLAUSE BECAUSE IT IS RATIONALLY RELATED TO PRESERVING A MEETING ROOM AS A LIMITED PUBLIC FORUM

Faith Center argues that the library meeting room use policy is not "neutral and generally applicable," and thus is subject to strict scrutiny. Pltfs. Reply at 17. Faith Center's entire free exercise analysis, however, is flawed. This is a case that involves access to a forum, not a law that affects a religious belief. Faith Center's free exercise analysis cannot be applied in this case.

When it adopted its library meeting room use policy, the Board of Supervisors established a policy for managing its library property. In adopting its policy, the Board was "acting as a proprietor, managing its internal operations, rather than acting as a lawmaker with the power to regulate or license." *See Pocatello Educ. Ass'n v. Heideman*, 504 F.3d 1053, 1062 (9th Cir. 2007), citing *International Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992) ("*ISKCON*"). When the government acts as a proprietor, "the role of government has changed from regulator to something akin to that of a private landowner, with at least some of the associated exclusionary rights." *Pocatello Educ. Ass'n*, 504 F.3d at 1062, citing *Greer v. Spock*, 424 U.S. 828, 836 (1976) ("The State, no less than a private owner of a property, has power to preserve the property under its control for the use to which it is lawfully dedicated."). By contrast, the question of whether a law is "neutral and generally applicable" applies only when the government is acting as a lawmaker with the power to

---

[4] Even Faith Center's reply brief acknowledges that the format of the afternoon session was different than that of the morning session. Pltfs. Reply at 9:2. In earlier proceedings before this Court, Faith Center did not dispute that the afternoon activities constituted "pure religious worship services." *See Faith Center*, 480 F.3d at 905 n. 6, 915.

regulate or license – in other words, whether the challenged government action is regulatory, proscriptive, or compulsory. *See Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1124 (9th Cir. 2002).

Because this case involves the Board acting as a property manager of a forum it owns, its restrictions are subject to the standard that applies to the type of forum it is. *Faith Center*, 480 F.3d at 907, citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The focus is on the right of the party to control access to the forum at issue. *Pocatello Educ. Ass'n*, 504 F.3d at 1063 n. 10.

The Antioch library meeting room is a limited public forum, so the meeting room use policy will be upheld as long as it is reasonable. *Faith Center*, 480 F.3d at 908-09. Here, the Ninth Circuit determined that the County's enforcement of its policy "to exclude religious worship services from the meeting room is reasonable in light of the forum's purpose." *Faith Center*, 480 F.3d at 908.

The rational basis test also applies to Faith Center's free exercise claim, because this is a hybrid case where Faith Center is challenging its access to a forum owned by the County. *See San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024, 1031 (9th Cir. 2004). In a hybrid claim, a free exercise claim is analyzed under the rational basis test after judgment is granted in favor of the defendant on the plaintiff's companion claims. *Id.* at 1032-33.

Applying the rational basis test to Faith Center's free exercise claim, the meeting room use policy is constitutional because it is rationally related to a legitimate government interest. *See Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999). In *Faith Center*, the Ninth Circuit found there is a rational basis for excluding religious services from the library meeting room. *Faith Center*, 480 F.3d at 908. The County's enforcement of its policy is and was reasonable in order to prevent the Antioch library meeting room from being transformed into an occasional house of worship, and to preserve the library's purpose of making itself available to the whole community. *Id.* at 911.

The "neutral and generally applicable" analysis does not apply simply because the word "religious" is used in the library meeting room use policy. Faith Center's assertion at page 20 of its reply notwithstanding*, Locke v. Davey*, 540 U.S. 712 (2004) is instructive. In *Locke*, a student challenged a prohibition against using state scholarship funds to pursue a theology degree. The

student contended that under the rule enunciated by the Supreme Court in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), the scholarship program was presumptively unconstitutional because it was not facially neutral with respect to religion. *Locke*, 540 U.S. at 720.

The Supreme Court said the question of whether the prohibition was "neutral and generally applicable" was the wrong question:

> "We reject his claim of presumptive unconstitutionality, however; to do otherwise would extend the *Lukumi* line of cases well beyond not only their facts but their reasoning. In *Lukumi*, the city of Hialeah made it a crime to engage in certain kinds of animal slaughter. We found that the law sought to suppress ritualistic animal sacrifices of the Santeria religion. [Citation omitted.] In the present case, the State's disfavor of religion (if it can be called that) is of a far milder kind. It imposes neither criminal nor civil sanctions on any type of religious service or rite. It does not deny to ministers the right to participate in the political affairs of the community. [Citation omitted.] And it does not require students to choose between their religious beliefs and receiving a government benefit. [Fn. omitted; citations omitted.] The State has merely chosen not to fund a distinct category of instruction."

*Locke*, 540 U.S. at 720-21. Finding no presumption of unconstitutionality, the Supreme Court ruled against the student. It held that the state's interest in not funding the pursuit of devotional degrees was substantial and the exclusion of such funding placed a "relatively minor burden" on scholars who would use the money for devotional degrees. *Locke*, 540 U.S. at 725.

Here, the County has chosen not to convert its library meeting rooms into either churches or schools, thus placing at most a relatively minor burden on Faith Center. A meeting room use policy that does not single out a particular religion or impose any disabilities on the basis of religion does not violate the Free Exercise Clause. *Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 127 F.3d 207, 216 (2d. Cir. 1997).[5] Church members are free to practice their religion, albeit in a different location. *Ibid*. Courts will not find a Free Exercise Clause violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs. *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221, 1224 (9th Cir. 1990) (denial of use permit imposes burden of convenience and expense, but minimal burden on religious practice); *see also Lakewood,*

---

[5] A free exercise claim was not at issue in either *Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342 (2d. Cir. 2003) or *Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 492 F.3d 89 (2d. Cir. 2007).

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION - C 04-3111 JSW     10

*Ohio Cong. of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303, 306 (6th Cir. 1983), *cert. denied*, 464 U.S. 815 (1983) (holding that inconvenient economic burdens on religious freedom do not rise to a constitutionally impermissible infringement of free exercise).

At most, Faith Center only was inconvenienced by the County's enforcement of its library meeting room use policy. "The gravamen of a free exercise claim ... is that the government forces one to do something contrary to one's religion, or presents one with a Hobson's choice between forsaking one's religion or suffering serious negative consequences." *Hansen v. Ann Arbor Public Schs.*, 293 F.Supp.2d 780, 808 (E.D. Mich. 2003). The County did not force Faith Center to do anything contrary to its religion, and did not present Faith Center with the choice between forsaking its religion or suffering serious negative consequences.[6]

Finally, Faith Center baldly asserts that the County's animus toward religion "is clearly evident on the face of the Meeting Room Policy." Pltfs. Reply at 18:14-15. The use of the word "religious" in a meeting room use policy is not evidence of animus. In fact, there is no evidence of any animus whatsoever on the County's part that motivated the policy in question. *See Locke*, 540 U.S. at 725; *KDM v. Reedsport Sch. Dist.*, 196 F.3d 1046, 1051 (9th Cir. 1999); *Strout v. Albanese*, 178 F.3d 57, 65 (1st Cir. 1999); *cf. Lukumi*, 508 U.S. at 543 (evidence of animus against Santeria worship). Courts must not attribute unconstitutional motives to the government, particularly when a plausible secular purpose exists. *See Vasquez v. Los Angeles County*, 487 F.3d 1246, 1255 (9th Cir. 2007).

### IV. THE COUNTY'S MEETING ROOM USE POLICY DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE BECAUSE IT IS NOT HOSTILE TOWARD RELIGION

"The principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause." *Lee v. Weisman*, 505

---

[6] Assuming the question were whether the policy is "neutral and generally applicable," Faith Center's analysis fails to establish that the policy is subject to strict scrutiny. Pltfs. Reply at 18:1-2. The policy is neutral because its object is not to infringe upon religious practices *because of* their religious motivation, but to preserve the limited public forum. *See Lukumi*, 508 U.S. at 533. The policy is generally applicable because it does not impose burdens in a selective manner. *Id*. at 543. All religious groups are treated the same. Moreover, the policy meets strict scrutiny. The County has a compelling governmental interest in preserving the library meeting room as a limited public forum. *Faith Center*, 480 F.3d at 918-19. The policy is narrowly tailored because it excludes religious services from the library meeting room, but does not exclude religious activities. The public is free to use the meeting room to conduct activities in the meeting room that express a religious viewpoint. *Ibid*.

U.S. 577, 587 (1992). No case has held that the Establishment Clause permits religious worship services – in contrast to an activity that expresses a religious viewpoint – in a limited public forum owned by the government. To the contrary, it would violate the Establishment Clause if taxpayer dollars were used to support Faith Center's religious services.

The provision of a meeting room involves governmental expenditure, if only in the form of electricity, heating and cooling, and maintenance costs. *See Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819, 843 (1995). "[I]f the State pays a church's bills it is subsidizing it, and we must guard against this abuse." *Id.* at 844; *see also Tilton v. Richardson*, 403 U.S. 672, 683 (1971) (provision that federally subsidized building cannot be used for sectarian or religious worship for 20 years is invalid because nothing prohibits building from being converted into a chapel at the end of the 20-year period); *Roemer v. Bd. of Pub. Works*, 426 U.S. 736, 760-61 (1976) (upholding program of direct state financial aid to private colleges and universities, including religious ones, because there was a statutory prohibition against use of funds for sectarian purposes); *Hunt v. McNair*, 413 U.S. 734, 744-45 (1973) (upholding program of state aid to colleges and universities, including religious ones, to finance construction because funds were not allowed to be used for the construction of religious facilities). Here, requiring the County to allow religious services in its library meeting room would itself be a violation of the Establishment Clause, because the maintenance of the Antioch library and its meeting room is funded primarily by property taxes. (Cain Decl. II, ¶¶ 8-9.) Taxpayer dollars would be used in support of Faith Center's religious worship services, as opposed to being used in support of an activity where a religious viewpoint is expressed. *See Rosenberger*, 515 U.S. at 843.

The cases cited by Faith Center in support of its Establishment Clause argument – *Rosenberger and Good News Club* – do not stand for the proposition that excluding a religious worship service from a government-owned meeting room is hostile to religion in violation of the Establishment Clause. Pltfs. Reply at 13, 20. Both cases were analyzed at length, and distinguished from this case, by the Ninth Circuit. *Faith Center*, 480 F.3d at 912-14. In brief, neither case involved a religious worship service. In *Rosenberger*, a university policy excluded funding for religious student publications under a policy that prohibited funding for any "religious activity." *Rosenberger*, 515 U.S. at 824-25. The Supreme Court held this was viewpoint discrimination. *Id*. at 831. In *Good News*

*Club v. Milford Central School*, 533 U.S. 98 (2001), the Supreme Court held it was viewpoint discrimination to exclude a Christian children's club from a school forum under a policy that prohibited the use of the limited public forum for "religious purposes." *Id*. at 102-04.

It does not violate the Establishment Clause to make a limited public forum available to religious groups, where they may speak about topics from a religious viewpoint. *Rosenberger*, 515 U.S. at 842-43. The County has provided equal access to the Antioch Library meeting room by allowing it to be used numerous times by religious and other groups for activities and events that express a religious viewpoint, including Bible study. (Chandler Decl., ¶¶ 24-33.) The County also allowed Faith Center to use the meeting room in late 2007 for "any activity that does not violate the meeting room use policy, including activities that express a religious viewpoint." (Cain Decl. II, Exhibit C.)

Faith Center's reply brief is further flawed because it fails to apply the three-part test established by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See Vasquez*, 487 F.3d at 1254. Applying the *Lemon* test here, the meeting room use policy does not violate the Establishment Clause by being hostile toward religion. *See* Docket No. 104: Defendants' Cross-Motion for Summary Judgment at 16-20. First, the County's compelling secular purposes for excluding religious services from library meeting rooms are to preserve the meeting room as a limited public forum, *see Faith Center*, 480 F.3d at 918-19, and to avoid using taxpayer funds to support religious worship services, which itself would violate the Establishment Clause, *see Vasquez,* 487 F.3d at 1255.[7] Second, a reasonable observer who is familiar with the purpose of libraries generally and library meeting rooms in particular would view the prohibition as the County's effort to preserve the meeting room as a limited public forum and to preserve "the library's primary function as a venue for reading, writing and quiet contemplation." *Faith Center*, 480 F.3d at 910. Finally, the County's enforcement of the use policy is only routine regulatory interaction that involves no inquiries into religious doctrine, no detailed monitoring, and no close administrative contact between secular and

---

[7] The government can restrict private speech to preserve the purpose of a limited public forum and avoid an Establishment Clause violation. See *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1101-02 (9th Cir. 2000), and other cases cited at *Faith Center*, 480 F.3d at 917-18.

religious bodies does not violate the nonentanglement command. *See KDM*, 196 F.3d at 1051; *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1056 (9th Cir. 2007).

### V. THE COUNTY'S MEETING ROOM USE POLICY DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE BECAUSE IT IS RATIONALLY RELATED TO PRESERVING THE MEETING ROOM AS A LIMITED PUBLIC FORUM

Faith Center's equal protection discussion in its reply brief refutes an argument the County did not make. The County did not assert that a law that complies with the Free Exercise Clause "automatically complies" with the Equal Protection Clause. *See* Pltfs. Reply at 21:2-3. Instead, under the law, if a challenged program comports with the Free Exercise Clause, that conclusion ends the religious discrimination analysis, and rational basis scrutiny applies to any further equal protection inquiry. *Locke,* 540 U.S. at 720 n. 3; *see also Johnson v. Robison*, 415 U.S. 361, 375 n. 14 (1974).

Under rational basis review, a statute will be upheld if it is rationally related to a legitimate governmental purpose. *Romer v. Evans*, 517 U.S. 620, 631 (1996). The County's decision to prohibit Faith Center from conducting religious worship services in the library meeting room was reasonable, both to avoid transforming the meeting room into an occasional house of worship and to avoid alienating patrons and undermining the library's purpose of making itself available to the whole community. *Faith Center*, 480 F.3d at 911.

Neither case cited by Faith Center in support of its equal protection argument applies here. *See* Pltfs. Reply at 21. In both *Fowler v. Rhode Island*, 345 U.S. 67 (1953) and *Hansen v. Ann Arbor Public Schs.*, 293 F.Supp.2d 780 (E.D. Mich. 2003), the courts found an equal protection violation in laws that discriminated *among* religions. The County meeting room use policy does not distinguish among religions. Moreover, the free exercise of religion is not a fundamental right in a properly limited public forum. *Bronx Household of Faith*, 127 F.3d at 217. Here, religious groups are treated no differently than schools. *See Christian Gospel Church, Inc.*, 896 F.2d at 1226. A religious group cannot hold a religious worship service in a library meeting room, and a school cannot using a library meeting room for instructional purposes as a regular part of the school curriculum.

### CONCLUSION

Jurisprudence that involves religion necessarily involves the drawing of some lines. "The Constitution decrees that religion must be a private matter for the individual, the family, and the

institutions of private choice, and that while some [government] involvement and entanglement are inevitable, lines must be drawn." *Lemon*, 403 U.S. at 625; *see also Lee*, 505 U.S. at 598 ("Our jurisprudence in this area [the Religion Clauses of the First Amendment] is of necessity one of line-drawing....").

In this case, the County's library meeting room use policy draws a line. The policy allows religious activities in meeting rooms, just as it allows educational groups to use meeting rooms for special activities. The policy does not, however, allow religious worship services in library meeting rooms, just as it does not allow schools to use library meeting rooms for instructional purposes as a regular part of their curriculum. The County was entitled to draw this line in this case because the Antioch library meeting room is a limited public forum, and the County did not want its library meeting room to become either a church or a school. Pastor Hopkins herself drew a line when she distinguished between the morning "wordshop" event and the afternoon "praise and worship" religious service. The Ninth Circuit recognized the line Pastor Hopkins drew in her flyer, and upheld the line drawn by the County in its policy, when it held that the County was entitled to exclude Faith Center's religious worship service from the Antioch Library meeting room. The Supreme Court declined Faith Center's request to overturn the Ninth Circuit's decision.

The County requests that this Court decline Faith Center's request to ignore the Ninth Circuit's clear direction on remand and become the first court to hold that a taxpayer-supported public library must open its doors to allow religious worship services to be conducted free of charge. Instead, the County requests that this Court enter judgment in favor of the County on all claims and enter a permanent injunction authorizing the County to prohibit Faith Center from using the Antioch branch library meeting room for religious worship services in violation of the Contra Costa County Library meeting room use policy.

DATED: October 23, 2008          SILVANO B. MARCHESI, County Counsel

By:     /s/
THOMAS L. GEIGER
Deputy County Counsel
Attorneys for Defendants