# EXHIBIT 4

## DECLARATION OF WILLIAM J. KOPENY

I, WILLIAM J. KOPENY, declare as follows:

1. I am an attorney at law duly licensed to practice before the above-entitled Court. I represent Brian Dunning in connection with that certain criminal investigation described in more detail below. I have been a member of the bar of the United States District Court for the Central District of California since December 20, 1974, and have been representing individuals in connection with criminal investigations and criminal prosecutions for over 35 years. I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

2. In June 2007, I was retained by Brian Dunning as criminal counsel, in connection with the execution of a search warrant at his home on June 18, 2007, and his interrogation by agents of the Federal Bureau of Investigation ("FBI"). I immediately contacted the local FBI agents, one of whom I knew from a prior federal criminal matter I had handled, and I was informed that: (a) Mr. Dunning was being investigated for computer crimes by agents from the San Francisco Bay area; and (b) the items seized under the search warrant, which consisted primarily of computers, computer media, and hard copy documents, were in the custody of the agents in charge of the case and/or the Office of the United States Attorney for the Northern District of California.

3. I then contacted the FBI agents involved in the execution of the search warrant from the San Francisco Bay area and learned that the assigned federal prosecutor is Kyle F. Waldinger who is the United States Attorney in charge of the Computer Hacking and Intellectual Property Unit ("CHIP Unit") of the Office United States Attorney for the Northern District of California.

4. Because initially, the searching agents had informed Mr. Dunning that anything the agents needed would be copied and that the computers and other materials seized would be returned within two weeks, on July 3, 2007, I contacted Mr. Waldinger to inquire whether Mr. Dunning was a "target" of the investigation, and whether we could expect his property to be returned within the time frame promised by the agents on the scene of the

16

search. Mr. Waldinger informed me that: (a) Mr. Brian Dunning is a target of the investigation, along with two other named persons; (b) the federal government is confident that a criminal offense could be proven, based on the fraudulent conduct of one or more persons; and (c) until the federal government has concluded its analysis of the computer media seized, the federal government is unwilling to discuss any resolution of its case. Since that first telephone call with Mr. Waldinger, I have had at least six other phone conversations with him and faxed to him at least three letters.

5. I have reviewed my file and in those letters I have confirmed in writing that Mr. Waldinger advised me that: (1) Mr. Dunning is a "target" of the federal criminal investigation; (2) the investigation concerns Thunderwood Holdings, Inc. ("Thunderwood") and Kessler's Flying Circus ("KFC") and its relationship with eBay, and allegations that "cookies" had been "forced" in violation of the terms of service with Plaintiff eBay ("Plaintiff") and/or Commission Junction, Inc., which allegedly constitutes "cyber-fraud" under various federal fraud statutes.

6. I have conferred with Mr. Waldinger periodically and he has continued to confirm that Mr. Dunning is a target of an active investigation, that the federal government is not yet done with its investigation or analysis of the computers seized, and that he will contact me in the event an indictment is issued naming my client as a defendant, including any indictment for fraud, in which Plaintiff and/or eBay is the named victim based on the above. The investigation remains open and active.

7. Mr. Waldinger has confirmed that the criminal investigation of Mr. Dunning is ongoing, that search warrants other than that discussed above have issued, and in my opinion, based on my experience, I believe it is likely that the federal government has presented testimony in this investigation to the United States Grand Jury for the Northern District of California. In addition, the federal government has sought from the District Court, and obtained, several extensions of time to return all the materials seized from Mr. Dunning's home pursuant to the aforementioned federal search warrant, which called for its return within 60 days unless additional time is granted. Typically, in order to obtain such permission from

17

378033v1 is 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

1  the federal court, the United States Attorney must allege that there is an active criminal
2  investigation, that the federal government believes the property seized constitutes, or is likely
3  to constitute evidence of the suspected crime, and that additional time is reasonably needed to
4  complete the investigation. With the exception of approximately 10% of the items seized,
5  which items have nothing to do with Plaintiff or KFC, the federal government remains in
6  possession of all other materials seized from Mr. Dunning, on the basis of its continued
7  criminal investigation of him.

8.     By its own description on the United States Department of Justice website, the CHIP Unit is charged with combating "cybercrime and intellectual property theft." In fact, that unit, and Mr. Waldinger have acquired a national reputation for being the first prosecutors in the nation to bring and win cyber-prosecutions based on previously untested legal theories. A true and correct copy of this description found on the website of the Department of Justice, is attached as Exhibit "3." In addition, the CHIP unit "works closely with the FBI and other agencies to establish a relationship with the local high tech community and encourage them to refer cases to law enforcement." A true and correct copy of this description found on the website of the Department of Justice, is attached as Exhibit "4." The CHIP Unit is specifically charged with coordinating law enforcement and the technology industry "to share expertise and information technology, to assist each other 24 hours a day, seven days a week, around the clock, to prevent cybercrime wherever possible..." A true and correct copy of this description found on the website of the Department of Justice, is attached hereto as Exhibit "5."

9.     The word "target" is a term of art within the United States Department of Justice, and it is to be distinguished from a "witness" and/or a "person of interest." Under Justice Department guidelines, the prosecutor is required to inform a person or his attorney when he has achieved the status of "target" because that person is actively believed to be a future defendant, based on an ongoing investigation. This guideline is in place to avoid any later claim that the "target" failed to invoke his rights against self-incrimination because he or she wrongly believed he was not going to be prosecuted. Thus, anyone who is informed that

18

378033v1 ts 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

1 he is a "target" has an enormous motive to obtain counsel and assert his privilege against self-incrimination.

10. On advice of and through counsel, Mr. Dunning has asserted his right to remain silent, *i.e.*, has asserted his constitutional privilege against self-incrimination under the Fifth Amendment to the United States Constitution following the execution of a search warrant at his home and the questioning by FBI agents, and I have advised him to assert the same privilege in response to any question asked of him at any deposition, in response to any interrogatory or request for admission, and in response to any demand for production of documents (the possession of which is privileged under *United States v. Doe* (1988) 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184).[3/]

11. Under the Fifth Amendment, a person need not be guilty of any crime to enjoy a constitutional privilege not to provide information that the government or any party seeks to compel him or her to provide. (*People v. Lucas* (1995) 12 Cal.4th 415, 453 ["Innocent persons, as well as the guilty, are entitled to invoke the privilege"]; *Grunewald v. United States* (1957) 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931; see also Ratner, *Consequences of Exercising the Privilege Against Self-Incrimination*.) Rather, if the information sought *could, conceivably*, form a single evidentiary or factual link in a chain of circumstantial evidence which chain of evidence *could* support *an inference* that the person is culpable for any criminal offense, in violation of any state or federal law, that person cannot be compelled by legal process, subpoena or court order to provide such information, upon his or her invocation of the protection of the Fifth Amendment. (*Hoffman v. United States* (1951)

---

[3/] On behalf of Mr. Dunning I herewith assert that in producing such records he would be "testifying" as to their existence and to his control over them in a way that is protected by his Fifth Amendment privilege against self-incrimination. *Fisher v. United States* (1976) 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39; *United States v. Doe* (1984) 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (*Doe I*),; and *Doe v. United States* (1988) 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184 (*Doe II*), a line of cases in which the Supreme Court emphasized that the act of producing potentially incriminating documents under government compulsion may have impermissible testimonial aspects. These cases are applicable to this case since they hold that the Fifth Amendment protects against compulsory surrender of (1) personal business records, (2) in the possession of a sole proprietor or practitioner, (3) with respect to the testimonial act implicit in the surrender itself.

19

378033v1 ts 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118; *United States v. Neff* (9th Cir. 1980) 615 F.2d 1235, 1239; *Prudhomme v. Superior Court* (1970) 2 Cal.3d 320, 325-326; *In re Misener* (1985) 38 Cal.3d 543, 546-551.)

12. I have reviewed the complaint in this matter and based on my understanding of the allegations and issues in this civil matter, Mr. Dunning has, through counsel, already asserted his Fifth Amendment privilege against self-incrimination in connection with an inquiry by the Federal Government into *the identical facts alleged in this case*, and clearly is entitled to its protection in the context of this case. In my opinion, any court order compelling Mr. Dunning to respond to the allegations of the complaint, and/or to respond to discovery propounded to him would constitute "compelled self-incrimination" within the meaning of the Fifth Amendment and California's constitutional privilege against self-incrimination. (Please see *People v. Lucas*, *supra*, 12 Cal.4th at 453.)[4]

13. Based on these descriptions of the function, purpose and manner of operating on the part of the CHIP Unit, together with my 35 years of experience defending individuals in criminal cases, it is clear that any and all information obtained from Mr. Dunning in the course of discovery in this case will be shared with, and will be monitored by, the federal government in aid of the criminal investigation and/or prosecution of Mr. Dunning.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 15th day of October, 2009, at Irvine, California.

_____
WILLIAM J. KOPENY

---

[4] "[I]n order to approve invocation of the privilege '"it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question <u>or an explanation of why it cannot be answered</u> *might* be dangerous because injurious disclosure *could* result."' (*People v. Cudjo*, *supra*, 6 Cal.4th at p. 617, 25 Cal.Rptr.2d 390, 863 P.2d 635, quoting *Hoffman v. United States* (1951) 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118.)" *Id.* at p. 453 [Underlining and italics supplied.]

20

378033v1 ts 9/25/09 4 (2785-0002)
NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)