1   Seyamack Kouretchian (State Bar No. 171741)
    Seyamack@CoastLawGroup.com
2   Ross M. Campbell (State Bar No. 234827)
    Rcampbell@CoastLawGroup.com
3   COAST LAW GROUP, LLP
    1140 South Coast Highway 101
4   Encinitas, California 92024
    Tel: (760) 942-8505
5   Fax: (760) 942-8515
6
7   Attorneys for Defendants, SHAWN HOGAN
    and DIGITAL POINT SOLUTIONS, INC.
8
9                    UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                           SAN JOSE DIVISION

12  EBAY, INC.,                          )   Case No. CV 08-04052 JF PVT
                                         )
13               Plaintiff,              )   OPPOSITION OF DEFENDANTS
                                         )   DIGITAL POINT SOLUTIONS, INC. AND
14       v.                              )   SHAWN HOGAN TO PLAINTIFF'S
                                         )   MOTION TO COMPEL RESPONSES TO
15  DIGITAL POINT SOLUTIONS, INC., SHAWN )   REQUESTS FOR PRODUCTION,
    HOGAN, KESSLER'S FLYING CIRCUS,      )   INTERROGATORIES AND REQUESTS
16  THUNDERWOOD HOLDINGS, INC., TODD     )   FOR ADMISSION
    DUNNING, DUNNING ENTERPRISE, INC.,   )
17  BRIAN DUNNING, BRIANDUNNING.COM,     )
    and Does 1-20,                       )   Date:   November 13, 2009
18                                       )   Time:   10:00 a.m.
                                         )   Judge: Hon. Patricia V. Trumbull
19               Defendants.             )   Dept.:  Courtroom 5
                                         )
20  _____  )

21

22
23                  I.  SUMMARY OF OPPOSITION

24       In this action, Plaintiff eBay, Inc. (Plaintiff) alleges that Defendants Shawn Hogan and Digital

25  Point Solutions, Inc. (collectively, the DPS Defendants) violated federal criminal statutes by engaging in

26  a "cookie stuffing" scheme associated with Plaintiff's affiliate marketing program.  It is undisputed that

27  the Federal Bureau of Investigation (FBI) and the United States Attorney's Office for the Northern

28  District of California (USAO) are conducting an active criminal investigation based on the same

1   underlying allegations.  In that regard, Plaintiff has expressly indicated that the authorities are

2   investigating "whether the fraudulent activities alleged by eBay in this case constitute federal crimes."

3   Thus, Mr. Hogan's Fifth Amendment rights are directly implicated in this case, as the civil and criminal

4   proceedings involve the same underlying factual and legal issues.  Indeed, because any information

5   produced during the discovery process will be <u>directly relevant</u> to the pending criminal investigation,

6   Mr. Hogan has appropriately asserted his Fifth Amendment rights.  As the Supreme Court has explained,

7   "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in

8   which it is asked, that a responsive answer to the question or an explanation of why it cannot be

9   answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*

10   (1951) 341 U.S. 479, 486.

11       Based on the foregoing, and the potential for prejudice in continuing to litigate the present action,

12   the DPS Defendants have moved to stay the civil proceedings pending resolution of the parallel criminal

13   investigation.  The remaining defendants in this action have filed similar motions, all of which are

14   scheduled to be heard by Judge Fogel on November 20, 2009.  For the reasons set forth below, the DPS

15   Defendants request that the Court defer ruling on the present motion until after the pending stay motions

16   have been adjudicated.  However, the motion to compel should be denied in any event, as Plaintiff's

17   attempts to circumvent Mr. Hogan's constitutional rights are entirely without merit.

18       First, it is now well established that the act of producing documents in response to an inspection

19   demand has testimonial aspects that are subject to protection under the Fifth Amendment.  Here, Mr.

20   Hogan has appropriately asserted his Fifth Amendment rights, as the act of production would inherently

21   communicate identifying information <u>based on the scope of Plaintiff's requests</u>.  Because the provision

22   of such a response could add to the "sum total of the Government's information," Plaintiff's motion

23   must be denied.  Further, in responding to Plaintiff's interrogatories and requests for admission, Digital

24   Point Solutions Inc. (DPS, Inc.) has appropriately explained that it never conducted business with

25   Plaintiff, and never participated in Plaintiff's affiliate marketing program.

26       Finally, it has been determined that the computer servers that were transferred to DPS, Inc. are

27   co-located at NetHere and that materials responsive to Plaintiff's discovery requests are therefore within

28   DPS, Inc.'s custody or control.  However, where, as here, the corporation only has one agent, who acts

as the sole shareholder, director and officer for the corporation, the Supreme Court has indicated that the appropriate remedy is to stay the action pending resolution of the parallel criminal proceeding.  As noted, the DPS Defendants have moved for such a stay in this case.

## II. STATEMENT OF FACTS

Plaintiff operates an affiliate marketing program to increase traffic to its on-line trading forum. (SAC ¶¶18, 19, *see* Campbell Decl., Ex.1).  Affiliates receive commissions for directing business to Plaintiff's website. (SAC ¶19).  Plaintiff, and/or its agent, Commission Junction, tracks which affiliates are entitled to commissions through the use of digital tags referred to as "cookies."  (SAC ¶¶19, 21).  The SAC alleges that as members of Plaintiff's affiliate program, Defendants engaged in fraudulent "cookie stuffing" schemes through which Defendants received commissions to which they were not entitled.  (*See* SAC ¶¶24-27).  The SAC alleges that the schemes were effectuated through the use of software programs and/or code that redirected internet users to Plaintiff's website without the user actually clicking on one of Plaintiff's advertisement links.  (SAC ¶25).

Based on these allegations, the SAC alleges violations of a number of criminal statutes, including the Computer Fraud and Abuse Act, 18 U.S.C. §1030, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c).  With respect to Plaintiff's RICO claim, the SAC alleges that Defendants committed multiple violations of the predicate act of wire fraud under 18 U.S.C. §1343 (SAC ¶ 50), and that each such violation constitutes a separate instance of "racketeering activity" as defined in 18 U.S.C. §1961(1). (SAC ¶61).

As noted above, the USAO and FBI are conducting an active parallel criminal investigation related to this matter.  In June of 2007, the FBI executed a search warrant and seized materials from Mr. Hogan's residence.  And Plaintiff has indicated that the authorities are investigating "whether the fraudulent activities alleged by eBay in this case constitute federal crimes." (Campbell Decl., Ex. 2, p. 4:15-16). With respect to the current status of the investigation, Assistant United States Attorney Kyle Waldinger recently indicated the following: (1) Mr. Hogan is the subject of an ongoing criminal investigation as to whether activities associated with Plaintiff's affiliate marketing program constitute wire fraud under 18 U.S.C. §1343; (2) the scope of the investigation relates to the "cookie stuffing" schemes alleged against the Defendants in this case; (3) Mr. Waldinger believes that Section 1343 has

been violated; (4) the USAO intends to seek an indictment based on the foregoing; and (5) and it is likely that an indictment will be issued within the early part of next year. (Kouretchian Decl., ¶2).

Based on the foregoing, and the potential for prejudice in continuing to litigate the present action, the DPS Defendants have moved to stay the civil proceedings pending resolution of the parallel criminal investigation (*see* Campbell Decl., Ex. 3); the remaining defendants have filed similar motions. The motions are scheduled to be heard before Judge Fogel on November 20, 2009.

### III. <u>ARGUMENT</u>

**A.    Resolution of the Present Motion should be Deferred until after the Pending Stay Motions have been Adjudicated.**

Given the circumstances outlined above, Mr. Hogan's Fifth Amendment rights are directly implicated in this case and, as detailed in the DPS Defendant's moving papers in support of the Motion for Stay of Proceedings, the relevant factors weigh heavily in favor of issuance of the stay. Indeed, when there are parallel criminal and civil proceedings such as in this case, the defendant faces the difficult choice of asserting his Fifth Amendment rights at the risk of losing a civil trial, or waiving these rights to defend himself in civil proceedings at the risk of incriminating himself. To avoid prejudicing the defendant's constitutional rights, the courts have recognized the need to stay civil proceedings under circumstances directly comparable to those at issue here. (*See* Campbell Decl. Ex. 3).

The foregoing concerns are particularly at issue where, as here, the underlying factual and legal issues directly overlap. (*Id*., Ex. 3, 7:11-23). As noted above, the USAO is actively investigating whether the alleged cookie stuffing schemes associated with Plaintiff's affiliate marketing program constitute wire fraud under 18 U.S.C. §1343. (Kouretchian Decl. ¶2). The same contentions are at issue in the present action, as Plaintiff's RICO claim is likewise predicated on alleged violations of Section 1343. (SAC ¶50). Because the same factual and legal issues are therefore at issue, any information produced during the discovery process is likely to be <u>directly relevant</u> to the pending criminal investigation. Given these concerns and the significance of the constitutional right at issue, the DPS Defendants request that adjudication of the present motion be deferred until after the motions for stay have been resolved. As further illustrated below, such a result is warranted to ensure that civil discovery will not be used to circumvent the discovery limitations that would otherwise apply in the criminal

1  proceeding.

2      Further, although collective entities cannot invoke the protections of the Fifth Amendment, a

3  stay as to all defendants is the appropriate remedy where "the individual defendants are the persons most

4  knowledgeable and the persons whom the corporation would designate to testify on its behalf." *Medina*

5  *v. Argent Mortg. Co.* (N.D. Cal 2006) 2006 U.S. Dist. LEXIS 30582, 6.  Indeed, where the Fifth

6  Amendment rights of the corporation's officers and directors are implicated, the corporation "is likely to

7  be greatly prejudiced in its ability to meaningfully defend itself in the civil matter." *Taylor, Bean &*

8  *Whitaker Mortg. Corp. v. Triduanum* (C.D.Cal. 2009) 2009 U.S. Dist. LEXIS 60849, 8.  Thus, in such

9  circumstances, the appropriate remedy is to seek a protective order staying the action pending resolution

10  of the criminal proceeding.  *United States v. Kordel* (1970) 397 U.S. 1, 9.  Here, Mr. Hogan is the sole

11  shareholder, officer, director and representative of DPS, Inc.  (Hogan Decl., ¶2).  Moreover, Mr. Hogan

12  is the only person that has conducted business on behalf of the corporation.  (*Id*.)  Thus, the foregoing

13  considerations also support deferring resolution of the present motion until after the motions for stay are

14  adjudicated.

15      **B.**    **Mr. Hogan has Appropriately Asserted his Fifth Amendment Privilege in Response**

16      **to Plaintiff's Requests for Production.**

17      The Fifth Amendment can "be asserted in any proceeding, civil or criminal, administrative or

18  judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably

19  believes could be used in a criminal prosecution or could lead to other evidence that might be so used."

20  *Kastigar v. United States* (1972) 406 U.S. 441, 444.  The privilege "not only extends to answers that

21  would in themselves support a conviction under a federal criminal statute but likewise embraces those

22  which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal

23  crime."  *Hoffman v. United States* (1951) 341 U.S. 479, 486.  Thus, "[c]ompelled testimony that

24  communicates information that may 'lead to incriminating evidence' is privileged even if the

25  information itself is not inculpatory."  *United States v. Hubbell* (2000) 530 U.S. 27, 35-36, *quoting Doe*

26  *v. United States* (1988) 487 U.S. 201, 208, fn. 6.  The privilege "must be accorded liberal construction in

27  favor of the right it was intended to secure."  *Hoffman, supra,* 341 U.S. at 486.

28      Where documents are voluntarily prepared, there is no compulsion present, and consequently the

contents of those records are not privileged by the Fifth Amendment. *Hubbell, supra*, 530 U.S. at 35-36. However, it is now well established that the act of producing documents in response to a subpoena or inspection demand may have incriminating testimonial aspects. *Id.* at 36. For instance, the act of complying with the demand tacitly concedes that the records exist, that they are in the possession or control of the responding party, that the responding party believes the documents are responsive to those described in the subpoena or demand, and that the subject documents are authentic. *United States v. Doe* (1984) 465 U.S. 605, 613; *Fisher v. United States* (1988) 425 U.S. 391, 410; *In re Grand Jury Subpoena* (9th Cir. 2004) 383 F.3d 905, 909.

However, the defendant's Fifth Amendment rights are not implicated to the extent that providing such information would add "little or nothing to the sum total of the Government's information." *Grand Jury Subpoena, supra,* 383 F.3d at 910. In such circumstances, the communicative aspects of the production are considered a "foregone conclusion." *Hubbell, supra*, 530 U.S. at 37.

With respect to the authenticity prong of the foregone conclusion doctrine, the plaintiff must not only show that "the documents sought to be compelled would be admissible independent of the witness' production of them," the inquiry also considers whether the witness is being compelled "to use his discretion in selecting and assembling the responsive documents, and thereby tacitly *providing identifying information* that is necessary to the government's authentication of the subpoenaed documents." *Grand Jury Subpoena, supra,* 383 F.3d at 912 (emphasis added).

The foregoing concerns are particularly at issue where the witness is required to make extensive use of "the contents of his own mind" in identifying responsive documents. *Hubbell, supra*, 530 U.S. at 43. For instance, where the documents to be produced are broadly defined, responding to the request "is the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition." *Id.* at 41-42. Compliance with such a demand requires the witness "to discriminate among documents, thereby providing identifying information that is relevant to the authenticity of the documents." *In re Grand Jury Proceedings* (8th Cir. 1994) 41 F.3d 377, 381.

Here, although the investigating authorities obtained computer-related materials during the course of the seizure, compliance with the requests would require Mr. Hogan to make identifying factual

assertions regarding those materials based on *the scope of Plaintiff's discovery requests*.  For instance, Plaintiff's inspection demand seeks the following categories of documents:

> All documents sufficient to identify the source of any technology, technique or method used by Hogan or Hogan Entities to participate in, manipulate or interact with the eBay Affiliate Marketing Program, or any other Affiliate Marketing Program.

> All documents relating to eBay's Affiliate Marketing Program, including, but not limited to, all methods and technologies used by Hogan or Hogan Entities to obtain revenue from, manipulate or otherwise interact with eBay's Affiliate Marketing Program, including, but not limited to, all software, source code, Javascript, and HTML code.

(*See* Kennedy Decl., Ex. 1).

Providing responses to these demands would ostensibly require Mr. Hogan to identify particular technologies and to further concede that those technologies were used to "*manipulate or interact* with the eBay Affiliate Marketing Program."  Such an act is subject to protection because "the privilege against self-incrimination applies to acts that imply assertions of fact."  *Hubbell, supra*, 530 U.S. at 37. And the act of production is sufficiently testimonial where "the subpoena requires a person to select documents used for a particular purpose." *In re Grand Jury Proceedings* (8th Cir. 1994) 41 F.3d 377, 381.  Because the provision of a response could add to the "sum total of the Government's information," Plaintiff's motion should be denied.

Plaintiff next suggests that the Fifth Amendment does not apply because the act of producing responsive materials would not be sufficiently incriminating.  For instance, Plaintiff contends that "[t]he law does not require that the Court take Mr. Hogan's word that the Fifth Amendment is applicable; the law requires him to prove that providing the discovery would tend to incriminate him."  (Motion, p. 5:9-11).  However, as noted above, Plaintiff itself has indicated that the FBI is investigating "whether the fraudulent activities alleged by eBay in this case constitute federal crimes." (Campbell Decl., Ex. 2, p. 4:15-16).  "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman, supra,* 341 U.S. at 486-487.  Here, because the underlying factual and legal issues directly overlap with those of the criminal investigation, the Fifth Amendment is clearly applicable.

## C.   DPS, Inc. has Provided Sufficient Responses to Plaintiff's Requests for Admission and Interrogatories.

In responding to Plaintiff's discovery requests, DPS, Inc. properly indicated that it never conducted business with Plaintiff at any time, and never participated in Plaintiff's affiliate marketing program.  For instance, DPS, Inc. was not incorporated until May of 2007 (Hogan Decl., Ex. 1), one month before the alleged four-year scheme ceased.  In addition, as Plaintiff is aware, DPS, Inc. never provided its tax identification number to Plaintiff, never executed any affiliate-related agreements, and never sought or received any commissions or other payments from Plaintiff or Commission Junction. (Hogan Decl. ¶2).  Further, DPS, Inc. did not conduct any business of any kind until the Fall of 2007 (*Id*.), well after the alleged scheme ceased in June of that year.  Thus, contrary to Plaintiff's assertions, DPS, Inc. appropriately explained the basis for its responses.[1]

Plaintiff nonetheless contends that DPS, Inc. inappropriately prefaced its discovery responses such that they do not adequately respond to Plaintiff's definition of "DPS."  Plaintiff's discovery requests define this term as follows:

> "DPS" shall mean Digital Point Solutions, Inc., and each of its successor, predecessor, and related entities, including, without limitation, its subsidiaries, parent corporations, divisions, assigns, and any officers, directors, agents, employees, representatives, attorneys, or other persons or entities acting on its behalf, collectively, in any combination, or singly, whichever is broader.

However, given the breadth of this definition, DPS, Inc.'s responses are entirely appropriate.  For instance, with respect to requests for admission, the requesting party bears the burden of succinctly drafting the request such that "the responding party is merely required to agree of disagree, that is, 'it can be admitted or denied without explanation,' with an occasionally warranted qualification or explanation, for purposes of clarification, if desired."  *Diederich v. Department of Army* (S.D.N.Y. 1990) 132 F.R.D. 614, 619.  "Specificity and detail is, thus, necessary and appropriate in each individual request, so that

---

[1] Plaintiff contends that statements in the DPS Defendants' motion to dismiss the SAC impliedly concede that DPS, Inc. participated in the affiliate marketing program.  (Plaintiff's MPAs, p. 6).  In support of this contention, Plaintiff quotes language referring to *"Defendants'* membership" in the affiliate program.  However, Plaintiff fails to recognize that at the 12(b)(6) stage, the factual allegations of the complaint *must be accepted as true* and that Defendants recitation of the "facts" complied with that standard.  Notably, the quoted passage itself cites to Plaintiff's SAC.

1   the extent of each admission or denial can be ascertained without excessive qualification." *Id.*

2       Here, as Plaintiff notes, "DPS" has been defined "broadly" in an effort to require DPS, Inc. to

3   "provide admissions or denials with respect to the activities of any of the entities/individuals defined as

4   DPS." (Plaintiff's MPAs, p. 10).  While the use of definitions in propounding discovery is otherwise

5   appropriate, DPS, Inc. cannot be compelled to respond on behalf of independent parties with distinct

6   legal rights.  In this regard, Mr. Hogan conducted business (and continues to conduct business) as a sole

7   proprietorship, including during the relevant time frames alleged in the SAC.  (Hogan Decl., ¶3).  As

8   was explained during the meet and confer process, the Supreme Court has confirmed that "the owner of

9   a sole proprietorship acts in a personal rather than a representative capacity."  *See United States v. Doe*

10  (1984) 465 U.S. 605, 608.  As such, sole proprietorships are not subject to the collective entity rule and

11  the Fifth Amendment may properly be asserted on their behalf.  *Id.*  (Campbell Decl., Ex. 4).

12      Plaintiff contends that DPS, Inc. has engaged in a "tortured reading" of the DPS definition that

13  "construes Plaintiff's discovery requests as seeking information directly from Mr. Hogan."  (Plaintiff's

14  MPAs, p. 9).  At the same time, however, Plaintiff contends that admissions or denials must be provided

15  "with respect to the activities of any of the entities/individuals defined as DPS."  (Plaintiff's MPAs, p.

16  10).  Further, during the meet and confer process, Plaintiff contended that "DPS, Inc. is required to

17  provide all information in its possession regarding 'DPS' as defined by eBay, <u>including Shawn Hogan</u>

18  and other entities associated with DPS, Inc., and any Fifth Amendment privilege held by Mr. Hogan

19  does not protect DPS, Inc. from doing so."  (Campbell Decl. Ex. 4; emphasis added).

20      However, as the Supreme Court affirmed in *Doe*, information relating to the activities of a sole

21  proprietorship are considered no different from the individual owner's personal information. *Doe, supra,*

22  465 U.S. at 609.  Mr. Hogan cannot be compelled to provide information that is unrelated to the

23  activities of the corporation and that is otherwise privileged under the Fifth Amendment simply by virtue

24  of the office he holds with DPS, Inc.  Given the incredible breadth of Plaintiff's definition of "DPS," the

25  responses provided by DPS, Inc. were entirely warranted and appropriate.  Plaintiff's motion to compel

26  should therefore be denied as to this issue as well.

27  /././

28  /././

1

### C.   DPS, Inc.'s Possession, Custody or Control of Responsive Documents.

2

As noted above, it has been determined that the computer servers that were transferred to DPS,

3

Inc. are co-located at NetHere and that documents responsive to Plaintiff's discovery requests are

4

therefore within DPS, Inc.'s custody or control.[2]  However, because Mr. Hogan is the only person that

5

can respond on behalf of DPS, Inc., and his Fifth Amendment rights are directly implicated in this case,

6

the appropriate remedy is to seek a stay of the action pending resolution of the criminal investigation.

7

*United States v. Kordel* (1970) 397 U.S. 1, 9; *Medina v. Argent Mortg. Co.* (N.D. Cal 2006) 2006 U.S.

8

Dist. LEXIS 30582, 6; *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D.Cal. 2009) 2009 U.S.

9

Dist. LEXIS 60849, 8.  Again, the DPS Defendants have moved for such relief and the matter is set to be

10

heard on November 20, 2009.

11

### IV.  <u>CONCLUSION</u>

12

For the foregoing reasons, the DPS Defendants respectfully request that the Court defer ruling on

13

Plaintiff's Motion to Compel until after the pending Motion for Stay of Proceedings has been

14

adjudicated.  In the alternative, the Defendants respectfully request that the Motion to Compel be

15

denied.[3]

16

DATED: October 23, 2009

<u>s/Ross M. Campbell</u>

17

COAST LAW GROUP, LLP
Attorneys for Defendants, Shawn Hogan

18

and Digital Point Solutions, Inc.

19

20

21

22

23

[2] After initially investigating the matter, defense counsel understood that the transferred servers had never been used, remained idle and did not contain any responsive information.  Defense counsel

24

agreed in good faith to further inquire into the status of the servers within a matter of a few days after

25

DPS, Inc. supplemented its responses.  In doing so, defense counsel sought to avoid unnecessary motion practice.  (*See* Campbell Decl., Ex. 4-5).

26

[3] In responding to Plaintiff's discovery requests, the DPS Defendants have asserted other

27

appropriate objections that Plaintiff has not opposed.  The DPS Defendants preserve all such objections including those related to confidentiality and proprietary information.  For instance, the Court's *in*

28

*camera* review of certain materials may be necessary to adequately protect the DPS Defendants' rights.