Seyamack Kouretchian (State Bar No. 171741)
Seyamack@CoastLawGroup.com
Ross Campbell (State Bar No. 234827)
Rcampbell@Coast LawGroup.com
COAST LAW GROUP, LLP
1140 South Coast Highway
Encinitas, California 92024
Tel: (760) 942-8505
Fax: (760) 942-8515

Attorneys for Defendants, SHAWN HOGAN
and DIGITAL POINT SOLUTIONS, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| EBAY, INC.,<br><br>               Plaintiff,<br><br>     v.<br><br>DIGITAL POINT SOLUTIONS, INC., SHAWN HOGAN, KESSLER'S FLYING CIRCUS, THUNDERWOOD HOLDINGS, INC., TODD DUNNING, DUNNING ENTERPRISE, INC., BRIAN DUNNING, BRIANDUNNING.COM, and Does 1-20,<br><br>             Defendants. | Case No. CV 08-04052 JF PVT<br><br>**DECLARATION OF ROSS M. CAMPBELL IN SUPPORT OF OPPOSITION OF DEFENDANTS DIGITAL POINT SOLUTIONS, INC. AND SHAWN HOGAN TO PLAINTIFF'S MOTION TO COMPEL**<br><br>Date:   November 13, 2009<br>Time:  9:00 a.m.<br>Judge: Hon. Patricia V. Trumbull<br>Dept.:  Courtroom 5 |

I, Ross M. Campbell, declare:

1.     I am an attorney at law duly authorized to practice law before the United States District Court for the Northern District of California and am an attorney with Coast Law Group, LLP, attorneys of record for defendants Shawn Hogan and Digital Point Solutions, Inc. (collectively the "DPS Defendants"). If called upon as a witness I could and would competently testify to the following facts

2.     Attached as Exhibit "1" hereto is a true and correct copy of the Second Amended Complaint filed by Plaintiff in this action.

Declaration of Ross M. Campbell in Support of DPS       1       Case No. CV 08-04052 JF PVT
Defendants' Opposition to Motion to Compel

Dockets.Justia.com

1    3.    Attached as Exhibit "2" hereto is a true and correct copy of the parties' Joint Case

2  Management Statement in this case, filed September 14, 2009.

3    4.    Attached as Exhibit "3" hereto is a true and correct copy of the DPS Defendants Notice

4  of Motion and Motion for Stay of Proceedings and Memorandum of Points & Authorities in Support

5  Thereof, filed October 16, 2009.

6    5.    Attached as Exhibit "4" hereto is a true and correct copy of an email from Ross Campbell

7  to Colleen Kennedy, dated September 25, 2009.

8    6.    Attached as Exhibit "5" hereto is a true and correct copy of an email from Ross Campbell

9  to Colleen Kennedy, dated September 29, 2009.

10         I declare under penalty of perjury under the laws of the United States of America and the

11  State of California that the foregoing is true and correct.

12  DATED: October 23, 2009                         s/Ross M. Campbell
                                                     COAST LAW GROUP, LLP
13                                                   Attorney for Defendants, Shawn Hogan
                                                     and Digital Point Solutions, Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1   DAVID R. EBERHART (S.B. #195474)
    deberhart@omm.com
2   SHARON M. BUNZEL (S.B. #181609)
    sbunzel@omm.com
3   COLLEEN M. KENNEDY (S.B. #227107)
    ckennedy@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5   San Francisco, CA  94111
    Telephone:   (415) 984-8700
6   Facsimile:   (415) 984-8701

7   Attorneys for Plaintiff eBay Inc.

8
                **UNITED STATES DISTRICT COURT**
9
                **NORTHERN DISTRICT OF CALIFORNIA**
10
                **SAN JOSE DIVISION**
11
    EBAY INC.,                          |   Case No.  CV 08-4052 JF (PVT)
12
                        Plaintiff,       |   **SECOND AMENDED COMPLAINT FOR**
13
            v.                           |
14                                       |   **(1)   Violations of 18 U.S.C. § 1030**
    DIGITAL POINT SOLUTIONS, INC.,       |   **(2)   Violations of 18 U.S.C. § 1962(c)**
15  SHAWN HOGAN, KESSLER'S               |   **(3)   Fraud**
    FLYING CIRCUS, THUNDERWOOD           |   **(4)   Violations of California Pen. Code**
16  HOLDINGS, INC., TODD DUNNING,        |   **        § 502**
    DUNNING ENTERPISE, INC., BRIAN       |   **(5)   Restitution and Unjust Enrichment**
17  DUNNING, BRIANDUNNING.COM,           |   **(6)   California B&P Code § 17200;**
    and DOES 1 - 10 and 12 - 20,         |
18                                       |
                        Defendants.      |   **DEMAND FOR JURY TRIAL**
19
20
21

22       For its Second Amended Complaint, Plaintiff eBay Inc. alleges as set forth below.

23   The factual allegations set forth herein have evidentiary support or, to the extent they are

24   contained in a paragraph made on information and belief, likely will have evidentiary

25   support after a reasonable opportunity for further investigation or discovery.

26                              **PARTIES**

27       1.      At all times relevant herein, Plaintiff eBay Inc. ("eBay") was a corporation

28

1    organized and existing under the laws of the State of Delaware, with its principal place of

2    business in the State of California.

3         2.    eBay is informed and believes and, on that basis, alleges that at all times

4    relevant herein Defendant Digital Point Solutions, Inc. ("Digital Point Solutions") was a

5    California corporation, sole proprietorship or other business entity, doing business in the

6    State of California.  At various times relevant herein, Defendant Digital Point Solutions

7    may also have been known as and/or done business as "Data Point Solutions," "Digital

8    Point Solutions," and/or "Digital Point."  Digital Point Solutions has succeeded to the

9    obligations and liabilities of any and all of such predecessor entities.  At all times relevant

10   herein, Defendant Digital Point Solutions represented itself and held itself out to eBay as

11   an independent business entity with legal status separate from that of its individual

12   owner(s).

13        3.    eBay is informed and believes and, on that basis, alleges that at all times

14   relevant herein Defendant Shawn Hogan was an individual residing and doing business in

15   the State of California and was the sole owner and/or sole proprietor of Defendant Digital

16   Point Solutions in any and all of its incarnations.

17        4.    Defendants Digital Point Solutions and Shawn Hogan will be collectively

18   referred to herein as "DPS."

19        5.    eBay is informed and believes and, on that basis, alleges that at all times

20   relevant herein Defendant Kessler's Flying Circus was a California general partnership

21   doing business in the State of California.

22        6.    eBay is informed and believes and, on that basis, alleges that at all times

23   relevant herein Defendant Thunderwood Holdings, Inc. was a California corporation and

24   was a general partner of Defendant Kessler's Flying Circus.

25        7.    eBay is informed and believes and, on that basis, alleges that at all times

26   relevant herein Defendant Brian Dunning was an individual residing and doing business in

27   the State of California and was the sole owner of Defendant Thunderwood Holdings, Inc.

28        8.    eBay is informed and believes and, on that basis, alleges that at all times

- 2 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  relevant herein Dunning Enterprise, Inc., previously substituted for the fictitiously named

2  defendant Doe 11, was a California corporation doing business in the State of California

3  and was a general partner of Defendant Kessler's Flying Circus.

4       9.     eBay is informed and believes and, on that basis, alleges that at all times

5  relevant herein Defendant Todd Dunning was an individual residing and doing business in

6  the State of California and was either a general partner of Defendant Kessler's Flying

7  Circus or held a controlling interest in Dunning Enterprise, Inc., which was a general

8  partner of Defendant Kessler's Flying Circus.

9       10.    eBay is informed and believes and, on that basis, alleges that at all times

10  relevant herein Defendant BrianDunning.com was a website and/or business entity

11  through which Defendants Brian Dunning and/or Todd Dunning committed some or all of

12  the acts alleged herein.

13       11.    Defendants Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning

14  Enterprise, Inc., BrianDunning.com, Brian Dunning, and Todd Dunning will be

15  collectively referred to herein as "KFC."

16       12.    eBay is ignorant of the true names and capacities of defendants sued herein

17  as Does 1 through 10 and 12 through 20, inclusive, and therefore sues said defendants by

18  such fictitious names.  eBay will amend this complaint to allege the true names and

19  capacities of said defendants when they are ascertained.  eBay is informed and believes

20  and, on that basis, alleges that each of the fictitiously named defendants is responsible in

21  some manner to pay the obligations described herein, and that eBay's losses as alleged

22  herein were proximately caused by said defendants' conduct.

23       13.    Unless otherwise specified, DPS, KFC and Does 1-10 and 12-20 will be

24  referred to collectively herein as "Defendants."

25  **JURISDICTION AND VENUE**

26       14.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

27  and 1367.

28       15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1),

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1391(b)(2) and 1391(c), and 18 U.S.C. § 1965(a).

     16.    Pursuant to the User Agreements entered into by DPS and KFC, as discussed in paragraph 26 *infra*, they have consented to the jurisdiction of and venue in the Northern District of California. Specifically, under the User Agreements, the Defendants have agreed that any claim or controversy at law or equity that arises out of this Agreement or eBay's services must be resolved by a court located in Santa Clara County, California.

## INTRADISTRICT ASSIGNMENT

     17.    Assignment to the San Jose Division is proper pursuant to Local Rules 3-2(c) and (e) because a substantial part of the events or omissions that give rise to eBay's claim occurred in San Jose, Santa Clara County, California. eBay's corporate headquarters are located in San Jose, Santa Clara County, California, and Defendants' wrongful actions were specifically and purposefully directed at and intended to affect eBay in San Jose, Santa Clara County, California as discussed in detail below.

## GENERAL ALLEGATIONS

eBay's Affiliate Marketing Program

     18.    eBay offers to the public an online marketplace that enables trade on a local, national and international basis. Through eBay's website, sellers may list items for sale and buyers may bid on and purchase items of interest. eBay earns revenue when a seller places an item for sale and when the item is sold. eBay may also earn revenue depending on various features selected by the seller, *e.g.*, listing upgrades and photo displays.

     19.    eBay's Affiliate Marketing Program is designed to increase traffic to eBay's website through the placement of advertisements for eBay on third-party websites. eBay seeks to increase traffic to its site so that more people will be exposed to eBay's service and begin using eBay to buy or sell goods, thereby generating revenue for eBay. The persons and entities that advertise on behalf of eBay—whether on their own sites or on sites of other third parties—are known as "affiliates." eBay's Affiliate Marketing Program is intended to compensate affiliates only when the advertisement in question

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    causes a user to take some action at eBay's site that directly provides revenue to eBay or

2    indicates that the new user is likely to take such an action in the future.  Accordingly,

3    affiliates earn commissions payable by eBay under the Affiliate Marketing Program when

4    the following sequence of events occurs: (1) the affiliate publishes an eBay advertisement,

5    (2) a user clicks on the eBay advertisement and is directed to eBay's website (the

6    "Referred Visit"), and (3) that user subsequently engages in a commission-generating

7    event (a "Revenue Action").  Revenue Actions, include, by way of example: (1) becoming

8    a new, registered user of eBay within 30 days of the Referred Visit, or (2) purchasing an

9    item from a third-party seller on eBay within seven days of the Referred Visit.  Because

10   compensation to the affiliate is tied to actions by the user, it is essential that eBay be able

11   to determine whether a Revenue Action occurred by virtue of the fact that the user was

12   referred to eBay by a particular affiliate's advertisement.  eBay and/or Commission

13   Junction, Inc. ("CJ") tracks this information using information placed in the new user's

14   browser, as discussed below.

15        20.    At all relevant times, eBay used the services of CJ, a subsidiary of

16   ValueClick, Inc., in administering the Affiliate Marketing Program.  The relationship

17   between eBay and CJ was governed at all relevant times by various Advertiser Service

18   Agreements.  Under those agreements, CJ was responsible for, among other things,

19   recruiting affiliates, tracking affiliate traffic, monitoring compliance by affiliates,

20   preventing and detecting fraudulent activity, and paying affiliates using funds remitted by

21   eBay.

22        21.    eBay's obligation to pay commissions is tracked by matching a user's

23   Revenue Actions on eBay's site to the affiliate that directed the user to eBay.  This

24   tracking is accomplished through the use of a digital tag called a "cookie" that is stored in

25   the user's web browser.  Cookies are collections of data commonly used by websites to

26   store and associate useful information with a given user.  Cookies typically store

27   information such as usernames, passwords, and user preferences for a particular user; that

28   information makes it more efficient for users to access web pages and provides a means

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  for websites to track and authenticate users.  Cookies are placed or "dropped" in a user's

2  browser by a website when that user visits the website.

3      22.    In the case of eBay's Affiliate Marketing Program, cookies are used to

4  confirm that a user was directed to eBay from a specific affiliate.  When a user clicks on

5  an affiliate advertisement and is directed to eBay's site, eBay's site drops a cookie on the

6  user's computer.  That cookie identifies the site that referred the user to eBay and/or the

7  specific affiliate responsible for directing the traffic to eBay.  If the user later engages in a

8  Revenue Action within the specified time period, eBay and/or CJ determines—based on

9  the data in the cookie—which affiliate, if any, should be credited with the referral and

10  receive the commission.  If cookies from multiple affiliates are present on the user's

11  computer, the affiliate identified in the most recent cookie dropped is credited with the

12  Revenue Action.  If there is no qualifying cookie on the computer, then no affiliate is

13  credited.  A substantial number of the Revenue Actions taken at eBay's site are taken by

14  users who were not referred to eBay by any affiliate; consequently, no commission is

15  owed for those actions.

16      23.    As part of the services it renders with respect to eBay's Affiliate Marketing

17  Program, CJ pays affiliates on a periodic basis (usually monthly), with funds remitted by

18  eBay, based on the number of Revenue Actions taken by users referred by those affiliates.

19  <u>The Fraudulent "Cookie Stuffing" Schemes</u>

20      24.    "Cookie stuffing" is a term used to describe the forced placement of a

21  cookie on a computer, typically by causing a cookie from a particular website to be placed

22  on the user's computer without the user knowing that he or she visited the website that

23  placed the cookie.  DPS and KFC engaged in cookie stuffing intended to defraud eBay.

24  The allegations made on eBay's information and belief set forth in paragraphs 25-34, 37-

25  41, and 47-60 below describing Defendants' cookie stuffing schemes are based on eBay's

26  analysis of the Defendants' websites and/or technology and the way in which a user's web

27  browser interacts with Defendants' sites and/or technology, and on eBay's analysis of

28  historical data relating to traffic purportedly driven to eBay by Defendants.  Certain other

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  details regarding Defendants' cookie stuffing schemes are exclusively within Defendants'

2  control.

3        25.    eBay is informed and believes and, on that basis, alleges that DPS and KFC

4  each accomplished their cookie stuffing through software programs and/or code that,

5  unbeknownst to the user, redirected the user's computer to the eBay website without the

6  user actually clicking on an eBay advertisement link, or even becoming aware that they

7  had left the page they were previously viewing.  As a result, the eBay site would be

8  prompted to drop an eBay cookie on the user's computer even though the user never

9  clicked on an eBay advertisement or even realized that their computer had ever visited the

10  eBay site.   DPS and KFC stuffed a large number of Internet users, with the expectation

11  and intention that some subset of those users would later come to eBay and take a

12  Revenue Action.

13        26.    eBay is informed and believes and, on that basis, alleges that the software

14  programs utilized by each of DPS and KFC caused the user's computer to access eBay's

15  computers in an unauthorized way and/or to exceed the authorized access to eBay's

16  computers.  Because DPS and KFC caused this access through and without the knowledge

17  or active participation of those users, the access of any such user's computer to eBay's site

18  is attributable to DPS and KFC.  The only authorization given to the Defendants to access

19  eBay's site in any manner was by way of eBay's User Agreement.  The User Agreement

20  was explicitly agreed to by the individual Defendants when they became registered eBay

21  users on the following dates: Shawn Hogan on May 17, 1999; Brian Dunning on

22  November 10, 2000; and Todd Dunning on May, 21, 2003.  The remaining named

23  Defendants, Digital Point Solutions, Kessler's Flying Circus, Thunderwood Holdings,

24  Inc., Dunning Enterprise, Inc. and BrianDunning.com, were on constructive and/or actual

25  notice that the User Agreement governed their access to eBay's website, based on the

26  explicit agreement of their owners/principals to the terms of the User Agreement, as well

27  as eBay's display on its website at all relevant times of the statement that use of the

28  website constitutes acceptance of the User Agreement.  Defendants' access to eBay was

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    unauthorized by, and violated, the terms of the User Agreement because it occurred solely

2    to force the dropping of the eBay cookie and thereby wrongfully access eBay's computer

3    servers.  Each of the causes of action set forth herein arises out of those violations of the

4    User Agreement.

5           27.    eBay is informed and believes and, on that basis, alleges that once the

6    cookie was stuffed on the user's computer by one or more of the Defendants, any future

7    Revenue Actions initiated by that user when the user later visited eBay intentionally, and

8    not as a result of any advertisement placed by Defendants, appeared to be eligible for

9    commissions payable to one of the Defendants (provided those actions took place within

10   the prescribed periods of time).  Hence DPS or KFC would receive payment for actions by

11   users who had not been referred to eBay by Defendants' advertisements, thereby injuring

12   eBay.

13          28.    eBay is informed and believes and, on that basis, alleges that after DPS

14   and KFC independently began their cookie stuffing schemes, they communicated with

15   each other regarding those cookie stuffing schemes.  Those communications between

16   DPS and KFC included, but were not limited to attempts by KFC to improve its

17   software and/or otherwise improve the effectiveness of its cookie stuffing scheme in

18   order to increase the amount of commissions that KFC could fraudulently obtain from

19   eBay, as well as efforts by DPS to prevent detection of the DPS cookie stuffing

20   scheme by eBay.

21          29.    eBay is informed and believes and, on that basis, alleges that DPS and KFC

22   used certain technological measures to prevent eBay from discovering their wrongdoing.

23   At certain relevant times DPS and KFC used technology or technologies that would stuff

24   cookies on only those computers that had not been previously stuffed by that Defendant.

25   The purpose of this action was to avoid discovery by eBay and/or CJ of evidence of

26   stuffing—e.g., by directly observing repeated stuffing to a test computer, by discovering

27   that a single user had multiple cookies pointing to the same affiliate or by discovering that

28   there was an abnormal ratio of cookies placed by DPS and KFC to the Revenue Actions

attributable to users referred by DPS and KFC—and thereby conceal the schemes from eBay's and/or CJ's monitoring activities. In addition, at certain relevant times DPS and/or KFC used technology that would avoid stuffing cookies on computers that appeared to be geographically located in San Jose, California (the location of eBay's headquarters) or Santa Barbara, California (the location of CJ's headquarters). The purpose of this action was to evade efforts by eBay and/or CJ to detect the cookie stuffing mechanism if they attempted to observe the wrongdoing from their normal places of business.

30.     eBay is informed and believes and, on that basis, alleges that DPS also used at least one additional technological measure to conceal its wrongdoing: DPS used images placed on web pages to effectuate its cookie stuffing scheme, and caused those images to be so small that they were effectively invisible to the user and, accordingly, difficult to detect.

31.     eBay is informed and believes and, on that basis, alleges that KFC also used at least one additional technological measure to conceal its wrongdoing: KFC used JavaScript code contained in web pages to effectuate its cookie stuffing scheme, and purposefully obscured the purpose and effect of that code so that, even when that code was discovered, it was difficult to determine its actual effect. This caused KFC's cookie stuffing to be difficult to detect, whether by human or machine efforts.

32.     eBay is informed and believes and, on that basis, alleges that in addition to these technological measures, DPS and KFC each actively sought to prevent detection by eBay and CJ by explicitly denying to eBay and/or CJ that any wrongdoing had occurred. For example, when Shawn Hogan was contacted by CJ in connection with suspicions of cookie stuffing by DPS, he attributed the suspicious activity to "coding errors," which he later purported to have "corrected." Brian Dunning also gave false information to eBay in response to questions about unusual activity regarding his account. Additional false statements intended to conceal the cookie stuffing activity are set forth below in paragraph 60 and are incorporated herein.

33.     As a result of the cookie stuffing schemes employed by DPS and KFC, DPS

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  and KFC accessed eBay's servers millions of times in an unauthorized manner that

2  violated the User Agreement and interfered with the proper working of those computers.

3  The majority of those acts of unauthorized access did not cause the improper payment of a

4  commission and did not involve the performance by CJ of any obligations under any

5  contract it had with any of the parties to this action.  A minority, but economically

6  significant, of those acts of unauthorized access caused eBay to pay commissions (via CJ)

7  to each of DPS and KFC for a substantial number of Revenue Actions that were in no way

8  related to the legitimate referral of any user by either DPS's or KFC's advertisements and

9  for which neither DPS nor KFC were due compensation.

10       34.     On January 4, 2008, CJ filed an action against Defendants Kessler's Flying

11  Circus, Brian Dunning and Todd Dunning for breach of contract and other claims based

12  on KFC's cookie stuffing scheme perpetrated against eBay.  CJ sought to recoup

13  commissions it had paid to those Defendants for the month of May 2007, after eBay

14  discovered KFC's cookie stuffing scheme and refused to reimburse CJ for the unearned

15  commissions it had paid to those Defendants for the previous month.  CJ's action was

16  recently settled on undisclosed terms, and a request for dismissal has been filed.  eBay

17  was not a party to CJ's action, and had no opportunity to litigate any issue in the CJ

18  action.  eBay does not seek recovery through this litigation of any of the monies sought by

19  CJ through its now-settled litigation against Defendants Kessler's Flying Circus, Brian

20  Dunning and Todd Dunning.

21                              **FIRST CAUSE OF ACTION**

22                         **(Violations of 18 U.S.C. § 1030)**

23       35.     eBay realleges each and every allegation set forth in Paragraphs 1 through

24  34, inclusive, and incorporates them by reference herein.

25       36.     Through their cookie stuffing schemes as described above, DPS and KFC

26  each knowingly, intentionally and with intent to defraud accessed eBay's computers

27  without authorization and/or exceeded their authorized access to eBay's computers in

28  order to further their fraudulent schemes.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

37.     DPS's and KFC's access of eBay's computers was unauthorized because the only purpose of that access was to defraud eBay. In addition, Defendants' access of eBay's computers was unauthorized and/or exceeded their authorized access, because each Defendant was a registered eBay user and/or was bound by the eBay User Agreement in effect at the time, as set forth in paragraph 26 above. The User Agreements that bound each of the Defendants were substantially similar. The User Agreements (a) prohibited the use of any "device, software or routine" to interfere with or attempt to interfere with the proper working of the eBay site or any activities conducted on the eBay site, and (b) required compliance with all applicable laws regarding the use of eBay's servers.

38.     The User Agreements were the only basis on which any Defendant had authorization to access eBay's site. No agreement entered into by any Defendant in connection with eBay's Affiliate Marketing Program, including but not limited to any Publisher Service Agreement that may have been entered into between CJ and one or more of Defendants and/or any Terms and Conditions of the Affiliate Marketing Program agreed to by one or more of Defendants, provides for or in any way contemplates such access. The User Agreements therefore govern and control any access to eBay's site, whether authorized or unauthorized, by Defendants. Defendants, through their cookie stuffing schemes, violated those User Agreements by accessing eBay's computers without authorization and/or exceeded the authorized access granted to them by the User Agreements.

39.     Upon information and belief, Defendants' access to eBay's computers that was either unauthorized or exceeded the authorization granted by the User Agreements did not always result in a commission being paid to any Defendant (for example, where a user, after having a cookie stuffed on his or her computer by one of Defendants, did not subsequently take any Revenue Action). In other cases, Defendants' access to eBay's computers that was unauthorized or exceeded the authorization granted by the User Agreements resulted in commissions being paid to Defendants for Revenue Actions

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  initiated by users that Defendants did not refer to eBay, which were in no way related to

2  Defendants' advertisements, and for which Defendants were due no compensation. In

3  both instances, Defendants' access caused harm to eBay's computers and caused damage

4  and loss to eBay within the meaning of 18 U.S.C. § 1030, regardless of whether any

5  commission was later paid to Defendants for any particular act of cookie stuffing.

6      40.     Upon information and belief, through their unauthorized access, Defendants

7  DPS and DOES 1-10 caused harm and damage to eBay's computers including, but not

8  limited to, impairment of the integrity of eBay's data, and caused loss to eBay including,

9  but not limited to, costs incurred by eBay in responding to and conducting an assessment

10 of the damage caused by these Defendants' cookie stuffing scheme. Through their

11 unauthorized access, Defendants DPS and DOES 1-10 also caused damage and loss to

12 eBay as a result of commissions being wrongfully paid to those Defendants. The loss to

13 eBay that resulted from the unauthorized access by Defendants DPS and DOES 1-10 was

14 incurred in each year from at least December 2003 through June 2007, and totaled more

15 than $5,000 in at least the one-month period ending June 30, 2007.

16     41.     Upon information and belief, through their unauthorized access, Defendants

17 KFC and DOES 12-20 caused harm and damage to eBay's computers including, but not

18 limited to, impairment of the integrity of eBay's data, and caused loss to eBay including,

19 but not limited to, costs incurred by eBay in responding to and conducting an assessment

20 of the damage caused by these Defendants' cookie stuffing scheme. Through their

21 unauthorized access, Defendants KFC and DOES 12-20 also caused damage and loss to

22 eBay as a result of commissions being wrongfully paid to those Defendants. The loss to

23 eBay that resulted from the unauthorized access by Defendants KFC and DOES 12-20

24 was incurred in each year from at least December 2004 through June 2007, and totaled

25 more than $5,000 in at least the one-year period ending in June 2007.

26     42.     eBay's computers are used in interstate and foreign commerce.

27     43.     DPS's and KFC's actions, whether or not they resulted in the payment of

28 any commissions to them, constitute violations of the Computer Fraud and Abuse Act, 18

- 12 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1 | U.S.C. § 1030, including but not limited to §§ 1030(a)(4), 1030(a)(5)(B) and
2 | 1030(a)(5)(C).

3 | 44. WHEREFORE, eBay prays for judgment against each of DPS and KFC, as
4 | more fully set forth below.

5 | **SECOND CAUSE OF ACTION**

6 | **(Violations of 18 U.S.C. § 1962(c))**

7 | 45. eBay realleges each and every allegation set forth in Paragraphs 1 through
8 | 44, inclusive, and incorporates them by reference herein.

9 | 46. Defendants Shawn Hogan's, Brian Dunning's, and Todd Dunning's
10 | unlawful, tortious and otherwise actionable conduct constitutes violations of 18 U.S.C. §
11 | 1962(c).

12 | 47. Defendant Shawn Hogan and DOES 1-10 (the "Hogan Group") engaged in
13 | activities through the company Digital Point Solutions. Digital Point Solutions has been
14 | in existence as a business entity since at least 1999. On information and belief, based on
15 | information provided on the company's website, from 1999 to the present, Digital Point
16 | Solutions has had at least four employees, including owner, President, CEO and Senior
17 | Systems Analyst Shawn Hogan, Vice President and Staff Systems Analyst R. Robin
18 | Quasebarth, Associate System Analyst Richard L. Crook, and Sales Representative D.
19 | Shawn Callahan. On information and belief, based on information provided on the
20 | company's website and information provided to an eBay employee by Defendant Shawn
21 | Hogan, at various times Digital Point Solutions also had other employees as well as a
22 | group of "volunteers" who provided services to Digital Point Solutions. Digital Point
23 | Solutions was incorporated on and/or before May 14, 2007. At all times relevant herein,
24 | Digital Point Solutions constituted an enterprise under RICO.

25 | 48. At all times relevant herein, through Digital Point Solutions, the Hogan
26 | Group associated with each other and others for the common purpose of causing millions
27 | of computers to access eBay's servers to defraud eBay of commission fees by designing
28 | and implementing the cookie stuffing scheme described above. Upon information and

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  belief, the Hogan Group's activities were ongoing, and Digital Point Solutions functioned

2  as a continuing unit in operating the fraudulent cookie stuffing scheme from

3  approximately December 2003 through June 2007.

4      49.    Defendants Brian Dunning, Todd Dunning and DOES 12-20 (the "Dunning

5  Group") engaged in activities through the companies Kessler's Flying Circus,

6  Thunderwood Holdings, Inc., Dunning Enterprise, Inc., and BrianDunning.com, and each

7  company constitutes a RICO enterprise.  Through Kessler's Flying Circus, Thunderwood

8  Holdings, Inc., Dunning Enterprise, Inc., and BrianDunning.com, the Dunning Group

9  associated with each other and others for the common purpose of defrauding eBay of

10 commission fees by designing and implementing the cookie stuffing scheme described

11 above.  Upon information and belief, the Dunning Group's activities were ongoing, and

12 Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc. and

13 BrianDunning.com functioned individually, and with each other, as continuing units in

14 operating the fraudulent cookie stuffing scheme from approximately December 2004

15 through June 2007.

16     50.    The members of the Hogan Group and Dunning Group each committed

17 multiple violations of the predicate act of mail and wire fraud, 18 U.S.C. § 1343, both

18 through their cookie stuffing schemes and through communications with eBay and

19 Commission Junction designed to fraudulently conceal those schemes.

20     51.    As described in Paragraphs 25-33 above, schemes to defraud eBay existed

21 by which the members of the Hogan Group and Dunning Group each stuffed eBay

22 cookies onto computers for the purpose of defrauding eBay of commission fees due only

23 for legitimate Revenue Actions associated with a given affiliate.  The members of the

24 Hogan Group and Dunning Group each participated in these schemes with the specific

25 intent to defraud eBay.  Use of the Internet was essential to the schemes: the members of

26 the Hogan Group and Dunning Group stuffed a cookie onto a computer when a user was

27 browsing the Internet, and the stuffed cookie was later read and recognized when that

28 Internet user accessed eBay's website on the Internet and either registered with the site,

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

purchased an item or engaged in some other Revenue Action.  The members of the Hogan
Group and Dunning Group each, by use of their technologies, caused users' web browsers
to convey a representation by the Hogan Group and/or the Dunning Group to eBay that
the user had accessed the eBay website via an advertisement placed by either DPS or
KFC, when in fact, a substantial portion of those users never knowingly or intentionally
visited the eBay website based on an advertisement placed by either DPS or KFC.  These
fraudulent acts and representations were repeated multiple times, and each act constitutes
a violation of 18 U.S.C. § 1343 through the use of interstate wires.  Moreover, because the
Hogan Group's and the Dunning Group's cookie stuffing activities were undertaken as
part of a scheme to defraud and for the purpose of executing that fraud by wire
transmissions, each instance of cookie stuffing constitutes a completed violation of 18
U.S.C. § 1343 regardless of whether any commission was credited or paid as a result.

52.     On or about June 2007, eBay undertook an investigation into suspected
cookie stuffing by the Hogan Group and the Dunning Group.  eBay was able to verify the
existence of the two schemes and to track specific instances of cookie stuffing through
several different methods.

53.     eBay first ran its own tests and was able to observe and confirm fraudulent
cookie stuffing by both the Hogan Group and the Dunning Group.

a.     For example, on or about June 5, 2007, an eBay employee visited the
website www.drago-sim.com using a secure computer that had its IP address masked (to
overcome countermeasures that prevented cookies from being stuffed onto computers
with San Jose IP addresses) and that was equipped to monitor and record Internet activity
occurring on the computer.  The website www.drago-sim.com was a participant in DPS's
advertising network and contained a DPS-controlled banner ad.  Although the eBay
employee never clicked on, or requested, any eBay ad or link to an eBay website, the
Hogan Group's code in the DPS-controlled banner ad secretly redirected the computer
being used by the eBay employee to an eBay website, and a DPS-associated cookie was
dropped.  eBay observed an identical cookie stuff by the Hogan Group on the same date

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

by visiting the site www.songlyrics.com, which was also a participant in the DPS ad network and which also contained a DPS-controlled banner ad.

       b.     Also on or about June 5, 2007, eBay was able to observe and record fraudulent cookie stuffing activity caused by the Dunning Group's wholinked and profilemaps applications. As with the investigation of the Hogan Group's cookie stuffing, secure computers equipped with Internet monitoring and recording equipment were directed to sites containing the Dunning Group's wholinked and profilemaps applications. Without any further action being taken by the computers' users, the Dunning Group's wholinked and profilemaps applications secretly redirected the computers to an eBay website, and KFC-associated cookies were stuffed onto the computers.

54.     In addition, on June 6, 2007, eBay asked Gallivan, Gallivan & O'Melia LLC ("GGO") to undertake a cookie stuffing investigation. On that date, a GGO employee visited the website www.jokes-time.com using a secure computer located in Mountain View, California that had its IP address masked and had been equipped to monitor and record Internet activity occurring on the computer. The jokes-time.com website was a participant in DPS's advertising network and contained a DPS-controlled banner ad. Without any action by the GGO employee other than visiting that website, the Hogan Group's code in the DPS-controlled banner ad secretly redirected the GGO computer to another DPS site and then to eBay's website, causing eBay's site to drop cookies that were associated with DPS onto the GGO computer. On or about June 14, 2007, an employee of GGO created a new eBay account using the computer that still contained the cookies stuffed by the Hogan Group. The GGO employee then purchased an item from eBay using the newly created account through the "buy it now" function. Using information provided by GGO, eBay then tracked this new account and purchase, and determined that DPS was credited both for the "new user" acquisition and for the sale.

55.     On or about June 6, 2007, GGO also performed a second cookie stuffing test from its offices located in the Seattle, Washington area, following the same steps taken in Mountain View. As in the Mountain View test, the Hogan Group's code stuffed

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1   DPS-associated cookies onto the GGO computer even though the computer user did not

2   navigate to eBay's website. An eBay "buy it now" purchase was made by a GGO

3   employee in the Seattle area the following day using the computer containing the stuffed

4   cookies. eBay was again able to track a commission from the sale that was credited to

5   DPS.

6        56.     Having confirmed the ongoing cookie stuffing by both the Hogan Group

7   and the Dunning Group, eBay next set out to determine the extent of that unlawful

8   activity. On or about June 8-19, 2007, eBay made certain alterations to its website to both

9   detect further evidence of the cookie stuffing and, if found, to assess the volume of cookie

10   stuffing by the Hogan Group and the Dunning Group. eBay placed a special "gif" image

11   on the eBay.com home page. This special gif was served to any browser receiving an

12   eBay cookie. eBay had observed that Defendants' cookie stuffing schemes caused the

13   user's browser to be secretly redirected to eBay's home page for only a short period of

14   time—sufficient time for the cookie to be stuffed and little or no more. A browser that

15   had been redirected to eBay for purposes of cookie stuffing would not access eBay's site

16   long enough to be served the special gif, but a legitimate browser redirect to eBay (during

17   which a user clicks on an ad and comes to the eBay site) would be served that gif. eBay

18   then examined the data or traffic sent by all of its affiliates, including DPS and KFC.

19   eBay was able to review this data with a tremendous amount of granularity, capturing

20   individual cookie stuffs by the Hogan Group and the Dunning Group. The following are

21   examples of such individual cookie stuffs:

22        •  On June 8, 2007, at approximately 12:32 p.m. PST, a cookie stuffed with

23           information for the affiliate using PID 2326993 was dropped from an eBay

24           California server to IP address 84.13.180.86. The user of this IP address was

25           located in Surrey, UK. PID 2326993 was an affiliate account number assigned to

26           KFC. The special gif was not served.

27        •  On June 8, 2007, at approximately 12:37 p.m. PST, a cookie stuffed with

28           information for the affiliate using PID 2028993 was dropped from an eBay

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

California server to IP address 83.67.105.219. The user of this IP address was located in South Yorkshire, UK. PID 2028993 was an affiliate account number assigned to KFC. The special gif was not served.

- On June 8, 2007, at approximately 12:52 p.m. PST, a cookie stuffed with information for the affiliate using PID 2028993 was dropped from an eBay California server to IP address 172.174.248.28. The user of this IP address was a customer utilizing the ISP America Online located in Virginia. PID 2028993 was an affiliate account number assigned to KFC. The special gif was not served.

- On June 8, 2007, at approximately 12:58 p.m. PST, a cookie stuffed with information for the affiliate using PID 2225634 was dropped from an eBay California server to IP address 68.57.17.37. The user of this IP address was located in Pennsylvania. PID 2225634 was an affiliate account number assigned to DPS. The special gif was not served.

- On June 9, 2007, at approximately 12:43 p.m. PST, a cookie stuffed with information for the affiliate using PID 2326993 was dropped from an eBay California server to IP address 81.104.118.168. The user of this IP address was located in Glasgow, Scotland. PID 2326993 was an affiliate account number assigned to KFC. The special gif was not served.

- On June 9, 2007, at approximately 12:56 p.m. PST, a cookie stuffed with information for the affiliate using PID 2225635 was dropped by an eBay California server on IP address 71.210.107.53. The user of this IP address was located in Arizona. PID 2225635 was an affiliate account number assigned to DPS. The special gif was not served.

- On June 11, 2007, at approximately 12:18 p.m. PST, a cookie stuffed with information for the affiliate using PID 2225634 was dropped by an eBay California server on IP address 206.40.234.2 18. The user of this IP address is located in Utah. PID 2225634 is an affiliate account number assigned to DPS. The special gif was not served.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1   The cumulative results of the investigation demonstrated that over 99% of the traffic

2   directed by DPS and KFC during the time period of the investigation did not receive the

3   gif image, and was therefore fraudulent cookie stuffing traffic. During the short period of

4   this investigation, the data demonstrated that the Hogan Group had stuffed over 650,000

5   cookies and the Dunning Group had stuffed close to 20,000 cookies.

6        57.    eBay also performed an additional analysis of historical data that uncovered

7   further evidence of cookie stuffing by the Hogan Group and the Dunning Group over the

8   period from April 1, 2004 through June 18, 2007. Cookie stuffing is premised on the

9   notion that if one stuffs a large number of Internet users, some subset of those users will

10  later come to eBay (by chance and through no action of the cookie stuffer) and take a

11  Revenue Action. eBay examined its historical data regarding the behavior of eBay users

12  in an effort to determine whether user behavior provided proof of cookie stuffing. eBay's

13  analysis showed that, in fact, there were substantial differences in the behavior of

14  legitimately-referred users and users referred by DPS and KFC, which supported the

15  conclusion that the Hogan Group and the Dunning Group engaged in cookie stuffing. For

16  legitimately-referred users, the historical data showed that a high percentage of Revenue

17  Actions (e.g., establishing a new eBay account or placing a winning bid on an item)

18  occurred within the first hour of a cookie drop. Such behavior was to be expected,

19  because the cookie was dropped at the same time that the user visited eBay's site and was

20  exposed to the content on the site that would drive a Revenue Action. The contrasting

21  historical data for DPS and KFC demonstrated that both the Hogan Group and the

22  Dunning Group had been engaged in cookie stuffing. Users allegedly referred by DPS

23  and/or KFC demonstrated behavior consistent with cookie stuffing and inconsistent with

24  legitimate referrals: those users did not take the high percentage of their Revenue Actions

25  during the first hour following the cookie drop and, instead, took Revenue Actions at a

26  nearly uniform rate over the life of the cookie. This behavior showed that those users had

27  not been exposed to the content of the eBay site at the same time that the cookie was

28  dropped; instead, the users had been stuffed and visited eBay at some random time after

- 19 -

1 the stuffing.

2   58. On information and belief, based on eBay's analysis and understanding of

3 how the Defendants' cookie stuffing schemes worked and on statements made by Todd

4 Dunning to one of eBay's employees, DPS and KFC retained electronic records of the IP

5 addresses of the individual computers they stuffed with cookies in order to prevent

6 stuffing multiple cookies on a single computer.

7   59. The Hogan Group and the Dunning Group fraudulently stuffed cookies onto

8 the computers of a large group of users without exposing them to the content on eBay's

9 site and a subset of those users later engaged in Revenue Actions that were unrelated to

10 any action by DPS or KFC but still produced enormous commissions for them.  In other

11 words, DPS and KFC received commissions based on Revenue Actions by users for

12 which they were not responsible.  But every act of cookie stuffing by the Hogan Group

13 and the Dunning Group, regardless of whether it resulted in the payment of a commission,

14 constituted a separate violation of 18 U.S.C. § 1343, because it constituted a use of

15 interstate wire communications in furtherance of the Defendants' schemes to defraud

16 eBay.

17   60. In addition to their cookie stuffing schemes, which occurred over several

18 years and involved hundreds of thousands or even millions of acts that each constituted a

19 separate violation of 18 U.S.C. § 1343, the Hogan Group and the Dunning Group also

20 engaged in efforts to conceal and avoid detection of their schemes through fraudulent

21 communications involving the interstate mails and wires.  Examples of such

22 communications include the following:

23  &bull; On or about September 5, 2005, after being contacted by (then) CJ employee

24   Christine Kim regarding suspicions of possible cookie stuffing by DPS,

25   Defendant Shawn Hogan falsely told Ms. Kim in a telephone conversation that the

26   apparent cooking stuffing arose from a "coding error" that had since been fixed.

27  &bull; On or about February 15, 2006, Todd Dunning telephoned eBay employee Dan

28   Burkhart and reported that DPS and Hogan were cookie stuffing, which was true.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

During the same telephone conversation, Mr. Dunning told Mr. Burkhart that his brother Brian Dunning was an honest affiliate. That statement was false. Mr. Dunning later told eBay employees that he had lied when he said that DPS and Mr. Hogan were cookie stuffing. That statement was also false.

- On or about August 9, 2006, Brian Dunning falsely told eBay employee Christine Kim in an email that he would explain KFC's "innovative" business model "in detail." Mr. Dunning subsequently provided Ms. Kim with descriptions of KFC's business model that failed to accurately describe KFC's methods, and created the false impression that KFC was actually driving users to eBay's site, instead of engaging in a fraudulent cookie stuffing scheme.

- On or about August 29, 2006, Brian Dunning falsely stated in an email to CJ employee Andrea Bardakos and eBay employee Christine Kim that the success of KFC's methods was based on "staggering amounts of up-front adoption."

- On or about August 31, 2006, Brian Dunning emailed CJ employees Andrea Bardakos and Jeff Ransdell, and eBay employee Christine Kim, thanking them for maintaining confidentiality regarding the "inner workings" of his business model and stating that "a conversation was 'due' at some point, especially given the high simplicity-to-effectiveness ratio of what we're doing." In fact, KFC's "effectiveness" in receiving commissions was due to its fraudulent cookie stuffing scheme.

- On or about September 1, 2006, eBay employee Christine Kim and Shawn Hogan conducted an instant message exchange during which Ms. Kim asked Mr. Hogan to provide specifics regarding the DPS ad network, and Mr. Hogan made various statements to actively conceal the existence of his cookie stuffing, including claims that his system "works like evolution in nature" and refusing to provide his code or analytics because "while it's really (REALLY) neat and would like to show everyone just to show off ... it's really not a good idea if I give it away."

- On or about September 7, 2006, Brian Dunning falsely stated in an email to eBay

- 21 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

employee Christine Kim that he was "absolutely confident" that KFC's methods were "in line with the intended spirit of the terms" of the AMP.

- In early November 2006, eBay employee Christine Kim questioned Shawn Hogan after an eBay employee based in Amsterdam had written to her about DPS's results in the Netherlands, noting that "[n]ormally we only see these low conversion rates when cookiedropping is involved." On or about November 6, 2006, Mr. Hogan falsely told Ms. Kim in a conversation via telephone or instant message that low conversion rates in the Netherlands were caused by Mr. Hogan's failure to "deep link" his ads there after a bug fix had been made.

- On or about January 22, 2007, Brian Dunning responded by email to eBay employee Christine Kim's query as to why KFC's "winning bids and clicks" were below the norm by falsely stating, "I wonder if the demographic of MySpace users has much to do with it. They're generally quite young, maybe they're too poor to win auctions." This statement was false and was intended to conceal his cookie stuffing because Mr. Dunning knew that the unusual statistics noted by Ms. Kim were the result of his cookie stuffing.

- On or about February 7, 2007, Brian Dunning falsely stated in an email to eBay employee Christine Kim that "in the past 3 days we've received click-throughs on ads from 97,743 profiles. That only counts profiles where someone clicked the ad, no telling how many other profiles people have added it to." In fact, as Mr. Dunning knew at the time, his click-throughs were the result of cookie stuffing and not from users clicking on ads.

61. Each violation of 18 U.S.C. § 1343 constitutes a separate instance of "racketeering activity" as defined in 18 U.S.C. § 1961(1) and was committed in furtherance of the conspiracy to defraud eBay of commission fees not legitimately earned by either DPS or KFC. Together, these violations constitute a pattern of racketeering activity: the violations have the same or similar purposes, results, participants, victims and/or methods of commission.

- 22 -

62.     The racketeering activity committed by each of the members of the Hogan Group and the Dunning Group affected the interstate activity of Internet web browsing. In addition, Internet marketing, including the marketing at issue here that utilizes advertisements seen by Internet users in all 50 states and provides commissions for actions taken by eBay users across all 50 states, is also an interstate activity that was affected by the racketeering activity committed by each of the members of the Hogan Group and Dunning Group.

63.     The actions of each of the members of the Hogan Group and the Dunning Group were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of eBay.  Therefore, eBay is entitled to an award of exemplary and punitive damages against each of the members of the Hogan Group and the Dunning Group, in an amount according to proof at trial.

64.     WHEREFORE, eBay prays for judgment against each of the members of the Hogan Group and the Dunning Group, as more fully set forth below.

### **THIRD CAUSE OF ACTION**

### **(Fraud)**

65.     eBay realleges each and every allegation set forth in Paragraphs 1 through 64, inclusive, and incorporates them by reference herein.

66.     DPS and DOES 1-10, by use of their cookie stuffing computer programs and/or code, caused users' web browsers to convey a representation by those Defendants to eBay that the user had accessed the eBay website via an advertisement placed by DPS. eBay is informed and believes and, on that basis, alleges that this conduct began in or around December 2003 and continued through at least June 2007.

67.     KFC and DOES 12-20, by use of their cookie stuffing computer programs and/or code, caused users' web browsers to convey a representation by those Defendants to eBay that the user had accessed the eBay website via an advertisement placed by KFC. eBay is informed and believes and, on that basis, alleges that this conduct began in or around December 2004 and continued through at least June 2007.

68.     DPS and KFC also made a number of false statements regarding their business methods, described above, in an effort to conceal their fraudulent cookie stuffing schemes from detection by eBay or CJ.

69.     The representations made and/or caused to be made by each of DPS, KFC and DOES 1-10 and 12-20 were in fact false.  The true facts were that a substantial portion of the users ostensibly referred by each of DPS, KFC and DOES 1-10 and 12-20 to the eBay site had not been referred by those Defendants, that those users had never knowingly or intentionally visited the eBay site based on any advertisement or referral from any of those Defendants, and that the information contained in cookies in those users' web browsers was actually the product of the false and misleading cookie stuffing schemes employed by each of DPS, KFC and DOES 1-10 and 12-20.

70.     When DPS, KFC and DOES 1-10 and 12-20 made these representations (or caused them to be made), they knew them to be false and made these representations (or caused them to be made) with the intention to deceive and defraud eBay and induce eBay to act in reliance on these representations.

71.     eBay, at the time these representations were made (or caused to be made) by DPS, KFC and DOES 1-10 and 12-20, was ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, eBay was induced to, and did, make commission payments to each of DPS and KFC (via CJ) in consideration for referrals that eBay believed to be legitimate and bona fide.  Had eBay known the true facts, it would not have made such commission payments.  eBay's reliance on the representations of DPS, KFC and DOES 1-10 and 12-20 was justified.

72.     As a proximate result of the fraudulent conduct of each of DPS, KFC and DOES 1-10 and 12-20, eBay paid commissions and fees to DPS and KFC (via CJ) for referrals that had never occurred, for which eBay received no value, and for which eBay owed nothing to DPS or KFC.

73.     As a proximate result thereof, eBay has been damaged in an amount to be proven at trial.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

74.     Defendants' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of eBay and, therefore, eBay is entitled to an award of exemplary and punitive damages against each of DPS, KFC and DOES 1-10 and 12-20, in an amount according to proof at trial.

75.     WHEREFORE, eBay prays for judgment against each of DPS, KFC and DOES 1-10 and 12-20, as more fully set forth below.

### FOURTH CAUSE OF ACTION

### (Violations of California Penal Code § 502)

76.     eBay realleges each and every allegation set forth in Paragraphs 1 through 75, inclusive, and incorporates them by reference herein.

77.     Each of DPS and KFC have knowingly and without permission: altered, damaged, deleted, destroyed, or otherwise used eBay's computer, computer system, or computer network in order to devise and execute a cookie stuffing scheme or artifice in order to defraud and deceive; and/or altered, damaged, deleted, destroyed, or otherwise used eBay's computer, computer system, or computer network in order to wrongfully control or obtain money and property; and/or accessed or caused to be accessed eBay's computer, computer system, or computer network.

78.     DPS's and KFC's unauthorized access and use of eBay's computers has damaged and caused loss to eBay.

79.     DPS's and KFC's actions constitute violations of California Penal Code § 502(c), whether or not any commissions were credited or paid as a result of those actions.

80.     DPS's and KFC's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of eBay and, therefore, eBay is entitled to an award of exemplary and punitive damages against each of DPS and KFC, in an amount according to proof at trial.

81.     WHEREFORE, eBay prays for judgment against each of DPS and KFC, as more fully set forth below.

- 25 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1

**FIFTH CAUSE OF ACTION**

2

**(Restitution and Unjust Enrichment)**

3       82.     eBay realleges each and every allegation set forth in Paragraphs 1 through

4    81, inclusive, and incorporates them by reference herein.

5       83.     Through their cookie stuffing schemes, as described above, each of DPS and

6    KFC received a benefit from eBay, in the form of artificially and fraudulently inflated

7    commissions paid to DPS and KFC (via CJ) for Revenue Actions that were not associated

8    with any referral from those Defendants.

9       84.     In light of DPS's and KFC's conduct, it would be unjust for DPS and KFC

10   to retain the benefits they obtained from eBay.

11      85.     DPS and KFC have been unjustly enriched by eBay's payments and should

12   be required in equity to make restitution of these payments to eBay.

13      86.     WHEREFORE, eBay prays for judgment against each of DPS and KFC, as

14   more fully set forth below.

15

**SIXTH CAUSE OF ACTION**

16

**(California Business and Professions Code § 17200)**

17      87.     eBay realleges each and every allegation set forth in Paragraphs 1 through

18   86, inclusive, and incorporates them by reference herein.

19      88.     Through their cookie stuffing schemes, as described above, each of DPS and

20   KFC engaged in unlawful, unfair and/or fraudulent business practices.  Such conduct by

21   each of DPS and KFC violates California Business and Professions Code § 17200 et. seq.

22      89.     As discussed herein, DPS's and KFC's business practices of engaging in

23   cookie stuffing were unlawful under state and federal laws, including but not limited to

24   the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the civil RICO statute, 18 U.S.C. §

25   1962(c), California Penal Code § 502, and constituted common law fraud.

26      90.     DPS's and KFC's conduct was also fraudulent and deceptive, and was

27   unfair to eBay, in that it offended established public policy, and/or was immoral,

28   unethical, oppressive, unscrupulous and substantially injurious to eBay.

- 26 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

91. As a direct result of DPS's and KFC's conduct, eBay has suffered an injury in fact and has lost money and/or property that has been wrongfully retained by each of DPS and KFC.

92. WHEREFORE, eBay prays for judgment against each of DPS and KFC, as more fully set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, eBay prays for judgment against Defendants, and each of them, for:

i. Judgment in favor of eBay and against all Defendants on all causes of action;

ii. An award of compensatory damages according to proof at trial;

iii. An award of punitive damages according to proof at trial;

iv. An award of treble damages against Defendants Shawn Hogan, Brian Dunning and Todd Dunning, pursuant to 18 U.S.C. § 1964 according to proof at trial;

v. An award requiring Defendants to disgorge all ill-gotten gains and to return the eBay funds by which Defendants have been unjustly enriched;

vi. An award of restitution, according to proof at trial;

vii. An injunction prohibiting Defendants from (a) disseminating, sharing or otherwise making available any cookie stuffing technology to others; (b) possessing, disseminating, sharing, or otherwise making available any technology intended or capable of being used to defraud eBay; and (c) having any further involvement with any person or entity participating in the eBay Affiliate Marketing Program;

viii. An award of pre-judgment and post-judgment interest;

ix. An award of attorney's fees and costs of suit incurred herein; and

x. Such other further relief as the Court may deem just and proper.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    Dated:  March 26, 2009                    O'MELVENY & MYERS LLP

2

3                                        By:    /s/ David R. Eberhart

4                                               David R. Eberhart
                                                Sharon M. Bunzel
5                                               Colleen M. Kennedy
                                                Attorneys for Plaintiff eBAY INC.
6

7

8                            **<u>DEMAND FOR JURY TRIAL</u>**

9    eBay hereby demands a trial by jury of all claims in this action.

10

11   Dated:  March 26, 2009                    O'MELVENY & MYERS LLP

12

13                                       By:    /s/ David R. Eberhart

14                                              David R. Eberhart
                                                Sharon M. Bunzel
15                                              Colleen M. Kennedy
                                                Attorneys for Plaintiff eBAY INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

# EXHIBIT 2

1   DAVID R. EBERHART (S.B. #195474)
    deberhart@omm.com
2   SHARON M. BUNZEL (S.B. #181609)
    sbunzel@omm.com
3   COLLEEN M. KENNEDY (S.B. #227107)
    ckennedy@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5   San Francisco, CA  94111
    Telephone:   (415) 984-8700
6   Facsimile:   (415) 984-8701

7   Attorneys for Plaintiff eBay Inc.

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN JOSE DIVISION**

11  EBAY INC.,                          Case No. C 08-4052 JF

12              Plaintiff,              **JOINT CASE MANAGEMENT
                                        STATEMENT AND [PROPOSED]**
13          v.                          **ORDER**

14  DIGITAL POINT SOLUTIONS, INC.,
    SHAWN HOGAN, KESSLER'S            Conference Date: September 25, 2009
15  FLYING CIRCUS, THUNDERWOOD        Time: 10:30 a.m.
    HOLDINGS, INC., TODD DUNNING,     Judge: Hon. Jeremy Fogel
16  DUNNING ENTERPRISE, INC.,
    BRIAN DUNNING,
17  BRIANDUNNING.COM, and DOES 1-
    20,
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

1    The parties to the above-entitled action jointly submit this Case Management

2    Statement and Proposed Order and request that the Court adopt it as its Case Management

3    Order in this case.  The parties, through counsel, have met and conferred on the matters

4    contained herein.

5    **I.    <u>JURISDICTION AND SERVICE</u>**

6         eBay's Statement:

7         eBay Inc.'s Second Amended Complaint ("SAC") alleges that Defendants, by

8    conducting fraudulent "cookie stuffing" schemes as described in more detail below, have

9    violated both federal and California law, including the federal Computer Fraud and Abuse

10   Act (the "CFAA"), 18 U.S.C. § 1030, and the federal civil RICO statute, 18 U.S.C. §

11   1962(c).  The Court therefore has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

12   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2) and

13   1391(c), and 18 U.S.C § 1965(a).  Defendants have previously filed motions to dismiss

14   the SAC and/or transfer this action to the Central District of California or to Los Angeles

15   County Superior Court based on their argument that the forum selection clause in the

16   Publisher Services Agreement between Defendants and Commission Junction, Inc.

17   ("CJI") governs this action.  Those motions were denied by the Court on August 17, 2009.

18        The named Defendants have been served with the SAC.

19        DPS Defendants' Statement:

20        Pursuant to the forum selection clause set forth in the Commission Junction

21   Publisher Services Agreement (PSA), of which Plaintiff is a third party beneficiary and

22   which Plaintiff incorporated by reference into the eBay Supplemental Terms &

23   Conditions, proper jurisdiction and venue for this action lies in the United States District

24   Court for the Central District or Los Angeles County Superior Court.  The DPS

25   Defendants contend that the foregoing applies equally with respect to Plaintiff's First

26   Cause of Action for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C.

27   §1030, as the damages Plaintiff seeks to recover thereunder are based on the alleged

28   improper payment of commissions to defendants under Plaintiff's affiliate marketing

1   program (AMP).  As with the other causes of action set forth in the SAC, such harms

2   specifically track the terms of the aforementioned AMP agreements.  The DPS

3   Defendants therefore contend that the PSA's forum selection clause is applicable to all

4   claims set forth in the SAC.

5        The DPS defendants were served with Plaintiff's Second Amended Complaint

6   (SAC) on March 26, 2009, and filed and served Answers thereto on August 31, 2009 upon

7   the Court's denial of the DPS Defendants' motion to dismiss the same.

8        <u>Todd Dunning, Dunning Enterprise, Inc., Brian Dunning, briandunning.com,</u>

9   <u>Thunderwood Holdings, Inc. and Kessler's Flying Circus Defendants ("Non-DPS</u>

10   <u>Defendants") Statement:</u>

11        The Non-DPS Defendants incorporate the substance of the DPS Defendants'

12   statement on jurisdiction and venue issues.  This action should be transferred to the

13   Central District where these defendants reside and did business with eBay's agent,

14   Commission Junction, Inc. under eBay's Affiliate Marketing Program.  The Non-DPS

15   Defendants have been served with the SAC and have filed their answers.

16   **II.**    **<u>FACTS</u>**

17        <u>eBay's Statement:</u>

18        eBay's SAC alleges that Defendants engaged in sophisticated fraudulent schemes

19   that were designed to and did defraud and cause harm to eBay over the course of at least

20   four years.  eBay's Affiliate Marketing Program is designed to increase traffic to eBay's

21   site through the placement of advertisements for eBay on third-party websites.  In this

22   program, compensation is provided by eBay to the persons and entities, known as

23   "affiliates," that advertise on behalf of eBay when the advertisement in question results in

24   a revenue generating action on eBay's site.  eBay uses cookies to identify the site that

25   referred the user to eBay and which affiliate, if any, should be credited with the referral

26   and receive the commission.

27        Defendants' engaged in "cookie stuffing" schemes intended to defraud eBay.

28   "Cookie stuffing" is a term used to describe the forced placement of a cookie on a

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

computer, typically by causing a cookie from a particular website to be placed on the user's computer without the user knowing that he or she visited the website that placed the cookie. Defendants accomplished this scheme through software programs and/or code that, unbeknownst to the user, redirected the user's computer to the eBay website without the user actually clicking on an eBay advertisement link, or even becoming aware that they had left the page they were previously viewing. As a result, the eBay site would be prompted to drop an eBay cookie on the user's computer. Defendants' scheme caused millions of users' computers to access eBay's computers in an unauthorized way and/or to exceed the authorized access to eBay's computers provided by eBay's User Agreement. The majority of those acts of unauthorized access did not cause the improper payment of a commission to defendants. A minority, but economically significant, proportion of those acts of unauthorized access caused eBay to pay unearned commissions to Defendants.[1]

Defendants' schemes have been ongoing since at least December 2003, and ended only when the FBI seized Defendants' computer equipment in June 2007 as part of an investigation into whether the fraudulent activities alleged by eBay in this case constitute federal crimes. Defendants' schemes have allowed them to receive payment from eBay for a substantial number of commissions to which they were not entitled. Moreover, Defendants used technological measures and engaged in activity specifically designed to frustrate attempts by eBay to discover Defendants' wrongdoing.

DPS Defendants' Statement:

Defendant Digital Point Solutions, Inc. is a California corporation. Per California Corporations Code section 200(c), it was not formed (and did not otherwise exist) until May 14, 2007, the date of its incorporation. Digital Point Solutions, Inc. never conducted business with Plaintiff and was never involved in Plaintiff's affiliate marketing program. It therefore denies the substantive allegations of the SAC and any allegation of wrongdoing in this case.

---

[1] Despite Defendants' claims to the contrary, CJI is not an indispensable party within the meaning of Fed. R. Civ. P. 19 because the Court may accord complete relief without CJI and CJI has not claimed an interest relating to the subject of this action.

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

Defendant Shawn Hogan is an individual residing in San Diego, California.  Mr. Hogan has conducted and continues to conduct business as a sole proprietorship.  In June of 2007, the Federal Bureau of Investigation seized a number of materials from Mr. Hogan.  Although Mr. Hogan denies that Plaintiff is entitled to any relief under the SAC, given the pending criminal investigation, Mr. Hogan has asserted his privilege against self-incrimination under the Fifth Amendment to the United States Constitution; the Federal Rules of Evidence, Rule 501; the California Constitution, Article 1, Section 15; and California Evidence Code section 940.  The DPS Defendants intend to seek a stay of this action pending the conclusion of the aforementioned criminal investigation.

Although Plaintiff has repeatedly grouped all defendants together, Defendants Digital Point Solutions, Inc. and Shawn Hogan are distinct from the "KFC" or "Dunning" defendants in this action.  Any alleged acts of those defendants, including any acts that may have taken place with respect to the Commission Junction lawsuit, are not attributable to the DPS Defendants.

Non-DPS Defendants' Statement:

The Non-DPS Defendants deny the truthfulness and accuracy of Plaintiff's entire narrative of the alleged facts of this case.  The true facts are until December 26, 2006, Todd Dunning was a general partner in defendant Kessler's Flying Circus ("KFC"), and after that date Dunning Enterprise, Inc. was a general partner in place of Todd Dunning. Thunderwood Holdings, Inc. is also a general partner of KFC.  KFC contracted with eBay's agent, Commission Junction, Inc. ("CJI"), to perform promotional advertising services for eBay.  KFC entered into a Publisher Service Agreement ("PSA") with CJI in April 2005, and eBay's Special Terms and Conditions were incorporated into that agreement.  eBay approved KFC to perform these services through CJI.  At all times, CJI and eBay had an agreement which obligated CJI to keep eBay fully aware of the activities of participants in the affiliate marketing program, to monitor, track and report on all promotional methods used by KFC to generate new customers for eBay.  If eBay was not aware of KFC's conduct under the affiliate marketing program, it was because

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1   Commission Junction, Inc. breached of its obligations to eBay.  The Non-DPS Defendants

2   relied on the approvals and authorizations by eBay representatives and Commission

3   Junction, Inc. for their conduct under the affiliate marketing program.  For these reasons,

4   Commission Junction, Inc. is an indispensable party to this action.  As recently as March

5   22, 2007, eBay stated to CJI that it was fully aware of KFC's "bizmodel", that KFC was

6   one of eBay's "top affiliates", and that its promotional efforts were "compliant" with the

7   Affiliate Marketing Program.  KFC received payment for its promotional activities from

8   CJI, not from eBay.  All payments received from CJI were for actual new customers who

9   registered at eBay and engaged on eBay's website in qualified revenue transactions within

10  a specified period of time based on KFC's promotional activity for eBay .  CJI monitored

11  all this activity and reported it to eBay as required by agreements between them.

12  Therefore there was no "artificial inflation" of commissions.

13          The Non-DPS Defendants have never had a business relationship to defendants

14  Shawn Hogan and Digital Point Solutions, Inc. (collectively "DPS").  DEI, Thunderwood

15  and KFC never agreed to eBay's User Agreement.  Therefore, Non-DPS Defendants

16  object to eBay's repeated and unsupported reference to all defendants in a collective

17  manner.  KFC was an entirely separate and independent business from DPS, and

18  accordingly, eBay must allege and prove its allegations separately against the Non-DPS

19  Defendants and/or KFC.  eBay is simply confusing the Court and these pleadings by its

20  repeated and unsupported collective allegations and references to all defendants as one

21  group or entity.

22  **III.    <u>LEGAL ISSUES</u>**

23          <u>eBay's Statement:</u>

24          There have been no changes since the previous Joint Case Management Statement.

25          <u>DPS Defendants' Statement</u>:

26          In addition to the issues previously identified, the DPS Defendants state that the

27  following legal issues are relevant to this case:

28

- 6 -

1.   Whether Plaintiff knew of, consented to, and actively encouraged the conduct at issue because it resulted in a direct benefit to Plaintiff.

2.   Whether Plaintiff's action is barred by the one-year contractual limitations period set forth in the PSA, which must be read as "a part" of the eBay Supplemental Terms & Conditions under the doctrine of incorporation by reference.

3.   Whether Plaintiff's action is barred by the applicable statutes of limitation including those set forth in 18 U.S.C. §1030(g), 15 U.S.C. §15b (as applied to 18 U.S.C. §1962, 1964), California Penal Code §502(e)(5), California Code of Civil Procedure §§338, 339, and California Business & Professions Code §17208.

4.   Whether the action should be stayed pending the conclusion of the ongoing criminal investigation of the United States Attorney's Office.

Non-DPS Defendants' Statement:

In addition to the issues identified by the DPS Defendants above, the Non-DPS Defendants incorporate their Affirmative Defenses alleged in their answers to the Second Amended Complaint and add the following legal issues.

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1.     Whether Plaintiff is barred from any and all recovery because it authorized, ratified and approved of KFC's conduct, and/or by the general release provided to the Non-DPS Defendants by Plaintiff's agent, Commission Junction, Inc.?

2.     Whether Plaintiff is barred from any and all recovery because of the authorization, ratification and approval of KFC's promotional activities for eBay by Plaintiff's agent, Commission Junction, Inc.?

3.     Whether there is an absence of a necessary party to this action, namely Commission Junction, Inc., such that the Court cannot grant relief to the Plaintiff?

4.     Whether Plaintiff is barred from any recovery because eBay would be unjustly enriched by any award in this case since KFC in fact generated new customers and/or revenues for eBay as requested and authorized by eBay's and CJI's programs?

5.     Whether Plaintiff is barred from any recovery by equitable doctrines because of the damage it has caused to the Non-DPS Defendants by making untrue and unfounded allegations to the FBI to create a federal investigation for the purpose of obtaining a litigation advantage in this case?

6.     Whether Plaintiff received the benefit of promotional services by KFC for which commissions are due and owing?

7.     Whether Plaintiff can prove damages with a reasonable certainty by distinguishing between commissions that were properly earned and those that it claims were not properly earned under the Affiliate Marketing Program as a result of alleged "cookie stuffing"?

8.     Whether Plaintiff can prove any damages or losses as defined and required by 18 U.S.C. § 1030 *et.seq.* and/or California Penal Code § 502?

## IV.   <u>PENDING AND ANTICIPATED MOTIONS</u>

<u>eBay's Statement</u>:

There are no motions currently before the Court.  eBay anticipates the need to file a motion to compel responses to eBay's Requests for Admission, First Set of Interrogatories and First Set of Requests for Production from Defendants Shawn Hogan, Digital Point Solutions, Inc. ("DPS"), Brian Dunning, Thunderwood Holdings, Inc., BrianDunning.com, Kessler's Flying Circus, Todd Dunning and Dunning Enterprise, Inc. based on the inapplicability of the Fifth Amendment privilege against self-incrimination. eBay contends that it has satisfied its meet and confer obligations under Civil L.R. 37-

1(a). Some Defendants have asked for additional meet and confer discussions; although eBay will engage in those discussions in good faith, Defendants' longstanding refusal to provide complete discovery—as well as their stated intention to file a motion to stay all discovery—leads eBay to the conclusion that motions to compel are unavoidable.

eBay also anticipates the need to file a motion to compel responses from all Defendants to the requests in eBay's First Set of Requests for Production that seek information regarding Defendants' financial condition, including requests for Defendants' financial statements and tax returns.

It may also prove necessary to file motions to compel against third parties NetHere, Inc. ("NetHere") and Rackspace US, Inc. ("Rackspace") for production of documents pursuant to the subpoenas issued by eBay, discussed in more detail below.

In addition, eBay anticipates the need to file a motion to strike the Answer to eBay's SAC filed jointly by Defendants Brian Dunning, Kessler's Flying Circus, Thunderwood Holdings, Inc. and BrianDunning.com, based on the improper assertion of the Fifth Amendment privilege by corporate entities.

eBay anticipates filing a motion for summary judgment or summary adjudication following the close of discovery. eBay further anticipates filing motions in limine before trial.

DPS Defendant's Statement:

Defendants Digital Point Solutions, Inc. and Shawn Hogan anticipate filing a motion to stay the action pending the conclusion of the criminal investigation. The parties previously agreed to continue the initial Case Management Conference because of the ongoing nature of the investigation. The DPS Defendants further anticipate filing a motion for summary judgment and/or adjudication as well as a motion to transfer and/or dismiss on the grounds of forum non conveniens. In addition, Mr. Hogan will seek leave to amend his Answer to substantively respond to the allegations of the SAC upon the conclusion of the criminal investigation and, to the extent necessary thereafter, will move to exclude any reference to the assertion of the Fifth Amendment at trial or otherwise.

Finally, to the extent the action is not dismissed or transferred, the DPS Defendants anticipate requesting bifurcation and/or separate trials as to each respective defendant group.

### Non-DPS Defendants' Statement:

The Non-DPS Defendants incorporate the substance of the DPS Defendants' statement above regarding their similar anticipated motions.

## V.   **AMENDMENT OF PLEADINGS**

### eBay's Statement:

eBay filed its SAC on March 26, 2009, and does not anticipate the need for any further amendments.  Defendants' motions to dismiss the SAC and/or transfer were denied on August 17, 2009.  On August 31, 2009, DPS and Shawn Hogan answered the SAC.  On September 9, 2009, the remaining Defendants answered the SAC.  If discovery shows that Defendants used additional entities to effectuate their schemes, and if the currently named Defendants did not succeed to the assets and liabilities of those entities, eBay may seek leave to amend its complaint to conform to the evidence and to substitute those entities for current Doe defendants.

### DPS Defendant's Statement:

Given the pending criminal investigation, Mr. Hogan has asserted his Fifth Amendment privilege in answering the SAC.  As noted above, Mr. Hogan intends to seek leave to amend his Answer upon the conclusion of the investigation.

### Non-DPS Defendants Statement:

Given the pending criminal investigation, Todd Dunning, Brian Dunning, Briandunning.com, Thunderwood Holdings, Inc. and KFC herein asserted the Fifth Amendment privilege in answering the SAC.  As noted above, the Non-DPS Defendants intend to seek leave to amend his Answer upon the conclusion of the investigation.

## VI.   **EVIDENCE PRESERVATION**

There have been no changes since the previous Joint Case Management Statement.

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

VII.  **DISCLOSURES**

The parties exchanged their initial disclosures on January 8, 2009.  Defendants

DPS, Inc. and Shawn Hogan served supplemental initial disclosures on February 4, 2009.

eBay served amended initial disclosures on April 2, 2009.

VIII.  **DISCOVERY PLAN**

eBay's Statement:

Discovery is open in this action, and eBay is proceeding with full fact discovery.

eBay served its First Set of Requests for Production, First Set of Interrogatories, and First

Set of Requests for Admission to all Defendants on January 22, 2009.  In response, Brian

Dunning, Todd Dunning, and Shawn Hogan invoked their privileges against self-

incrimination under the Fifth Amendment.  The remaining Defendants (all entities) also

purported to invoke the individuals' Fifth Amendment privilege, claiming that any

provision of responses by the entities would compromise the individuals' rights against

self-incrimination.  However, Defendants Dunning Enterprise, Inc., BrianDunning.com,

Thunderwood Holdings, Inc. and Kessler's Flying Circus did provide substantive

responses to eBay's First Set of Requests for Production.

eBay served its Second Set of Requests for Production to all Defendants on May 4,

2009.  All Defendants responded substantively to these requests and did not invoke any

purported Fifth Amendment privileges against self-incrimination.  Defendants Brian

Dunning, BrianDunning.com, Thunderwood Holdings, Inc. and Kessler's Flying Circus

have not yet produced any documents in response to these Requests despite a commitment

to do so at a time and place mutually convenient to the parties.

Additionally, eBay served third-party subpoenas for documents on Commission

Junction, Inc. and their counsel Ernster Law Offices on May 4, 2009.  eBay also served

third-party subpoenas for documents on NetHere on June 3, 2009 and on Rackspace on

June 4, 2009—both of which are entities that have provided server hosting and co-location

services to Defendants.  eBay served amended subpoenas on NetHere and Rackspace on

June 9, 2009.  Rackspace has stated its intention to produce some limited responsive

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1   documents related to BrianDunning.com that have first been provided to his counsel for

2   review at his counsel's request.  NetHere has indicated that it does not have control of the

3   responsive documents and that those documents are in the exclusive control of DPS.

4       Defendants have served no discovery requests to eBay, including any requests for

5   production of the documents that the non-DPS Defendants now mistakenly contend eBay

6   was required to provide with its initial disclosures.  Rule 26 does not require a production

7   of documents as part of the initial disclosures, as subsection 26(a)(1)(A)(ii) makes clear.

8   The documents themselves are available to Defendants through the normal discovery

9   process at any time that Defendants see fit to propound discovery requests on eBay.

10      The parties have previously agreed that phasing of discovery is not appropriate.

11      Pursuant to the attached schedule, eBay proposes that fact discovery close on April

12  30, 2010 and expert discovery close on July 30, 2010.

13      Certain materials relevant to fact discovery in this action were seized by the FBI

14  from Defendants in June 2007 and, to eBay's understanding, only some materials have

15  been returned to Defendants.  Defendants have indicated that they do not possess copies

16  of the materials still in the FBI's possession.  However, the responses to, and meet and

17  confer process resulting from, eBay's subpoenas to NetHere and Rackspace lead eBay to

18  conclude that many of the same materials are available to Defendants from NetHere and

19  Rackspace.  Accordingly, eBay will seek their production pursuant to the amended

20  subpoenas served on those entities and through the motions to compel production directly

21  from Defendants described above.

22      The Defendants have previously proposed that the limitations imposed by the

23  discovery rules be modified as follows: 10 depositions increased to 25, and 25

24  interrogatories increased to 50.  Although eBay believes that no modifications are

25  necessary, eBay is amenable to increasing the interrogatories to 50.  The increase in

26  depositions proposed by the Defendants, however, is not necessary or appropriate in this

27  case; eBay will agree to an increase in depositions from 10 to 15.

28      The parties filed a stipulated protective order, which was signed by this Court on

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1    June 26, 2009.

2           DPS Defendants' Statement:

3           Given the pending criminal investigation discussed above, Defendant Shawn

4    Hogan has asserted his Fifth Amendment privilege in response to Plaintiff's discovery

5    requests. With respect to Plaintiff's requests for production, Plaintiff contends that the

6    assertion of the Fifth Amendment is not appropriate based on the FBI's prior seizure of

7    materials. The DPS Defendants have provided Plaintiff with authority regarding the

8    testimonial aspects of producing documents and contend that the seizure does not render

9    the Fifth Amendment obsolete. Plaintiff has not yet provided responsive authority but the

10    DPS Defendants will continue to meet and confer in good faith regarding the same. With

11    respect to the seizure, it appears that all computer-related materials have been returned by

12    the FBI. However, the scope of the seizure is not entirely clear and it appears that some

13    physical documents are still in the possession of the FBI and/or U.S. Attorney's Office.

14           Because Digital Point Solutions, Inc. never conducted business with Plaintiff and

15    was never involved in Plaintiff's affiliate marketing program, it does not have any

16    documents or information relevant to the SAC. The Fifth Amendment has been properly

17    asserted because the breadth of the definitions of "DPS" set forth in plaintiff's discovery

18    requests are such that the requests arguably seek information from Mr. Hogan

19    individually. In that regard, Plaintiff has been provided with authority indicating that a

20    sole proprietorship may assert the Fifth Amendment privilege and is not subject to the so-

21    called "collective entity" rule.

22           Given the foregoing, and because it appears that the FBI has yet to return any

23    seized materials to the non-DPS Defendants, a stay of the action is warranted and

24    appropriate and it appears that all defendants intend to move for such a stay. The DPS

25    Defendants' position is that discovery dates should not be set until after the motion for

26    stay has been adjudicated.

27           To the extent dates are set at the Case Management Conference, fact and expert

28    discovery should not close until November 2010 and March 2011, respectively (these

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1   dates may need to be further extended depending on when the criminal investigation is

2   resolved).  In light of the expansive timeframe of the alleged wrongdoing and the number

3   of potential percipient and party witnesses associated with Commission Junction, Plaintiff,

4   and Plaintiff's subsidiaries, 25 to 30 depositions are warranted in this case.

5           Non-DPS Defendants' Statement:

6           Given the pending criminal investigation discussed above, Defendant Todd

7   Dunning, Brian Dunning, briandunning.com, Thunderwood Holdings, Inc. and Kessler's

8   Flying Circus asserted the Fifth Amendment privilege in response to Plaintiff's discovery

9   requests.  With respect to Plaintiff's requests for production, Todd Dunning and DEI have

10  produced the relevant, non-privileged documents in their possession, custody and control.

11  With respect to the documents seized by the FBI, Todd Dunning and DEI are not aware of

12  whether the FBI has returned any documents seized from Defendant Brian Dunning or

13  whether any documents remain in the possession of the FBI and/or U.S. Attorney's

14  Office.

15          Based on the new allegations in the SAC regarding eBay's investigations and the

16  terms of the Master Advertiser Service Agreement ("MASA") between eBay and

17  Commission Junction, Inc., it appears that eBay has not fulfilled its initial disclosure

18  obligations to provide all known relevant documents to defendants.  At a minimum, the

19  reports alleged in the SAC have not been provided, and the reports prepared by

20  Commission Junction, Inc. as required by the MASA have not been provided.  There are

21  also documents that were produced by Commission Junction, Inc. in the now-settled State

22  Court action that indicate eBay has extensive email communications and possibly other

23  documents that have not been provided as initial disclosures.  eBay should be required to

24  update and complete its initial disclosure requirements.

25          Given these facts, a stay of the action is warranted and appropriate and it appears

26  that all defendants intend to move for such a stay.  The Non-DPS Defendants' position is

27  that discovery dates should not be set until after the motion for stay has been adjudicated.

28          To the extent dates are set at the Case Management Conference, fact and expert

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

discovery should not close until November 2010 and March 2011, respectively (these dates may need to be further extended depending on when the criminal investigation is resolved).  In light of the expansive timeframe of the alleged wrongdoing and the number of potential percipient and party witnesses associated with Commission Junction, Plaintiff, and Plaintiff's subsidiaries, up to 25 to 30 depositions may be warranted in this case.  If the Court does not stay this case, it is appropriate to provide a longer schedule for discovery and trial preparation in the expectation that the criminal investigation will resolve during this period.  Then the Non-DPS Defendants would be able to withdraw the assertion of the Fifth Amendment privilege, and fully participate in the defense of the case.

IX.    **RELATED CASES**

eBay's Statement:

eBay is not aware of any related cases.

DPS Defendants' Statement:

The DPS Defendants are not aware of any related cases.

Non-DPS Defendants' Statement:

The Non-DPS Defendants are not aware of any related cases.

X.    **RELIEF**

There have been no changes since the previous Joint Case Management Statement.

XI.    **SETTLEMENT AND ADR**

eBay's Statement:

The parties have discussed the possibility of engaging in alternative dispute resolution.  Defendants have disclaimed that they were involved in any cookie stuffing.  eBay anticipates that the outstanding discovery requests will provide direct evidence to the contrary.  Consequently, it is eBay's position that any ADR process would not be productive until Defendants have materially complied with the long-outstanding discovery requests.

DPS Defendants' Statement:

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1   The DPS Defendants' position is that the parties are in a position to begin

2   discussing settlement.  While the DPS Defendants of course anticipate that further

3   discovery will be beneficial in evaluating settlement positions, particularly regarding the

4   extent to which Plaintiff was aware of and encouraged any conduct at issue and the extent

5   to which Plaintiff's claims are time-barred under the discovery rule, there is a sufficient

6   basis to engage in preliminary settlement discussions.

7   Non-DPS Defendants' Statement:

8   The Non-DPS Defendants believe that early efforts at settlement should be

9   seriously pursued.  The Non-DPS Defendants do not believe that further discovery is

10  likely to reveal substantial new facts that would dramatically impact settlement

11  possibilities.  An early settlement, if possible, is in the best interests of these defendants,

12  and presumably Plaintiff.

13  **XII.   MAGISTRATE JUDGE**

14  There have been no changes since the previous Joint Case Management Statement.

15  **XIII.  OTHER REFERENCES**

16  There have been no changes since the previous Joint Case Management Statement.

17  **XIV.   NARROWING OF ISSUES**

18  There have been no changes since the previous Joint Case Management Statement.

19  **XV.   EXPEDITED SCHEDULE**

20  There have been no changes since the previous Joint Case Management Statement.

21  **XVI.   SCHEDULING**

22  The parties' proposed schedules are attached as Exhibit A.

23  **XVII.   TRIAL**

24  eBay's Statement:

25  There have been no changes since the previous Joint Case Management Statement.

26  DPS Defendants' Statement:

27  Per the terms of the PSA, the right to a jury trial has been waived.  Separate trials

28  are appropriate to avoid prejudice in this case because the two defendant groups are

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

wholly distinct.  While the length of trial is difficult to anticipate at this time, the DPS Defendants estimate that trial may take 12 days or more.

Non-DPS Defendants' Statement:

Per the terms of the PSA, the right to a jury trial has been waived.  Separate trials are appropriate to avoid prejudice in this case because the two defendant groups are wholly distinct.  While the length of trial is difficult to anticipate at this time, the Non-DPS Defendants estimate that trial may take 12 days or more.

## XVIII.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

eBay's Statement:

There have been no changes since the previous Joint Case Management Statement.

DPS Defendants' Statement:

Commission Junction, as Plaintiff's direct agent in administering the AMP, is an interested party.

Non-DPS Defendants' Statement:

Commission Junction, as Plaintiff's direct agent in administering the AMP, is an interested party.

Dated:    September 14, 2001          DAVID R. EBERHART
                                      SHARON M. BUNZEL
                                      COLLEEN M. KENNEDY
                                      O'MELVENY & MYERS LLP


                                      By:  /s/ *David R. Eberhart*
                                           David R. Eberhart

                                      *Attorneys for Plaintiff*
                                      eBay Inc.

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1   Dated:   September 14, 2001          LEO J. PRESIADO
                                        RUS, MILIBAND & SMITH, A
2                                       PROFESSIONAL CORPORATION

3

4                                       By: /s/ *Leo J. Presiado*
                                             Leo J. Presiado
5
                                        *Attorneys for Defendants*
6                                       Thunderwood Holdings, Inc., Brian
                                        Dunning and BrianDunning.com
7

8   Dated:   September 14, 2001          STEWART H. FOREMAN
                                         FREELAND, COOPER & FOREMAN,
9                                        LLP

10

11                                      By: /s/ *Stewart H. Foreman*
                                             Stewart H. Foreman
12
                                        *Attorneys for Defendants*
13                                      Todd Dunning and Dunning Enterprise,
                                        Inc.
14

15  Dated:   September 14, 2001          PATRICK K. MCCLELLAN
                                         LAW OFFICE OF PATRICK K.
16                                       MCCLELLAN

17

18                                      By: /s/ *Patrick K. McClellan*
                                             Patrick K. McClellan
19
                                        *Attorney for Defendant*
20                                      Kessler's Flying Circus
21

22  Dated:   September 14, 2001          SEYAMACK KOURETCHIAN
                                         COAST LAW GROUP, LLP
23

24                                      By: /s/ *Ross Campbell*
                                             Ross Campbell
25

26

27

28

                           - 18 -      JOINT CASE MANAGEMENT STATEMENT
                                       AND [PROPOSED] ORDER - C 08-4052 JF

*Attorneys for Defendants*
Digital Point Solutions, Inc. and Shawn
Hogan

I, David R. Eberhart, am the ECF User whose ID and password are being used to file this Joint Case Management Statement and [Proposed] Order.  In compliance with General Order 45, X.B., I hereby attest that Leo Presiado, Stewart Foreman, Patrick McClellan, and Ross Campbell have concurred in this filing.

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

1
2

# **CASE MANAGEMENT ORDER**

3       The Case Management Statement and Proposed Order is hereby adopted by this

4   Court as the Case Management Order for the case, and the parties are ordered to comply

5   with this Order.  In addition, the Court orders that a further Case Management Conference

6   will be held on _____.

7
8       **IT IS SO ORDERED.**

9

10

Dated: _____

11

12                                                    _____

13                                                    The Honorable Jeremy Fogel
                                                      United States District Court Judge
14                                                    Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

EXHIBIT A

| Event | eBay's Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Fact discovery closes | April 30, 2010 | November 2010 |
| Last day for expert reports on merits | June 18, 2010 | |
| Last day for depositions of experts | July 2, 2010 | |
| Last day for responsive expert reports | July 16, 2010 | |
| Close of expert discovery | July 30, 2010 | March 2011 |
| Last day to file dispositive motions | September 3, 2010 | |
| Oppositions to dispositive motions due | October 8, 2010 | |
| Reply briefs in support of dispositive motions due | October 29, 2010 | |
| Hearing on dispositive motions | November 19, 2010 | |
| Required Meeting Prior to Pretrial Conference | January 4, 2011 | |
| Pretrial Conference Statement | January 10, 2011 | |
| Pretrial Conference | January 24, 2011 | |
| Trial | March 7, 2011 | September 2011 |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER - C 08-4052 JF

# EXHIBIT 3

1   Seyamack Kouretchian (State Bar No. 171741)
2   Seyamack@CoastLawGroup.com
    Ross M. Campbell (State Bar No. 234827)
3   Rcampbell@CoastLawGroup.com
    COAST LAW GROUP, LLP
4   1140 South Coast Highway 101
    Encinitas, California 92024
5   Tel: (760) 942-8505
    Fax: (760) 942-8515
6

7   Attorneys for Defendants, SHAWN HOGAN
    and DIGITAL POINT SOLUTIONS, INC.
8

9               **UNITED STATES DISTRICT COURT**

10          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12   EBAY, INC.,                          )   Case No. CV 08-04052 JF PVT
                                          )
13              Plaintiff,                )   **DEFENDANTS DIGITAL POINT**
                                          )   **SOLUTIONS, INC. AND SHAWN**
14        v.                              )   **HOGAN'S NOTICE OF MOTION AND**
                                          )   **MOTION FOR STAY OF PROCEEDINGS;**
15   DIGITAL POINT SOLUTIONS, INC., SHAWN )   **MEMORANDUM OF POINTS &**
     HOGAN, KESSLER'S FLYING CIRCUS,      )   **AUTHORITIES IN SUPPORT THEREOF**
16   THUNDERWOOD HOLDINGS, INC., TODD     )
     DUNNING, DUNNING ENTERPRISE, INC.,   )
17   BRIAN DUNNING, BRIANDUNNING.COM,     )   Date:   November 20, 2009
     and Does 1-20,                       )   Time:   9:00 a.m.
18                                        )   Dept.:  Courtroom 3
                                          )
19              Defendants.               )
                                          )
20   _____)

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 20, 2009 at 9:00 AM, or as soon thereafter as the matter can be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, defendants DIGITAL POINT SOLUTIONS, INC. and SHAWN HOGAN will move this Court for an order staying this action pending resolution of the parallel criminal investigation of the United States Attorney's Office for the Northern District of California and the Federal Bureau of Investigation. In the alternative, said Defendants shall move for a stay of all discovery in this action for a period of six months in the interests of justice.

As more fully set forth in the following Memorandum of Points and Authorities, this Motion is made on the grounds that a stay is necessary to protect Mr. Hogan's Fifth Amendment rights in connection with a criminal proceeding arising from the same underlying factual issues that give rise to this action. In addition, the action should be stayed as to defendant Digital Point Solutions, Inc. because Mr. Hogan is the only person that can speak on behalf of the corporation and, as such, defendant Digital Point Solutions, Inc. will be greatly prejudiced by its inability to meaningfully defend itself in this action.

Defendants' motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declarations of Seyamack Kouretchian and Ross M. Campbell, the records and file herein, and upon such other oral and documentary evidence as may be presented at the hearing on this motion.

DATED: October 16, 2009                       s/Ross M. Campbell

                                           COAST LAW GROUP, LLP
                                           Attorneys for Defendants, Shawn Hogan
                                           and Digital Point Solutions, Inc.

1

**TABLE OF CONTENTS**

2

MEMORANDUM OF POINTS & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3

    I.       SUMMARY OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4

    II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5

    III.    LEGAL STANDARD AND SCOPE OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6

    IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

          A.     Extent to which Mr. Hogan's Fifth Amendment Rights are Implicated . . . . . . . . 6

8

                1.     Similarity of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9

                2.     Potential for Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10

                3.     Status of Parallel Criminal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11

                4.     Stay as to Digital Point Solutions, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12

          B.     Plaintiff's Interests and Potential Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13

          C.     Interests of the Court and Judicial Economy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14

                 1.     Potential for Resolution of Common Issues . . . . . . . . . . . . . . . . . . . . . . . 11

15

                 2.     Avoiding Unnecessary Law and Motion Practice . . . . . . . . . . . . . . . . . . 12

16

          D.     Interests of Third Parties and the Public . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17

    V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*United States v. Kordel* (1970)
  397 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>**Federal Cases**</u>

*Am. Motorists Ins. Co. v. Bridger Pub. Sch. Dist. #2* (D. Mont. 2007)
  LEXIS 30140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brock v. Tolkow* (E.D.N.Y. 1985)
  109 F.R.D. 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 12

*Chao v. Fleming* (W.D. Mich. 2007)
  498 F. Supp 2d 1034 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 11, 12

*Continental Insurance Co. v. Cota* (N.D. Cal. 2008)
  WL 4298372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Fed. Savings & Loan Ins. Corp. v. Molinaro* (9th Cir. 1989)
  889 F.2d 899 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Adelphia Communs. Secs. Litig* (E.D. Pa. 2003)
  LEXIS 9736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Lewisvile Properties, Inc.* (5th Cir. 1988)
  849 F.2d 946 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Javier H. v. Garcia-Botello* (W.D.N.Y. 2003)
  218 F.R.D. 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

*Jones v. Conte* (N.D. Cal. 2005)
  LEXIS 46962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 11, 12

*Kashi v. Gratsos* (2nd Cir. 1986)
  790 F.2d 1050 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Keating v. Office of Thrift Supervision* (9th Cir. 1995)
  45 F.3d 322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Medina v. Argent Mortg. Co.* (N.D. Cal. 2006)
  LEXIS 30582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 11

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.* (9th Cir. 1983)
        708 F.2d 1458 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Par Pharm. Sec. Litig.* (S.D.N.Y 1990)
        133 F.R.D 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reyes v. Freebery* (Del. 2004)
        LEXIS 15018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*SEC v. Dresser Indus.* (D.C. Cir. 1980)
        628 F.2d 1368 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*SEC v. Schroeder* (N.D. Cal. 2008)
        LEXIS 6527 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Shell Offshore v. Courtney* (E.D. La. 2006)
        LEXIS 49973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D. Cal. 2009)
        LEXIS 60849 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 9, 11

*United States v. $557,933.89, More or Less in U.S. Funds* (E.D.N.Y. 1998)
        LEXIS 22252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Certain Real Property & Premises* (E.D.N.Y. 1989)
         751 F. Supp. 1060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Volmar Distribs. v. New York Post Co.* (S.D.N.Y. 1993)
        152 F.R.D. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Walsh Securities, Inc. v. Cristo Property Management, Ltd.* (D.N.J. 1998)
        7 F. Supp 2d 523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 11, 12, 13

**Federal Statutes and Regulations**

18 U.S.C. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 7, 9, 11

18 U.S.C. §1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1

2

**MEMORANDUM OF POINTS & AUTHORITIES**

**I. SUMMARY OF MOTION**

3

4

5

6

7

8

9

10

11

12

Defendants Shawn Hogan and Digital Point Solutions, Inc. (collectively, the DPS Defendants) request that the Court exercise its discretion to stay this action pending resolution of the parallel criminal investigation of the United States Attorney's Office for the Northern District of California (USAO) and the Federal Bureau of Investigation (FBI). In the alternative, the DPS Defendants request that the Court, at a minimum, stay all discovery in this action for a period of six months to avoid the potential for prejudice in this case. A stay of this action is warranted in the interests of justice, as the scope of the criminal investigation is based on the same "cookie stuffing" allegations at issue in the present action. Further, Assistant United States Attorney Kyle Waldinger has indicated that the USAO intends to seek an indictment for violations of 18 U.S.C. §1343 (for wire fraud) and anticipates that the indictment will be issued after the commencement of the new year.

13

14

15

16

17

18

19

As detailed below, the present circumstances warrant the issuance of a stay. When there are parallel criminal and civil proceedings such as in this case, the defendant faces the difficult choice of asserting his Fifth Amendment rights at the risk of losing a civil trial, or waiving these rights to defend himself in civil proceedings at the risk of incriminating himself. Although not required by the Constitution, the courts have recognized the need to stay civil proceedings under circumstances directly comparable to those at issue here to avoid prejudicing the defendant's rights. Here, the issuance of a stay is warranted in the interests of justice and should be granted for the following reasons:

20

21

22

23

24

25

26

*One*. The similarity of the issues underlying the civil and criminal actions is regarded as "the most important factor" in determining whether to issue a stay, as the defendant's Fifth Amendment rights are directly implicated in such cases. Here, as Plaintiff concedes, the government is investigating "whether the fraudulent activities *alleged by eBay in this case* constitute federal crimes." Indeed, because the Second Amended Complaint (SAC) alleges that Defendants engaged in multiple violations of the predicate act of wire fraud, the underlying factual and legal issues directly overlap. As such, this factor weighs heavily in favor of issuing a stay.

27

/././

28

/././

*Two*.  The action should likewise be stayed as to defendant Digital Point Solutions, Inc. because Mr. Hogan, is the only person that can speak on behalf of the corporation.  In such circumstances, the courts have recognized that the corporate defendant is likely to be greatly prejudiced by its inability to meaningfully defend itself.  Further, a stay is appropriate as to all Defendants to avoid the duplication of effort and waste of resources during the discovery process.

*Three*.  Plaintiff will not be prejudiced by the issuance of a stay, as there is no threat of ongoing harm in this case and Plaintiff waited well over a year before bringing this action.  Under relevant case law, such a delay undermines Plaintiff's ability to now claim that it will be prejudiced by a stay.  And in any event, the protection of a party's constitutional rights is "the more important consideration."

*Four*.  The stay will promote the interests of the Court and judicial economy by avoiding the need to resolve time-consuming discovery motions associated with Defendants' continued assertion of their Fifth Amendment rights (including Plaintiff's pending motions to compel).  Further, the stay may narrow the issues for trial in the civil case; and

*Five*.  The public interest will be furthered by a stay because the public's interest in the integrity of the criminal case is entitled to precedence over the civil action.

## II.  STATEMENT OF FACTS

Plaintiff operates an affiliate marketing program to increase traffic to its on-line trading forum. (SAC ¶¶18, 19).  Affiliates receive commissions for directing business to Plaintiff's website. (SAC ¶19). Plaintiff tracks which affiliates are entitled to commissions through the use of "cookies." (SAC ¶¶19, 21).  Plaintiff alleges that as members of Plaintiff's affiliate program, Defendants engaged in fraudulent "cookie stuffing" schemes through which Defendants received commissions to which they were not entitled.  (*see* SAC ¶¶24-27).  With respect to Plaintiff's RICO claim, the SAC alleges that Defendants committed multiple violations of the predicate act of wire fraud under 18 U.S.C. §1343 (SAC ¶ 50), and that each such violation constitutes a separate instance of "racketeering activity" as defined in 18 U.S.C. §1961(1).  (SAC ¶61).

Regarding the pending criminal investigation, it is undisputed that in June of 2007, the FBI executed a search warrant and seized materials from Mr. Hogan's residence.  As Plaintiff has indicated, the materials were seized in furtherance of the government's investigation as to "whether the fraudulent

activities alleged by eBay in this case constitute federal crimes." (Campbell Decl., Ex. 1, p. 4:15-16). Relevant here, on September 22, 2009, Assistant United States Attorney Kyle Waldinger conveyed the following information regarding the status of the pending criminal proceedings to defense counsel: (1) Mr. Hogan is the subject of an ongoing criminal investigation as to whether activities associated with Plaintiff's affiliate marketing program constitute wire fraud under 18 U.S.C. §1343; (2) the scope of the investigation relates to the "cookie stuffing" schemes alleged against the Defendants in this case; (3) Mr. Waldinger believes that Section 1343 has been violated; (4) the USAO intends to seek an indictment based on the foregoing; and (5) and it is likely that an indictment will be issued within the early part of next year. (Kouretchian Decl. ¶2).

Given the foregoing circumstances a stay of the civil action is warranted and appropriate.

### III. LEGAL STANDARD AND SCOPE OF REVIEW

The Court possesses the inherent power to control its own docket and calendar. *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D.Cal. 2009) 2009 U.S. Dist. LEXIS 60849, 4.

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course of the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before it.

*Id.* (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Corp.* (9th Cir. 1983) 708 F.2d 1458, 1465.

Thus, it is well recognized that a court may, in its discretion, stay civil proceedings when the interests of justice so require. *Keating v. Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322, 324. Although not required by the Constitution, a district court may stay civil proceedings or postpone civil discovery pending the outcome of parallel criminal proceedings. *Fed. Savings & Loan Ins. Corp. v. Molinaro* (9th Cir. 1989) 889 F.2d 899, 902.

The decision whether to grant a stay should be made in light of the particular circumstances and competing interests involved in the case, and should be based on the following factors: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the interest of the plaintiff in proceeding with the litigation and the potential prejudice to plaintiff of a delay; (3) the convenience of the court and the efficient use of judicial resources; (4) the interests of third parties; and (5) the interests of the public. *Keating*, *supra*, 45 F.3d at 324-325; *Jones v. Conte* (N.D. Cal. 2005) 2005 U.S. Dist.

LEXIS 46962, 2.

In evaluating the first factor, the courts further consider the extent to which the issues in the criminal case overlap with those presented in the civil case; the status of the criminal proceeding, including whether the defendant has been indicted; and whether the civil proceedings may expand the scope of criminal discovery beyond the limits of the Federal Rules of Criminal Procedure or otherwise prejudice the case. *Walsh Securities, Inc. v. Cristo Property Management, Ltd.* (D.N.J. 1998) 7 F. Supp. 2d 523, 527; *Taylor, supra,* 2009 U.S. Dist. LEXIS 60849 at 6.

## IV.  ARGUMENT

### A.    Extent to which Mr. Hogan's Fifth Amendment Rights are Implicated

#### 1.    Similarity of the Issues

When there are simultaneous criminal and civil proceedings, the defendant faces the difficult choice of asserting his Fifth Amendment rights at the risk of losing a civil trial, or waiving these rights to defend himself in civil proceedings at the risk of incriminating himself. *Walsh Securities, supra,* 7 F. Supp. 2d at 528. As such, the courts have recognized that the interests of justice may warrant the issuance of a stay in such circumstances. This is particularly true to the extent the factual allegations at issue in the civil action overlap with the subject matter of the criminal investigation. Indeed, because the defendant's Fifth Amendment rights are directly implicated in such cases, the similarity of the issues underlying the civil and criminal actions is regarded as "the most important factor" in determining whether or not to grant a stay. *Chao v. Fleming* (W.D. Mich. 2007) 498 F. Supp. 2d 1034, 1039; *Walsh Securities, supra,* 7 F. Supp. 2d at 527.

In this case, it is undisputed that the allegations of the SAC directly overlap with the subject matter of the pending criminal investigation. Indeed, Plaintiff itself has emphasized this point throughout the course of this litigation. For instance, in opposing the DPS Defendants' initial Motion to Dismiss, Plaintiff asserted the following:

> [Defendants'] schemes involved the improper placement of data known as "cookies" on the computers of potential eBay users so that eBay would be tricked into paying commissions to Defendants when no commissions were owed. And *it is those schemes that caused the Federal Bureau of Investigation* to raid named Defendants Shawn Hogan and Brian Dunning in June 2007 and to seize their computers.

1   (Campbell Decl., Ex. 2, p. 1:4-8; emphasis added).

2       Further, in Plaintiff's section of the parties' Joint Case Management Statement, Plaintiff states

3   that the alleged cookie-stuffing scheme ceased "when the FBI seized Defendants' computer equipment

4   in June 2007 as part of an investigation into whether the fraudulent activities *alleged by eBay in this case*

5   constitute federal crimes." (Campbell Decl., Ex. 1, p. 4:13-16; emphasis added). Thus, as Plaintiff

6   concedes, the subject of the pending criminal investigation not only overlaps with Plaintiff's allegations

7   in this case, it is directly predicated on those allegations. Moreover, the foregoing has been confirmed

8   by Assistant U.S. Attorney Kyle Waldinger. As noted above, Mr. Waldinger recently indicated that the

9   USAO is actively investigating whether the alleged cookie stuffing schemes associated with Plaintiff's

10  affiliate marketing program constitute wire fraud under 18 U.S.C. §1343. (Kouretchian Decl. ¶2). The

11  same contentions are at issue in the present action, as Plaintiff's RICO claim is likewise predicated on

12  alleged violations of Section 1343. (SAC ¶50).

13      Because the civil and criminal proceedings are based on the same factual and legal issues, there

14  can be no question that Mr. Hogan's Fifth Amendment rights are implicated in this case. As such, this

15  factor weighs heavily in favor of granting the stay. *See Jones v. Conte* (N.D. Cal. 2005) 2005 U.S. Dist.

16  LEXIS 46962, 3 (factor weighed in favor of stay because civil defamation action and criminal

17  proceeding both arose from defendant's alleged involvement in distribution of performance-enhancing

18  drugs); *Continental Insurance Co. v. Cota* (N.D. Cal. 2008) WL 4298372, 2 (stay particularly

19  appropriate where civil action and criminal action spring from "same nucleus of facts"), *Medina v.*

20  *Argent Mortg. Co.* (N.D. Cal 2006) 2006 U.S. Dist. LEXIS 30582, (defendants' Fifth Amendment rights

21  "clearly implicated" where civil and criminal proceedings based on same alleged abusive lending

22  practices); *Chao, supra,* 498 F. Supp. 2d at (stay issued in context of civil and criminal ERISA

23  violations because "substantive factual and legal issues would be almost identical.").

24                  **2.**     Potential for Prejudice

25      A stay is further appropriate to the extent civil proceedings may expand the scope of criminal

26  discovery beyond the limits of the Federal Rules of Criminal Procedure, expose defense strategies to the

27  prosecuting authorities, or otherwise prejudice the case. *Taylor, Bean & Whitaker Mortg. Corp. v.*

28  *Triduanum* (C.D.Cal. 2009) 2009 U.S. Dist. LEXIS 60849, 4. "The risk that civil discovery will be used

1  to circumvent criminal discovery limitations becomes much greater where the same facts are at issue."

2  *Javier H. v. Garcia-Botello* (W.D.N.Y. 2003), 218 F.R.D. 72, 74.

3          Here, these concerns are particularly relevant, as any information or testimony procured during

4  the discovery process will be directly relevant to the criminal investigation.  Moreover, because the

5  authorities are investigating "whether the fraudulent activities alleged by eBay in this case constitute

6  federal crimes" (Campbell Decl. Ex. 1, p. 4:13-16), it cannot reasonably be disputed that Plaintiff has

7  assisted with the investigation in the past.  Nor can there be any question that Plaintiff has a direct

8  interest in furthering prosecutions related to its Affiliate Marketing Program or that Plaintiff is likely to

9  play at least some role in the development of the prosecution's case through trial.  A stay is warranted in

10  this case to ensure that civil discovery will not be used to circumvent the discovery limitations that

11  would otherwise apply in the criminal proceeding.

12          **3.**     Status of Parallel Criminal Proceedings

13          This factor considers the status of the criminal proceeding, including whether the defendant has

14  been indicted.  *Walsh Securities, supra,* 7 F. Supp. 2d at 527.  In general, the courts are more inclined to

15  issue a stay once an indictment has been returned.  *See SEC v. Schroeder* (N.D. Cal. 2008) 2008 U.S.

16  Dist. LEXIS 6527, 4-5.  Courts have concluded that the case for staying civil proceedings is far weaker

17  when no indictment has been returned and no Fifth Amendment Privilege is threatened.  *Id.*

18          Here, as detailed above, Mr. Hogan's Fifth Amendment rights are *directly implicated*.  Moreover,

19  "[t]he fact that an indictment has not yet been returned - while it may be a factor counseling against a

20  stay of civil proceedings- does not make consideration of the stay motion any less appropriate." *Brock v.*

21  *Tolkow* (E.D.N.Y. 1985) 109 F.R.D. 116, 119, fn. 2; *United States v. $557,933.89 in U.S. Funds*

22  (E.D.N.Y. 1998) 1998 U.S. Dist. LEXIS 22252, 13.  For instance, the issuance of a pre-indictment stay

23  is warranted where, as here, the government is conducting an active parallel investigation based on the

24  same allegations set forth in the civil complaint.  *Walsh Securities, supra,* 7 F. Supp. 2d at 527.

25          In addition, "[a] pre-indictment stay is particularly appropriate where both the civil and criminal

26  charges arise from the same remedial statute such that the criminal investigation is likely to vindicate the

27  same public interest as would the civil suit."  *Par Pharm. Sec. Litig.* (S.D.N.Y. 1990) 133 F.R.D. 12, 14

28  (denying stay where criminal investigations involved misconduct before Food and Drug Administration

1    while civil action involved federal securities laws); *see also Brock, supra,* 109 F.R.D. at 118, 120 (stay

2    granted where both proceedings involved ERISA violations).  Here, as noted above, the civil and

3    criminal proceedings arise from the same nucleus of alleged facts and are both predicated on alleged

4    violations of 18 U.S.C. §1343.  As such, this factor weighs in favor of a stay notwithstanding the pre-

5    indictment status of the criminal proceedings.

6         Indeed, a number of courts have issued pre-indictment stays under circumstances directly

7    comparable to those at issue in this case.  *See Brock, supra,* 109 F.R.D. at 120, fn. 2, 121. (stay of all

8    civil discovery pending outcome of criminal RICO investigation); *Walsh Securities, supra,* 7 F. Supp. 2d

9    529, (partial stay of discovery based on U.S. Attorney's Office investigation of whether civil RICO

10   allegations amount to criminal conduct); *Kashi v. Gratsos* (2nd Cir. 1986) 790 F.2d 1050, 1057 (trial

11   court properly exercised discretion in staying civil trial until U.S. Attorney declined to prosecute); *Chao,*

12   *supra,* 498 F. Supp. 2d at 1039 (issuing 3-month pre-indictment stay of entire action); *United States v.*

13   *$557,933.89, More or Less in U.S. Funds* (E.D.N.Y. 1998) 1998 U.S. Dist. LEXIS 22252, 10-13 (issuing

14   16-month pre-indictment stay of all discovery where information sought to be extracted presented

15   realistic threat of incrimination); *Am. Motorists Ins. Co. v. Bridger Pub. Sch. Dist. # 2* (D. Mont. 2007)

16   2007 U.S. Dist. LEXIS 30140, 8-10 (granting pre-indictment stay of discovery based on active parallel

17   criminal investigation conducted by United States); *Shell Offshore v. Courtney* (E.D. La. 2006) 2006

18   U.S. Dist. LEXIS 49973, 2-4 (one-year pre-indictment stay of discovery in civil RICO action appropriate

19   based on pending grand jury investigation); *United States v. Certain Real Property & Premises*

20   (E.D.N.Y. 1989) 751 F. Supp. 1060, 1062 (pre-indictment stay appropriate where possibility that

21   defendant might be forced to incriminate herself was neither "fanciful" nor "imaginary").

22        **4.**   Stay as to Digital Point Solutions, Inc.

23        Although corporate defendants cannot invoke the protections of the Fifth Amendment, a stay is

24   appropriate as to such defendants where "the individual defendants are the persons most knowledgeable

25   and the persons whom the corporation would designate to testify on its behalf."  *Medina v. Argent*

26   *Mortg. Co.* (N.D. Cal 2006) 2006 U.S. Dist. LEXIS 30582, 6.  Indeed, where the Fifth Amendment

27   rights of the corporation's officers and directors are implicated, the corporation "is likely to be greatly

28   prejudiced in its ability to meaningfully defend itself in the civil matter."  *Taylor*, supra, 2009 U.S. Dist.

LEXIS 60849 at 8.  Further, courts have held that a stay as to all parties is preferred over a partial stay, as it avoids the duplication of effort and waste of resources during the discovery process.  *Volmar Distribs. v. New York Post Co.* (S.D.N.Y. 1993) 152 F.R.D. 36, 39, 41.

The foregoing concerns apply in this case, as Mr. Hogan is the sole shareholder, officer and director of defendant Digital Point Solutions, Inc., and is the person whom the corporation would designate to testify on its behalf.  Because Mr. Hogan's Fifth Amendment rights are directly implicated as set forth above, a complete stay as to both DPS Defendants is warranted and appropriate.  Further, the stay will reduce litigation costs and avoid burdening the Court with time-consuming discovery motions.  For instance, as reflected in the motions to compel currently pending before Judge Trumbull, a number of Fifth Amendment discovery disputes have arisen with respect to the individual Defendant's right to assert the privilege and the countervailing rules relating to collective entities.  Because the issuance of a stay will avoid burdening the Court with resolving these issues, a stay as to all Defendants is warranted.

### B.    Plaintiff's Interests and Potential Prejudice

Where the plaintiff itself delays in pursing its claims, it undermines any subsequent claims of prejudice resulting from the issuance of a stay.  *Medina v. Argent Mortg. Co.* (N.D. Cal 2006) 2006 U.S. Dist. LEXIS 30582, 8.  Further, where the plaintiff has not shown any prejudice other than delay in pursuing its suit, the plaintiff fails to establish a sufficient basis for denying the stay.  *Reyes v. Freebery* (Del. 2004) 2004 U.S. Dist. LEXIS 15018, 15.  Although the stay may inconvenience the plaintiff, under settled authority, protection of the defendant's Fifth Amendment rights is "the more important consideration."  *Brock, supra,* 109 F.R.D. 116, 121; *Volmar Distribs. v. New York Post Co.* (S.D.N.Y. 1993) 152 F.R.D. 36.  In addition, the consideration of prejudice to the plaintiff supports a stay where "the plaintiff does not continue to suffer losses and does not dispute that it filed a criminal complaint . . ."  *Shell Offshore, Inc. v. Courtney* (E.D. La 2006) 2006 U.S. Dist. LEXIS 49973, 4.

Here, no threat of continuing harm exists, as Plaintiff itself has alleged that the cookie stuffing schemes ceased in June 2007 (SAC ¶¶ 48, 57).  Further, the record indicates that Plaintiff will not suffer any prejudice as a result of a stay.  For instance, even though Plaintiff alleges that it conducted numerous investigations in June 2007 and became aware of the details of the alleged scheme as of that date (SAC ¶¶ 52-57), Plaintiff chose not to file suit for well over a year, until August 2008.  "While it is certainly

plausible that valid reasons supported such a delay, it undercuts plaintiff's entitlement to complain about a roughly similar delay." *Medina, supra*, 2006 U.S. Dist. LEXIS 30582 at 8 (plaintiff's four-month delay in serving complaint undermined subsequent claims of prejudice). Moreover, any inconvenience resulting from the stay does not overcome the paramount concern of protecting the defendant's constitutional rights. *Continental Insurance Co. v. Cota* (N.D. Cal. 2008) WL 4298372, 3; *see also Brock, supra,* 109 F.R.D. at 121 (protection of the Fifth Amendment right is "the more important consideration"). As such, this factor weighs in favor of granting the stay.

### C.    Interests of the Court and Judicial Economy

This consideration "examines the interests of courts in docket management and the expeditious resolution of cases." *Chao, supra,* 498 F. Supp. 2d at 1040. The courts have a particular interest "in resolving individual cases efficiently." *Walsh Securities, supra,* 7 F. Supp. 2d at 528. In considering these factors, courts have found that staying the civil case "makes efficient use of judicial resources by 'insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.'" *Jones, supra,* 2005 U.S. Dist. LEXIS 46962 at 2 (quoting *Javier H. v. Garcia-Botello* (W.D.N.Y. 2003), 218 F.R.D. 72, 75); *Taylor, supra,* 2009 U.S. Dist. LEXIS 60849 at 10. As discussed below, both of these considerations weigh in favor of granting the stay.

### 1.    Potential for Resolution of Common Issues

The interests of judicial economy weigh in favor of granting the stay, as resolution of the criminal proceedings may narrow the issues for trial in the civil action. *See Chao, supra*, 498 F.Supp. 2d at 1040 (concluding "that scarce judicial resources in this district at this time would be best used by staying this case in favor of the criminal case, which may ultimately reduce or eliminate the need for discovery or result in a settlement of this case if Defendants are convicted."). Here, as noted above, the underlying factual and legal issues significantly overlap, particularly with respect to the alleged wire fraud violations under 18 U.S.C. §1343. As such, there is a greater likelihood that the issuance of a stay will promote judicial economy. For instance, with respect to issues that are necessarily decided in prior criminal actions, "[c]ollateral estoppel is available to plaintiffs in civil racketeering litigation." *In re*

---

1   *Lewisville Properties, Inc.* (5th Cir. 1988) 849 F.2d 946, 949.[1]

2   **2.**   Avoiding Unnecessary Law and Motion Practice

3   This factor also weighs in favor of granting Defendants' motion.  Without an appropriate stay,

4   Defendants will be forced to continue to assert their Fifth Amendment rights, which will "burden the

5   Magistrate Judge and this Court with deciding a constant stream of privilege issues." *Walsh Securities,*

6   *supra,* 7 F.Supp. 2d at 528.  Disputes over the scope of the privilege consume the courts' resources with

7   unnecessary discovery litigation and law and motion practice.  "In contrast, if the civil actions are stayed

8   until the conclusion of the criminal proceedings, then these rulings will no longer be necessary." *In re*

9   *Adelphia Communs. Secs. Litig* (E.D. Pa. 2003) 2003 U.S. Dist. LEXIS 9736, at 15.

10   Here, the foregoing concerns are directly at issue, as Plaintiff recently filed three privilege-related

11   motions (including two motions to compel pending before Judge Trumbull and the motion to strike

12   pending before the Court).  All three motions are largely predicated on Defendants' assertion of the Fifth

13   Amendment privilege and the extent to which those protections apply.  Similar disputes are likely to

14   arise as to the scope of the privilege in future rounds of discovery and when Defendants are deposed.

15   Because the issuance of a stay will likely avoid unnecessary law and motion practice, this factor also

16   weighs in favor of a stay.

17   **D.   Interests of Third Parties and the Public**

18   While the public has an interest in the resolution of civil disputes, parallel criminal proceedings

19   generally serve to protect and advance those same interests.  *Brock, supra,* 109 F.R.D. 116, 121; *Chao,*

20   *supra,* 498 F.Supp. 2d at 1040.  Further, the courts have recognized that "the public interest will be

21   furthered by a stay because 'the public's interest in the integrity of the criminal case is entitled to

22   precedence over the civil litigant.'"  *Jones, supra,* 2005 U.S. Dist. LEXIS 46962 at 2 (quoting *Javier H.*

23   *v. Garcia-Botello* (W.D.N.Y. 2003), 218 F.R.D. 72, 75); *see also Taylor, supra,* 2009 U.S. Dist. LEXIS

24   60849 at 10.  And as the courts have explained, these principles equally apply in the context of a pending

---

[1] "The doctrine depends on three elements: 1) the issue at stake must be identical to the one involved in the prior litigation; 2) the issue must have been actually litigated in the prior litigation; and 3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action." *Id.*

1 criminal investigation:

> [A] stay in this case would benefit the public by allowing the government to conduct a complete, unimpeded investigation into potentially criminal activity. In this case, there is no tangible harm to the public from these alleged frauds that could not be remedied by the criminal investigation. Therefore, the public interest weighs in favor of a stay.

*Walsh, supra,* 7 F. Supp. 2d at 529; *see also Shell, supra,* 2006 U.S. Dist. LEXIS 49973 at 4.

Notably, courts have denied stays where the civil case, brought by a government agency, was intended to protect the public by halting continuing harms such as the distribution of mislabeled drugs or the dissemination of misleading investment information. *Walsh, supra,* 7 F. Supp. 2d at 529 (citing *United States v. Kordel* (1970) 397 U.S. 1, 11, and *SEC v. Dresser Indus.* (D.C. Cir. 1980) 628 F.2d 1368, 1377, respectively). However, no such concerns are at issue here, as Plaintiff itself contends that the alleged scheme ceased in June 2007 (SAC ¶48) and in any event, the harms alleged in the SAC do not meet the foregoing criteria. *See United States v. Certain Real Property & Premises* (E.D.N.Y. 1989) 751 F. Supp. 1060, 1062 (this case "is not comparable in public importance to a civil enforcement action brought by a federal regulatory agency entrusted with the protection of consumers, investors, or other broad segments of the population, whose welfare could be jeopardized by deferral of the action.").

Because a stay will promote the integrity of the pending criminal investigation, the interests of the public, and any relevant third parties, this factor also weighs in favor of granting the motion.

## V. CONCLUSION

For the foregoing reasons, the DPS Defendants respectfully request that the Court stay this action pending resolution of the parallel criminal investigation. In the alternative, the DPS Defendants request that the Court stay all discovery in this action for a period of six months.

DATED: October 16, 2009

> s/Ross M. Campbell
> COAST LAW GROUP, LLP
> Attorneys for Defendants, Shawn Hogan
> and Digital Point Solutions, Inc.

# EXHIBIT 4

## Ross Campbell

**From:**      Ross Campbell
**Sent:**      Friday, September 25, 2009 4:07 PM
**To:**        'Kennedy, Colleen'
**Cc:**        Seyamack Kouretchian; Eberhart, David; Bunzel, Sharon M.
**Subject:** RE: eBay v. Digital Point Solutions, Inc. et al.

Colleen:

As a preliminary matter, it is unreasonable to demand that we meet and confer on the matters raised in your email within one business day.  However, please see below regarding the items you've raised.  It appears that you seek to further meet and confer on four separate items.

1.   Responses on behalf of "Digital Point Solutions, Inc."  As you know, a corporate owner, as a natural person, is distinct from the corporation itself and the entity is recognized as having a separate legal existence.  Again, Digital Point Solutions, Inc. never conducted business with plaintiff and there is no basis for it to provide responses as to Mr. Hogan with respect to non-corporate information or documents.  To the extent plaintiff seeks information from Mr. Hogan individually, it has already directed separate discovery requests to Mr. Hogan and he has separately responded (and as we've indicated, a sole proprietorship is not a collective entity and the Fifth Amendment may therefore be properly asserted).  Under the *Doe* decision we've cited, the records of a sole proprietorship are considered no different from the individual owner's personal records.  We are not aware of any authority suggesting that personal information can be obtained through a corporate entity simply by virtue of the person holding an office with that entity.  With respect to potential parent or subsidiary entities of Digital Point Solutions, Inc., no such entities exist.

2.   Documents Referenced in Bylaws.  With respect to the Annual Statements of General Information, we have provided the August 13, 2007 statement of information that appears to have been filed with the Secretary of State (SOS File Ref No. 389158).  The SOS website appears to indicate that no other statements have been filed and we are presently unaware of any other statements of information.  The fact that statements may be referenced in the bylaws does not mean they were subsequently prepared or exist.  The same applies with respect to the meeting minutes you've referenced.  However, I will confer with Mr. Hogan further on this issue.  He is currently out of town and unavailable but I expect to be able to discuss these matters with him on October 4.

3.   Server Issues:  It is my understanding that the servers at issue have not been used, remain idle, and do not contain any responsive information.  However, I will confer with Mr. Hogan upon his return and will respond to your inquiry at that time.

4.   Applicability of Fifth Amendment to Seized Materials:  Again, it is unreasonable to demand that we respond within one business day when I requested two weeks ago that you provide any responsive legal authority to the citations we provided, and Section III.B.1 of your motion purports to rely on a substantial number of cases.  Such a limited time frame does not constitute an effort to confer in good faith within the meaning of Rule 37(a).  I am of course willing to consider those authorities but will be unable to do so until early/mid next week.  However, I do not anticipate changing our position because the authentication issue is not a "foregone conclusion" and the civil discovery process cannot be used to compel a party to refine or otherwise assist with a pending criminal investigation.  Further, as we've indicated, the scope of the seizure is not clear.

Please let me know if you'd like to further discuss the above.

Ross



**ROSS M. CAMPBELL**
ross@coastlawgroup.com

**Coast Law Group LLP**
1140 South Coast Highway 101
Encinitas, California 92024
tel. 760.942.8505 x105
fax 760.942.8515

The information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and, as such, is PRIVILEGED & CONFIDENTIAL. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document (and any attachments) in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and deliver the original message.

To ensure compliance with requirements imposed by the IRS, we inform you that (a) any U.S. tax advice in this communication (including attachments) is limited to the one or more U.S. tax issues addressed herein; (b) additional issues may exist that could affect the U.S. tax treatment of the matter addressed below; (c) this advice does not consider or provide a conclusion with respect to any such additional issues; (d) any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of promoting, marketing or recommending to another party any transaction or matter addressed herein, and (e) with respect to any U.S. tax issues outside the limited scope of this advice, and U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code.

**From:** Kennedy, Colleen [mailto:CKennedy@OMM.com]
**Sent:** Thursday, September 24, 2009 2:59 PM
**To:** Ross Campbell
**Cc:** Seyamack Kouretchian; Eberhart, David; Bunzel, Sharon M.
**Subject:** RE: eBay v. Digital Point Solutions, Inc. et al.

Ross,

We are in receipt of the supplemental discovery responses on behalf of DPS, Inc. First, the supplemental responses have not resolved the problem we previously identified regarding the improper limitation of DPS's responses to information concerning "Digital Point Solutions, Inc." DPS, Inc. is required to provide all information in its possession regarding "DPS" as defined by eBay, including Shawn Hogan and other entities associated with DPS, Inc., and any Fifth Amendment privilege held by Mr. Hogan does not protect DPS, Inc. from doing so. Please advise by COB tomorrow whether you will agree to supplement your responses to address this issue.

Second, the documents produced in connection with yesterday's responses raise two additional issues:
1) The Bylaws of DPS, Inc. indicate the existence of some documents that were not produced yesterday, namely, Annual Statements of General Information for DPS, Inc. for 2008 and 2009, as well as minutes of shareholder and board meetings from the date of DPS, Inc.'s incorporation onward.
2) The documents indicate that Shawn Hogan transferred servers to DPS, Inc. on or about May 19, 2007. As you know, eBay's SAC alleges that the cookie stuffing continued after May 19, 2007. DPS, Inc. is therefore responsible for producing any responsive documents contained on those servers.
Please advise by COB tomorrow whether you will agree to produce the above-referenced documents to eBay.

Finally, please also advise by COB tomorrow whether you are willing to reconsider your position regarding Shawn Hogan's ability to assert the Fifth Amendment over production of documents already in the FBI's possession in light of the authority cited in Section III.B.1 of eBay's motion to compel discovery responses from the Dunning Defendants, filed on Tuesday, September 22.

I am generally available tomorrow to discuss these issues by telephone if you believe that would be productive.

Best regards,
Colleen

**From:** Ross Campbell [mailto:RCampbell@CoastLawGroup.com]
**Sent:** Wednesday, September 23, 2009 5:07 PM
**To:** Kennedy, Colleen

**Cc:** Leo J. Presiado; Stewart Foreman; Patrick McClellan; Seyamack Kouretchian
**Subject:** eBay v. Digital Point Solutions, Inc. et al.

Colleen:

Digital Point Solutions, Inc.'s supplemental discovery responses are attached and have also been sent via mail.

Ross



**ROSS M. CAMPBELL**
ross@coastlawgroup.com

**Coast Law Group LLP**
1140 South Coast Highway 101
Encinitas, California 92024
*tel.* 760.942.8505 x105
*fax* 760.942.8515

The information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and, as such, is PRIVILEGED & CONFIDENTIAL.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document (and any attachments) in error and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail and deliver the original message.

To ensure compliance with requirements imposed by the IRS, we inform you that (a) any U.S. tax advice in this communication (including attachments) is limited to the one or more U.S. tax issues addressed herein; (b) additional issues may exist that could affect the U.S. tax treatment of the matter addressed below; (c) this advice does not consider or provide a conclusion with respect to any such additional issues; (d) any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of promoting, marketing or recommending to another party any transaction or matter addressed herein, and (e) with respect to any U.S. tax issues outside the limited scope of this advice, and U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code.

# EXHIBIT 5

## Ross Campbell

**From:**   Ross Campbell
**Sent:**   Tuesday, September 29, 2009 11:42 AM
**To:**   'Kennedy, Colleen'
**Cc:**   Seyamack Kouretchian; Eberhart, David; Bunzel, Sharon M.
**Subject:** RE: eBay v. Digital Point Solutions, Inc. et al.

Colleen:

With respect to the first item, while I remain open to discussing the matter, you have not provided a substantive response to the points I raised in my last email. As such, our position remains the same.

Second, with respect to the servers, we have provided complete responses to plaintiff's discovery requests and have fulfilled our obligations to search for responsive documents. As I indicated, the servers at issue have not been used, remain idle, and do not contain any responsive information. However, given your additional requests, I agreed in good faith to further confer with Mr. Hogan in a matter of days and continue to hope that unnecessary motion practice can be avoided.

Third, for the reasons stated in my last email and my prior communications, we continue to disagree regarding the applicability of Mr. Hogan's Fifth Amendment privilege to plaintiff's requests for production. *See e.g. In the Matter of Thirteen Grand Jury Subpoenas* (E.D.N.Y. 1988) 1988 U.S. Dist LEXIS 9271, 1, 3-5 (Fifth Amendment appropriately asserted on behalf of sole proprietorship in response to document subpoena, and government authentication of materials was not a "foregone conclusion").

Finally, regarding your ongoing claims that we've unduly delayed the discovery process, we have promptly responded to your meet and confer letters and agreed to supplement responses where appropriate. I note that in some instances plaintiff did not attempt to meet or confer for weeks or months at a time. Further, given the Court's initial ruling regarding the PSA's forum selection clause, it was appropriate to avoid burdening the Court with potentially unnecessary law and motion practice.

I am available to further discuss the above; please contact me should you wish to do so.

Thanks,

Ross



**ROSS M. CAMPBELL**
ross@coastlawgroup.com

**Coast Law Group LLP**
1140 South Coast Highway 101
Encinitas, California 92024
*tel.* 760.942.8505 x105
*fax* 760.942.8515

The information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and, as such, is PRIVILEGED & CONFIDENTIAL. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document (and any attachments) in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and deliver the original message.

To ensure compliance with requirements imposed by the IRS, we inform you that (a) any U.S. tax advice in this communication (including attachments) is limited to the one or more U.S. tax issues addressed herein; (b) additional issues may exist that could affect the U.S. tax treatment of the matter addressed below; (c) this advice does not consider or provide a conclusion with respect to any such additional issues; (d) any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of promoting, marketing or recommending to another party any transaction or matter addressed herein, and (e) with respect to

10/23/2009

any U.S. tax issues outside the limited scope of this advice, and U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code.

**From:** Kennedy, Colleen [mailto:CKennedy@OMM.com]
**Sent:** Friday, September 25, 2009 7:08 PM
**To:** Ross Campbell
**Cc:** Seyamack Kouretchian; Eberhart, David; Bunzel, Sharon M.
**Subject:** RE: eBay v. Digital Point Solutions, Inc. et al.

Ross,

With respect to the first point, we continue to disagree regarding the meaning of our discovery requests, which simply seek the responsive information in DPS, Inc.'s possession. Since DPS, Inc. continues to improperly limit its responses, we will be forced to move to compel on this issue.

Second, eBay's Requests for Production were served on DPS, Inc. over 8 months ago, and the referenced servers have been in DPS, Inc.'s possession throughout that time period. You have failed to comply with your obligation to search for responsive documents in DPS, Inc.'s possession, custody or control and we will therefore move to compel on this issue as well.

Third, the issue of whether Mr. Hogan may assert the Fifth Amendment regarding the production of documents in the FBI's possession has been the subject of meet and confer discussions since July 29, 2009. You were served on Tuesday with the motion to compel we filed against the Dunning defendants, which you were aware dealt with this same issue. We will wait until noon on Tuesday for a response from you on this issue, which gives you nearly one full week to assess the authorities and arguments in our motion. In light of the fact that this issue has been on the table for so long and the fact that you have indicated you are unlikely to change your position, we are unwilling to wait any longer for a response.

Best regards,
Colleen

**From:** Ross Campbell [mailto:RCampbell@CoastLawGroup.com]
**Sent:** Friday, September 25, 2009 4:07 PM
**To:** Kennedy, Colleen
**Cc:** Seyamack Kouretchian; Eberhart, David; Bunzel, Sharon M.
**Subject:** RE: eBay v. Digital Point Solutions, Inc. et al.

Colleen:

As a preliminary matter, it is unreasonable to demand that we meet and confer on the matters raised in your email within one business day. However, please see below regarding the items you've raised. It appears that you seek to further meet and confer on four separate items.

1.  Responses on behalf of "Digital Point Solutions, Inc." As you know, a corporate owner, as a natural person, is distinct from the corporation itself and the entity is recognized as having a separate legal existence. Again, Digital Point Solutions, Inc. never conducted business with plaintiff and there is no basis for it to provide responses as to Mr. Hogan with respect to non-corporate information or documents. To the extent plaintiff seeks information from Mr. Hogan individually, it has already directed separate discovery requests to Mr. Hogan and he has separately responded (and as we've indicated, a sole proprietorship is not a collective entity and the Fifth Amendment may therefore be properly asserted). Under the *Doe* decision we've cited, the records of a sole proprietorship are considered no different from the individual owner's personal records. We are not aware of any authority suggesting that personal information can be obtained through a corporate entity simply by virtue of the person holding an office with that entity. With respect to potential parent or subsidiary entities of Digital Point Solutions, Inc., no such entities exist.

2.  Documents Referenced in Bylaws. With respect to the Annual Statements of General Information,

10/23/2009

we have provided the August 13, 2007 statement of information that appears to have been filed with the Secretary of State (SOS File Ref No. 389158). The SOS website appears to indicate that no other statements have been filed and we are presently unaware of any other statements of information. The fact that statements may be referenced in the bylaws does not mean they were subsequently prepared or exist. The same applies with respect to the meeting minutes you've referenced. However, I will confer with Mr. Hogan further on this issue. He is currently out of town and unavailable but I expect to be able to discuss these matters with him on October 4.

3.  .Server Issues: It is my understanding that the servers at issue have not been used, remain idle, and do not contain any responsive information. However, I will confer with Mr. Hogan upon his return and will respond to your inquiry at that time.

4.  Applicability of Fifth Amendment to Seized Materials: Again, it is unreasonable to demand that we respond within one business day when I requested two weeks ago that you provide any responsive legal authority to the citations we provided, and Section III.B.1 of your motion purports to rely on a substantial number of cases. Such a limited time frame does not constitute an effort to confer in good faith within the meaning of Rule 37(a). I am of course willing to consider those authorities but will be unable to do so until early/mid next week. However, I do not anticipate changing our position because the authentication issue is not a "foregone conclusion" and the civil discovery process cannot be used to compel a party to refine or otherwise assist with a pending criminal investigation. Further, as we've indicated, the scope of the seizure is not clear.

Please let me know if you'd like to further discuss the above.

Ross



**ROSS M. CAMPBELL**
ross@coastlawgroup.com

**Coast Law Group LLP**
1140 South Coast Highway 101
Encinitas, California 92024
*tel.  760.942.8505 x105*
*fax 760.942.8515*

The information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and, as such, is PRIVILEGED & CONFIDENTIAL. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document (and any attachments) in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and deliver the original message.

To ensure compliance with requirements imposed by the IRS, we inform you that (a) any U.S. tax advice in this communication (including attachments) is limited to the one or more U.S. tax issues addressed herein; (b) additional issues may exist that could affect the U.S. tax treatment of the matter addressed below; (c) this advice does not consider or provide a conclusion with respect to any such additional issues; (d) any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of promoting, marketing or recommending to another party any transaction or matter addressed herein, and (e) with respect to any U.S. tax issues outside the limited scope of this advice, and U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code.

**From:** Kennedy, Colleen [mailto:CKennedy@OMM.com]
**Sent:** Thursday, September 24, 2009 2:59 PM
**To:** Ross Campbell
**Cc:** Seyamack Kouretchian; Eberhart, David; Bunzel, Sharon M.
**Subject:** RE: eBay v. Digital Point Solutions, Inc. et al.

Ross,

We are in receipt of the supplemental discovery responses on behalf of DPS, Inc. First, the supplemental responses have not resolved the problem we previously identified regarding the improper limitation of DPS's responses to information concerning "Digital Point Solutions, Inc." DPS, Inc. is required to provide all information

in its possession regarding "DPS" as defined by eBay, including Shawn Hogan and other entities associated with DPS, Inc., and any Fifth Amendment privilege held by Mr. Hogan does not protect DPS, Inc. from doing so. Please advise by COB tomorrow whether you will agree to supplement your responses to address this issue.

Second, the documents produced in connection with yesterday's responses raise two additional issues:
1) The Bylaws of DPS, Inc. indicate the existence of some documents that were not produced yesterday, namely, Annual Statements of General Information for DPS, Inc. for 2008 and 2009, as well as minutes of shareholder and board meetings from the date of DPS, Inc.'s incorporation onward.
2) The documents indicate that Shawn Hogan transferred servers to DPS, Inc. on or about May 19, 2007. As you know, eBay's SAC alleges that the cookie stuffing continued after May 19, 2007. DPS, Inc. is therefore responsible for producing any responsive documents contained on those servers.
Please advise by COB tomorrow whether you will agree to produce the above-referenced documents to eBay.

Finally, please also advise by COB tomorrow whether you are willing to reconsider your position regarding Shawn Hogan's ability to assert the Fifth Amendment over production of documents already in the FBI's possession in light of the authority cited in Section III.B.1 of eBay's motion to compel discovery responses from the Dunning Defendants, filed on Tuesday, September 22.

I am generally available tomorrow to discuss these issues by telephone if you believe that would be productive.

Best regards,
Colleen

---

**From:** Ross Campbell [mailto:RCampbell@CoastLawGroup.com]
**Sent:** Wednesday, September 23, 2009 5:07 PM
**To:** Kennedy, Colleen
**Cc:** Leo J. Presiado; Stewart Foreman; Patrick McClellan; Seyamack Kouretchian
**Subject:** eBay v. Digital Point Solutions, Inc. et al.

Colleen:

Digital Point Solutions, Inc.'s supplemental discovery responses are attached and have also been sent via mail.

Ross



**ROSS M. CAMPBELL**
ross@coastlawgroup.com

**Coast Law Group LLP**
1140 South Coast Highway 101
Encinitas, California 92024
tel. 760.942.8505 x105
fax 760.942.8515

The information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and, as such, is PRIVILEGED & CONFIDENTIAL. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document (and any attachments) in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and deliver the original message.

To ensure compliance with requirements imposed by the IRS, we inform you that (a) any U.S. tax advice in this communication (including attachments) is limited to the one or more U.S. tax issues addressed herein; (b) additional issues may exist that could affect the U.S. tax treatment of the matter addressed below; (c) this advice does not consider or provide a conclusion with respect to any such additional issues; (d) any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of promoting, marketing or recommending to another party any transaction or matter addressed herein, and (e) with respect to any U.S. tax issues outside the limited scope of this advice, and U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code.