1  RONALD RUS, #67369
   rrus@rusmiliband.com
2  LEO J. PRESIADO, #166721
   lpresiado@rusmiliband.com
3  RUS, MILIBAND & SMITH
   A Professional Corporation
4  Seventh Floor
   2211 Michelson Drive
5  Irvine, California 92612
   Telephone:  (949) 752-7100
6  Facsimile:   (949) 252-1514

7  Attorneys for Defendants
   THUNDERWOOD HOLDINGS, INC.,
8  BRIAN DUNNING, and BRIANDUNNING.COM

9  LAW OFFICES OF PATRICK K. McCLELLAN
   Patrick K. McClellan #077352
10 2211 Michelson Drive, Suite 700
   Irvine, CA 92612
11 Telephone  (949) 261-7615

12 Attorney for Defendant
   KESSLER'S FLYING CIRCUS

13

14          UNITED STATES DISTRICT COURT

15          NORTHERN DISTRICT OF CALIFORNIA

16          SAN JOSE DIVISION

17

| | |
|---|---|
| EBAY INC.,                                          )<br><br>                    Plaintiff,                  )<br><br>vs.                                                  )<br><br>DIGITAL POINT SOLUTIONS, INC.;        )<br>SHAWN HOGAN; KESSLER'S FLYING  )<br>CIRCUS; THUNDERWOOD HOLDINGS,  )<br>INC.; TODD DUNNING; DUNNING         )<br>ENTERPRISES, INC.; BRIAN DUNNING; )<br>BRIANDUNNING.COM; and DOES 1-20,  )<br>                                                     )<br>                    Defendants.               )<br>_____)  | CASE NO. CV 08-4052 JF (PVT)<br><br>**OPPOSITION TO MOTION TO STRIKE ANSWER; DECLARATIONS OF WILLIAM J. KOPENY, LEO J. PRESIADO AND BRIAN DUNNING IN SUPPORT**<br><br>DATE:    November 20, 2009<br>TIME:     9:00 a.m.<br>JUDGE:   Hon. Jeremy Fogel |

1

Dockets.Justia.com

# TABLE OF CONTENTS

1.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.  This Court Should Stay This Action . . . . . . . . . . . . . . . . . . . . . . . 7

    B.  Mr. Dunning's Invocation Of His Fifth Amendment Privilege
        Against Self-Incrimination Extends To The Entity Defendants
        Since Any Response By The Entity Defendants Would
        Necessarily Implicate Mr. Dunning . . . . . . . . . . . . . . . . . . . . . . 10

4.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

DECLARATION OF LEO J. PRESIADO . . . . . . . . . . . . . . . . . . . . . . . . 15

DECLARATION OF WILLIAM J. KOPENY . . . . . . . . . . . . . . . . . . . 16

DECLARATION OF BRIAN DUNNING . . . . . . . . . . . . . . . . . . . . . . . 21

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Blau v. United States,*
340 U.S. 159 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Continental Insurance Co. v. Cota,*
2008 WL 4298372 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8

*Dienstag v. Bronsen,*
49 F.R.D. 327 (D.C.N.Y. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Grunewald v. United States*
(1957) 353 U.S. 391, 77 S. Ct. 963, 1 L. Ed. 2d 931 . . . . . . . . . . . . . . . . . . . 3

*Hoffman v. United States,*
341 U.S. 479 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Javier H. v. Garcia-Botello,*
218 F.R.D. 72 (W.D.N.Y.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Navel Orange Admin. Comm. V. Exeter Orange Co.,*
722 F.2d 449 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Priebe v. World Ventures, Inc.,*
407 F. Supp. 1244 (C.D. Cal 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*SEC v. Dresser Industries, Inc.,*
628 F.2d 1368 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*SEC v. Leach,*
156 F. Supp. 2d 491 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. v. Steffes,*
35 F.R.D. 24 (D.C. Mont. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. 3963 Bottles, More Or Less,*
265 F.2d 332 (7th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Kordel,*
397 U.S. 1 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*United States v. Neff,*
615 F.2d 1235 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Wehling v. Columbia Broadcasting System,*
608 F.2d 1084 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*White v. Mapco Gas Products, Inc.,*
116 F.R.D. 498 (D.C. Ark 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

/ / /

/ / /

ii

## STATE CASES

*In re Misener* (1985)
38 Cal.3d 543 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*People v. Lucas* (1995)
12 Cal.4th 415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Prudhomme v. Superior Court* (1970)
2 Cal.3d 320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

381775v1 dd 10/29/09 9 (2785-0002)

OPPOSITION TO MOTION TO STRIKE ANSWER

Defendants Brian Dunning ("Mr. Dunning"), BrianDunning.com ("BD.com"), Thunderwood Holdings, Inc. ("THI") and Kessler's Flying Circus ("KFC") (collectively, "Defendants") oppose the Motion to Strike Answer ("Motion to Strike") filed by Plaintiff eBay Inc. ("Plaintiff" and/or "eBay") as follows:

1.    INTRODUCTION

This civil action arises from *the same nexus of facts* that triggered a Federal Bureau of Investigation ("FBI") investigation and federal criminal proceedings against Mr. Dunning.  As a result of the FBI investigation, the Computer Hacking and Intellectual Property Unit ("CHIP Unit") of the United States Attorney's Office for the Northern District of California has named Mr. Dunning a target in an open criminal investigation pending in the Northern District of California.  As a matter of law, Mr. Dunning should not be forced to choose between defending himself in this action and preserving his Fifth Amendment rights.  As such, Defendants have filed a motion to stay this civil action pending  the ongoing parallel criminal proceeding against Mr. Dunning (the "Motion to Stay Action").  The Motion to Stay Action is set to be heard concurrent with the Motion to Strike.

As set forth in the Motion to Stay Action, a stay of all civil proceedings is required pending the ongoing parallel criminal proceeding against Mr. Dunning.  Indeed, the District Court for the Northern District of California has recently stayed civil proceedings pending the resolution of criminal proceedings in cases involving facts remarkably similar to those of this case. *See*, *Continental Insurance Co. v. Cota*, 2008 WL 4298372 (N.D.Cal., J. Conti presiding); and *Jones v. Conte*, 2005 WL 1287017 (N.D.Cal., J. Illston presiding).  A true and correct copy of the Motion to Stay Action is attached (without exhibits) as Exhibit "1."

Notwithstanding Defendants' Motion to Stay Action, eBay's Motion to Strike should be denied in its entirety.  Mr. Dunning properly asserts his Fifth Amendment privilege against self incrimination in response to eBay's Second Amended Complaint ("SAC") which alleges the very "cookie stuffing scheme" which form the basis of the pending criminal proceedings against Mr. Dunning.  The law is clear that a person need not be guilty of any

2

1  crime to invoke a constitutional privilege. *People v. Lucas* (1995) 12 Cal.4th 415, 453

2  ("Innocent persons, as well as the guilty, are entitled to invoke the privilege"); *Grunewald v.*

3  *United States* (1957) 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931; see also Ratner,

4  *Consequences of Exercising the Privilege Against Self-Incrimination*. Rather, if the

5  information sought *could, conceivably*, form a single evidentiary or factual link in a chain of

6  circumstantial evidence which chain of evidence *could* support *an inference* that the person is

7  culpable for any criminal offense, in violation of any state or federal law, that person cannot be

8  compelled by legal process, subpoena or court order to provide such information, upon his or

9  her invocation of the protection of the Fifth Amendment. *Hoffman v. United States*, 341 U.S.

10  479, 486 (1951); *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980); *Prudhomme v.*

11  *Superior Court* (1970) 2 Cal.3d 320, 325-326; *In re Misener* (1985) 38 Cal.3d 543, 546-551.

12          In addition, Mr. Dunning's invocation of his Fifth Amendment privilege against

13  self-incrimination extends to Defendants THI, BD.com and KFC (the "Entity Defendants")

14  because as the sole owner and representative of THI and BD.com (and together with his

15  brother who has also invoked his Fifth Amendment privilege – the sole representative of KFC),

16  Mr. Dunning is the only person that can respond on their behalf. eBay's contention that a

17  representative of these entities, such as these entities' attorneys, answer the allegations of

18  eBay's Second Amended Complaint ("SAC") is nonsensical since (1) there exists no

19  representative of the Entity Defendants other than Mr. Dunning, and as to KFC – Mr. Dunning

20  and Todd Dunning; and (2) the Entity Defendants' attorneys have no knowledge of the facts of

21  this case other than those obtained from Mr. Dunning. In any event, any and all responses

22  from person(s) other than Mr. Dunning would necessarily implicate Mr. Dunning since he is

23  the sole owner and representative of these entities – and obviously the only person with

24  knowledge of information regarding the allegations of the SAC. Moreover, as set forth in the

25  Motion to Stay Action, it is appropriate to stay a civil action as to entity defendants where the

26  person asserting the Fifth Amendment privilege against self-incrimination is the sole owner and

27  representative of the entity defendants. Indeed, the cases cited by eBay in support of its

28  Motion to Strike and Opposition to Motion to Stay Action acknowledge this fact:

1    "The court did not address the situation *where a corporation only*
2    *has one agent, who acts as the sole employee, shareholder and*
3    *officer for the corporation.* The Supreme Court in *Kordel* noted
4    'this troublesome question' and said that 'in such a case the
5    appropriate remedy would be a protective order . . . , postponing
6    civil discovery until termination of the criminal action.'" *Central*
7    *States, Southeast and Southwest Areas Pension Fund v.*
8    *Carstengen Freight Lines, Inc.*, 1998 WL 413490 (N.D. Ill.
9    1998), citing, *United States v. Kordel*, 397 U.S. 1, 9 (1970)
10   (cited by eBay in the Motion to Compel at pp. 5, 6 and 7).

11        In sum, in the event the Court does not stay this action pending the parallel
12   criminal proceeding against Mr. Dunning, the Motion to Stay should be denied in its entirety.

13   2.    STATEMENT OF FACTS

14        Mr. Dunning is the founder, sole shareholder, sole employee and sole officer of
15   Defendant THI. Defendant BD.com is not a business entity, but rather a name under which
16   Mr. Dunning does business. THI together with an entity solely owned by Mr. Dunning's
17   brother Todd Dunning known as Dunning Enterprises, Inc. ("DEI"), did business as Kessler's
18   Flying Circus ("KFC"). Until approximately June of 2007, KFC was in the business of
19   implementing internet marketing programs on behalf of internet merchants such as, and
20   including, eBay. In return for promoting and directing on-line traffic to eBay's website, KFC
21   was paid by eBay, via its agent Commission Junction, Inc. ("Commission Junction"), pursuant
22   to a commission structure based on the amount of on-line traffic visiting eBay's website and
23   number and volume of sales by eBay as a result of KFC's efforts.

24        eBay commenced this action on August 25, 2008, and filed the SAC on March
25   26, 2009. eBay alleges that its obligation to pay commissions is tracked through collections of
26   data known as "cookies" (SAC, ¶ 21) and that Defendants (all of them) forced the placement
27   of cookies on a computer intended to defraud eBay (otherwise known as "cookie stuffing").
28   (SAC, ¶ 24) eBay further alleges the Defendants engaged in a cookie stuffing scheme by

4

redirecting computers, unbeknownst to their users, to the eBay website and causing eBay to drop a cooking on the users' computers without the users clicking on an eBay advertisement. (SAC, ¶ 25) eBay claims that it was injured because "KFC would receive payment for actions by users who had not been referred to eBay by Defendants' advertisements." (SAC, ¶ 27) A true and correct copy of the SAC is attached as Exhibit "2."

On June 18, 2007, prior to the commencement of this action, the FBI conducted a search of Mr. Dunning's personal residence located in Laguna Niguel, California. More specifically, at 7:30 a.m. on June 18th, Mr. Dunning opened his front door in response to the advisement that an FBI search warrant was being served.

Upon entering Mr. Dunning's home, FBI agents proceeded to search every room of his home. Over the course of the next three hours the agents proceeded to seize, itemize and remove all electronic equipment in the home, including all computers, disk drives, hard drives, cell phones and servers used by Mr. Dunning. A true and correct copy of the itemized "seized property" list prepared by the FBI and given to Mr. Dunning is attached as Exhibit "3."

In addition to the search and seizure, special agent Lisa Miller, who operates out of the San Francisco office of the FBI, proceeded to interview Mr. Dunning in his living room for approximately three hours. The focus of Agent Miller's questioning was Mr. Dunning's involvement in the business of KFC, *and in particular KFC's contract and services relating to eBay and Commission Junction. Agent Miller inquired specifically as to such issues as "cookie stuffing," "forcing cookies," "forcing clicks," the provision of "links" and "widgets," and the direction of internet traffic to eBay's website in connection with KFC's services relating to eBay.*

After the FBI search and interview, Mr. Dunning retained criminal defense counsel, William J. Kopeny, whose offices are located in Irvine, California. As set forth in Mr. Kopeny's attached declaration, through his representation of Mr. Dunning, Mr. Kopeny has learned that the previously described FBI search was the result of a federal search warrant issued by the District Court of the Northern District of California, the District in which the corporate offices of eBay are located. *Mr. Kopeny has also learned that Mr. Dunning is a*

5

*target of an open criminal investigation pending in the Northern District of California related to his involvement with KFC, and in particular, KFC's services relating to eBay and eBay's "cookie stuffing" allegations.* Mr. Kopeny has been in contact with Assistant United States Attorney Kyle F. Waldinger who is the lead United States Attorney on the matter and who is assigned to the CHIP Unit.

By its own description set forth on the official website of the United States Department of Justice, the CHIP Unit is charged with combating "cybercrime." In addition, the CHIP Unit "works closely with the FBI and other agencies *to establish a relationship with the local high tech community and encourage them to refer cases to law enforcement."* (Emphasis added.) The CHIP Unit is specifically charged with *coordinating law enforcement and the technology industry to share expertise and information technology, to assist each other 24 hours a day, seven days a week, around the clock, to prevent cybercrime wherever possible..."* (Emphasis added.)[1]

As set forth below, it cannot be reasonably disputed that Mr. Dunning is entitled to assert his Fifth Amendment privilege against self-incrimination in response to the SAC which necessarily seeks admissions and/or denials of allegations pertinent to the pending criminal investigation of Mr. Dunning. Mr. Dunning should not be forced to choose between defending himself in this action and preserving his Fifth Amendment rights. In addition, *by its own description the federal government is coordinating with the technology industry, presumably including eBay, to assist in the prosecution of specifically the type of conduct alleged by eBay in this case.* Allowing the government to monitor parallel civil proceedings hoping to obtain incriminating information not only undermines the Fifth Amendment privilege but also violate concepts of fundamental fairness.

/ / /

/ / /

/ / /

/ / /

---

[1] See Declaration of William J. Kopeny.

6

3. ARGUMENT

    A.   This Court Should Stay This Action

        As explained above, Defendants' Motion to Stay Action has merit, is scheduled to be heard at the same time as eBay's Motion to Strike, and when granted will render eBay's Motion to Strike moot.

        The District Court for the Northern District of California has twice recently stayed civil proceeding pending the resolution of criminal proceedings. *See, Continental Insurance Co. v. Cota*, 2008 WL 4298372 (N.D.Cal., J. Conti presiding); and *Jones v. Conte*, 2005 WL 1287017 (N.D.Cal., J. Illston presiding). As set forth in both cases:

> "[t]he decision whether to stay civil proceedings in the face of a
> parallel criminal proceeding should be determined based on the
> circumstances and competing interests involved in the case.
> *[citing, Keating, supra,* 45 F. 3d at 324]. The court should
> consider the following factors: 1) the extent to which the
> defendant's Fifth Amendment rights are implicated; 2) the interest
> of the plaintiff in proceeding with the litigation and the potential
> prejudice to plaintiff of a delay; 3) the convenience of the court
> and the efficient use of judicial resources; 4) the interests of third
> parties; and 5) the interests of the public [the '*Keating* Factors'].
> (*Id.*)." *Jones, supra,* at 1; *see also, Cota, supra,* at 2.

        In *Jones*, the defendant Victor Conte was involved in a criminal case regarding allegations of unlawful distribution of performance enhancing drugs. While under indictment in the criminal case, Mr. Conte made a series of statements in the print and television media involving performance-enhancing drugs and professional athletes, including Marion Jones. As a result, on December 15, 2004 Ms. Jones filed a complaint alleging defamation and tortious interference with business relations against Mr. Conte.

        Judge Illston begins her analysis in the *Jones* case by recognizing that "[t]he strongest case for deferring civil proceedings until after completion of criminal proceedings is

1  where a party under indictment for a serious offense is required to defend a civil or

2  administrative action involving the same matter." *Jones, supra*, at 1, citing *SEC v. Dresser*

3  *Industries, Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). Judge Illston determined that both

4  the civil and criminal cases arose from the defendant's alleged involvement in the distribution

5  of performance-enhancing drugs, "as the veracity of his statements regarding plaintiff's actions

6  directly relate to his involvement with the distribution of performance-enhancing drugs." *Id.*,

7  at 2. As such, Judge Illston granted the requested stay as follows:

8              "The Court finds that a stay is proper because '[i]f discovery

9              moves forward, [the] defendant will be faced with the difficult

10             choice between asserting [his] right against self-incrimination,

11             thereby inviting prejudice in the civil case, or waiving those

12             rights, thereby courting liability in the civil case.'" *Id., citing*

13             *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75

14             (W.D.N.Y.2003).[2]

15             Judge Conti in *Continental Insurance Co. v. Cota*, 2008 WL 4298372

16  (N.D.Cal.) similarly determined that a stay of the civil action was warranted pending the

17  resolution of a parallel criminal matter. The defendant in *Continental Insurance* was John

18  Cota, the captain of the cargo ship COSCO BUSAN which collided with the Oakland Bay

19  Bridge. As a result, the ship discharged 50,000 gallons of fuel oil into the San Francisco Bay.

20  The federal government filed a criminal action against Mr. Cota and the companies that owned

21  the COSCO BUSAN. Concurrently Continental Insurance filed a civil indemnity action against

22  the companies that owned the ship and a civil declaratory relief action against Mr. Cota as to

23  Continental's obligation to defend Mr. Cota and for reimbursement of the costs paid in

24  ────────────────

25      [2]   When faced with the issue of either allowing a civil action to proceed or protecting the
     Fifth Amendment rights of individual defendants against self incrimination, the majority of
     courts have consistently chosen the later. See, e.g. *Wehling v. Columbia Broadcasting System*,
26   608 F.2d 1084, 1089 (5th Cir. 1979) ("[although a three-year hiatus in the lawsuit is
     undesirable from the standpoint of both the court and the defendant, permitting such
27   inconvenience seems preferable at this point to requiring plaintiff to choose between his silence
     and this lawsuit."); *White v. Mapco Gas Products, Inc.* 116 F.R.D. 498 (D.C. Ark 1987);
28   *Dienstag v. Bronsen*, 49 F.R.D. 327 (D.C.N.Y. 1970); *U.S. v. Steffes*, 35 F.R.D. 24 (D.C.
     Mont. 1964).

                                        8

| | |
|---|---|
| 1 | Mr. Cota's defense.  In addition, the owners of the COSCO BUSAN filed counter-claims |
| 2 | against Mr. Cota which alleged wilful misconduct on the part of Mr. Cota. |
| 3 | In applying the *Keating* Factors referenced above, Judge Conti found that a stay |
| 4 | of the civil action was warranted, noting that "[i]t is undisputed that all of the civil actions and |
| 5 | the criminal action spring from the same nucleus of facts - the allision of the COSCO BUSAN |
| 6 | with the Bay Bridge and the resulting oil spill." *Cota, supra*, at 2.  Judge Conti further |
| 7 | determined that "[i]t is difficult to imagine how adjudication of this issue would not implicate |
| 8 | many of the factual issues underlying the criminal action.  Accordingly, discovery propounded |
| 9 | on Cota in the underlying civil action will likely implicate his fifth amendment right." *Id.* |
| 10 | In this case it cannot be reasonably disputed that this action springs from the |
| 11 | same nucleus of facts as the pending criminal action against Mr. Dunning.  As set forth in |
| 12 | detail in the declaration of Mr. Kopeny, Mr. Dunning's criminal defense counsel, Assistant |
| 13 | United States Attorney Kyle F. Waldinger, who is the lead United States Attorney on the |
| 14 | matter, confirmed that (a) Mr. Brian Dunning is a target of a criminal investigation, together |
| 15 | with two other individuals, related to his involvement with KFC, and in particular, KFC's |
| 16 | services relating to eBay and the "cookie stuffing" scheme alleged by eBay in this case, (b) the |
| 17 | federal government is confident that a criminal offense can be proven, based on the fraudulent |
| 18 | conduct of one or more persons; and (c) until the federal government has concluded its analysis |
| 19 | of the computer media seized, the federal government is unwilling to discuss any resolution of |
| 20 | its case at this time.  In addition, Mr. Waldinger has confirmed that the criminal investigation |
| 21 | of Mr. Dunning is ongoing and that search warrants other than that discussed above have |
| 22 | issued.  The federal government has also sought from the District Court, and obtained, several |
| 23 | extensions of time to return all the materials seized from Mr. Dunning's home pursuant to the |
| 24 | aforementioned federal search warrant.  As stated by Mr. Kopeny in his declaration, in order |
| 25 | to obtain such permission from the federal court, the United States Attorney must allege that |
| 26 | there is an active criminal investigation, that the federal government believes the property |
| 27 | seized constitutes, or is likely to constitute evidence of the suspected crime, and that additional |
| 28 | time is reasonably needed to complete the investigation.  The federal government remains in |

9

possession of materials seized from Mr. Dunning on the basis of its continued criminal investigation of him.

Using the words of Judge Conti, it is difficult to imagine how adjudication of this civil action would not implicate many, if not all, of the factual issues underlying the criminal action. Both the civil action and the criminal action arise from the same facts and share the exact same allegations. Accordingly, the SAC implicates Mr. Dunning's Fifth Amendment right. Mr. Dunning should not be forced to choose between defending himself in this action and preserving his Fifth Amendment rights. In addition, allowing the government to monitor parallel civil proceedings hoping to obtain incriminating information not only undermines the Fifth Amendment privilege but also violate concepts of fundamental fairness. Although staying the civil action may cause delay, protecting a party's constitutional rights is paramount.

As such, this Court should defer hearing eBay's Motion To Strike until after it rules on Defendants' Motion To Stay Action. Defendants' Motion to Stay Action has merit, is scheduled to be heard at the same time as eBay's Motion to Strike, and when granted will render eBay's Motion to Strike moot.

B.  **Mr. Dunning's Invocation Of His Fifth Amendment Privilege Against Self-Incrimination Extends To The Entity Defendants Since Any Response By The Entity Defendants Would Necessarily Implicate Mr. Dunning**

As set forth above, Mr. Dunning is the founder, sole shareholder, sole officer and sole employee of Defendant THI. Defendant BD.com is not a business entity, but rather a name under which Mr. Dunning does business. THI together with an entity solely owned by Mr. Dunning's brother Todd Dunning (i.e., DEI), did business as Kessler's Flying Circus ("KFC").[3]

The veracity of the allegations of the SAC is known only by Mr. Dunning, and as to KFC, his brother Todd Dunning, who has also asserted his Fifth Amendment privilege against self-incrimination. No individuals other than Mr. Dunning were involved in the

---

[3]  THI, BD.com and KFC are collectively referred to as the Entity Defendants.

10

1 activities of THI and BD.com. In addition, no other individuals other than Mr. Dunning and
2 his brother were involved in the activities of KFC as such activities related to eBay and the
3 allegation made by eBay in the SAC. Both Mr. Dunning and his brother have asserted their
4 Fifth Amendment privilege against self-incrimination as to eBay's requests and cannot be
5 compelled to admit or deny the allegations of the SAC which alleges the very conduct which
6 underlies the parallel criminal investigation of Mr. Dunning.

7       More specifically, in the SAC eBay alleges that its obligation to pay
8 commissions is tracked through collections of data known as "cookies" (SAC, ¶ 21) and that
9 Defendants (all of them) forced the placement of cookies on a computer intended to defraud
10 eBay (otherwise known as "cookie stuffing"). (SAC, ¶ 24) eBay further alleges the
11 Defendants engaged in a cookie stuffing scheme by redirecting computers, unbeknownst to
12 their users, to the eBay website and causing eBay to drop a cooking on the users' computers
13 without the users clicking on an eBay advertisement. (SAC, ¶ 25) eBay claims that it was
14 injured because "KFC would receive payment for actions by users who had not been referred
15 to eBay by Defendants' advertisements." (SAC, ¶ 27)

16       As set forth above, Mr. Dunning's responses to the allegations of the SAC
17 *could, conceivably*, form a single evidentiary or factual link in a chain of circumstantial
18 evidence which chain of evidence *could* support *an inference* that the person is culpable for any
19 criminal offense, in violation of any state or federal law, that person cannot be compelled by
20 legal process, subpoena or court order to provide such information, upon his or her invocation
21 of the protection of the Fifth Amendment. *Hoffman, supra*, 341 U.S. at 486; *Neff, supra*, 615
22 F.2d at 1239; *Prudhomme, supra*, 2 Cal.3d at 325-326; *In re Misener, supra*, 38 Cal.3d at
23 546-551. It cannot be reasonably disputed that responses to the allegations of the SAC (the
24 same conduct that underlies the Government's criminal investigation of Mr. Dunning) *could,*
25 *conceivably*, form a single evidentiary or factual link in a chain of circumstantial evidence
26 which chain of evidence *could* support *an inference* that the person is culpable for any criminal
27 offense, in violation of any state or federal law.
28 / / /

11

1   Based on the fact that Mr. Dunning is the sole owner shareholder, employee and

2   officer of THI and BD.com, it is inconceivable that the Entity Defendants could respond to the

3   allegations of the SAC without involving Mr. Dunning.  There simply is no other

4   representative of the Entity Defendants other than Mr. Dunning (and Todd Dunning as to KFC)

5   that can provide (and verify to the extent required) the information requested by eBay.  The

6   case cited by eBay in support of the Motion to Strike, as well as the cases cited in support of

7   eBay's Motion to Compel certain discovery in the face of Mr. Dunning's assertion of the Fifth

8   Amendment privilege as to the Entity Defendants, actually support Defendants' argument that

9   Mr. Dunning's invocation of his Fifth Amendment privilege against self-incrimination extends

10  to the Entity Defendants.

11          First, *Navel Orange Admin. Comm. V. Exeter Orange Co.*, 722 F.2d 449 (9th

12  Cir. 1983), is not on point as to the argument asserted by eBay since it did not involve an entity

13  defendant having only a single representative.  What is instructive from the *Navel Orange* case

14  is the court's acknowledgment that the "individual [officers] themselves may not be compelled

15  to produce any information that they allege is incriminating . . . ." *Navel Orange, supra*, 722

16  F.2d at 454.  Next, *United States v. 3963 Bottles, More Or Less*, 265 F.2d 332 (7th Cir. 1959),

17  likewise does not involve an entity defendant having only a single representative.  However,

18  *3963 Bottles* establishes that to the extent a corporation is required to provide responses to

19  discovery, "[i]t is the duty of [the] corporate claimant to select an agent who, ***without fear of***

20  ***self-incrimination***, could provide the information requested." *3963 Bottles, supra*, at 336

21  (emphasis added).  As such, like *Navel Orange*, *3963 Bottles* affirms that a representative of a

22  corporation cannot be compelled to respond to discovery where the representative asserts his

23  Fifth Amended privilege against self-incrimination.  In addition, *Priebe v. World Ventures,*

24  *Inc.*, 407 F.Supp. 1244 (C.D. Cal 1976), strongly supports Defendants' position.  The *Priebe*

25  court first affirms that an individual who asserts his Fifth Amendment privilege against self-

26  incrimination in a civil action can make a blanket refusal to answer questions where "the civil

27  charges dovetail with those that could give rise to the risk of criminal prosecution . . . any

28  questions that could lead to discoverable evidence admissible in the civil proceeding could also

12

1 provide 'a link in the chain of evidence' needed in a criminal prosecution." *Priebe, supra*, 407

2 F.Supp. at 1245-1246, citing *Blau v. United States*, 340 U.S. 159, 161 (1950). As set forth

3 above, it cannot be reasonably disputed that the allegations of the SAC "dovetail" with the

4 facts underlying the pending criminal proceedings against Mr. Dunning.

5        Finally, as touched upon above, the case of *Central States, Southeast and*

6 *Southwest Areas Pension Fund, supra*, 1998 WL 413490, provides ample support for

7 Defendants' argument that the Entity Defendants cannot be compelled to respond to the

8 allegation of the SAC since Mr. Dunning is the sole shareholder, officer and employee of THI

9 and BD.com, and Mr. Dunning and his brother (who also asserts the Fifth Amendment

10 privilege) are the sole individual representatives of KFC with knowledge of the alleged facts

11 which underlie the SAC. More specifically, the *Central States* court, citing the Supreme

12 Court, acknowledged that in such a situation the civil action should be stayed pending

13 resolution of the criminal proceedings:

14        "The court did not address the situation *where a corporation only*

15        *has one agent, who acts as the sole employee, shareholder and*

16        *officer for the corporation.* The Supreme Court in *Kordel* noted

17        'this troublesome question' and said that 'in such a case the

18        appropriate remedy would be a protective order . . . , postponing

19        civil discovery until termination of the criminal action.'" *Central*

20        *States, Southeast and Southwest Areas Pension Fund v.*

21        *Carstengen Freight Lines, Inc.*, 1998 WL 413490 (N.D. Ill.

22        1998), citing, *United States v. Kordel*, 397 U.S. 1, 9 (1970)

23        (cited by eBay in the Motion to Compel at pp. 5, 6 and 7).

24        Finally, contrary to eBay's contention, the Entity Defendants' attorneys cannot,

25 and are not required to, provide responses to the SAC. The Entity Defendants' attorneys have

26 no knowledge of the information sought by eBay other than what has been told to them by

27 Mr. Dunning. The Entity Defendants had no attorney representation prior to the FBI

28 investigation of June 2007. Aside from the obvious attorney/client privilege implications of

13

eBay's position, any information given by, or attested to by, the Entity Defendants' attorneys would directly implicate Mr. Dunning since he would be the only source of such information. eBay's argument in this regard is nonsensical. Indeed, the case cited by eBay in support of this argument is inapposite. In *SEC v. Leach*, 156 F.Supp.2d 491 (2001), the court's reference to the appointment of the defendant's attorney to respond was to "corporate counsel" whom presumably has knowledge of the pertinent facts. Moreover, the *Leach* court's inference in this regard was made in passing and is nothing more than unpersuasive dicta.

In sum, Mr. Dunning's invocation of his Fifth Amendment privilege against self-incrimination extends to the Entity Defendants since any response by the Entity Defendants to the allegations of the SAC would necessarily implicate Mr. Dunning.

4.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court rule on Defendants' Motion to Stay Action prior to eBay's Motion to Strike. In the alternative, Defendants respectfully request that the Motion to Strike be denied in its entirety.

DATED: October 30, 2009          Respectfully submitted,

RUS, MILIBAND & SMITH
A Professional Corporation

By:_____
LEO J. PRESIADO
Attorneys for Defendants
THUNDERWOOD HOLDINGS, INC.,
BRIAN DUNNING AND
BRIANDUNNING.COM

DATED: October 30, 2009          Respectfully submitted,

LAW OFFICES OF PATRICK K. McCLELLAN

By:_____
PATRICK K. McCLELLAN
Attorney for Defendant
KESSLER'S FLYING CIRCUS

14

I, LEO J. PRESIADO, declare as follows:

1.     I am an attorney at law duly licensed to practice before the above-entitled Court, and am a member of the law firm of Rus, Miliband & Smith, A Professional Corporation, attorneys of record for Defendants Brian Dunning ("Mr. Dunning"), BrianDunning.com ("BD.com"), Thunderwood Holdings, Inc. ("THI").

2.     I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

3.     A true and correct copy of the Motion to Stay Action is attached as Exhibit "1." The Motion to Stay Action is also scheduled to be heard on November 20, 2009.

4.     A true and correct copy of eBay's Second Amended Complaint is attached as Exhibit "2."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30th day of October, 2009, at Irvine, California.

LEO J. PRESIADO

15

## DECLARATION OF WILLIAM J. KOPENY

I, WILLIAM J. KOPENY, declare as follows:

1.     I am an attorney at law duly licensed to practice before the above-entitled Court. I represent Brian Dunning in connection with that certain criminal investigation described in more detail below. I have been a member of the bar of the United States District Court for the Central District of California since December 20, 1974, and have been representing individuals in connection with criminal investigations and criminal prosecutions for over 35 years. I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

2.     In June 2007, I was retained by Brian Dunning as criminal counsel, in connection with the execution of a search warrant at his home on June 18, 2007, and his interrogation by agents of the Federal Bureau of Investigation ("FBI"). I immediately contacted the local FBI agents, one of whom I knew from a prior federal criminal matter I had handled, and I was informed that: (a) Mr. Dunning was being investigated for computer crimes by agents from the San Francisco Bay area; and (b) the items seized under the search warrant, which consisted primarily of computers, computer media, and hard copy documents, were in the custody of the agents in charge of the case and/or the Office of the United States Attorney for the Northern District of California.

3.     I then contacted the FBI agents involved in the execution of the search warrant from the San Francisco Bay area and learned that the assigned federal prosecutor is Kyle F. Waldinger who is the United States Attorney in charge of the Computer Hacking and Intellectual Property Unit ("CHIP Unit") of the Office United States Attorney for the Northern District of California.

4.     Because initially, the searching agents had informed Mr. Dunning that anything the agents needed would be copied and that the computers and other materials seized would be returned within two weeks, on July 3, 2007, I contacted Mr. Waldinger to inquire whether Mr. Dunning was a "target" of the investigation, and whether we could expect his property to be returned within the time frame promised by the agents on the scene of the

16

search. Mr. Waldinger informed me that: (a) Mr. Brian Dunning is a target of the investigation, along with two other named persons; (b) the federal government is confident that a criminal offense could be proven, based on the fraudulent conduct of one or more persons; and (c) until the federal government has concluded its analysis of the computer media seized, the federal government is unwilling to discuss any resolution of its case. Since that first telephone call with Mr. Waldinger, I have had at least six other phone conversations with him and faxed to him at least three letters.

5. I have reviewed my file and in those letters I have confirmed in writing that Mr. Waldinger advised me that: (1) Mr. Dunning is a "target" of the federal criminal investigation; (2) the investigation concerns Thunderwood Holdings, Inc. ("Thunderwood") and Kessler's Flying Circus ("KFC") and its relationship with eBay, and allegations that "cookies" had been "forced" in violation of the terms of service with Plaintiff eBay ("Plaintiff") and/or Commission Junction, Inc., which allegedly constitutes "cyber-fraud" under various federal fraud statutes.

6. I have conferred with Mr. Waldinger periodically and he has continued to confirm that Mr. Dunning is a target of an active investigation, that the federal government is not yet done with its investigation or analysis of the computers seized, and that he will contact me in the event an indictment is issued naming my client as a defendant, including any indictment for fraud, in which Plaintiff and/or eBay is the named victim based on the above. The investigation remains open and active.

7. Mr. Waldinger has confirmed that the criminal investigation of Mr. Dunning is ongoing, that search warrants other than that discussed above have issued, and in my opinion, based on my experience, I believe it is likely that the federal government has presented testimony in this investigation to the United States Grand Jury for the Northern District of California. In addition, the federal government has sought from the District Court, and obtained, several extensions of time to return all the materials seized from Mr. Dunning's home pursuant to the aforementioned federal search warrant, which called for its return within 60 days unless additional time is granted. Typically, in order to obtain such permission from

17

1 the federal court, the United States Attorney must allege that there is an active criminal
2 investigation, that the federal government believes the property seized constitutes, or is likely
3 to constitute evidence of the suspected crime, and that additional time is reasonably needed to
4 complete the investigation. With the exception of approximately 10% of the items seized,
5 which items have nothing to do with Plaintiff or KFC, the federal government remains in
6 possession of all other materials seized from Mr. Dunning, on the basis of its continued
7 criminal investigation of him.

8       8.      By its own description on the United States Department of Justice
9 website, the CHIP Unit is charged with combating "cybercrime and intellectual property
10 theft." In fact, that unit, and Mr. Waldinger have acquired a national reputation for being the
11 first prosecutors in the nation to bring and win cyber-prosecutions based on previously untested
12 legal theories. In addition, the CHIP unit "works closely with the FBI and other agencies to
13 establish a relationship with the local high tech community and encourage them to refer cases
14 to law enforcement." A true and correct copy of this description found on the website of the
15 Department of Justice, is attached as Exhibit "4." The CHIP Unit is specifically charged with
16 coordinating law enforcement and the technology industry "to share expertise and information
17 technology, to assist each other 24 hours a day, seven days a week, around the clock, to
18 prevent cybercrime wherever possible..." A true and correct copy of this description found on
19 the website of the Department of Justice, is attached hereto as Exhibit "5."

20       9.      The word "target" is a term of art within the United States Department
21 of Justice, and it is to be distinguished from a "witness" and/or a "person of interest." Under
22 Justice Department guidelines, the prosecutor is required to inform a person or his attorney
23 when he has achieved the status of "target" because that person is actively believed to be a
24 future defendant, based on an ongoing investigation. This guideline is in place to avoid any
25 later claim that the "target" failed to invoke his rights against self-incrimination because he or
26 she wrongly believed he was not going to be prosecuted. Thus, anyone who is informed that
27 / / /
28 / / /

18

1 he is a "target" has an enormous motive to obtain counsel and assert his privilege against self-
2 incrimination.

3         10.     On advice of and through counsel, Mr. Dunning has asserted his right to
4 remain silent, *i.e.*, has asserted his constitutional privilege against self-incrimination under the
5 Fifth Amendment to the United States Constitution following the execution of a search warrant
6 at his home and the questioning by FBI agents, and I have advised him to assert the same
7 privilege in response to any question asked of him at any deposition, in response to any
8 interrogatory or request for admission, and in response to any demand for production of
9 documents (the possession of which is privileged under *United States v. Doe* (1988) 487 U.S.
10 201, 108 S.Ct. 2341, 101 L.Ed.2d 184).[4/]

11         11.     Under the Fifth Amendment, a person need not be guilty of any crime to
12 enjoy a constitutional privilege not to provide information that the government or any party
13 seeks to compel him or her to provide. (*People v. Lucas* (1995) 12 Cal.4th 415, 453
14 ["Innocent persons, as well as the guilty, are entitled to invoke the privilege"]; *Grunewald v.*
15 *United States* (1957) 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931; see also Ratner,
16 *Consequences of Exercising the Privilege Against Self-Incrimination*.) Rather, if the
17 information sought *could, conceivably*, form a single evidentiary or factual link in a chain of
18 circumstantial evidence which chain of evidence *could* support *an inference* that the person is
19 culpable for any criminal offense, in violation of any state or federal law, that person cannot be
20 compelled by legal process, subpoena or court order to provide such information, upon his or
21 her invocation of the protection of the Fifth Amendment. (*Hoffman v. United States*, 341 U.S.
22 479, 486 (1951); *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980); *Prudhomme v.*

23 _____

24    [4/]   On behalf of Mr. Dunning I herewith assert that in producing such records he would be
"testifying" as to their existence and to his control over them in a way that is protected by his
25 Fifth Amendment privilege against self-incrimination. *Fisher v. United States* (1976) 425 U.S.
391, 96 S.Ct. 1569, 48 L.Ed.2d 39; *United States v. Doe* (1984) 465 U.S. 605, 104 S.Ct.
26 1237, 79 L.Ed.2d 552 (*Doe I*),; and *Doe v. United States* (1988) 487 U.S. 201, 108 S.Ct.
2341, 101 L.Ed.2d 184 (*Doe II*), a line of cases in which the Supreme Court emphasized that
27 the act of producing potentially incriminating documents under government compulsion may
have impermissible testimonial aspects. These cases are applicable to this case since they hold
28 that the Fifth Amendment protects against compulsory surrender of (1) personal business
records, (2) in the possession of a sole proprietor or practitioner, (3) with respect to the
testimonial act implicit in the surrender itself.

*Superior Court* (1970) 2 Cal.3d 320, 325-326; *In re Misener* (1985) 38 Cal.3d 543, 546-551.)

12.    I have reviewed the complaint in this matter and based on my understanding of the allegations and issues in this civil matter, Mr. Dunning has, through counsel, already asserted his Fifth Amendment privilege against self-incrimination in connection with an inquiry by the Federal Government into *the identical facts alleged in this case*, and clearly is entitled to its protection in the context of this case.  In my opinion, any court order compelling Mr. Dunning to respond to the allegations of the complaint, and/or to respond to discovery propounded to him would constitute "compelled self-incrimination" within the meaning of the Fifth Amendment and California's constitutional privilege against self-incrimination.  (Please see *People v. Lucas, supra*, 12 Cal.4th at 453.)[5]

13.    Based on these descriptions of the function, purpose and manner of operating on the part of the CHIP Unit, together with my 35 years of experience defending individuals in criminal cases, it is clear that any and all information obtained from Mr. Dunning in the course of discovery in this case will be shared with, and will be monitored by, the federal government in aid of the criminal investigation and/or prosecution of Mr. Dunning.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 30th day of October, 2009, at Irvine, California.

WILLIAM J. KOPENY

---

[5]    "[I]n order to approve invocation of the privilege 'it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question <u>or an explanation of why it cannot be answered</u> *might* be dangerous because injurious disclosure *could* result.'"  *People v. Cudjo, supra*, 6 Cal.4th at p. 617, 25 Cal.Rptr.2d 390, 863 P.2d 635, quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  (Underlining and italics supplied.)

20

OPPOSITION TO  MOTION TO STRIKE ANSWER

<u>DECLARATION OF BRIAN DUNNING</u>

I, BRIAN DUNNING, declare as follows:

1.     I am an individual over the age of eighteen, and am a named defendant in the above-referenced civil action commenced by eBay Inc. I have firsthand personal knowledge of the facts set forth herein.

2.     I am the founder and sole shareholder and representative of Defendant Thunderwood Holdings, Inc. ("THI"). Defendant Briandunning.com is not a business entity, but rather a name under which I have done business. THI together with my brother's company Dunning Enterprise, Inc. ("DEI") did business as Kessler's Flying Circus ("KFC").

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 30th day of October, 2009, at Laguna Niguel, California.

BRIAN DUNNING

21

EXHIBIT "1"

1   RONALD RUS, #67369
    rrus@rusmiliband.com
2   LEO J. PRESIADO, #166721
    lpresiado@rusmiliband.com
3   RUS, MILIBAND & SMITH
    A Professional Corporation
4   Seventh Floor
    2211 Michelson Drive
5   Irvine, California 92612
    Telephone:  (949) 752-7100
6   Facsimile:   (949) 252-1514

7
    Attorneys for Defendants
8   THUNDERWOOD HOLDINGS, INC.,
    BRIAN DUNNING, and BRIANDUNNING.COM
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13   EBAY INC.,                          )   CASE NO. CV 08-4052 JF (PVT)
                                         )
14                  Plaintiff,           )   NOTICE OF MOTION AND MOTION
                                         )   TO STAY CIVIL ACTION PENDING
15   vs.                                 )   RESOLUTION OF CRIMINAL
                                         )   PROCEEDINGS; MEMORANDUM OF
16   DIGITAL POINT SOLUTIONS, INC.;      )   POINTS AND AUTHORITIES;
17   SHAWN HOGAN; KESSLER's FLYING       )   DECLARATION OF WILLIAM J.
     CIRCUS; THUNDERWOOD HOLDINGS,       )   KOPENY AND BRIAN DUNNING IN
18   INC.; TODD DUNNING; DUNNING         )   SUPPORT
     ENTERPRISES, INC.; BRIAN DUNNING;   )
19   BRIANDUNNING.COM; and DOES 1-20,    )   DATE:    November 20, 2009
                                         )   TIME:    9:00 a.m.
20                  Defendants.          )   CTRM:    3
                                         )
21                                           Hon. Jeremy Fogel presiding

22

23

24

25

26

27

28

                                    1

378033v1 ts 9/25/09 4 (2785-0002)

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on November 20, 2009 at 9:00 a.m. in

3  Courtroom 3 located at 280 South 1st Street, San Jose, California, before the Hon. Jeremy

4  Fogel, Defendants Thunderwood Holdings, Inc., Brian Dunning and BrianDunning.com

5  (collectively, "Defendants") will and hereby do move the Court for an order staying this civil

6  action as against Defendants pending the parallel criminal proceeding pending against

7  Defendant Brian Dunning.

8        As set forth more fully in Defendants' Memorandum of Points and Authorities,

9  this Motion is made on the grounds that a stay of this civil action is necessary to protect

10  Mr. Dunning's Fifth Amendment rights in connection with a criminal proceeding arising from

11  the same underlying facts that give rise to this action.  In addition, the civil action should be

12  stayed as to Defendants Thunderwood Holdings, Inc. and BrianDunning.com because

13  Mr. Dunning is the only person that can speak on behalf of these entities, and thus, these

14  entities will be greatly prejudiced by their inability to meaningfully defend themselves in this

15  civil action.

16        This Motion is based on this Notice of Motion and Motion, the accompanying

17  Memorandum of Points and Authorities, all supporting papers including the Declarations of

18  Brian Dunning and William J. Kopeny, all pleadings and files in this matter and such additional

19  evidence and argument as may be permitted by the Court.

20

21  DATED: October 15, 2009           RUS, MILIBAND & SMITH
                                    A Professional Corporation

22

23

24                                By: _____
                                RONALD RUS

25                                  Attorneys for Defendants
                                Thunderwood Holdings, Inc., Brian Dunning

26                                  and BrianDunning.com

27

28

378033v1 ts 9/25/09 4 (2785-0002)

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The Implication of Mr. Dunning's Fifth Amendment Rights Warrants A
Stay Of This Action Pending Completion Of The Criminal Proceeding . . . . . 7

    B.    The Remainder of the *Keating* Factors Favor A Stay . . . . . . . . . . . . . . 10

        (1)    No Prejudice Will Befall eBay . . . . . . . . . . . . . . . . . . . . . . . . . 10

        (2)    Proceeding With This Action Severely Burdens Mr. Dunning . . . . . 11

        (3)    The Convenience Of The Court Weighs In Favor Of A Stay . . . . . . 11

        (4)    No Interests Of Persons Not Parties To The Action Will Be Affected
By A Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        (5)    The Interest Of The Public Favors A Stay . . . . . . . . . . . . . . . . . 12

    C.    A Stay Of This Action Pending The Conclusion Of The Criminal Proceeding
Is Required As to THI and BD.com As Well . . . . . . . . . . . . . . . . . . . 12

4. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

DECLARATION OF WILLIAM J. KOPENY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DECLARATION OF BRIAN DUNNING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*American Express Business Finance Corp v. RW Prof Leasing Services Corp.*,
225 F. Supp. 2d 263 (E.D.N.Y. 2003) ......................................... 12, 13, 14

4

5

*Bruner Corp v. Balogh*,
819 F. Supp. 811 (E.D. Wis. 1993) ........................................... 12, 13, 14

6

*Cadence Design Sys. v. Avant!, Inc., No. C 95-20828*,
1997 U.S. Dist. LEXIS 24147 (N.D. Cal. July 22, 1997) ................... 14

7

8

*Continental Insurance Co. v. Cota*,
2008 WL 4298372 (N.D.Cal., J. Conti presiding) ........... 3, 7, 8, , 9, 10, 11

9

*Dienstag v. Bronsen*,
49 F.R.D. 327 (D.C.N.Y. 1970) .............................................. 8

10

*Doe v. United States*
(1988) 487 U.S. 201, 108 S. Ct. 2341, 101 L. Ed. 2d 184 ............... 19

11

12

*Federal Savings and Loan Ins. Corp. v. Molinaro*,
889 F.2d 899 (9th Cir. 1989) ................................................ 6

13

14

*Fisher v. United States*
(1976) 425 U.S. 391, 96 S. Ct. 1569, 48 L. Ed. 2d 39 ................. 19

15

*Grunewald v. United States*
(1957) 353 U.S. 391, 77 S. Ct. 963, 1 L. Ed. 2d 931 ................. 19

16

*Hoffman v. United States*
(1951) 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 ................. 19

17

18

*Javier H. v. Garcia-Botello*,
218 F.R.D. 72 (W.D.N.Y.2003) ........................................ 8, 12

19

*Jones v. Conte*,
2005 WL 1287017 (N.D.Cal., J. Illston presiding) ......... 3, 7, 8, 10, 11, 12

20

21

*Keating v. Office of Thrift Supervision*,
45 F.3d 322 (9th Cir. 1995) ............................................ 6, 9, 12

22

*Landis v. North American Co.*,
299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ................... 6

23

24

*SEC v. Dresser Indus., Inc.*,
628 F.2d 1368 (D.C. Cir. 1980) ...................................... 6, 8, 11

25

*Matter of Seper*,
705 F.2d 1499 (9th Cir. 1983) .......................................... 7

26

27

*Taylor, Bean & Whitaker Mortgage Corporation v. Triduanium Financial*,
2009 WL 2136986 (E.D.Cal. 2009) .............................. 10, 11, 14, 15

28

ii

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

378033v1 ts 9/25/09 4 (2785-0002)

PAGE 26

1  *U.S. v. Steffes*,
2  35 F.R.D. 24 (D.C. Mont. 1964) .................................................. 8

3  *United States v. All Meat & Poultry Products Stored at LaGrou Cold Storage*,
   2003 U.S. Dist. LEXIS 17677 (N.D. Ill. 203) ....................... 12, 13

4  *United States v. Doe*
5  (1984) 465 U.S. 605, 104 S. Ct. 1237, 79 L. Ed. 2d 552 ........... 19

6  *United States v. Doe*
   (1988) 487 U.S. 201, 108 S. Ct. 2341, 101 L. Ed. 2d 184 .......... 19

7  *United States v. Kordel*,
8  397 U.S. 1, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970) ................ 6, 14

9  *United States v. Neff*
   (9th Cir. 1980) 615 F.2d 1235 ................................. 20

10 *Volmar Distributors, Inc. v. Interboro Distributors, Inc*,
11 152 F.R.D. 36 (S.D.N.Y. 1993) ............................... 12, 13

   *Wehling v. Columbia Broadcasting System*,
12 608 F.2d 1084 (5th Cir. 1979) ................................... 8

13 *White v. Mapco Gas Products, Inc.*,
14 116 F.R.D. 498 (D.C. Ark 1987) ................................. 8

15                        **STATE CASES**

16 *In re Misener*
17 (1985) 38 Cal. 3d 543 ......................................... 20

18 *People v. Lucas*
   (1995) 12 Cal.4th 415 ...................................... 19, 20

19 *Prudhomme v. Superior Court*
20 (1970) 2 Cal. 3d 320 ......................................... 20

21
22
23
24
25
26
27
28

iii

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

378033v1 ts 9/25/09 4 (2785-0002)

PAGE 27

1    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2    1.    <u>INTRODUCTION</u>

3           A stay of this action as to Defendants Brian Dunning, Thunderwood Holdings,

4    Inc. ("THI") and BrianDunning.com ("BD.com") (collectively, "Defendants") is justified and

5    should be granted.

6           This civil action commenced by Plaintiff eBay Inc. ("eBay" or "Plaintiff")

7    against Defendants arises from the same nexus of facts that triggered a Federal Bureau of

8    Investigation ("FBI") investigation and federal criminal proceedings against Mr. Dunning.

9    As a result of the FBI investigation, the Computer Hacking and Intellectual Property Unit

10   ("CHIP Unit") of the United States Attorney's Office for the Northern District of California

11   has named Mr. Dunning a target in an open criminal investigation pending in the Northern

12   District of California.  Mr. Dunning should not be forced to choose between defending himself

13   in this action and preserving his Fifth Amendment rights.  In light of the particular

14   circumstances of this case and considering the interest of all parties involved, a stay of all civil

15   proceedings is required pending the ongoing parallel criminal proceeding against Mr. Dunning.

16   As set forth below, the District Court for the Northern District of California has recently

17   stayed civil proceedings pending the resolution of criminal proceedings in cases involving facts

18   remarkably similar to those of this case. *See, Continental Insurance Co. v. Cota*, 2008 WL

19   4298372 (N.D.Cal., J. Conti presiding); and *Jones v. Conte*, 2005 WL 1287017 (N.D.Cal.,

20   J. Illston presiding).

21          In addition, this civil proceeding should be stayed against Defendants THI and

22   BD.com because, as the sole owner and representative of these entities, Mr. Dunning is the

23   only person that can speak on their behalf.  As such, these entities will be greatly prejudiced by

24   their inability to meaningfully defend themselves in this civil action.  As set forth below,

25   persuasive case law holds that under these circumstances it is appropriate to stay the civil

26   proceedings as to the entity defendants as well.

27          In sum, a stay of proceedings in this civil action as to Defendants is warranted

28   and should be granted.

3

378033v1 ts 9/25/09 4 (2785-0002)

1   2.   <u>STATEMENT OF FACTS</u>

2            Mr. Dunning is the founder and sole shareholder of Defendant THI.  Defendant

3   BD.com is not a business entity, but rather a name under which Mr. Dunning does business.

4   THI together with an entity solely owned by Mr. Dunning's brother Todd Dunning known as

5   Dunning Enterprises, Inc. ("DEI"), did business as Kessler's Flying Circus ("KFC").  Until

6   approximately June of 2007, KFC was in the business of implementing internet marketing

7   programs on behalf of internet merchants such as, and including, eBay.  In return for

8   promoting and directing on-line traffic to eBay's website, KFC was paid by eBay, via its agent

9   Commission Junction, Inc. ("Commission Junction"), pursuant to a commission structure based

10  on the amount of on-line traffic visiting eBay's website and number and volume of sales by

11  eBay as a result of KFC's efforts.

12           eBay commenced this action on August 25, 2008, and filed its Second Amended

13  Complaint ("SAC") on March 26, 2009.  eBay alleges that its obligation to pay commissions is

14  tracked through collections of data known as "cookies" (SAC, ¶ 21) and that Defendants (all

15  of them) forced the placement of cookies on a computer intended to defraud eBay (otherwise

16  known as "cookie stuffing").  (SAC, ¶ 24)  eBay further alleges the Defendants engaged in a

17  cookie stuffing scheme by redirecting computers, unbeknownst to their users, to the eBay

18  website and causing eBay to drop a cooking on the users' computers without the users clicking

19  on an eBay advertisement.  (SAC, ¶ 25)  eBay claims that it was injured because "KFC would

20  receive payment for actions by users who had not been referred to eBay by Defendants'

21  advertisements."  (SAC,   ¶ 27)  A true and correct copy of the SAC is attached as

22  Exhibit "1."

23           On June 18, 2007, prior to the commencement of this action, the FBI conducted

24  a search of Mr. Dunning's personal residence located in Laguna Niguel, California.  More

25  specifically, at 7:30 a.m. on June 18th, Mr. Dunning opened his front door in response to the

26  advisement that an FBI search warrant was being served.

27           Upon entering Mr. Dunning's home, FBI agents proceeded to search every room

28  of his home.  Over the course of the next three hours the agents proceeded to seize, itemize and

4

1 | remove all electronic equipment in the home, including all computers, disk drives, hard drives,

2 | cell phones and servers used by Mr. Dunning. A true and correct copy of the itemized "seized

3 | property" list prepared by the FBI and given to Mr. Dunning is attached as Exhibit "2."

4 |        In addition to the search and seizure, special agent Lisa Miller, who operates out

5 | of the San Francisco office of the FBI, proceeded to interview Mr. Dunning in his living room

6 | for approximately three hours. The focus of Agent Miller's questioning was Mr. Dunning's

7 | involvement in the business of KFC, and in particular KFC's contract and services relating to

8 | eBay and Commission Junction. Agent Miller inquired specifically as to such issues as "cookie

9 | stuffing," "forcing cookies," "forcing clicks," the provision of "links" and "widgets," and the

10 | direction of internet traffic to eBay's website in connection with KFC's services relating to

11 | eBay.

12 |        After the FBI search and interview, Mr. Dunning retained criminal defense

13 | counsel, William J. Kopeny, whose offices are located in Irvine, California. As set forth in

14 | Mr. Kopeny's attached declaration, through his representation of Mr. Dunning, Mr. Kopeny

15 | has learned that the previously described FBI search was the result of a federal search warrant

16 | issued by the District Court of the Northern District of California, the District in which the

17 | corporate offices of eBay are located. Mr. Kopeny has also learned that Mr. Dunning is a

18 | target of an open criminal investigation pending in the Northern District of California related to

19 | his involvement with KFC, and in particular, KFC's services relating to eBay and eBay's

20 | "cookie stuffing" allegations. Mr. Kopeny has been in contact with Assistant United States

21 | Attorney Kyle F. Waldinger who is the lead United States Attorney on the matter and who is

22 | assigned to the CHIP Unit.

23 |        By its own description set forth on the official website of the United States

24 | Department of Justice, the CHIP Unit is charged with combating "cybercrime." In addition,

25 | the CHIP Unit "works closely with the FBI and other agencies *to establish a relationship*

26 | *with the local high tech community and encourage them to refer cases to law enforcement."*

27 | (Emphasis added.) The CHIP Unit is specifically charged with *coordinating law enforcement*

28 | *and the technology industry to share expertise and information technology, to assist each*

5

1   *other 24 hours a day, seven days a week, around the clock, to prevent cybercrime wherever*
2   *possible..."* (Emphasis added.)[1]

3         As set forth below, it cannot be reasonably disputed that a stay of proceedings to
4   protect Mr. Dunning's constitutional rights is required in this case.  Mr. Dunning should not be
5   forced to choose between defending himself in this action and preserving his Fifth Amendment
6   rights.  In addition, *by its own description the federal government is coordinating with the*
7   *technology industry, presumably including eBay, to assist in the prosecution of specifically*
8   *the type of conduct alleged by eBay in this case.*  Allowing the government to monitor parallel
9   civil proceedings hoping to obtain incriminating testimony through civil discovery not only
10  undermines the Fifth Amendment privilege but also violate concepts of fundamental fairness.
11  Although staying the civil action may cause delay, protecting a party's constitutional rights is
12  paramount.

13  3.    <u>ARGUMENT</u>

14        District courts have the inherent power and discretionary authority to stay
15  proceedings when the interests of justice so require. *United States v. Kordel*, 397 U.S. 1, 12
16  n.27, 90 S. Ct. 763, 25 L.Ed. 2d 1 (1970); *Landis v. North American Co.* 299 U.S. 248,
17  254-55, 57 S.Ct. 163, 81 L.Ed 153 (1936).  Courts may decide to stay civil proceedings,
18  postpone civil discovery, or impose protective orders.  *SEC v. Dresser Indus., Inc.,* 628 F. 2d
19  1368, 1375 (D.C. Cir. 1980).

20        It is well recognized in the Ninth Circuit that the "decision whether to stay civil
21  proceedings in the face of a parallel criminal proceeding should be made 'in light of the
22  particular circumstances and competing interests involved in the case'" and the "extent to
23  which the defendant's fifth amendment rights are implicated." *Keating v. Office of Thrift*
24  *Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) quoting *Federal Savings and Loan Ins. Corp. v.*
25  *Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989).  The Fifth Amendment privilege against self
26  incrimination may be invoked by the *mere possibility* of criminal prosecution. *Matter of Seper*,
27
28  _____

[1]  See Declaration of William J. Kopeny.

6

378033v1 ts 9/25/09 4 (2785-0002)

1 | 705 F.2d 1499, 1501 (9th Cir. 1983).

2 | A.    The Implication of Mr. Dunning's Fifth Amendment Rights Warrants A Stay Of

3 |       This Action Pending Completion Of The Criminal Proceeding

4 |       The District Court for the Northern District of California has twice recently

5 | stayed civil proceeding pending the resolution of criminal proceedings. *See, Continental*

6 | *Insurance Co. v. Cota,* 2008 WL 4298372 (N.D.Cal., J. Conti presiding); and *Jones v. Conte,*

7 | 2005 WL 1287017 (N.D.Cal., J. Illston presiding). As set forth in both cases:

8 |       "[t]he decision whether to stay civil proceedings in the face of a

9 |       parallel criminal proceeding should be determined based on the

10 |       circumstances and competing interests involved in the case.

11 |       *[citing, Keating, supra,* 45 F. 3d at 324]. The court should

12 |       consider the following factors: 1) the extent to which the

13 |       defendant's Fifth Amendment rights are implicated; 2) the interest

14 |       of the plaintiff in proceeding with the litigation and the potential

15 |       prejudice to plaintiff of a delay; 3) the convenience of the court

16 |       and the efficient use of judicial resources; 4) the interests of third

17 |       parties; and 5) the interests of the public [the '*Keating* Factors'].

18 |       (*Id.*)." *Jones, supra,* at 1; *see also, Cota, supra,* at 2.

19 |       In *Jones,* the defendant Victor Conte was involved in a criminal case regarding

20 | allegations of unlawful distribution of performance enhancing drugs. While under indictment

21 | in the criminal case, Mr. Conte made a series of statements in the print and television media

22 | involving performance-enhancing drugs and professional athletes, including Marion Jones.

23 | As a result, on December 15, 2004 Ms. Jones filed a complaint alleging defamation and

24 | tortious interference with business relations against Mr. Conte.

25 |       Judge Illston begins her analysis in the *Jones* case by recognizing that "[t]he

26 | strongest case for deferring civil proceedings until after completion of criminal proceedings is

27 | where a party under indictment for a serious offense is required to defend a civil or

28 | administrative action involving the same matter." *Jones, supra,* at 1, citing *SEC v. Dresser*

7

378033v1 ts 9/25/09 4 (2785-0002)            NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

PAGE 32

1   *Industries, Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). Judge Illston determined that both

2   the civil and criminal cases arose from the defendant's alleged involvement in the distribution

3   of performance-enhancing drugs, "as the veracity of his statements regarding plaintiff's actions

4   directly relate to his involvement with the distribution of performance-enhancing drugs." *Id.*,

5   at 2. As such, Judge Illston granted the requested stay as follows:

6           "The Court finds that a stay is proper because '[i]f discovery

7           moves forward, [the] defendant will be faced with the difficult

8           choice between asserting [his] right against self-incrimination,

9           thereby inviting prejudice in the civil case, or waiving those

10          rights, thereby courting liability in the civil case.'" *Id.*, *citing*

11          *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75

12          (W.D.N.Y.2003).[2]

13          Judge Conti in *Continental Insurance Co. v. Cota*, 2008 WL 4298372

14   (N.D.Cal.) similarly determined that a stay of the civil action was warranted pending the

15   resolution of a parallel criminal matter. The defendant in *Continental Insurance* was John

16   Cota, the captain of the cargo ship COSCO BUSAN which collided with the Oakland Bay

17   Bridge. As a result, the ship discharged 50,000 gallons of fuel oil into the San Francisco Bay.

18   The federal government filed a criminal action against Mr. Cota and the companies that owned

19   the COSCO BUSAN. Concurrently Continental Insurance filed a civil indemnity action against

20   the companies that owned the ship and a civil declaratory relief action against Mr. Cota as to

21   Continental's obligation to defend Mr. Cota and for reimbursement of the costs paid in

22   Mr. Cota's defense. In addition, the owners of the COSCO BUSAN filed counter-claims

23

24          [2] When faced with the issue of either allowing a civil action to proceed or protecting the
25   Fifth Amendment rights of individual defendants against self incrimination, the majority of
     courts have consistently chosen the later. See, e.g. *Wehling v. Columbia Broadcasting System*,
26   608 F.2d 1084, 1089 (5th Cir. 1979) ("[although a three-year hiatus in the lawsuit is
     undesirable from the standpoint of both the court and the defendant, permitting such
27   inconvenience seems preferable at this point to requiring plaintiff to choose between his silence
     and this lawsuit."); *White v. Mapco Gas Products, Inc.* 116 F.R.D. 498 (D.C. Ark 1987);
28   *Dienstag v. Bronsen*, 49 F.R.D. 327 (D.C.N.Y. 1970); *U.S. v. Steffes*, 35 F.R.D. 24 (D.C.
     Mont. 1964).

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

1   against Mr. Cota which alleged wilful misconduct on the part of Mr. Cota.

2          In applying the *Keating* Factors referenced above, Judge Conti found that a stay

3   of the civil action was warranted, noting that "[i]t is undisputed that all of the civil actions and

4   the criminal action spring from the same nucleus of facts - the allision of the COSCO BUSAN

5   with the Bay Bridge and the resulting oil spill." *Cota, supra*, at 2.  Judge Conti further

6   determined that "[i]t is difficult to imagine how adjudication of this issue would not implicate

7   many of the factual issues underlying the criminal action. Accordingly, discovery propounded

8   on Cota in the underlying civil action will likely implicate his fifth amendment right." *Id.*

9          In this case it cannot be reasonably disputed that this action springs from the

10  same nucleus of facts as the pending criminal action against Mr. Dunning.  As set forth in

11  detail in the declaration of Mr. Kopeny, Mr. Dunning's criminal defense counsel, Assistant

12  United States Attorney Kyle F. Waldinger, who is the lead United States Attorney on the

13  matter, confirmed that (a) Mr. Brian Dunning is a target of a criminal investigation, together

14  with two other individuals, related to his involvement with KFC, and in particular, KFC's

15  services relating to eBay and the "cookie stuffing" scheme alleged by eBay in this case, (b) the

16  federal government is confident that a criminal offense can be proven, based on the fraudulent

17  conduct of one or more persons; and (c) until the federal government has concluded its analysis

18  of the computer media seized, the federal government is unwilling to discuss any resolution of

19  its case at this time.  In addition, Mr. Waldinger has confirmed that the criminal investigation

20  of Mr. Dunning is ongoing and that search warrants other than that discussed above have

21  issued.  The federal government has also sought from the District Court, and obtained, several

22  extensions of time to return all the materials seized from Mr. Dunning's home pursuant to the

23  aforementioned federal search warrant.  As stated by Mr. Kopeny in his declaration, in order

24  to obtain such permission from the federal court, the United States Attorney must allege that

25  there is an active criminal investigation, that the federal government believes the property

26  seized constitutes, or is likely to constitute evidence of the suspected crime, and that additional

27  time is reasonably needed to complete the investigation.  The federal government remains in

28  possession of materials seized from Mr. Dunning on the basis of its continued criminal

                                           9

378033v1 ta 9/25/09 4 (2785-0002)                    NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
                                                      RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

                                                                                              PAGE 34

1   investigation of him.

2          Using the words of Judge Conti, it is difficult to imagine how adjudication of

3   this civil action would not implicate many, if not all, of the factual issues underlying the

4   criminal action. Both the civil action and the criminal action arise from the same facts and

5   share the exact same allegations. Accordingly, discovery propounded on Mr. Dunning in the

6   this action will implicate Mr. Dunning's Fifth Amendment right. Mr. Dunning should not be

7   forced to choose between defending himself in this action and preserving his Fifth Amendment

8   rights. In addition, allowing the government to monitor parallel civil proceedings hoping to

9   obtain incriminating testimony through civil discovery not only undermines the Fifth

10  Amendment privilege but also violate concepts of fundamental fairness. Although staying the

11  civil action may cause delay, protecting a party's constitutional rights is paramount.

12          B.      The Remainder of the *Keating* Factors Favor A Stay

13                  (1)     No Prejudice Will Befall eBay

14          The interest of eBay will be unaffected by a stay. A stay is permitted where the

15  alleged harm to the plaintiff "may be remedied by monetary damages and plaintiff can be

16  adequately compensated even if she obtains a judgment in her favor after the stay has lifted."

17  *Jones, supra,* at 2; *See also, Taylor, Bean & Whitaker Mortgage Corporation v. Triduanium*

18  *Financial,* 2009 WL 2136986 (E.D.Cal. 2009) (granting a stay despite plaintiff's argument that

19  it will be more difficult to recover losses if the case is stayed). Moreover, the delay associated

20  with a stay does not overcome the paramount concern of protecting constitutional rights. *Cota,*

21  *supra,* at 3.

22          In the present case, eBay alleges that it was injured because "KFC would

23  receive payment for actions by users who had not been referred to eBay by Defendants'

24  advertisements." (SAC, ¶ 27) KFC is no longer in business and all Defendants have been

25  terminated from eBay's Affiliate Marketing Program. As such, eBay has no concern of

26  ongoing harm. The harm alleged by eBay in this case is monetary. Should eBay be successful

27  / / /

28  in obtaining a judgment after the stay is lifted, it can seek adequate compensation. Thus, the

10

378033v1 ts 9/25/09 4 (2785-0002)

1  interest of eBay will not be adversely impacted by a stay in the present case.

2         This factor weights in favor of a stay.

3         (2)    Proceeding With This Action Severely Burdens Mr. Dunning

4         As set forth above, proceeding with this case will force Mr. Dunning to choose

5  between defending himself in this action and preserving his Fifth Amendment rights. In

6  addition, proceeding with this case will unfairly allow the federal government to monitor this

7  proceeding for the purpose of obtaining incriminating testimony through civil discovery

8  undermining the Fifth Amendment and all concepts of fundamental fairness. By its own

9  account the CHIP Unit of United States Attorney's Office is working closely with the

10  technology industry, presumably including eBay, incident to the sort of wrongdoing alleged by

11  eBay in this action. Such a close working relationship by its very design has caused a collision

12  of the fundamental rights guaranteed to Mr. Dunning by the Constitution. As detailed above,

13  both the *Jones* and *Continental Insurance* courts recognized this injustice and ordered the civil

14  actions stayed pending the conclusion of the parallel criminal proceedings.

15         The *Jones* and *Continental Insurance* courts' rational was recently adopted and

16  affirmed in *Taylor, Bean & Whitaker, supra*, where a stay of civil proceedings pending parallel

17  criminal proceeding was ordered because "[t]he parallel civil proceeding *'might undermine the*

18  *party's Fifth Amendment privilege against self-incrimination, expand rights of criminal*

19  *discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expand the basis of*

20  *the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.'"*

21  *Id.* at 2, citing, *SEC v. Dresser, supra*, 628 F.2d at 1376.

22         As such, it cannot be reasonably disputed that proceeding with this action in

23  light of the parallel criminal proceedings severely prejudice Mr. Dunning.

24         (3)    The Convenience Of The Court Weighs In Favor Of A Stay

25         A stay will promote the efficient use of this court. This action is in very early

26  stages. Indeed, the Defendants just filed their Answer to the Second Amended Complaint on

27  September 9, 2009 and no dispositive motions are pending. As the *Jones* court noted,

28  "[s]taying the case makes efficient use of judicial resource by insuring that common issues of

11

378033v1 ls 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

PAGE 36

1  fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns

2  regarding self incrimination." *Jones, supra*, at 2 (internal citations omitted).

3              (4)    No Interests Of Persons Not Parties To The Action Will Be Affected By

4                     A Stay

5              The interest of persons not parties to this action will not be affected by a stay.

6  Commission Junction has released its claims against the Defendants, and there appears to be no

7  other person(s) who may be affected by this action that is not a party to the action.

8              (5)    The Interest Of The Public Favors A Stay

9              The interest of the public favors a stay because "the public's interest in the

10 integrity of the criminal case is entitled to precedence over the civil litigant." *Jones, supra*,

11 at 2; *see also, Javier H. Garcia-Botello, supra*, 218 F.R.D. at 75.

12             Considering all of the *Keating* Factors, as well as the recent decisions of this

13 Court, the particular circumstances in the present case strongly favor granting a stay of all civil

14 proceedings pending the conclusion of the criminal proceedings against Mr. Dunning.

15 C.    A Stay Of This Action Pending The Conclusion Of The Criminal Proceeding Is

16       Required As to THI and BD.com As Well

17             Several District Courts have ruled that, where civil proceedings have been

18 stayed as to individual defendants alleged to be part of a criminal enterprise, it is also

19 appropriate to stay proceedings as to entity defendants. *American Express Business Finance

20 Corp v. RW Prof Leasing Services Corp.*, 225 F. Supp 2d 263 (E.D.N.Y. 2003); *United States

21 v. All Meat & Poultry Products Stored at LaGrou Cold Storage*, 2003 U.S. Dist. LEXIS 17677

22 (N.D. Ill. 203); *Volmar Distributors, Inc. v. Interboro Distributors, Inc* 152 F.R.D. 36

23 (S.D.N.Y. 1993); *Bruner Corp v. Balogh*, 819 F. Supp. 811 (E.D. Wis. 1993) rev'd in part on

24 other grounds, 133 F. 3d 491 (7th Cir. 1998).

25             In *All Meat & Poultry*, the federal government initiated both criminal and civil

26 proceedings, including civil RICO claims, against individual and entity defendants. The entity

27 defendants in the civil case moved for a stay of proceedings as to them, arguing that they

28 would be unable to mount a defense because individuals alleged to be part of the RICO

12

1   enterprise would simply invoke their Fifth Amendment rights in response to discovery

2   requests. *See also, American Express, supra*, 225 F. Supp. 2d at 265; *Volmar, supra*, 152

3   F.R.D. at 41-42; and *Bruner*, 819 F.Supp at 816.

4         The district court in *All Meat & Poultry*, reasoned that not only would a stay of

5   proceedings serve the interests of justice- since the entity defendants' discovery efforts would

6   otherwise be unfairly hindered- it would also promote judicial economy. The court made the

7   following comments with regard to the balancing test when considering a stay of prosecution in

8   the interest of judicial economy:

9         "In the absence of a stay, the civil and criminal case will proceed

10         simultaneously, presenting the potential for duplication of effort.

11         If the civil proceedings are stayed, however, resolution of the

12         related criminal matter may eliminate much of the Court's work

13         in the civil action by simplifying the issues. In addition, in the

14         absence of a stay, discovery in the civil litigation will no doubt

15         become bogged down. As the owner concede, the court will be

16         forced to make numerous individual rulings on what will likely be

17         a long series of Fifth Amendment assertions. Convenience of the

18         court will militate in favor of a stay where the outcome of a

19         criminal case can be expected to remove the predicate for the

20         assertions of the Fifth Amendment rights against self

21         incrimination by potential deponents and lighten the work load of

22         a court to review those assertions. There is also the possibility

23         that transcripts or other evidence could be made available from

24         the criminal proceedings, thereby eliminating the need for certain

25         discovery in the civil action. Weighing all these considerations,

26   ///

27   ///

28

13

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

378033v1 ts 9/25/09 4 (2785-0002)

PAGE 38

1     we believe judicial economy would be better served by an entry of
2     stay in the civil proceedings." *Id* at 14 (internal citations omitted)
3         In *American Express,* the case involved parallel civil proceedings against
4   individual and entity defendants. The district court granted a stay of civil discovery as to the
5   two individual defendants to allow them to preserve their Fifth Amendment rights. *American*
6   *Express, supra,* 225 F.Supp.2d at 265. The district court also granted a stay of civil discovery
7   as to the entity defendant, reasoning that the entity defendant would be unable to effectively
8   conduct discovery and mount a defense without the availability of the individual defendants,
9   each of whom were executive officers of the defendant corporation. *Id.,* at 265-266
10        Similarly, in *Bruner,* the district court granted a stay of civil proceedings as to
11  an entity defendant in a RICO case. *Bruner, supra,* 819 F. Supp. at 816. The district court had
12  granted a stay of civil proceedings as to the individual defendant alleged to be part of the RICO
13  enterprise (and against whom parallel criminal proceedings were initiated). *Id.* The district
14  court, in granting a stay as to the entity defendant, reasoned that "it is not likely" that the entity
15  defendant "could proceed to trial without meaningful discovery from "the individual defendant
16  alleged to be part of the RICO enterprise." *Id., see also, Volmar, supra,* 152 F.R.D. at 40-42.
17        Finally, in *Taylor, Bean & Whitaker,* the Court stayed the civil proceeding as
18  against the entity defendant as well as the individual defendant. Acknowledging that a business
19  entity has no Fifth Amendment right against self-incrimination, the Court nonetheless held as
20  follows:

21        Second, plaintiff asserts that no Fifth Amendment privilege is
22        implicated by the case against defendant Triduanum. The law is
23        clear that a corporation has no privilege against compulsory self-
24        incrimination. *United States v. Kordel,* 397 U.S. 1, 7-8 & n. 9,
25        90 S.Ct. 763, 25 L.Ed.2d 1 (9th Cir. 1970) (collecting cases).
26        *Nevertheless, the Fifth Amendment rights of every director or*
27        *officer who may speak on behalf of Triduanum are implicated,*
28        *and thus, Triduanum is likely to be greatly prejudiced in its*

                                    14

378033v1 ta 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

PAGE 39

1     *ability to meaningfully defend itself in the civil matter.*   See,

2     *Cadence Design Sys. v. Avant!, Inc.*, No. C 95-20828, 1997 U.S.

3     Dist. LEXIS 24147 (N.D. Cal. July 22, 1997) (holding that a

4     partial stay was appropriate in a civil proceeding against a

5     corporate defendant where certain key witnesses would not be

6     able to testify on behalf of the corporation until the conclusion of

7     criminal proceedings.)   *Taylor, Bean & Whitaker, supra,* at 3.

8     (Emphasis added.)

9        As such, a stay of this action is warranted as against the entity Defendants THI

10 and BD.com, as well.

11   4.     <u>CONCLUSION</u>

12        For all of the foregoing reasons, Defendants respectfully request that the Motion

13 be granted in its entirety and this action be stayed as to all Defendants pending the conclusion

14 of the criminal proceedings against Mr. Dunning.

15

16 DATED: October 15, 2009           Respectfully submitted,

17                         RUS, MILIBAND & SMITH

                             A Professional Corporation

18

19

20                        By:

                           RONALD RUS

21                        Attorneys for Defendants

                           Thunderwood Holdings, Inc., Brian Dunning

22                        and BrianDunning.com

23

24

25

26

27

28

378033v1 ts 9/25/09 4 (2785-0002)

1          <u>DECLARATION OF WILLIAM J. KOPENY</u>

2          I, WILLIAM J. KOPENY, declare as follows:

3          1.     I am an attorney at law duly licensed to practice before the above-entitled

4  Court.  I represent Brian Dunning in connection with that certain criminal investigation

5  described in more detail below.  I have been a member of the bar of the United States District

6  Court for the Central District of California since December 20, 1974, and have been

7  representing individuals in connection with criminal investigations and criminal prosecutions

8  for over 35 years.  I have firsthand personal knowledge of the matters set forth herein, and if

9  called upon to testify, would and could competently testify thereto.

10          2.     In June 2007, I was retained by Brian Dunning as criminal counsel, in

11  connection with the execution of a search warrant at his home on June 18, 2007, and his

12  interrogation by agents of the Federal Bureau of Investigation ("FBI").  I immediately

13  contacted the local FBI agents, one of whom I knew from a prior federal criminal matter I had

14  handled, and I was informed that:  (a) Mr. Dunning was being investigated for computer

15  crimes by agents from the San Francisco Bay area; and (b) the items seized under the search

16  warrant, which consisted primarily of computers, computer media, and hard copy documents,

17  were in the custody of the agents in charge of the case and/or the Office of the United States

18  Attorney for the Northern District of California.

19          3.     I then contacted the FBI agents involved in the execution of the search

20  warrant from the San Francisco Bay area and learned that the assigned federal prosecutor is

21  Kyle F. Waldinger who is the United States Attorney in charge of the Computer Hacking and

22  Intellectual Property Unit ("CHIP Unit") of the Office United States Attorney for the Northern

23  District of California.

24          4.     Because initially, the searching agents had informed Mr. Dunning that

25  anything the agents needed would be copied and that the computers and other materials seized

26  would be returned within two weeks, on July 3, 2007, I contacted Mr. Waldinger to inquire

27  whether Mr. Dunning was a "target" of the investigation, and whether we could expect his

28  property to be returned within the time frame promised by the agents on the scene of the

16

1   search. Mr. Waldinger informed me that: (a) Mr. Brian Dunning is a target of the

2   investigation, along with two other named persons; (b) the federal government is confident that

3   a criminal offense could be proven, based on the fraudulent conduct of one or more persons;

4   and (c) until the federal government has concluded its analysis of the computer media seized,

5   the federal government is unwilling to discuss any resolution of its case. Since that first

6   telephone call with Mr. Waldinger, I have had at least six other phone conversations with him

7   and faxed to him at least three letters.

8          5.     I have reviewed my file and in those letters I have confirmed in writing

9   that Mr. Waldinger advised me that: (1) Mr. Dunning is a "target" of the federal criminal

10  investigation; (2) the investigation concerns Thunderwood Holdings, Inc. ("Thunderwood")

11  and Kessler's Flying Circus ("KFC") and its relationship with eBay, and allegations that

12  "cookies" had been "forced" in violation of the terms of service with Plaintiff eBay

13  ("Plaintiff") and/or Commission Junction, Inc., which allegedly constitutes "cyber-fraud"

14  under various federal fraud statutes.

15         6.     I have conferred with Mr. Waldinger periodically and he has continued

16  to confirm that Mr. Dunning is a target of an active investigation, that the federal government

17  is not yet done with its investigation or analysis of the computers seized, and that he will

18  contact me in the event an indictment is issued naming my client as a defendant, including any

19  indictment for fraud, in which Plaintiff and/or eBay is the named victim based on the above.

20  The investigation remains open and active.

21         7.     Mr. Waldinger has confirmed that the criminal investigation of

22  Mr. Dunning is ongoing, that search warrants other than that discussed above have issued, and

23  in my opinion, based on my experience, I believe it is likely that the federal government has

24  presented testimony in this investigation to the United States Grand Jury for the Northern

25  District of California. In addition, the federal government has sought from the District Court,

26  and obtained, several extensions of time to return all the materials seized from Mr. Dunning's

27  home pursuant to the aforementioned federal search warrant, which called for its return within

28  60 days unless additional time is granted. Typically, in order to obtain such permission from

17

378033v1 ls 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

PAGE 42

1    the federal court, the United States Attorney must allege that there is an active criminal

2    investigation, that the federal government believes the property seized constitutes, or is likely

3    to constitute evidence of the suspected crime, and that additional time is reasonably needed to

4    complete the investigation.  With the exception of approximately 10% of the items seized,

5    which items have nothing to do with Plaintiff or KFC, the federal government remains in

6    possession of all other materials seized from Mr. Dunning, on the basis of its continued

7    criminal investigation of him.

8              8.    By its own description on the United States Department of Justice

9    website, the CHIP Unit is charged with combating "cybercrime and intellectual property

10   theft."  In fact, that unit, and Mr. Waldinger have acquired a national reputation for being the

11   first prosecutors in the nation to bring and win cyber-prosecutions based on previously untested

12   legal theories.  A true and correct copy of this description found on the website of the

13   Department of Justice, is attached as Exhibit "3."  In addition, the CHIP unit "works closely

14   with the FBI and other agencies to establish a relationship with the local high tech community

15   and encourage them to refer cases to law enforcement."  A true and correct copy of this

16   description found on the website of the Department of Justice, is attached as Exhibit "4."

17   The CHIP Unit is specifically charged with coordinating law enforcement and the technology

18   industry "to share expertise and information technology, to assist each other 24 hours a day,

19   seven days a week, around the clock, to prevent cybercrime wherever possible..."  A true and

20   correct copy of this description found on the website of the Department of Justice, is attached

21   hereto as Exhibit "5."

22             9.    The word "target" is a term of art within the United States Department

23   of Justice, and it is to be distinguished from a "witness" and/or a "person of interest."  Under

24   Justice Department guidelines, the prosecutor is required to inform a person or his attorney

25   when he has achieved the status of "target" because that person is actively believed to be a

26   future defendant, based on an ongoing investigation.  This guideline is in place to avoid any

27   later claim that the "target" failed to invoke his rights against self-incrimination because he or

28   she wrongly believed he was not going to be prosecuted.  Thus, anyone who is informed that

18

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

378033v1 ts 9/25/09 4 (2785-0002)

PAGE 43

1  he is a "target" has an enormous motive to obtain counsel and assert his privilege against self-

2  incrimination.

3     10.   On advice of and through counsel, Mr. Dunning has asserted his right to

4  remain silent, *i.e.*, has asserted his constitutional privilege against self-incrimination under the

5  Fifth Amendment to the United States Constitution following the execution of a search warrant

6  at his home and the questioning by FBI agents, and I have advised him to assert the same

7  privilege in response to any question asked of him at any deposition, in response to any

8  interrogatory or request for admission, and in response to any demand for production of

9  documents (the possession of which is privileged under *United States v. Doe* (1988) 487 U.S.

10  201, 108 S.Ct. 2341, 101 L.Ed.2d 184).[3/]

11     11.   Under the Fifth Amendment, a person need not be guilty of any crime to

12  enjoy a constitutional privilege not to provide information that the government or any party

13  seeks to compel him or her to provide. (*People v. Lucas* (1995) 12 Cal.4th 415, 453

14  ["Innocent persons, as well as the guilty, are entitled to invoke the privilege"]; *Grunewald v.*

15  *United States* (1957) 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931; see also Ratner,

16  *Consequences of Exercising the Privilege Against Self-Incrimination*.) Rather, if the

17  information sought *could, conceivably*, form a single evidentiary or factual link in a chain of

18  circumstantial evidence which chain of evidence *could* support *an inference* that the person is

19  culpable for any criminal offense, in violation of any state or federal law, that person cannot be

20  compelled by legal process, subpoena or court order to provide such information, upon his or

21  her invocation of the protection of the Fifth Amendment. (*Hoffman v. United States* (1951)

22

23  ───────────────

   3/   On behalf of Mr. Dunning I herewith assert that in producing such records he would be
24  "testifying" as to their existence and to his control over them in a way that is protected by his
   Fifth Amendment privilege against self-incrimination. *Fisher v. United States* (1976) 425 U.S.
25  391, 96 S.Ct. 1569, 48 L.Ed.2d 39; *United States v. Doe* (1984) 465 U.S. 605, 104 S.Ct.
   1237, 79 L.Ed.2d 552 (*Doe I*),; and *Doe v. United States* (1988) 487 U.S. 201, 108 S.Ct.
26  2341, 101 L.Ed.2d 184 (*Doe II*), a line of cases in which the Supreme Court emphasized that
   the act of producing potentially incriminating documents under government compulsion may
27  have impermissible testimonial aspects. These cases are applicable to this case since they hold
   that the Fifth Amendment protects against compulsory surrender of (1) personal business
28  records, (2) in the possession of a sole proprietor or practitioner, (3) with respect to the
   testimonial act implicit in the surrender itself.

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

1  341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118; *United States v. Neff* (9th Cir. 1980)

2  615 F.2d 1235, 1239; *Prudhomme v. Superior Court* (1970) 2 Cal.3d 320, 325-326; *In re*

3  *Misener* (1985) 38 Cal.3d 543, 546-551.)

4      12.    I have reviewed the complaint in this matter and based on my

5  understanding of the allegations and issues in this civil matter, Mr. Dunning has, through

6  counsel, already asserted his Fifth Amendment privilege against self-incrimination in

7  connection with an inquiry by the Federal Government into *the identical facts alleged in this*

8  *case*, and clearly is entitled to its protection in the context of this case. In my opinion, any

9  court order compelling Mr. Dunning to respond to the allegations of the complaint, and/or to

10  respond to discovery propounded to him would constitute "compelled self-incrimination"

11  within the meaning of the Fifth Amendment and California's constitutional privilege against

12  self-incrimination. (Please see *People v. Lucas, supra,* 12 Cal.4th at 453.)[4/]

13      13.    Based on these descriptions of the function, purpose and manner of

14  operating on the part of the CHIP Unit, together with my 35 years of experience defending

15  individuals in criminal cases, it is clear that any and all information obtained from

16  Mr. Dunning in the course of discovery in this case will be shared with, and will be monitored

17  by, the federal government in aid of the criminal investigation and/or prosecution of

18  Mr. Dunning.

19      I declare under penalty of perjury under the laws of the United States of

20  America and the State of California that the foregoing is true and correct.

21      Executed this 15th day of October, 2009, at Irvine, California.

22

23

24      WILLIAM J. KOPENY

25

26  [4/] "[I]n order to approve invocation of the privilege '"it need only be evident from the
implications of the question, in the setting in which it is asked, that a responsive answer to the

27  question or an explanation of why it cannot be answered *might* be dangerous because injurious
disclosure *could* result." ' (*People v. Cudjo, supra,* 6 Cal.4th at p. 617, 25 Cal.Rptr.2d 390,

28  863 P.2d 635, quoting *Hoffman v. United States* (1951) 341 U.S. 479, 486, 71 S.Ct. 814, 818,
95 L.Ed. 1118.)" *Id.* at p. 453 [Underlining and italics supplied.]

20

378033v1 tu 9/25/09 4 (2785-0002)

PAGE 45

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF BRIAN DUNNING

I, BRIAN DUNNING, declare as follows:

1.     I am an individual over the age of eighteen, and am a named defendant in the above-referenced civil action commenced by eBay Inc. ("Plaintiff"). I have firsthand personal knowledge of the facts set forth herein.

2.     I am the founder and sole shareholder and representative of Defendant Thunderwood Holdings, Inc. ("Thunderwood"). Thunderwood together with my brother's company Dunning Enterprise, Inc. ("DEI") did business as Kessler's Flying Circus ("KFC").

3.     Plaintiff commenced this action on August 25, 2008. A True and correct copy of Plaintiff's Second Amended Complaint is attached (without exhibits) as Exhibit "1."

4.     On June 18, 2007 and prior to the commencement of this action, the Federal Bureau of Investigation ("FBI") conducted a search of my personal residence located in Laguna Niguel, California. Upon entering my home, the FBI agents, in my presence and the presence of my wife and two young children, searched every room of the house. Over the course of the next three hours, the agents proceeded to seize, itemize and remove all computer equipment in the home including all computers, disk drives, hard drives, cell phones and servers used by me. A true and correct copy of the itemized "seized property" list prepared by the FBI and given to me is attached as Exhibit "2."

5.     In addition to the search and seizure, special agent Lisa Miller, who operates out of the San Francisco office of the FBI, proceeded to interview me in my living room for approximately three hours.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 15th day of October, 2009, at Laguna Niguel, California.

BRIAN DUNNING

21

378035v1 to 9/25/09 4 (2785-0002)

NOTICE OF MOTION AND MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS - CASE NO. CV 08-4052 JF (PVT)

PAGE 46

# EXHIBIT "2"

1   DAVID R. EBERHART (S.B. #195474)
    deberhart@omm.com
2   SHARON M. BUNZEL (S.B. #181609)
    sbunzel@omm.com
3   COLLEEN M. KENNEDY (S.B. #227107)
    ckennedy@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5   San Francisco, CA  94111
    Telephone:   (415) 984-8700
6   Facsimile:   (415) 984-8701

7   Attorneys for Plaintiff eBay Inc.

8
9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12   EBAY INC.,                          Case No.  CV 08-4052 JF (PVT)

13              Plaintiff,               SECOND AMENDED COMPLAINT
                                         FOR
14         v.
                                         (1)   Violations of 18 U.S.C. § 1030
15   DIGITAL POINT SOLUTIONS, INC.,      (2)   Violations of 18 U.S.C. § 1962(c)
     SHAWN HOGAN, KESSLER'S             (3)   Fraud
16   FLYING CIRCUS, THUNDERWOOD          (4)   Violations of California Pen. Code
     HOLDINGS, INC., TODD DUNNING,             § 502
17   DUNNING ENTERPISE, INC., BRIAN      (5)   Restitution and Unjust Enrichment
     DUNNING, BRIANDUNNING.COM,          (6)   California B&P Code § 17200;
18   and DOES 1 - 10 and 12 - 20,

19              Defendants.              DEMAND FOR JURY TRIAL

20
21
22
23         For its Second Amended Complaint, Plaintiff eBay Inc. alleges as set forth below.

24   The factual allegations set forth herein have evidentiary support or, to the extent they are

25   contained in a paragraph made on information and belief, likely will have evidentiary

26   support after a reasonable opportunity for further investigation or discovery.

27                              PARTIES

28   1.    At all times relevant herein, Plaintiff eBay Inc. ("eBay") was a corporation

                                         SECOND AMENDED COMPLAINT
                                         CASE NO. CV 08-4052 JF (PVT)

1    organized and existing under the laws of the State of Delaware, with its principal place of

2    business in the State of California.

3        2.    eBay is informed and believes and, on that basis, alleges that at all times

4    relevant herein Defendant Digital Point Solutions, Inc. ("Digital Point Solutions") was a

5    California corporation, sole proprietorship or other business entity, doing business in the

6    State of California. At various times relevant herein, Defendant Digital Point Solutions

7    may also have been known as and/or done business as "Data Point Solutions," "Digital

8    Point Solutions," and/or "Digital Point." Digital Point Solutions has succeeded to the

9    obligations and liabilities of any and all of such predecessor entities. At all times relevant

10    herein, Defendant Digital Point Solutions represented itself and held itself out to eBay as

11    an independent business entity with legal status separate from that of its individual

12    owner(s).

13        3.    eBay is informed and believes and, on that basis, alleges that at all times

14    relevant herein Defendant Shawn Hogan was an individual residing and doing business in

15    the State of California and was the sole owner and/or sole proprietor of Defendant Digital

16    Point Solutions in any and all of its incarnations.

17        4.    Defendants Digital Point Solutions and Shawn Hogan will be collectively

18    referred to herein as "DPS."

19        5.    eBay is informed and believes and, on that basis, alleges that at all times

20    relevant herein Defendant Kessler's Flying Circus was a California general partnership

21    doing business in the State of California.

22        6.    eBay is informed and believes and, on that basis, alleges that at all times

23    relevant herein Defendant Thunderwood Holdings, Inc. was a California corporation and

24    was a general partner of Defendant Kessler's Flying Circus.

25        7.    eBay is informed and believes and, on that basis, alleges that at all times

26    relevant herein Defendant Brian Dunning was an individual residing and doing business in

27    the State of California and was the sole owner of Defendant Thunderwood Holdings, Inc.

28        8.    eBay is informed and believes and, on that basis, alleges that at all times

- 2 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  relevant herein Dunning Enterprise, Inc., previously substituted for the fictitiously named

2  defendant Doe 11, was a California corporation doing business in the State of California

3  and was a general partner of Defendant Kessler's Flying Circus.

4       9.    eBay is informed and believes and, on that basis, alleges that at all times

5  relevant herein Defendant Todd Dunning was an individual residing and doing business in

6  the State of California and was either a general partner of Defendant Kessler's Flying

7  Circus or held a controlling interest in Dunning Enterprise, Inc., which was a general

8  partner of Defendant Kessler's Flying Circus.

9       10.    eBay is informed and believes and, on that basis, alleges that at all times

10  relevant herein Defendant BrianDunning.com was a website and/or business entity

11  through which Defendants Brian Dunning and/or Todd Dunning committed some or all of

12  the acts alleged herein.

13       11.    Defendants Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning

14  Enterprise, Inc., BrianDunning.com, Brian Dunning, and Todd Dunning will be

15  collectively referred to herein as "KFC."

16       12.    eBay is ignorant of the true names and capacities of defendants sued herein

17  as Does 1 through 10 and 12 through 20, inclusive, and therefore sues said defendants by

18  such fictitious names.  eBay will amend this complaint to allege the true names and

19  capacities of said defendants when they are ascertained.  eBay is informed and believes

20  and, on that basis, alleges that each of the fictitiously named defendants is responsible in

21  some manner to pay the obligations described herein, and that eBay's losses as alleged

22  herein were proximately caused by said defendants' conduct.

23       13.    Unless otherwise specified, DPS, KFC and Does 1-10 and 12-20 will be

24  referred to collectively herein as "Defendants."

25                     **JURISDICTION AND VENUE**

26       14.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

27  and 1367.

28       15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1),

- 3 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    1391(b)(2) and 1391(c), and 18 U.S.C. § 1965(a).

2        16.    Pursuant to the User Agreements entered into by DPS and KFC, as

3    discussed in paragraph 26 *infra*, they have consented to the jurisdiction of and venue in

4    the Northern District of California.  Specifically, under the User Agreements, the

5    Defendants have agreed that any claim or controversy at law or equity that arises out of

6    this Agreement or eBay's services must be resolved by a court located in Santa Clara

7    County, California.

8    <u>**INTRADISTRICT ASSIGNMENT**</u>

9        17.    Assignment to the San Jose Division is proper pursuant to Local Rules 3-

10   2(c) and (e) because a substantial part of the events or omissions that give rise to eBay's

11   claim occurred in San Jose, Santa Clara County, California.  eBay's corporate

12   headquarters are located in San Jose, Santa Clara County, California, and Defendants'

13   wrongful actions were specifically and purposefully directed at and intended to affect

14   eBay in San Jose, Santa Clara County, California as discussed in detail below.

15   <u>**GENERAL ALLEGATIONS**</u>

16   <u>eBay's Affiliate Marketing Program</u>

17       18.    eBay offers to the public an online marketplace that enables trade on a local,

18   national and international basis.  Through eBay's website, sellers may list items for sale

19   and buyers may bid on and purchase items of interest.  eBay earns revenue when a seller

20   places an item for sale and when the item is sold.  eBay may also earn revenue depending

21   on various features selected by the seller, *e.g.*, listing upgrades and photo displays.

22       19.    eBay's Affiliate Marketing Program is designed to increase traffic to eBay's

23   website through the placement of advertisements for eBay on third-party websites.  eBay

24   seeks to increase traffic to its site so that more people will be exposed to eBay's service

25   and begin using eBay to buy or sell goods, thereby generating revenue for eBay.  The

26   persons and entities that advertise on behalf of eBay—whether on their own sites or on

27   sites of other third parties—are known as "affiliates."  eBay's Affiliate Marketing

28   Program is intended to compensate affiliates only when the advertisement in question

- 4 -

1   causes a user to take some action at eBay's site that directly provides revenue to eBay or

2   indicates that the new user is likely to take such an action in the future. Accordingly,

3   affiliates earn commissions payable by eBay under the Affiliate Marketing Program when

4   the following sequence of events occurs: (1) the affiliate publishes an eBay advertisement,

5   (2) a user clicks on the eBay advertisement and is directed to eBay's website (the

6   "Referred Visit"), and (3) that user subsequently engages in a commission-generating

7   event (a "Revenue Action"). Revenue Actions, include, by way of example: (1) becoming

8   a new, registered user of eBay within 30 days of the Referred Visit, or (2) purchasing an

9   item from a third-party seller on eBay within seven days of the Referred Visit. Because

10  compensation to the affiliate is tied to actions by the user, it is essential that eBay be able

11  to determine whether a Revenue Action occurred by virtue of the fact that the user was

12  referred to eBay by a particular affiliate's advertisement. eBay and/or Commission

13  Junction, Inc. ("CJ") tracks this information using information placed in the new user's

14  browser, as discussed below.

15      20.   At all relevant times, eBay used the services of CJ, a subsidiary of

16  ValueClick, Inc., in administering the Affiliate Marketing Program. The relationship

17  between eBay and CJ was governed at all relevant times by various Advertiser Service

18  Agreements. Under those agreements, CJ was responsible for, among other things,

19  recruiting affiliates, tracking affiliate traffic, monitoring compliance by affiliates,

20  preventing and detecting fraudulent activity, and paying affiliates using funds remitted by

21  eBay.

22      21.   eBay's obligation to pay commissions is tracked by matching a user's

23  Revenue Actions on eBay's site to the affiliate that directed the user to eBay. This

24  tracking is accomplished through the use of a digital tag called a "cookie" that is stored in

25  the user's web browser. Cookies are collections of data commonly used by websites to

26  store and associate useful information with a given user. Cookies typically store

27  information such as usernames, passwords, and user preferences for a particular user; that

28  information makes it more efficient for users to access web pages and provides a means

- 5 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1   for websites to track and authenticate users. Cookies are placed or "dropped" in a user's

2   browser by a website when that user visits the website.

3       22.    In the case of eBay's Affiliate Marketing Program, cookies are used to

4   confirm that a user was directed to eBay from a specific affiliate. When a user clicks on

5   an affiliate advertisement and is directed to eBay's site, eBay's site drops a cookie on the

6   user's computer. That cookie identifies the site that referred the user to eBay and/or the

7   specific affiliate responsible for directing the traffic to eBay. If the user later engages in a

8   Revenue Action within the specified time period, eBay and/or CJ determines—based on

9   the data in the cookie—which affiliate, if any, should be credited with the referral and

10  receive the commission. If cookies from multiple affiliates are present on the user's

11  computer, the affiliate identified in the most recent cookie dropped is credited with the

12  Revenue Action. If there is no qualifying cookie on the computer, then no affiliate is

13  credited. A substantial number of the Revenue Actions taken at eBay's site are taken by

14  users who were not referred to eBay by any affiliate; consequently, no commission is

15  owed for those actions.

16      23.    As part of the services it renders with respect to eBay's Affiliate Marketing

17  Program, CJ pays affiliates on a periodic basis (usually monthly), with funds remitted by

18  eBay, based on the number of Revenue Actions taken by users referred by those affiliates.

19  <u>The Fraudulent "Cookie Stuffing" Schemes</u>

20      24.    "Cookie stuffing" is a term used to describe the forced placement of a

21  cookie on a computer, typically by causing a cookie from a particular website to be placed

22  on the user's computer without the user knowing that he or she visited the website that

23  placed the cookie. DPS and KFC engaged in cookie stuffing intended to defraud eBay.

24  The allegations made on eBay's information and belief set forth in paragraphs 25-34, 37-

25  41, and 47-60 below describing Defendants' cookie stuffing schemes are based on eBay's

26  analysis of the Defendants' websites and/or technology and the way in which a user's web

27  browser interacts with Defendants' sites and/or technology, and on eBay's analysis of

28  historical data relating to traffic purportedly driven to eBay by Defendants. Certain other

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    details regarding Defendants' cookie stuffing schemes are exclusively within Defendants'

2    control.

3        25.    eBay is informed and believes and, on that basis, alleges that DPS and KFC

4    each accomplished their cookie stuffing through software programs and/or code that,

5    unbeknownst to the user, redirected the user's computer to the eBay website without the

6    user actually clicking on an eBay advertisement link, or even becoming aware that they

7    had left the page they were previously viewing.  As a result, the eBay site would be

8    prompted to drop an eBay cookie on the user's computer even though the user never

9    clicked on an eBay advertisement or even realized that their computer had ever visited the

10   eBay site.   DPS and KFC stuffed a large number of Internet users, with the expectation

11   and intention that some subset of those users would later come to eBay and take a

12   Revenue Action.

13       26.    eBay is informed and believes and, on that basis, alleges that the software

14   programs utilized by each of DPS and KFC caused the user's computer to access eBay's

15   computers in an unauthorized way and/or to exceed the authorized access to eBay's

16   computers.  Because DPS and KFC caused this access through and without the knowledge

17   or active participation of those users, the access of any such user's computer to eBay's site

18   is attributable to DPS and KFC.  The only authorization given to the Defendants to access

19   eBay's site in any manner was by way of eBay's User Agreement.  The User Agreement

20   was explicitly agreed to by the individual Defendants when they became registered eBay

21   users on the following dates: Shawn Hogan on May 17, 1999; Brian Dunning on

22   November 10, 2000; and Todd Dunning on May, 21, 2003.  The remaining named

23   Defendants, Digital Point Solutions, Kessler's Flying Circus, Thunderwood Holdings,

24   Inc., Dunning Enterprise, Inc. and BrianDunning.com, were on constructive and/or actual

25   notice that the User Agreement governed their access to eBay's website, based on the

26   explicit agreement of their owners/principals to the terms of the User Agreement, as well

27   as eBay's display on its website at all relevant times of the statement that use of the

28   website constitutes acceptance of the User Agreement.  Defendants' access to eBay was

- 7 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

PAGE 54

1   unauthorized by, and violated, the terms of the User Agreement because it occurred solely
2   to force the dropping of the eBay cookie and thereby wrongfully access eBay's computer
3   servers. Each of the causes of action set forth herein arises out of those violations of the
4   User Agreement.

5       27.    eBay is informed and believes and, on that basis, alleges that once the
6   cookie was stuffed on the user's computer by one or more of the Defendants, any future
7   Revenue Actions initiated by that user when the user later visited eBay intentionally, and
8   not as a result of any advertisement placed by Defendants, appeared to be eligible for
9   commissions payable to one of the Defendants (provided those actions took place within
10  the prescribed periods of time). Hence DPS or KFC would receive payment for actions by
11  users who had not been referred to eBay by Defendants' advertisements, thereby injuring
12  eBay.

13      28.    eBay is informed and believes and, on that basis, alleges that after DPS
14  and KFC independently began their cookie stuffing schemes, they communicated with
15  each other regarding those cookie stuffing schemes. Those communications between
16  DPS and KFC included, but were not limited to attempts by KFC to improve its
17  software and/or otherwise improve the effectiveness of its cookie stuffing scheme in
18  order to increase the amount of commissions that KFC could fraudulently obtain from
19  eBay, as well as efforts by DPS to prevent detection of the DPS cookie stuffing
20  scheme by eBay.

21      29.    eBay is informed and believes and, on that basis, alleges that DPS and KFC
22  used certain technological measures to prevent eBay from discovering their wrongdoing.
23  At certain relevant times DPS and KFC used technology or technologies that would stuff
24  cookies on only those computers that had not been previously stuffed by that Defendant.
25  The purpose of this action was to avoid discovery by eBay and/or CJ of evidence of
26  stuffing—e.g., by directly observing repeated stuffing to a test computer, by discovering
27  that a single user had multiple cookies pointing to the same affiliate or by discovering that
28  there was an abnormal ratio of cookies placed by DPS and KFC to the Revenue Actions

- 8 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    attributable to users referred by DPS and KFC—and thereby conceal the schemes from

2    eBay's and/or CJ's monitoring activities.  In addition, at certain relevant times DPS and/or

3    KFC used technology that would avoid stuffing cookies on computers that appeared to be

4    geographically located in San Jose, California (the location of eBay's headquarters) or

5    Santa Barbara, California (the location of CJ's headquarters).  The purpose of this action

6    was to evade efforts by eBay and/or CJ to detect the cookie stuffing mechanism if they

7    attempted to observe the wrongdoing from their normal places of business.

8         30.    eBay is informed and believes and, on that basis, alleges that DPS also used

9    at least one additional technological measure to conceal its wrongdoing:  DPS used

10   images placed on web pages to effectuate its cookie stuffing scheme, and caused those

11   images to be so small that they were effectively invisible to the user and, accordingly,

12   difficult to detect.

13        31.    eBay is informed and believes and, on that basis, alleges that KFC also used

14   at least one additional technological measure to conceal its wrongdoing:  KFC used

15   JavaScript code contained in web pages to effectuate its cookie stuffing scheme, and

16   purposefully obscured the purpose and effect of that code so that, even when that code

17   was discovered, it was difficult to determine its actual effect.  This caused KFC's cookie

18   stuffing to be difficult to detect, whether by human or machine efforts.

19        32.    eBay is informed and believes and, on that basis, alleges that in addition to

20   these technological measures, DPS and KFC each actively sought to prevent detection by

21   eBay and CJ by explicitly denying to eBay and/or CJ that any wrongdoing had occurred.

22   For example, when Shawn Hogan was contacted by CJ in connection with suspicions of

23   cookie stuffing by DPS, he attributed the suspicious activity to "coding errors," which he

24   later purported to have "corrected."  Brian Dunning also gave false information to eBay in

25   response to questions about unusual activity regarding his account.  Additional false

26   statements intended to conceal the cookie stuffing activity are set forth below in paragraph

27   60 and are incorporated herein.

28        33.    As a result of the cookie stuffing schemes employed by DPS and KFC, DPS

                                    - 9 -                SECOND AMENDED COMPLAINT
                                                         CASE NO. CV 08-4052 JF (PVT)

1    and KFC accessed eBay's servers millions of times in an unauthorized manner that

2    violated the User Agreement and interfered with the proper working of those computers.

3    The majority of those acts of unauthorized access did not cause the improper payment of a

4    commission and did not involve the performance by CJ of any obligations under any

5    contract it had with any of the parties to this action. A minority, but economically

6    significant, of those acts of unauthorized access caused eBay to pay commissions (via CJ)

7    to each of DPS and KFC for a substantial number of Revenue Actions that were in no way

8    related to the legitimate referral of any user by either DPS's or KFC's advertisements and

9    for which neither DPS nor KFC were due compensation.

10        34.    On January 4, 2008, CJ filed an action against Defendants Kessler's Flying

11    Circus, Brian Dunning and Todd Dunning for breach of contract and other claims based

12    on KFC's cookie stuffing scheme perpetrated against eBay. CJ sought to recoup

13    commissions it had paid to those Defendants for the month of May 2007, after eBay

14    discovered KFC's cookie stuffing scheme and refused to reimburse CJ for the unearned

15    commissions it had paid to those Defendants for the previous month. CJ's action was

16    recently settled on undisclosed terms, and a request for dismissal has been filed. eBay

17    was not a party to CJ's action, and had no opportunity to litigate any issue in the CJ

18    action. eBay does not seek recovery through this litigation of any of the monies sought by

19    CJ through its now-settled litigation against Defendants Kessler's Flying Circus, Brian

20    Dunning and Todd Dunning.

21                        **FIRST CAUSE OF ACTION**

22                      **(Violations of 18 U.S.C. § 1030)**

23        35.    eBay realleges each and every allegation set forth in Paragraphs 1 through

24    34, inclusive, and incorporates them by reference herein.

25        36.    Through their cookie stuffing schemes as described above, DPS and KFC

26    each knowingly, intentionally and with intent to defraud accessed eBay's computers

27    without authorization and/or exceeded their authorized access to eBay's computers in

28    order to further their fraudulent schemes.

- 10 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    37.    DPS's and KFC's access of eBay's computers was unauthorized because the
2    only purpose of that access was to defraud eBay.  In addition, Defendants' access of
3    eBay's computers was unauthorized and/or exceeded their authorized access, because
4    each Defendant was a registered eBay user and/or was bound by the eBay User
5    Agreement in effect at the time, as set forth in paragraph 26 above.  The User Agreements
6    that bound each of the Defendants were substantially similar.  The User Agreements (a)
7    prohibited the use of any "device, software or routine" to interfere with or attempt to
8    interfere with the proper working of the eBay site or any activities conducted on the eBay
9    site, and (b) required compliance with all applicable laws regarding the use of eBay's
10    servers.
11    38.    The User Agreements were the only basis on which any Defendant had
12    authorization to access eBay's site.  No agreement entered into by any Defendant in
13    connection with eBay's Affiliate Marketing Program, including but not limited to any
14    Publisher Service Agreement that may have been entered into between CJ and one or
15    more of Defendants and/or any Terms and Conditions of the Affiliate Marketing Program
16    agreed to by one or more of Defendants, provides for or in any way contemplates such
17    access.  The User Agreements therefore govern and control any access to eBay's site,
18    whether authorized or unauthorized, by Defendants.  Defendants, through their cookie
19    stuffing schemes, violated those User Agreements by accessing eBay's computers without
20    authorization and/or exceeded the authorized access granted to them by the User
21    Agreements.
22    39.    Upon information and belief, Defendants' access to eBay's computers that
23    was either unauthorized or exceeded the authorization granted by the User Agreements
24    did not always result in a commission being paid to any Defendant (for example, where a
25    user, after having a cookie stuffed on his or her computer by one of Defendants, did not
26    subsequently take any Revenue Action).  In other cases, Defendants' access to eBay's
27    computers that was unauthorized or exceeded the authorization granted by the User
28    Agreements resulted in commissions being paid to Defendants for Revenue Actions

- 11 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  initiated by users that Defendants did not refer to eBay, which were in no way related to

2  Defendants' advertisements, and for which Defendants were due no compensation. In

3  both instances, Defendants' access caused harm to eBay's computers and caused damage

4  and loss to eBay within the meaning of 18 U.S.C. § 1030, regardless of whether any

5  commission was later paid to Defendants for any particular act of cookie stuffing.

6      40.    Upon information and belief, through their unauthorized access, Defendants

7  DPS and DOES 1-10 caused harm and damage to eBay's computers including, but not

8  limited to, impairment of the integrity of eBay's data, and caused loss to eBay including,

9  but not limited to, costs incurred by eBay in responding to and conducting an assessment

10  of the damage caused by these Defendants' cookie stuffing scheme. Through their

11  unauthorized access, Defendants DPS and DOES 1-10 also caused damage and loss to

12  eBay as a result of commissions being wrongfully paid to those Defendants. The loss to

13  eBay that resulted from the unauthorized access by Defendants DPS and DOES 1-10 was

14  incurred in each year from at least December 2003 through June 2007, and totaled more

15  than $5,000 in at least the one-month period ending June 30, 2007.

16      41.    Upon information and belief, through their unauthorized access, Defendants

17  KFC and DOES 12-20 caused harm and damage to eBay's computers including, but not

18  limited to, impairment of the integrity of eBay's data, and caused loss to eBay including,

19  but not limited to, costs incurred by eBay in responding to and conducting an assessment

20  of the damage caused by these Defendants' cookie stuffing scheme. Through their

21  unauthorized access, Defendants KFC and DOES 12-20 also caused damage and loss to

22  eBay as a result of commissions being wrongfully paid to those Defendants. The loss to

23  eBay that resulted from the unauthorized access by Defendants KFC and DOES 12-20

24  was incurred in each year from at least December 2004 through June 2007, and totaled

25  more than $5,000 in at least the one-year period ending in June 2007.

26      42.    eBay's computers are used in interstate and foreign commerce.

27      43.    DPS's and KFC's actions, whether or not they resulted in the payment of

28  any commissions to them, constitute violations of the Computer Fraud and Abuse Act, 18

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    U.S.C. § 1030, including but not limited to §§ 1030(a)(4), 1030(a)(5)(B) and

2    1030(a)(5)(C).

3         44.    WHEREFORE, eBay prays for judgment against each of DPS and KFC, as

4    more fully set forth below.

5                    **SECOND CAUSE OF ACTION**

6                 **(Violations of 18 U.S.C. § 1962(c))**

7         45.    eBay realleges each and every allegation set forth in Paragraphs 1 through

8    44, inclusive, and incorporates them by reference herein.

9         46.    Defendants Shawn Hogan's, Brian Dunning's, and Todd Dunning's

10    unlawful, tortious and otherwise actionable conduct constitutes violations of 18 U.S.C. §

11    1962(c).

12         47.    Defendant Shawn Hogan and DOES 1-10 (the "Hogan Group") engaged in

13    activities through the company Digital Point Solutions. Digital Point Solutions has been

14    in existence as a business entity since at least 1999. On information and belief, based on

15    information provided on the company's website, from 1999 to the present, Digital Point

16    Solutions has had at least four employees, including owner, President, CEO and Senior

17    Systems Analyst Shawn Hogan, Vice President and Staff Systems Analyst R. Robin

18    Quasebarth, Associate System Analyst Richard L. Crook, and Sales Representative D.

19    Shawn Callahan. On information and belief, based on information provided on the

20    company's website and information provided to an eBay employee by Defendant Shawn

21    Hogan, at various times Digital Point Solutions also had other employees as well as a

22    group of "volunteers" who provided services to Digital Point Solutions. Digital Point

23    Solutions was incorporated on and/or before May 14, 2007. At all times relevant herein,

24    Digital Point Solutions constituted an enterprise under RICO.

25         48.    At all times relevant herein, through Digital Point Solutions, the Hogan

26    Group associated with each other and others for the common purpose of causing millions

27    of computers to access eBay's servers to defraud eBay of commission fees by designing

28    and implementing the cookie stuffing scheme described above. Upon information and

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    belief, the Hogan Group's activities were ongoing, and Digital Point Solutions functioned

2    as a continuing unit in operating the fraudulent cookie stuffing scheme from

3    approximately December 2003 through June 2007.

4        49.    Defendants Brian Dunning, Todd Dunning and DOES 12-20 (the "Dunning

5    Group") engaged in activities through the companies Kessler's Flying Circus,

6    Thunderwood Holdings, Inc., Dunning Enterprise, Inc., and BrianDunning.com, and each

7    company constitutes a RICO enterprise. Through Kessler's Flying Circus, Thunderwood

8    Holdings, Inc., Dunning Enterprise, Inc., and BrianDunning.com, the Dunning Group

9    associated with each other and others for the common purpose of defrauding eBay of

10    commission fees by designing and implementing the cookie stuffing scheme described

11    above. Upon information and belief, the Dunning Group's activities were ongoing, and

12    Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc. and

13    BrianDunning.com functioned individually, and with each other, as continuing units in

14    operating the fraudulent cookie stuffing scheme from approximately December 2004

15    through June 2007.

16        50.    The members of the Hogan Group and Dunning Group each committed

17    multiple violations of the predicate act of mail and wire fraud, 18 U.S.C. § 1343, both

18    through their cookie stuffing schemes and through communications with eBay and

19    Commission Junction designed to fraudulently conceal those schemes.

20        51.    As described in Paragraphs 25-33 above, schemes to defraud eBay existed

21    by which the members of the Hogan Group and Dunning Group each stuffed eBay

22    cookies onto computers for the purpose of defrauding eBay of commission fees due only

23    for legitimate Revenue Actions associated with a given affiliate. The members of the

24    Hogan Group and Dunning Group each participated in these schemes with the specific

25    intent to defraud eBay. Use of the Internet was essential to the schemes: the members of

26    the Hogan Group and Dunning Group stuffed a cookie onto a computer when a user was

27    browsing the Internet, and the stuffed cookie was later read and recognized when that

28    Internet user accessed eBay's website on the Internet and either registered with the site,

- 14 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    purchased an item or engaged in some other Revenue Action.  The members of the Hogan

2    Group and Dunning Group each, by use of their technologies, caused users' web browsers

3    to convey a representation by the Hogan Group and/or the Dunning Group to eBay that

4    the user had accessed the eBay website via an advertisement placed by either DPS or

5    KFC, when in fact, a substantial portion of those users never knowingly or intentionally

6    visited the eBay website based on an advertisement placed by either DPS or KFC.  These

7    fraudulent acts and representations were repeated multiple times, and each act constitutes

8    a violation of 18 U.S.C. § 1343 through the use of interstate wires.  Moreover, because the

9    Hogan Group's and the Dunning Group's cookie stuffing activities were undertaken as

10   part of a scheme to defraud and for the purpose of executing that fraud by wire

11   transmissions, each instance of cookie stuffing constitutes a completed violation of 18

12   U.S.C. § 1343 regardless of whether any commission was credited or paid as a result.

13       52.    On or about June 2007, eBay undertook an investigation into suspected

14   cookie stuffing by the Hogan Group and the Dunning Group.  eBay was able to verify the

15   existence of the two schemes and to track specific instances of cookie stuffing through

16   several different methods.

17       53.    eBay first ran its own tests and was able to observe and confirm fraudulent

18   cookie stuffing by both the Hogan Group and the Dunning Group.

19       a.    For example, on or about June 5, 2007, an eBay employee visited the

20   website www.drago-sim.com using a secure computer that had its IP address masked (to

21   overcome countermeasures that prevented cookies from being stuffed onto computers

22   with San Jose IP addresses) and that was equipped to monitor and record Internet activity

23   occurring on the computer.  The website www.drago-sim.com was a participant in DPS's

24   advertising network and contained a DPS-controlled banner ad.  Although the eBay

25   employee never clicked on, or requested, any eBay ad or link to an eBay website, the

26   Hogan Group's code in the DPS-controlled banner ad secretly redirected the computer

27   being used by the eBay employee to an eBay website, and a DPS-associated cookie was

28   dropped.  eBay observed an identical cookie stuff by the Hogan Group on the same date

- 15 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    by visiting the site www.songlyrics.com, which was also a participant in the DPS ad

2    network and which also contained a DPS-controlled banner ad.

3            b.      Also on or about June 5, 2007, eBay was able to observe and record

4    fraudulent cookie stuffing activity caused by the Dunning Group's wholinked and

5    profilemaps applications. As with the investigation of the Hogan Group's cookie stuffing,

6    secure computers equipped with Internet monitoring and recording equipment were

7    directed to sites containing the Dunning Group's wholinked and profilemaps applications.

8    Without any further action being taken by the computers' users, the Dunning Group's

9    wholinked and profilemaps applications secretly redirected the computers to an eBay

10   website, and KFC-associated cookies were stuffed onto the computers.

11   54.     In addition, on June 6, 2007, eBay asked Gallivan, Gallivan & O'Melia LLC

12   ("GGO") to undertake a cookie stuffing investigation. On that date, a GGO employee

13   visited the website www.jokes-time.com using a secure computer located in Mountain

14   View, California that had its IP address masked and had been equipped to monitor and

15   record Internet activity occurring on the computer. The jokes-time.com website was a

16   participant in DPS's advertising network and contained a DPS-controlled banner ad.

17   Without any action by the GGO employee other than visiting that website, the Hogan

18   Group's code in the DPS-controlled banner ad secretly redirected the GGO computer to

19   another DPS site and then to eBay's website, causing eBay's site to drop cookies that

20   were associated with DPS onto the GGO computer. On or about June 14, 2007, an

21   employee of GGO created a new eBay account using the computer that still contained the

22   cookies stuffed by the Hogan Group. The GGO employee then purchased an item from

23   eBay using the newly created account through the "buy it now" function. Using

24   information provided by GGO, eBay then tracked this new account and purchase, and

25   determined that DPS was credited both for the "new user" acquisition and for the sale.

26   55.     On or about June 6, 2007, GGO also performed a second cookie stuffing

27   test from its offices located in the Seattle, Washington area, following the same steps

28   taken in Mountain View. As in the Mountain View test, the Hogan Group's code stuffed

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    DPS-associated cookies onto the GGO computer even though the computer user did not

2    navigate to eBay's website. An eBay "buy it now" purchase was made by a GGO

3    employee in the Seattle area the following day using the computer containing the stuffed

4    cookies. eBay was again able to track a commission from the sale that was credited to

5    DPS.

6         56.     Having confirmed the ongoing cookie stuffing by both the Hogan Group

7    and the Dunning Group, eBay next set out to determine the extent of that unlawful

8    activity. On or about June 8-19, 2007, eBay made certain alterations to its website to both

9    detect further evidence of the cookie stuffing and, if found, to assess the volume of cookie

10   stuffing by the Hogan Group and the Dunning Group. eBay placed a special "gif" image

11   on the eBay.com home page. This special gif was served to any browser receiving an

12   eBay cookie. eBay had observed that Defendants' cookie stuffing schemes caused the

13   user's browser to be secretly redirected to eBay's home page for only a short period of

14   time—sufficient time for the cookie to be stuffed and little or no more. A browser that

15   had been redirected to eBay for purposes of cookie stuffing would not access eBay's site

16   long enough to be served the special gif, but a legitimate browser redirect to eBay (during

17   which a user clicks on an ad and comes to the eBay site) would be served that gif. eBay

18   then examined the data or traffic sent by all of its affiliates, including DPS and KFC.

19   eBay was able to review this data with a tremendous amount of granularity, capturing

20   individual cookie stuffs by the Hogan Group and the Dunning Group. The following are

21   examples of such individual cookie stuffs:

22   - On June 8, 2007, at approximately 12:32 p.m. PST, a cookie stuffed with

23       information for the affiliate using PID 2326993 was dropped from an eBay

24       California server to IP address 84.13.180.86. The user of this IP address was

25       located in Surrey, UK. PID 2326993 was an affiliate account number assigned to

26       KFC. The special gif was not served.

27   - On June 8, 2007, at approximately 12:37 p.m. PST, a cookie stuffed with

28       information for the affiliate using PID 2028993 was dropped from an eBay

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    California server to IP address 83.67.105.219. The user of this IP address was
2    located in South Yorkshire, UK. PID 2028993 was an affiliate account number
3    assigned to KFC. The special gif was not served.
4    • On June 8, 2007, at approximately 12:52 p.m. PST, a cookie stuffed with
5    information for the affiliate using PID 2028993 was dropped from an eBay
6    California server to IP address 172.174.248.28. The user of this IP address was a
7    customer utilizing the ISP America Online located in Virginia. PID 2028993 was
8    an affiliate account number assigned to KFC. The special gif was not served.
9    • On June 8, 2007, at approximately 12:58 p.m. PST, a cookie stuffed with
10    information for the affiliate using PID 2225634 was dropped from an eBay
11    California server to IP address 68.57.17.37. The user of this IP address was located
12    in Pennsylvania. PID 2225634 was an affiliate account number assigned to DPS.
13    The special gif was not served.
14    • On June 9, 2007, at approximately 12:43 p.m. PST, a cookie stuffed with
15    information for the affiliate using PID 2326993 was dropped from an eBay
16    California server to IP address 81.104.118.168. The user of this IP address was
17    located in Glasgow, Scotland. PID 2326993 was an affiliate account number
18    assigned to KFC. The special gif was not served.
19    • On June 9, 2007, at approximately 12:56 p.m. PST, a cookie stuffed with
20    information for the affiliate using PID 2225635 was dropped by an eBay California
21    server on IP address 71.210.107.53. The user of this IP address was located in
22    Arizona. PID 2225635 was an affiliate account number assigned to DPS. The
23    special gif was not served.
24    • On June 11, 2007, at approximately 12:18 p.m. PST, a cookie stuffed with
25    information for the affiliate using PID 2225634 was dropped by an eBay California
26    server on IP address 206.40.234.2 18. The user of this IP address is located in
27    Utah. PID 2225634 is an affiliate account number assigned to DPS. The special
28    gif was not served.

- 18 -

1    The cumulative results of the investigation demonstrated that over 99% of the traffic

2    directed by DPS and KFC during the time period of the investigation did not receive the

3    gif image, and was therefore fraudulent cookie stuffing traffic. During the short period of

4    this investigation, the data demonstrated that the Hogan Group had stuffed over 650,000

5    cookies and the Dunning Group had stuffed close to 20,000 cookies.

6         57.    eBay also performed an additional analysis of historical data that uncovered

7    further evidence of cookie stuffing by the Hogan Group and the Dunning Group over the

8    period from April 1, 2004 through June 18, 2007. Cookie stuffing is premised on the

9    notion that if one stuffs a large number of Internet users, some subset of those users will

10   later come to eBay (by chance and through no action of the cookie stuffer) and take a

11   Revenue Action. eBay examined its historical data regarding the behavior of eBay users

12   in an effort to determine whether user behavior provided proof of cookie stuffing. eBay's

13   analysis showed that, in fact, there were substantial differences in the behavior of

14   legitimately-referred users and users referred by DPS and KFC, which supported the

15   conclusion that the Hogan Group and the Dunning Group engaged in cookie stuffing. For

16   legitimately-referred users, the historical data showed that a high percentage of Revenue

17   Actions (e.g., establishing a new eBay account or placing a winning bid on an item)

18   occurred within the first hour of a cookie drop. Such behavior was to be expected,

19   because the cookie was dropped at the same time that the user visited eBay's site and was

20   exposed to the content on the site that would drive a Revenue Action. The contrasting

21   historical data for DPS and KFC demonstrated that both the Hogan Group and the

22   Dunning Group had been engaged in cookie stuffing. Users allegedly referred by DPS

23   and/or KFC demonstrated behavior consistent with cookie stuffing and inconsistent with

24   legitimate referrals: those users did not take the high percentage of their Revenue Actions

25   during the first hour following the cookie drop and, instead, took Revenue Actions at a

26   nearly uniform rate over the life of the cookie. This behavior showed that those users had

27   not been exposed to the content of the eBay site at the same time that the cookie was

28   dropped; instead, the users had been stuffed and visited eBay at some random time after

- 19 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1  the stuffing.

2      58.  On information and belief, based on eBay's analysis and understanding of

3  how the Defendants' cookie stuffing schemes worked and on statements made by Todd

4  Dunning to one of eBay's employees, DPS and KFC retained electronic records of the IP

5  addresses of the individual computers they stuffed with cookies in order to prevent

6  stuffing multiple cookies on a single computer.

7      59.  The Hogan Group and the Dunning Group fraudulently stuffed cookies onto

8  the computers of a large group of users without exposing them to the content on eBay's

9  site and a subset of those users later engaged in Revenue Actions that were unrelated to

10  any action by DPS or KFC but still produced enormous commissions for them.  In other

11  words, DPS and KFC received commissions based on Revenue Actions by users for

12  which they were not responsible.  But every act of cookie stuffing by the Hogan Group

13  and the Dunning Group, regardless of whether it resulted in the payment of a commission,

14  constituted a separate violation of 18 U.S.C. § 1343, because it constituted a use of

15  interstate wire communications in furtherance of the Defendants' schemes to defraud

16  eBay.

17      60.  In addition to their cookie stuffing schemes, which occurred over several

18  years and involved hundreds of thousands or even millions of acts that each constituted a

19  separate violation of 18 U.S.C. § 1343, the Hogan Group and the Dunning Group also

20  engaged in efforts to conceal and avoid detection of their schemes through fraudulent

21  communications involving the interstate mails and wires.  Examples of such

22  communications include the following:

23     • On or about September 5, 2005, after being contacted by (then) CJ employee

24      Christine Kim regarding suspicions of possible cookie stuffing by DPS,

25      Defendant Shawn Hogan falsely told Ms. Kim in a telephone conversation that the

26      apparent cooking stuffing arose from a "coding error" that had since been fixed.

27     • On or about February 15, 2006, Todd Dunning telephoned eBay employee Dan

28      Burkhart and reported that DPS and Hogan were cookie stuffing, which was true.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    During the same telephone conversation, Mr. Dunning told Mr. Burkhart that his
2    brother Brian Dunning was an honest affiliate. That statement was false. Mr.
3    Dunning later told eBay employees that he had lied when he said that DPS and
4    Mr. Hogan were cookie stuffing. That statement was also false.

5    • On or about August 9, 2006, Brian Dunning falsely told eBay employee Christine
6       Kim in an email that he would explain KFC's "innovative" business model "in
7       detail." Mr. Dunning subsequently provided Ms. Kim with descriptions of KFC's
8       business model that failed to accurately describe KFC's methods, and created the
9       false impression that KFC was actually driving users to eBay's site, instead of
10      engaging in a fraudulent cookie stuffing scheme.

11   • On or about August 29, 2006, Brian Dunning falsely stated in an email to CJ
12      employee Andrea Bardakos and eBay employee Christine Kim that the success of
13      KFC's methods was based on "staggering amounts of up-front adoption."

14   • On or about August 31, 2006, Brian Dunning emailed CJ employees Andrea
15      Bardakos and Jeff Ransdell, and eBay employee Christine Kim, thanking them for
16      maintaining confidentiality regarding the "inner workings" of his business model
17      and stating that "a conversation was 'due' at some point, especially given the high
18      simplicity-to-effectiveness ratio of what we're doing." In fact, KFC's
19      "effectiveness" in receiving commissions was due to its fraudulent cookie stuffing
20      scheme.

21   • On or about September 1, 2006, eBay employee Christine Kim and Shawn Hogan
22      conducted an instant message exchange during which Ms. Kim asked Mr. Hogan
23      to provide specifics regarding the DPS ad network, and Mr. Hogan made various
24      statements to actively conceal the existence of his cookie stuffing, including
25      claims that his system "works like evolution in nature" and refusing to provide his
26      code or analytics because "while it's really (REALLY) neat and would like to
27      show everyone just to show off ..., it's really not a good idea if I give it away."

28   • On or about September 7, 2006, Brian Dunning falsely stated in an email to eBay

- 21 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    employee Christine Kim that he was "absolutely confident" that KFC's methods

2    were "in line with the intended spirit of the terms" of the AMP.

3    • In early November 2006, eBay employee Christine Kim questioned Shawn Hogan

4    after an eBay employee based in Amsterdam had written to her about DPS's

5    results in the Netherlands, noting that "[n]ormally we only see these low

6    conversion rates when cookiedropping is involved." On or about November 6,

7    2006, Mr. Hogan falsely told Ms. Kim in a conversation via telephone or instant

8    message that low conversion rates in the Netherlands were caused by Mr. Hogan's

9    failure to "deep link" his ads there after a bug fix had been made.

10    • On or about January 22, 2007, Brian Dunning responded by email to eBay

11    employee Christine Kim's query as to why KFC's "winning bids and clicks" were

12    below the norm by falsely stating, "I wonder if the demographic of MySpace

13    users has much to do with it. They're generally quite young, maybe they're too

14    poor to win auctions." This statement was false and was intended to conceal his

15    cookie stuffing because Mr. Dunning knew that the unusual statistics noted by

16    Ms. Kim were the result of his cookie stuffing.

17    • On or about February 7, 2007, Brian Dunning falsely stated in an email to eBay

18    employee Christine Kim that "in the past 3 days we've received click-throughs on

19    ads from 97,743 profiles. That only counts profiles where someone clicked the

20    ad, no telling how many other profiles people have added it to." In fact, as Mr.

21    Dunning knew at the time, his click-throughs were the result of cookie stuffing

22    and not from users clicking on ads.

23    61.    Each violation of 18 U.S.C. § 1343 constitutes a separate instance of

24    "racketeering activity" as defined in 18 U.S.C. § 1961(1) and was committed in

25    furtherance of the conspiracy to defraud eBay of commission fees not legitimately earned

26    by either DPS or KFC. Together, these violations constitute a pattern of racketeering

27    activity: the violations have the same or similar purposes, results, participants, victims

28    and/or methods of commission.

- 22 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    62.    The racketeering activity committed by each of the members of the Hogan

2  Group and the Dunning Group affected the interstate activity of Internet web browsing.

3  In addition, Internet marketing, including the marketing at issue here that utilizes

4  advertisements seen by Internet users in all 50 states and provides commissions for

5  actions taken by eBay users across all 50 states, is also an interstate activity that was

6  affected by the racketeering activity committed by each of the members of the Hogan

7  Group and Dunning Group.

8    63.    The actions of each of the members of the Hogan Group and the Dunning

9  Group were undertaken with fraud, malice or oppression, or with a conscious disregard of

10  the rights of eBay.  Therefore, eBay is entitled to an award of exemplary and punitive

11  damages against each of the members of the Hogan Group and the Dunning Group, in an

12  amount according to proof at trial.

13    64.    WHEREFORE, eBay prays for judgment against each of the members of the

14  Hogan Group and the Dunning Group, as more fully set forth below.

15                    **THIRD CAUSE OF ACTION**

16                           **(Fraud)**

17    65.    eBay realleges each and every allegation set forth in Paragraphs 1 through

18  64, inclusive, and incorporates them by reference herein.

19    66.    DPS and DOES 1-10, by use of their cookie stuffing computer programs

20  and/or code, caused users' web browsers to convey a representation by those Defendants

21  to eBay that the user had accessed the eBay website via an advertisement placed by DPS.

22  eBay is informed and believes and, on that basis, alleges that this conduct began in or

23  around December 2003 and continued through at least June 2007.

24    67.    KFC and DOES 12-20, by use of their cookie stuffing computer programs

25  and/or code, caused users' web browsers to convey a representation by those Defendants

26  to eBay that the user had accessed the eBay website via an advertisement placed by KFC.

27  eBay is informed and believes and, on that basis, alleges that this conduct began in or

28  around December 2004 and continued through at least June 2007.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    68.    DPS and KFC also made a number of false statements regarding their

2    business methods, described above, in an effort to conceal their fraudulent cookie stuffing

3    schemes from detection by eBay or CJ.

4    69.    The representations made and/or caused to be made by each of DPS, KFC

5    and DOES 1-10 and 12-20 were in fact false. The true facts were that a substantial

6    portion of the users ostensibly referred by each of DPS, KFC and DOES 1-10 and 12-20

7    to the eBay site had not been referred by those Defendants, that those users had never

8    knowingly or intentionally visited the eBay site based on any advertisement or referral

9    from any of those Defendants, and that the information contained in cookies in those

10    users' web browsers was actually the product of the false and misleading cookie stuffing

11    schemes employed by each of DPS, KFC and DOES 1-10 and 12-20.

12    70.    When DPS, KFC and DOES 1-10 and 12-20 made these representations (or

13    caused them to be made), they knew them to be false and made these representations (or

14    caused them to be made) with the intention to deceive and defraud eBay and induce eBay

15    to act in reliance on these representations.

16    71.    eBay, at the time these representations were made (or caused to be made) by

17    DPS, KFC and DOES 1-10 and 12-20, was ignorant of the falsity of the representations

18    and believed them to be true. In reliance on these representations, eBay was induced to,

19    and did, make commission payments to each of DPS and KFC (via CJ) in consideration

20    for referrals that eBay believed to be legitimate and bona fide. Had eBay known the true

21    facts, it would not have made such commission payments. eBay's reliance on the

22    representations of DPS, KFC and DOES 1-10 and 12-20 was justified.

23    72.    As a proximate result of the fraudulent conduct of each of DPS, KFC and

24    DOES 1-10 and 12-20, eBay paid commissions and fees to DPS and KFC (via CJ) for

25    referrals that had never occurred, for which eBay received no value, and for which eBay

26    owed nothing to DPS or KFC.

27    73.    As a proximate result thereof, eBay has been damaged in an amount to be

28    proven at trial.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1    74.    Defendants' actions were undertaken with fraud, malice or oppression, or

2    with a conscious disregard of the rights of eBay and, therefore, eBay is entitled to an

3    award of exemplary and punitive damages against each of DPS, KFC and DOES 1-10 and

4    12-20, in an amount according to proof at trial.

5    75.    WHEREFORE, eBay prays for judgment against each of DPS, KFC and

6    DOES 1-10 and 12-20, as more fully set forth below.

7                          **FOURTH CAUSE OF ACTION**

8                   **(Violations of California Penal Code § 502)**

9    76.    eBay realleges each and every allegation set forth in Paragraphs 1 through

10    75, inclusive, and incorporates them by reference herein.

11    77.    Each of DPS and KFC have knowingly and without permission: altered,

12    damaged, deleted, destroyed, or otherwise used eBay's computer, computer system, or

13    computer network in order to devise and execute a cookie stuffing scheme or artifice in

14    order to defraud and deceive; and/or altered, damaged, deleted, destroyed, or otherwise

15    used eBay's computer, computer system, or computer network in order to wrongfully

16    control or obtain money and property; and/or accessed or caused to be accessed eBay's

17    computer, computer system, or computer network.

18    78.    DPS's and KFC's unauthorized access and use of eBay's computers has

19    damaged and caused loss to eBay.

20    79.    DPS's and KFC's actions constitute violations of California Penal Code §

21    502(c), whether or not any commissions were credited or paid as a result of those actions.

22    80.    DPS's and KFC's actions were undertaken with fraud, malice or oppression,

23    or with a conscious disregard of the rights of eBay and, therefore, eBay is entitled to an

24    award of exemplary and punitive damages against each of DPS and KFC, in an amount

25    according to proof at trial.

26    81.    WHEREFORE, eBay prays for judgment against each of DPS and KFC, as

27    more fully set forth below.

28

- 25 -

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1
## FIFTH CAUSE OF ACTION

2
### (Restitution and Unjust Enrichment)

3      82.    eBay realleges each and every allegation set forth in Paragraphs 1 through

4  81, inclusive, and incorporates them by reference herein.

5      83.    Through their cookie stuffing schemes, as described above, each of DPS and

6  KFC received a benefit from eBay, in the form of artificially and fraudulently inflated

7  commissions paid to DPS and KFC (via CJ) for Revenue Actions that were not associated

8  with any referral from those Defendants.

9      84.    In light of DPS's and KFC's conduct, it would be unjust for DPS and KFC

10 to retain the benefits they obtained from eBay.

11      85.    DPS and KFC have been unjustly enriched by eBay's payments and should

12 be required in equity to make restitution of these payments to eBay.

13      86.    WHEREFORE, eBay prays for judgment against each of DPS and KFC, as

14 more fully set forth below.

15
## SIXTH CAUSE OF ACTION

16
### (California Business and Professions Code § 17200)

17      87.    eBay realleges each and every allegation set forth in Paragraphs 1 through

18 86, inclusive, and incorporates them by reference herein.

19      88.    Through their cookie stuffing schemes, as described above, each of DPS and

20 KFC engaged in unlawful, unfair and/or fraudulent business practices. Such conduct by

21 each of DPS and KFC violates California Business and Professions Code § 17200 et. seq.

22      89.    As discussed herein, DPS's and KFC's business practices of engaging in

23 cookie stuffing were unlawful under state and federal laws, including but not limited to

24 the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the civil RICO statute, 18 U.S.C. §

25 1962(c), California Penal Code § 502, and constituted common law fraud.

26      90.    DPS's and KFC's conduct was also fraudulent and deceptive, and was

27 unfair to eBay, in that it offended established public policy, and/or was immoral,

28 unethical, oppressive, unscrupulous and substantially injurious to eBay.

SECOND AMENDED COMPLAINT
CASE NO. CV 08-4052 JF (PVT)

1   91.   As a direct result of DPS's and KFC's conduct, eBay has suffered an injury

2   in fact and has lost money and/or property that has been wrongfully retained by each of

3   DPS and KFC.

4   92.   WHEREFORE, eBay prays for judgment against each of DPS and KFC, as

5   more fully set forth below.

6   ### PRAYER FOR RELIEF

7   WHEREFORE, based upon the foregoing, eBay prays for judgment against

8   Defendants, and each of them, for:

9   i.   Judgment in favor of eBay and against all Defendants on all causes of

10   action;

11   ii.   An award of compensatory damages according to proof at trial;

12   iii.   An award of punitive damages according to proof at trial;

13   iv.   An award of treble damages against Defendants Shawn Hogan, Brian

14   Dunning and Todd Dunning, pursuant to 18 U.S.C. § 1964 according to proof at trial;

15   v.   An award requiring Defendants to disgorge all ill-gotten gains and to return

16   the eBay funds by which Defendants have been unjustly enriched;

17   vi.   An award of restitution, according to proof at trial;

18   vii.   An injunction prohibiting Defendants from (a) disseminating, sharing or

19   otherwise making available any cookie stuffing technology to others; (b) possessing,

20   disseminating, sharing, or otherwise making available any technology intended or capable

21   of being used to defraud eBay; and (c) having any further involvement with any person or

22   entity participating in the eBay Affiliate Marketing Program;

23   viii.   An award of pre-judgment and post-judgment interest;

24   ix.   An award of attorney's fees and costs of suit incurred herein; and

25   x.   Such other further relief as the Court may deem just and proper.

1    Dated:  March 26, 2009                    O'MELVENY & MYERS LLP

2

3                                             By:    /s/ David R. Eberhart

4                                                    David R. Eberhart
                                                     Sharon M. Bunzel
5                                                    Colleen M. Kennedy
                                                     Attorneys for Plaintiff eBAY INC.
6

7

8                        **DEMAND FOR JURY TRIAL**

9    eBay hereby demands a trial by jury of all claims in this action.

10

11   Dated:  March 26, 2009                    O'MELVENY & MYERS LLP

12

13                                            By:    /s/ David R. Eberhart

14                                                   David R. Eberhart
                                                     Sharon M. Bunzel
15                                                   Colleen M. Kennedy
                                                     Attorneys for Plaintiff eBAY INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

                                   - 28 -          SECOND AMENDED COMPLAINT
                                                   CASE NO. CV 08-4052 JF (PVT)

EXHIBIT "3"

FD-597 (Rev 8-11-94)

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
Receipt for Property Received/Returned/Released/Seized

File # 288A-SE-141681

On (date) 6/18/07

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☒ Seized

(Name) Brian Andrew Dunning

(Street Address) 15 High Bluff

(City) Laguna Niguel, CA 92697

Description of Item(s): 1) (1) by Check from "Progressive Solutions" for $6000
2) Yellow note Pad with notes
3) State of CA Certificate of Title (2000 Jeep 1J8GAb9144L166078)
4) Wells Fargo bank documents
5) Washington Mutual bank documents
6) White note pads w/ notes
7) Thunderwood Holdings Docs
8) Senex Docs
9) Pacific Life docs
10) IRS/ Orange Co. Clerk-Recorder Docs
11) Fidelity Docs
12) Merrill Lynch Docs
13) Cingular Cell docs
14) Misc. Docs
15) Tax returns as 2003, 2004

Room A

Received By: _(Signature)_       Received From: _(Signature)_

PAGE 77

# FEDERAL BUREAU OF INVESTIGATION
## Receipt for Property Received/Returned/Released/Seized

288A-SF-141681

On (date) 6/18/07

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☒ Released To
- ☒ Seized

(Name) Brian Andrew Dunning

(Street Address) 15 High Bluff

(City) Laguna Niguel, CA 92677

Description of Item(s): 16) Toshiba laptop S/N 62064761P

16) Apple laptop (Macbook Pro) S/N W186073ZBJ3 W/keyboard

17) (3) acomdata hard drives S/N 65182161, S/N 65204025, S/N (no serial #

18) Apple mini servers (4) S/N YM6332ZQWOB, S/N YM6370SKWKN, S/N YM64505DWKN, S/N YM6391MHWOB, S/N YM6251MJU36

19) Toshiba Disk Drive S/N 16G001975

20) Gateway laptop S/N BCS984761 34

21) Cingular Palm S/N PRCU01Q7H24F

22) Garmin 59507833

23) Sprint Treo S/N PTPC02V6H1KG

24) Dynex USB 2.0

25) Apple rechargeable battery S/N KFF24496TY6iB, misc. cables

Room A

Received By: _____ (Signature)     Received From: _____ (Signature)

PAGE 78

FD-597 (Rev 8-11-94)

### UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
#### Receipt for Property Received/Returned/Released/Seized

File # Z88A-SF-14168I

On (date)  6/13/07

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☒ Seized

(Name)  Brian Andrew Dunning

(Street Address)  15 High Bluff

(City)  Laguna Niguel, CA 92677

Description of Item(s):  26) Apple Laptop S/N W840805ANRX, cable (Room
27) Apple desk top S/N W83211VMNHX (Room E), keyboard
28) Apple laptop  S/N Q704669WJYY (Room D)
29) Samsung cell phone S/N RVEAC6386X, charger (Room D)
30) Samsung cell phone  2414248537, charger (Room D)
31) Misc docs, 4 CDs (outside trash can)
32) IPod 30GB S/N 8K6404BRV9R (Room M)
33) Apple IMAC S/N W86494QVVUV (Room I)
34) Ipod 4GB YM6201NCSZC (Room I)
35) Ipod 10GB S/N U23170C2NRH (Room I)

Received By: _____ (Signature)    Received From: _____ (Signature)

EXHIBIT "4"



## CHIP (COMPUTER HACKING AND INTELLECTUAL PROPERTY) FACT SHEET

### HISTORY

Nine additional units will be added to a program called CHIP (Computer Hacking and Intellectual Property) that has proven successful in Northern California. That project demonstrated the benefits of a unit of prosecutors working closely with the FBI and other agencies to establish a relationship with the local high tech community and encourage them to refer cases to law enforcement. In addition, the project provides the skills and training not yet available to law enforcement on a widespread basis.

The new CHIP units are the next phase in the Department's ongoing efforts to combat cybercrime and Intellectual Property theft. In 1991, the Department created what is now the Computer Crime and Intellectual Property Section (CCIPS) in the Criminal Division. This Section is comprised of 22 attorneys who specialize in these crimes and provide national training, advice and coordinate prosecution of computer intrusion and intellectual property cases. The CHIP team members will complement the highly trained network of prosecutors at CCIPS and the US Attorneys' Offices.

### PROGRAM DETAILS

CHIP units will be established in eight cities in addition to San Francisco, where the concept was pioneered. The cities have been chosen based on a number of factors, including their proximity to high-tech industry areas, their potential for growth in that area and the presence of adequate FBI resources to investigate these crimes.

-Los Angeles            -Dallas
-San Diego              -Seattle
-Atlanta                  -Alexandria, Virginia
-Boston
-New York (Brooklyn and Manhattan)

• Together, the 10 units will have a total of **77 positions, including 48 prosecutors.**
• This will provide 4 to 6 prosecutors in each participating district, through combining new and existing resources in the selected districts.

### RESOURCES

The FY 2001 Appropriation provided **$3,074,000 to fund 50 positions and 25 FTE, including 28 attorneys.**

The following chart shows the proposed unit composition:

| Districts | New AUSA Allocation | "AUSA" District Match | Total CHIP AUSAs | New Paralegal Allocation | New Support Allocation | "Support" District Match | Unit Position Total |
|---|---|---|---|---|---|---|---|
| California CD | 2 | 4 | 6 | 1 | 1 | 2 | 10 |
| California ND | 4 | 2 | 6 | 1 | 2 | 1 | 10 |
| California SD | 2 | 2 | 4 | 1 | 1 | 2 | 8 |
| Georgia ND | 3 | 1 | 4 | 0 | 2 | 0 | 6 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Massachusetts | 2 | 2 | 4 | 0 | 2 | 0 | 6 |
| New York ED | 2 | 2 | 4 | 0 | 2 | 0 | 6 |
| New York SD | 3 | 2 | 5 | 0 | 1 | 1 | 7 |
| Texas ND | 3 | 1 | 4 | 0 | 2 | 0 | 6 |
| Virginia ED | 4 | 2 | 6 | 1 | 2 | 1 | 10 |
| Washington WD | 3 | 2 | 5 | 0 | 2 | 1 | 8 |
| Total | 28 | 20 | 48 | 4 | 17 | 8 | 77 |

## COMPONENTS

The program has 3 components: (1) **Prosecution,** (2) **Regional Prevention and Outreach** and (3) **Regional Training.**

### 1. Prosecution
• CHIP units will prosecute computer intrusions, copyright and trademark violations, theft of trade secrets and economic espionage, theft of computer and high tech components and other Internet crimes.

### 2. Regional Prevention and Outreach
• Prosecutors will work with CCIPS, the FBI and other agencies to establish good working relationships with the high tech community and to encourage victims of high tech crime to report such crimes to law enforcement.

### 3. Regional Training
• Cybercrime fighting requires special skills. CHIP units will receive the same high-level training provided by CCIPS, but will also be expected to develop and offer regional training programs to increase expertise among federal, state and local prosecutors.

• CHIP units will also be encouraged to send attorneys to work at CCIPS to train, and to call upon CCIPS for assistance in providing local training.

- **More information on: CHIPs Program**
- **More information on: Attorney General Ashcroft's Remarks**
- **More information on: Law Enforcement Coordination for High-Tech Crimes**
- **More information on: Intellectual Property Policy**
- **More information on: Computer Crime Policy**

---

Want to receive news of updates to the cybercrime.gov website?
Send a blank message to: cybercrime-subscribe@topica.com and we will add you to our email newsletter list.
(Mailing list privacy information)

---

Go to . . . **CCIPS home page** || **Justice Department home page**

*Updated page December 9, 2002*
*usdoj-crm/mis/krr*

# EXHIBIT "5"

# Computer Crime and Intellectual Property Section (CCIPS)

## Law Enforcement Coordination for High-Tech Crimes

A. The Computer Hacking and Intellectual Property (CHIP) Program
B. High Technology Law Enforcement Training Opportunities
C. Coordination Between Law Enforcement and Industry
D. DOJ Speaks Out on Law Enforcement Coordination to Address Cybercrime

---

## A. The Computer Hacking and Intellectual Property (CHIP) Program

In 1995, at the recommendation of the then-Computer Crime Unit (now the Computer Crime and Intellectual Property Section (CCIPS)), the Department of Justice created the Computer and Telecommunication Coordinator (CTC) Program to protect the nation's businesses and citizens from the rising tide of computer crime and intellectual property theft by designating one or more prosecutors in every U.S. Attorney's Office to be responsible for these issues. In 2001, following a successful model developed in the Northern District of California, the Department expanded the program in ten cities by designating Computer Hacking and Intellectual Property (CHIP) units. These units typically involved more prosecutors than under the CTC program and were specifically charged with building relationships in-district with the FBI, other agencies, and the local high tech community. New units were added frequently thereafter. In 2005, the CTC and CHIP programs were combined into a unified CHIP program. More information on the CHIP Program and historical information on the CTC program is available below.

- CHIPs Unit Established in the Eastern District of California United States Attorney Office (October 19, 2004)

- CHIPs Unit Established in the Eastern District of Virginia United States Attorney Office (January 14, 2002)

- CHIPs Unit Established in Central District of California United States Attorney Office (September 6, 2001)

- CHIPs Unit Established in Southern District of New York United States Attorney Office (September 5, 2001)

- CHIPs Unit Established in the Eastern District of New York (August 21, 2001)

- Fact sheet on Computer Hacking and Intellectual Property (CHIP) units (July 20, 2001)

- **Attorney General Ashcroft's Speech Announcing Expansion of CHIP Program and Establishment of Nine New CHIP units (July 20, 2001)**

- **The Computer and Telecommunications Coordinator (CTC) Program, Stacey Levine, USA Bulletin (May 2001)**

- **CTC Responsibilities**

**B. High Technology Law Enforcement Training Opportunities**

- **Training Opportunities**

**C. Coordination Between Law Enforcement and Industry**

Cybercrime Summit: A Law Enforcement/Information Technology Industry Dialogue

On April 5, 2000, the Department of Justice hosted a Cybercrime Summit at Stanford Law School, titled "Cybercrime Summit:A Law Enforcement/Information Technology Industry Dialogue on Prevention, Detection, Investigation and Cooperation," at which Attorney General Janet Reno and members of the Justice Department and other law enforcement agencies met with representatives of information technology and Internet companies. The main topic of the Summit was how to improve cooperation between law enforcement and industry in investigating computer network hacking. Linked below are the Attorney General's Opening Remarks from the Summit, as well as the Question & Answer session between industry representatives and the Attorney General.

- **Opening Remarks of Attorney General Janet Reno at the Cybercrime Summit (April 5, 2000)**

- **Question and Answer Session with Attorney General Janet Reno at the Cybercrime Summit (April 5, 2000)**

The Cybercitizen Partnership: Industry and Government Alliance

On March 15, 1999, Attorney General Janet Reno announced a new Cybercitizen Partnership, a new alliance between law enforcement and the technology community. The goal of the partnership is to coordinate the efforts of government, industry and the public to ensure public safety and responsible computer use. The partnership will also promote computer ethics and civic responsibility in the cyber age and aid law enforcement and industry in the battle against "on-line outlaws." The partnership will consist of three complementary segments. The first segment is a "good cybercitizenship" public awareness campaign. The second is a user-friendly computer and network security directory to help public and private sector organizations quickly find computer security resources. The third is an Information Security Professional fellowship program between industry and government that will raise the awareness levels of participants with respect to the views, perspectives and needs of their respective counterparts.

- Statement by Attorney General Janet Reno to Announce the Cybercitizen Partnership at the ITAA Policy Summit (March 15, 1999)
- ITAA and Attorney General Janet Reno Unveil New Tech Partnership (March 15, 1999)

### D. DOJ Speaks Out on Law Enforcement Coordination to Address Cybercrime

Assistant Attorney General Michael Chertoff's Testimony Before the House Subcommittee on Crime

On June 12, 2001, Assistant Attorney General Michael Chertoff testified before the Members of the Subcommittee on Crime of the Committee on the Judiciary. In his statement he addressed the nature of cybercrime and the Department's current efforts to combat that problem.

- Text of Assistant Attorney General Michael Chertoff's testimony before the House Subcommittee on Crime of the Committee on the Judiciary (June 12, 2001)

Attorney General Ashcroft's Remarks Before the First Annual Computer Privacy, Policy & Security Institute

On May 22, 2001, videotaped remarks by Attorney General John Ashcroft were presented before the first Annual Computer Privacy, Policy and Security Institute.
In his speech, the Attorney General addressed the Institute's concerns of computer security and threats to information assets and the means by which industry and law enforcement can work together in fighting cybercrime.

- Text of Attorney General Ashcroft's Remarks Before the First Annual Computer Privacy, Policy & Security Insititute (May 22, 2001)

- View Video Taped Remarks (21 Megabytes)
  *Approximate download time: 56K Modem=55 minutes

- View Video Taped Remarks (13 Megabytes)
  *Approximate download time: 56K Modem=35 minutes

*Note: the listed download times are estimated times under optimal conditions. Your actual download times may vary depending on your modem, internet traffic, and your internet connection type.

Attorney General Reno's Address to the ITAA Cybercrime Summit

On June 9, 2000, Attorney General Janet Reno gave the keynote address at the ITAA Cybercrime Summit. In her speech, the Attorney General discussed the means by which industry and law enforcement can work together in fighting cybercrime. The text also includes the question and answer section.

- Text of Attorney General Reno's Keynote Address at the ITAA Cybercrime Summit (June 9, 2000)

Attorney General Janet Reno Testifies Before Senate Appropriations Committee

On Monday, February 16, 2000, Attorney General Janet Reno testified before the United States Senate Committee on Appropriations. Her testimony provided an overview of cybercrime and the challenges that it presents to law enforcement today.

- Testimony by Attorney General Janet Reno before the United States Senate Committee on Appropriations (February 16, 2000)

Attorney General Janet Reno Introduces Law Net Initiative

On January 10, 2000, Attorney General Janet Reno gave remarks before the National Association of Attorneys General in which she announced a new Law Net Initiative. The Law Net will be a ^"strong, permanent network of federal, state and local computer crime experts to do the following: To share expertise and information technology, to assist each other 24 hours a day, seven days a week, around the clock. to prevent cybercrime wherever possible, and to bring those responsible for such crime, when it does occur, to justice; To work with industry, the academic world and privacy groups to build trust and to protect our privacy and the Constitutional rights of all Americans; And finally, to ensure that the Internet is a force that brings this world together and builds understanding across peoples and places and time.

- Remarks of the Honorable Janet Reno, Attorney General of the United States, to the National Association of Attorneys General (January 10, 2000)

Attorney General Janet Reno Addresses the High Technology Crime Investigation Association 1999 International Training Conference

On Monday, September 20, 1999, Attorney General Janet Reno addressed the High Technology Crime Investigation Association 1999 International Training Conference in San Diego, California. Her speech focused on the importance of interagency and state and federal law enforcement cooperation, as well as on the Department of Justice's policy position on encryption regulation.

- Speech by Attorney General Janet Reno before the High Technology Crime Investigation Association 1999 International Training Conference (September 20, 1999)

President Clinton Addresses National Academy of Sciences on Keeping America Secure for the 21st Century

On January 22, 1999, President William Jefferson Clinton addressed the National Academy of Science. His speech was titled "Keeping America Secure for the 21st Century." The speech he gave is available via the link below:

- President Clinton's Speech to National Academy of Sciences (January 22, 1999)

Go to . . . **CCIPS home page** || **Justice Department home page**

# CERTIFICATE OF SERVICE

I, Rhonda Radford, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 2211 Michelson Drive, Seventh Floor, Irvine, California 92612, in said County and State. On October 30, 2009, the document(s) entitled:

**OPPOSITION TO MOTION TO STRIKE ANSWER; DECLARATIONS OF WILLIAM J. KOPENY, LEO J. PRESIADO AND BRIAN DUNNING IN SUPPORT**

was/were served as follows:

☑ **CM/ECF ELECTRONIC SERVICE:** The following are registered as CM/ECF Users with the Court, and have consented to service through the Court's automatic transmission of a notice of electronic filing:

David R. Eberhart                          *Attorneys for Plaintiff eBay, Inc.*
Sharon M. Bunzel
Colleen M. Kennedy
O'Melveny & Myers
Two Embarcadero, 20th Floor
San Francisco, CA 94111
Tel: (949) 984-8700 / Fax: (949) 984-8701
Email: deberhart@omm.com,
sbunzel@omm.com

Stewart H. Foreman                         *Attorneys for Defendants Todd Dunning and*
Freeland, Cooper & Foreman, LLP            *Dunning Enterprises, Inc.*
150 Spear Street, Suite 1800
San Francisco, CA 94105
Tel: (949) 541-0200
Fax: (949) 495-4332
Email: foreman@freelandlaw.com

Seyamack Kouretchian                        *Attorneys for Digital Point Solutions, Inc. and*
Ross M. Campbell                            *Shawn Hogan*
Coast Law Group. LLP
1140 S. Coast Hwy. 101
Encinitas, CA 92024
Tel: (760) 942-8505
Fax: (760) 942-8515
Email: seyamack@coastlawgroup.com
         Rcampbell@coastlawgroup.com

I am employed in the office of Rus, Miliband & Smith, APC, a member of the bar of this Court, and the foregoing document(s) was/were printed on recycled paper.

☑ **FEDERAL**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 30, 2009, at Irvine, California.

RHONDA RADFORD

1